IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-272C<br>Chief Judge Smith |

DEFENDANT'S PARTIAL MOTION TO DISMISS
AND PARTIAL MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE M. DAVIDSON
Director

s/Hillary A. Stern
HILLARY A. STERN
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
Washington, D.C. 20530
Tele: (202) 616-0177
Facsimile: (202) 305-7643

Attorneys for Defendant

Eden Brown Gaines
Elizabeth Head
Michael Doherty
Federal Aviation Administration
600 Independence Avenue, SW
Suite 1E-100
Washington, DC 20591

October 4, 2007

## TABLE OF CONTENTS

**PAGE(S)**


DEFENDANT’S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . . . . . . . . . . . 2

II. Issues Presented . . . . . . . . . . . . . . . . . . . 3

III. Statement of Facts . . . . . . . . . . . . . . . . . . 4

A. The FAA’s Personnel Management System (PMS). . . . 4

B. Credit Hours Are Not Overtime.................. 5

C. The Cru-X/Art Computer System.................. 6

D. Bidding For Work and Vacation Leave Schedules Off Duty. . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I. Count II Of The Complaint Should Be Dismissed Because The FAA Has Authority To Grant Plaintiffs Compensatory Time And Credit Hours . . . . . . . . . . . . . . . . . 13

A. The FAA Has Authority To Grant Plaintiffs Compensatory Time As Compensation For Excess Hours of Work Pursuant To 29 C.F.R. § 551.531 and FAA Order 3550.10 . . . . . . . . . . . . . . . . . 13

B. Count II Of Plaintiffs’ Complaint Also Fails Because Credit Hours Are Not Awarded As Compensation For Overtime Work . . . . . . . . . 18

II. Plaintiffs’ Claims Concerning Their Alleged Lack of Compensation For Pre and Post-Shift Work Are Without Merit . . . . . . . . . . . . . . . . . . . . . . 20

III. Any Time Spent Off-Duty By Plaintiffs Bidding On Work And Leave Schedules Was De Minimis . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Abrahams v. United States,
1 Cl. Ct. 305, 311 (1982) . . . . . . . . . . . . . . . . . 23

Adams v. United States,
40 Fed. Cl. 303 (1998) . . . . . . . . . . . . . . . . . . 16

Amos v. United States,
13 Cl. Ct. 442, 450 (1987) . . . . . . . . . . . . . . . . . 23

Anderson v. Mt. Clemens Pottery Co.,
328 U.S. 680 (1946) . . . . . . . . . . . . . . . . . 13, 22

Billings v. United States,
322 F.3d 1328 (Fed. Cir. 2003) . . . . . . . . . . . . . . 15

Bobo v. United States,
136 F.3d 1465 (adopting the factors set forth in Lindow v. United States,738 F.2d 1057, 1062-63) . . . . . . . . . . 22

Brodowy v. United States,
482 F.3d 1370 (Fed. Cir. 2007) . . . . . . . . . . . . . 17

Chevron, U.S.A., Inc. v. Natural Resources Defense Council,
467 U.S. 837 (other citations omitted) . . . . . . . . . 16

Graham v. United States, 3 Cl. Ct. 791, 796 (1983) . . . . . 23

Doe et al., v. United States,
74 Fed. Cl. 592 (2007) . . . . . . . . . . . . . . . . passim

Int'l Bus. Invs., Inc. v. United States,
11 Cl. Ct. 588, 593 (1987) . . . . . . . . . . . . . . . . . 23

Riggs v. United States,
21 Cl. Ct. 664, 668(1990) . . . . . . . . . . . . . . . 16, 23

United States v. Mead Corp.,
533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . 16

Whelan Sec. Co. v. United States,
7 Cl. Ct. 496, 499 (1985) . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES AND REGULATIONS


5 C.F.R. 551.412(a)(1) . . . . . . . . . . . . . . . . . . . . 23

5 C.F.R. § 551.531(a) . . . . . . . . . . . . . . . . . . . 3, 14

29 C.F.R. § 501.531(a) . . . . . . . . . . . . . . . . . . . . 15

Pursuant To 29 C.F.R. § 551.531 . . . . . . . . . . . . . . passim

5 U.S.C. § 5543 . . . . . . . . . . . . . . . . . . . . . 13, 15

5 U.S.C. § 6121 (6) . . . . . . . . . . . . . . . . . . . . . 19

5 U.S.C. §§ 6121, 6123,Section 6121 . . . . . . . . . . . . . 19

29 U.S.C. § 207(a) . . . . . . . . . . . . . . . . . . . . passim

49 U.S.C. § 40122 . . . . . . . . . . . . . . . . . . . . 17, 20

H. Rep. No. 93-750 913, 93rd Cong., 2d Sess., reprinted in 1974
U.S. Code Cong. & Ad. News 2811, 2837 . . . . . . . . . . . . 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-272C |
| | ) | Chief Judge Smith |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PARTIAL MOTION TO DISMISS
AND PARTIAL MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests the Court to dismiss count II of the complaint upon the grounds that plaintiffs have failed to state a claim upon which relief can be granted. In addition, pursuant to RCFC 56(b), defendant respectfully requests that the Court grant summary judgment for defendant as to counts III and IV of the complaint, upon the grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of this motion, defendant relies upon the complaint and the following brief with appendix.[1]

---

[1] "Compl. ¶ ___" is a citation to plaintiffs' complaint. "Def. App. ___" is a citation to the appendix attached to this brief.

DEFENDANT'S BRIEF

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiffs, Air Traffic Control Specialists ("ATCS"), Traffic Management Coordinators ("TMC"), and Staff Specialists, employed by the Federal Aviation Administration ("FAA"), seek overtime back pay pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), for hours worked in excess of 40 hours per week ("excess hours"). They claim that the FAA has compensated them for some of these excess hours by granting them compensatory time or credit hours, but that these forms of compensation are improper because the FAA lacks authority to grant either. (Compl. ¶ 10; Count II).

However, plaintiffs' claims lack merit because the FAA has regulatory authority to grant compensatory time off in lieu of FLSA overtime pay as well as authority to grant credit hours for hours worked in a flexible work schedule. These credit hours granted by the agency do not, in any event, constitute overtime hours.

In addition, plaintiffs assert that the FAA has failed to compensate them entirely for some excess hours worked. In particular, they allege that "it is their understanding" that certain pre- and post-shift work activities in which they have engaged are not reflected in the computer system used by the

agency to record work time and calculate overtime pay. (Count III). They also allege that the FAA has failed to compensate them for time spent off duty bidding on work and leave schedules (Count IV).

However, the undisputed facts controvert plaintiffs' understanding with respect to the FAA's computerized records; these records track all work hours suffered and permitted by the agency and plaintiffs are compensated for overtime hours reflected. Moreover, any time spent by plaintiffs bidding on work and leave schedules is de minimis and, therefore, not compensable.

II. Issues Presented

1. Whether count II of the complaint should be dismissed because the FAA is authorized to grant plaintiffs compensatory time for hours of work in excess of 40 hours in a week pursuant to 5 C.F.R. § 551.531(a) and FAA Order 3550.10 (¶¶ 27-32).

2. Whether count II of the complaint should be dismissed because the FAA is authorized to grant plaintiffs credit hours pursuant to the provisions of the FAA Personnel Management System ("PMS") as well as the collective bargaining agreement between the FAA and the union representing plaintiffs and because credit hours are not granted as overtime compensation for FLSA excess hours.

3. Whether the Government is entitled to summary judgment

with respect to count III of the complaint because, contrary to plaintiffs' assertions (Compl. ¶ 11), the undisputable evidence demonstrates that the CRU-X/ART machine cannot be manipulated to reflect a time other than the actual clock time for employees and plaintiffs are paid for all excess hours that the agency suffers and permits.

4. Whether the Government is entitled to summary judgment with respect to count IV of the complaint because the amount of off-duty time devoted by plaintiffs to bidding on work schedules and vacation dates is de minimis and, therefore, does not qualify for FLSA overtime pay.

## III. Statement Of Facts

### A. The FAA's Personnel Management System

On November 15, 1995, Congress authorized the Administrator of the FAA to develop and implement (no later than January 1, 1996), a personnel management system ("PMS") for the FAA. Def. App. 1. *See also* Department of Transportation and Related Agencies Appropriations Act of 1996, Pub. L. No. 104-50, § 347(a) (November 17, 1995). The Administrator was to develop the FAA PMS "[i]n consultation with the employees of the FAA and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of Title 5, United States Code, and other Federal personnel laws." Id., quoting *Department of Transportation and Related Agencies Appropriations*

*Act of 1996,* P.L. 104-50, Section 347(a).

The FAA PMS is comprised of a document specifically outlining (1) staffing; (2) compensation; (3) performance management; (4) training; (5) labor relations; and (6) executive systems. The PMS is also comprised of Personnel Reform Information Bulletins ("PRIB"); the Human Resource Policy Manual ("HRPM"); Human Resource Operating Instructions (HROI's); and FAA Orders. Def. App. 1. The PMS identifies the aspects of title 5, United State Code, from which the FAA is expressly exempt, as well as the aspects of title 5 that continue to apply to the FAA. Def. App. 25. The FAA Administrator or his/her designees have the authority to amend the PMS as necessary. The PMS is amended through PRIBs, HROIs and FAA orders. Def. App. 1.

B. Credit Hours Are Not Overtime.

According to FAA policy, credit hours are not considered overtime payment. Def. App. 3, 13-23 . Instead, credit hours are hours that an employee elects to work with supervisory approval in excess of the employee's basic work requirement under a flexible work schedule. Id. Credit hours are not used at the FAA to compensate employees for overtime. Id.

The FAA negotiated the definition of credit hours in 1998 and again in 2006 with the National Air Traffic Controllers Association ("NATCA"). Def. App. 3, 13-16. The parties agreed upon the following language in Article 34, Section 7:

> “credit” hours are *non-overtime* hours worked under an FWS [Flexible Work Schedule] which are in excess of an employee’s basic work requirement which are worked at the election of the employee after approval by the Agency.

(Emphasis added). Id.

C. The Cru-X/ART Computer System

FAA facilities use the Cru-X/ART software to track employee hours and to prevent non-exempt employees from working before or after their scheduled shift without compensation. Def. App. 6-7. The FAA has operated the Cru-X/ART system for ATCS personnel, including plaintiffs, since as early as November 2004, although implementation was not completed at all facilities until August 2005. Id.

The ART software runs on a personal computer. Employees in operational positions, such as ATCS and TMC, are required to sign-in and sign-out of their shifts using the software.[2] They are also required to use the software to sign in and sign out each time they work an operational position, such as a radar scope. Id.

The design of Cru-X/ART software precludes an operational

---

[2] Plaintiffs are comprised of ATCSs, TMC’s, and Staff Support Specialists. Most Staff Support Specialists are exempt, do not hold operational positions, and are not required to sign-in and sign-out at the beginning and end of their scheduled shifts using the ART software. Some specialists maintain currency to control air traffic for certain periods of time. Those specialists must sign into the ART system before controlling air traffic or “working on position.” Def. App. 6-7.

employee from performing work before or after his scheduled shift without compensation. Id. The following examples will demonstrate why this is true. The first example assumes that an operational employee, such as an ATCS, is scheduled to work from 7:00 a.m. to 3:00 p.m.[3] The employee's schedule shift time is already stored in the ART software. When an employee signs in on the Cru-X/ART software at the beginning of her shift, the software prompts her to enter her start time. If the employee enters a time other than the scheduled start time, the software asks whether the employee is changing his shift time or is working "time outside shift" ("TOS"), such as overtime. The employee must affirmatively make an entry into the software in order to sign in, either by entering her scheduled shift time, indicating that she is changing her shift time, or that she is working TOS. Id.

If the employee attempts to sign in at 6:45 a.m. for a 7:00 a.m. shift, for example, and she does not enter 7:00 a.m. for her start time, she must indicate that she is changing her shift times to 6:45 a.m. to 2:45 p.m. or that she is working TOS from 6:45 a.m. to 7:00 a.m. Thus, any time she worked between 6:45 a.m. (her actual start time) and 7:00 a.m. (her scheduled start

[3] Operational employees work an eight-hour shift, including a paid thirty minute meal break, because they are always subject to recall. Non-operational employees, such as Staff Support Specialists, work an eight and a half hour (8.5) shift, which includes an unpaid thirty minute meal break.

time) would be compensated. The same would hold true at the end of the shift. Assuming that the employee signed in for her shift at the scheduled start time (7:00 a.m.), if she attempted to sign out at 3:15 p.m., the software would ask her if she had worked TOS from 3:00 p.m. to 3:15 p.m. Id.

Additionally, operational employees are required to sign in and sign out of specific operational positions, such as a radar scope, using the ART software. The software will not allow an employee to sign in to an operational position before or after her scheduled shift start or stop time. Thus, if an employee signed in for her 7:00 a.m. shift at 6:45 a.m. without changing her shift or indicating that she was working TOS, and then attempted to sign in to an operational position at 6:50 a.m. using the ART software, the software would not allow her to sign in to the position prior to the official start of her shift at 7:00 a.m. Id.

The only way an employee could work and not receive compensation for the time before or after her shift would be if she was not following agency procedures. An employee could sign in for her 7:00 a.m. shift at 6:45 a.m. and then work an operational position prior to 7:00 a.m. without signing in to the position on the ART software or she could perform non-operational duties, such as reading required briefings, prior to 7:00 a.m. If that were the case, the employee is supposed to use the ART

software to amend her time record to reflect that she worked prior to 7:00 a.m., either by adjusting her shift times or by indicating that she was working TOS. Either way, the employee would be compensated for the time. Id.

Prior to the implementation of the Cru-X/ART software, time and attendance for employees, including ATCSs, TMCs, and Staff Support Specialists, was collected manually. Def. App. 11. The employee or her supervisor would record the time worked on a personnel log which was used for compilation of time and attendance data. Id. The FAA compensated employees for all time worked before or after an employee’s scheduled shift that was in addition to their scheduled shift. Id.

Finally, employees receive Leave and Earnings (“L&E”) statements on a biweekly basis that reflect their time worked for the relevant pay period. Id. If an employee believes she is not paid correctly, she can bring the issue to FAA management’s attention for resolution. Id. If the employee is not satisfied by management’s response, she can grieve the issue under the grievance procedure contained in the applicable agreement. Id. Plaintiffs do not contend that they have complained previously concerning incorrect payments in one or more pay periods.

D. Bidding For Work and Vacation Leave Schedules Off Duty

The FAA operates over 300 air traffic facilities to which the bulk of plaintiffs are assigned.[4] Def. App. 9. Each air traffic facility has the discretion to develop its own policies regarding the establishment of work and leave schedules, including procedures for employees bidding on the schedules.[5] Those policies and procedures are usually developed in conjunction with NATCA and the procedure may vary from facility to facility. Id. At many facilities, by agreement, FAA management allowed the union to conduct the bidding process for work and vacation leave schedules. Id.

Plaintiffs who are Staff Support Specialists do not bid on work and leave schedules. Def. App. 10-11. They normally work an administrative workweek and request vacation leave from their supervisors. Id. Plaintiffs who are ATCSs and TMCs do bid on work and vacation leave schedules. Def. App. 9. However, the FAA does not require that ATCSs and TMCs bid for work and vacation

[4] Plaintiffs who are ATCSs and TMC's work exclusively at air traffic facilities. Plaintiffs who are Staff Support Specialists work at either air traffic facilities or one of the FAA's nine regional offices.

[5] Many of the approximately 300 air traffic facilities operate continuously, i.e. twenty-four hours a day, seven days a week. Those that do not operate continuously usually operate seven days a week and more than eight hours a day. Therefore, plaintiffs who are ATCSs and TMC's do not customarily work a traditional administrative workweek, i.e. "business hours" Monday through Friday.

leave schedules. Def. App. 10. Bidding is completely voluntary. Id.

Because bidding is conducted by seniority pursuant to the collective bargaining agreement with NATCA, employees bid in a strict order and an employee’s turn to bid may arise when she is off-duty. Id. Most facilities utilize a “proxy” system to avoid employees having to bid while off-duty, but use of the proxy is optional with the employee. Id.

Bidding occurs once annually at each facility. Id. The total time that any individual spends bidding on the work and vacation leave schedules during the course of year is between five and ten minutes, regardless of whether the bidding occurs off-duty. Id. In no circumstances, should any employee spend more than one hour per year engaged in bidding the work and vacation leave schedules. Id.

SUMMARY OF THE ARGUMENT

Plaintiffs’ claims set forth in count II of their complaint, concerning the FAA’s alleged lack of authority to grant compensatory time off or credit hours, should be dismissed for failure to state a claim. The FAA is authorized to grant compensatory time as compensation for excess hours rather than FLSA overtime pay. This authority is set forth in regulations promulgated by OPM, the agency charged with implementing the FLSA

with respect to Federal employees. It is also contained in provisions of the FAA PMS.

Moreover, the FAA is authorized to grant plaintiffs credit hours pursuant to the FAA PMS. Contrary to plaintiffs' assertions, credit hours are not granted as compensation for FLSA overtime but, rather, as part of a flexible work program authorized by the FAA and included as part of the collective bargaining agreement between the union representing plaintiffs and the FAA. Because the sole basis for count II is plaintiffs' claim that the FAA lacks authority to grant compensatory time off or credit hours, this count should be dismissed.

In addition, this Court should grant summary judgment in favor of the Government with respect to count III of plaintiffs' complaint because the material facts pertaining to count III are undisputable and the Government is entitled to prevail as a matter of law. Contrary to plaintiffs' asserted "understanding," the timekeeping software that keeps track of plaintiffs' work hours is not subject to manipulation so as to reflect anything other than an employee's actual work hours.

Plaintiffs have not asserted that they were not compensated for all hours reflected by this software. Accordingly, they cannot demonstrate any entitlement to overtime pay over and above any they have already received.

Finally, this Court should grant summary judgment in favor of the Government with respect to count IV of plaintiffs' complaint. Any time spent by plaintiffs bidding on vacation and work schedules amounts to no more than five or ten minutes a year. Accordingly, time spent on these activities is de minimis and not compensable pursuant to the precedent binding on this Court. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

## ARGUMENT

### I. Count II Of The Complaint Should Be Dismissed Because The FAA Has Authority To Grant Plaintiffs Compensatory Time And Credit Hours

In count II of their complaint, plaintiffs contend that, at times, the FAA has failed to properly compensate them for excess hours because it has granted them compensatory time or credit hours, practices for which it allegedly has no authority. Compl. ¶¶ 21-22. Count II should be dismissed because the FAA clearly has authority to award both compensatory time and credit hours.

#### A. The FAA Has Authority To Grant Plaintiffs Compensatory Time As Compensation For Excess Hours of Work Pursuant To 29 C.F.R. § 551.531 and FAA Order 3550.10

Plaintiffs' claim regarding the FAA's alleged lack of authority to grant them compensatory time is based upon a misunderstanding of the regulations pertaining to compensation under the FLSA. In their complaint, plaintiffs assert that "[p]ayment of compensatory time or credit hours as compensation for FLSA overtime hours is only permitted for employees to whom 5

U.S.C. § 5543 applies." Compl. ¶ 21. They note (correctly) that the provisions of section 5543 do not apply to plaintiffs. Id.

However, contrary to plaintiffs' assertion, section 5543 is not the only source of authority for agencies of the Federal Government to grant compensatory time as compensation pursuant to the FLSA for excess hours of work. Pursuant to 29 U.S.C. § 204(f), the Office of Personnel Management (OPM) is authorized to "administer the provisions" of the FLSA with respect to **any employee** of the United States. Plaintiffs are employees within the meaning of the FLSA. Compl. ¶ 5. Accordingly, OPM is authorized to administer the provisions of the FLSA with respect to plaintiffs.

OPM has exercised its authority to administer the provisions of the FLSA by promulgating regulations found at 5 C.F.R. § 551.101 et seq. Pursuant to 29 C.F.R. § 551.531(a), the head of an agency "may grant compensatory time off . . . instead of payment under § 551.501 for an equal amount of irregular or occasional overtime work." Accordingly, section 551.531(a) authorizes the FAA to grant plaintiffs compensatory time off as compensation for their excess hours.

Plaintiffs may attempt to argue that 5 C.F.R. § 551.531(a) is inconsistent with the provisions of the FLSA. The FLSA expressly provides for the granting of compensatory time to state, local, and interstate agency employees but does not

contain a similar provision allowing compt time in lieu of overtime compensation for Federal employees. 29 U.S.C. § 207(o)(1).

In Doe et al., v. United States, 74 Fed. Cl. 592, 597 (2007), this Court cited to the maxim of statutory interpretation *expressio unius est exclusio alterius* as support for its conclusion that the express inclusion of state, local, and interstate agency employees within the coverage of 207(o), implies the exclusion of all omitted employees, including Federal employees, from coverage under that section.[6] We anticipate that plaintiffs may cite Doe, in support of an argument that 29 C.F.R. § 501.531(a), as applied to plaintiffs, is inconsistent with 29 U.S.C. § 207(o).

Any attempt by plaintiffs to present this argument would be without merit. Notwithstanding the maxim upon which the Doe decision relies, the conclusion drawn in Doe from its application to section 207(o) is inconsistent with the decision of the United States Court of Appeals for the Federal Circuit in Billings v. United States, 322 F.3d 1328, 1332-1333 (Fed. Cir. 2003).

In Billings, the Federal Circuit suggested that matters concerning the substantive application of the FLSA to Federal employees with respect to which the statute is silent are

---

[6] This Court held that the plaintiffs in Doe could be granted compensatory time pursuant to the provisions of 5 U.S.C. § 5543. As noted, section 5543 does not apply to plaintiffs in this case.

properly understood as a gap which Congress intended OPM to fill with its regulations. It is well settled, however, that "[w]hen Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." United States v. Mead Corp., 533 U.S. 218, 227 (2001) (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (other citations omitted).

There can be little doubt that the delegation of authority to the OPM includes the authority to issue substantive regulations which are binding upon federal employees. Riggs v. United States, 21 Cl. Ct. 664, 668(1990); Adams v. United States, 40 Fed. Cl. 303, 304 (1998). It was Congress's intent that OPM would administer the provisions of the FLSA in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy. See H. Rep. No. 93-750 913, 93rd Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 2811, 2837.

Thus, the omission of any reference to Federal employees in 29 U.S.C. § 207(o) is less reflective of an implicit intention upon the part of Congress to exclude Federal employees, then of an opportunity for OPM to fill in the gap in the FLSA with respect to the possibility of compensating Federal employees with compensatory time off. In this case, OPM's regulation allowing Federal agencies, including the FAA, to grant compensatory time off for excess hours is consistent with the law applicable to employees of state, local, and interstate agencies. As a result, OPM's regulation is a reasonable and valid exercise of its authority to regulate this matter and establishes, as a matter of law, the propriety of the FAA's grant of compensatory time off as compensation for excess hours worked by plaintiffs.

Finally, the FAA derives additional authority to award compensatory time for overtime work rather than overtime pay pursuant to regulations promulgated by the FAA in accordance with 49 U.S.C. § 40122. Pursuant to that statute, the FAA Administrator was tasked with the development and implementation of a Personnel Management System for the agency that would address the unique demands on the agency's workforce.

By authority of this enabling statute, the FAA Administrator created and implemented the PMS. Pursuant to the decision of the United States Court of Appeals for the Federal Circuit in <u>Brodowy</u>

v. United States, 482 F.3d 1370, 1375-76 (Fed. Cir. 2007), FAA PMS is a binding regulatory scheme.

The FAA PMS provides for payment of compensatory time at one hour for one hour of overtime work in lieu of overtime payment. FAA Order 3550.10 (¶¶ 27-32). Accordingly, and contrary to the plaintiffs' assertions, the FAA is authorized to award compensatory time at one hour for each hour of overtime worked in lieu of overtime payments. Based upon the foregoing, this Court should dismiss that part of count II of plaintiffs' complaint pertaining to the FAA's alleged unauthorized use of compensatory time to compensate them for overtime work.

B. Count II Of Plaintiffs' Complaint Also Fails Because Credit Hours Are Not Awarded As Compensation For Overtime Work

Plaintiffs also claim in count II of their complaint that the FAA lacks authority to grant them credit hours as compensation for excess hours and, as a result, the agency's practice of granting credit hours is improper. Compl. ¶ 21. However, this claim is based upon the faulty premise by which plaintiffs link the earning of credit hours to the working of excess hours.

In actuality, credit hours are authorized for plaintiffs pursuant to the FAA PMS and the provisions of the collective bargaining agreement ("CBA") between the FAA and the National Air Traffic Controllers Association ("NATCA"). According to the

PMS's HROI on Flexible Work Schedules, credit hours are hours that take place within a flexible work schedule that are in excess of an employee's basic work requirement. Def. App. 17-23. The HROI expressly provides that overtime is not paid when credit hours are earned or liquidated. Id.

Similarly the CBA between the FAA and NATCA defines credit hours as:

> non-overtime hours worked under an [Flexible Work Schedule] which are in excess of an employee's basic work requirement and which are worked at the election of the employee after approval by the Agency.

Def. App. 13-16. Because credit hours granted to plaintiffs are not overtime, plaintiffs are not entitled to overtime pay for these hours.

In Doe et al., v. United States, 74 Fed. Cl. 592, 599 (2007) this Court dismissed for failure to state a claim a similar claim brought by employees of the Social Security Administration. In that case too, plaintiffs sought pay for credit hours. In Doe, the sources of the authorization for the use of credit hours within the context of a flexible work schedule and for distinguishing credit hours from overtime were 5 U.S.C. §§ 6121, 6123.[7]

[7] Section 6121 defines credit hours as "any hours, within a flexible schedule . . . which are in excess of an employee's basic work requirement and which the employee elects to work so as to vary the length of a workweek or workday." 5 U.S.C. § 6121(4) and further provides that "Credit hours are not

Pursuant to 49 U.S.C. § 40122, the provisions of sections 6121 and 6123 of title 5 do not apply to the FAA. However, just as was the case with respect to these statutory provisions that controlled the outcome in the Doe case, the provisions of the FAA PMS and the CBA described above differentiate credit hours from overtime hours, rendering them ineligible for overtime pay. As a result, just as in Doe, plaintiffs' claims with respect to credit hours should be dismissed for failure to state a claim upon which relief can be granted.

## III. Plaintiffs' Claims Concerning Their Alleged Lack of Compensation For Pre- and Post-Shift Work Are Without Merit

In count III of their complaint, plaintiffs allege that they "have been suffered or permitted to perform work activities, without compensation, before their official starting times for work and after their official starting times for work."[8] Compl. ¶ 28. This count apparently is based upon plaintiffs' "understanding" that the CRU-X/ART machine used by the FAA to record work time can be manipulated to reflect a time other than the actual clock in time for the employee. Compl. ¶ 11. Plaintiffs further allege that "it is their understanding" that

overtime." 5 U.S.C. § 6121 (6).

[8] Presumably plaintiffs intended the second part of the allegation to read that they have been suffered or permitted to perform work activities after their official stopping times for work, rather than starting times.

computerized records exist that reflect their actual work time. Id.

Plaintiffs' "understandings" simply are not correct. As explained in our statement of facts, the agency's computerized time keeping system, known as the CRU-X/ART, is actually designed to do the exact opposite, to wit, prevent employees from working before or after their scheduled shift without compensation.[9] Def. App. 5-7.

The Cru-X/ART software runs on a personal computer. Employees in operational positions, such as ATCSs and TMCs, are required to sign-in and sign-out of their shifts using the software.[10] Id. They are also required to use the software to sign-in and sign-out each time they work an operational position, such as a radar scope. Id. The explanation provided in our statement of facts demonstrates how the Cru-X/ART precludes an operational employee from performing work before or after his scheduled shift without compensation. Id.

Plaintiffs do not allege that they were not properly compensated for all time reflected in the ART system. Because

---

[9] Plaintiffs are comprised of ATCSs, TMC, and Staff Support Specialists. Staff Support Specialists do not hold operational positions and are not required to sign-in and sign-out at the beginning and end of their scheduled shifts using the ART software. Rather, Staff Support Specialists use CruSupport software to record their time and attendance. Therefore, Count III is not applicable to that group of plaintiffs. Def. App. 7.

the ART system reflects all work that the agency has suffered or permitted, plaintiffs have not been deprived of any overtime compensation and their claims should be denied.

IV. Any Time Spent Off-Duty By Plaintiffs Bidding On Work And Leave Schedules Was De Minimis

In count IV of their complaint, plaintiffs allege that the FAA and "its supervisors have caused plaintiffs to engage in bidding on their work and vacation leave schedules while off-duty" without compensation in violation of the FLSA. Compl. ¶ 35. While plaintiffs may have, in fact, bid for work and vacation schedules while off-duty, they spend no more than five to ten minutes once or twice a year doing so. Def. App. 10. This time is considered de minimis under the FLSA.

The de minimis doctrine limits FLSA liability for overtime activities that consume negligible amounts of time. As the Supreme Court has explained, a few seconds, or minutes, of work beyond the scheduled working hours may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the FLSA. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. Anderson v. Mt. Clemens Pottery Co, 328 U.S. 680, 692 (1946).

The Federal Circuit utilizes a three-part test to determine whether otherwise compensable time is de minimis: (1) the administrative difficulty of recording the additional time;

(2) the aggregate amount of compensable time and (3) the regularity with which the work was performed. Bobo v. United States, 136 F.3d 1465, 1468 (adopting the factors set forth in Lindow v. United States, 738 F.2d 1057, 1062-63).

OPM limits the application of the de minimis doctrine to periods of 10 minutes or less per day. 5 C.F.R. 551.412(a)(1). Pursuant to section 551.412(a)(1):

> If ... a preparatory or concluding activity is closely related to an employee's principal activities and is indispensable to the performance of the principal activities, and ... the total time spent in that activity is more than 10 minutes per workday, the agency shall credit all of the time spent in that activity, including the 10 minutes, as hours of work.

Adopting the OPM standard, "[d]ecisions of this court construing the FLSA have developed a rule of thumb that [10] minutes of preliminary or postliminary work that would otherwise be compensable because it is closely related to principal activities will nonetheless be treated as non-compensable if it totals less than [10] minutes per day." Riggs v. United States, 21 Cl. Ct. 664, 682 (1990) (citing Amos v. United States, 13 Cl. Ct. 442, 450 (1987)); Int'l Bus. Invs., Inc. v. United States, 11 Cl. Ct. 588, 593 (1987); Whelan Sec. Co. v. United States, 7 Cl. Ct. 496, 499 (1985); Graham v. United States, 3 Cl. Ct. 791, 796 (1983); Abrahams v. United States, 1 Cl. Ct. 305, 311 (1982) ([P]laintiffs ... must show that they performed some significant

work . . . . In addition, the work must involve a substantial period of time of at least 10 minutes or more.)

Assuming, for the sake of argument, that plaintiffs were suffered or permitted to bid work and vacation leave schedules while off-duty, such time would have been de minimis. The bidding procedures require at most five to ten minutes, once or twice a year. Def. App. 10. Accordingly, this time is not compensable and plaintiffs' claims should be denied.

## Conclusion

For the foregoing reasons, defendant respectfully requests that the Court dismiss count II of the complaint and grant summary judgment in favor of the Government with respect to counts III and IV.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE M. DAVIDSON
Director

s/Hillary A. Stern
HILLARY A. STERN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0177
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

EDEN BROWN GAINES
ELIZABETH HEAD
MICHAEL DOHERTY
Federal Aviation Administration
600 Independence Ave., S.W.
Suite 1E-100
Washington, D.C. 20591
Tele: (202) 385-8254
Facsimile: (202) 493-5085

October 4, 2007

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2007, a copy of the foregoing "DEFENDANT'S PARTIAL MOTION TO DISMISS AND PARTIAL MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Hillary A. Stern