# INDEX TO APPENDIX


| ITEM | PAGE |
|---|---|
| Declaration of Ellen B. Cook, Dated October 3, 2007........................ | 1 |
| Declaration of Michael Masson, Dated October 4, 2007........................ | 5 |
| Declaration of Thomas Cassady Dated October 3, 2007........................ | 12 |
| Article 34 of 2006 Collective Bargaining Agreement Between FAA and NATCA,...................... | 13 |
| Article 34 of 2003 Collective Bargaining Agreement Between FAA and NATCA........................ | 15 |
| HROI - Flexible Work Schedules................. | 17 |
| FAA National PRIB #01.......................... | 24 |
| FAA PMS March 28, 1996......................... | 25 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-272C<br>(Judge Emily C. Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION OF ELLEN B. COOK**

I, Ellen B. Cook, declare and state as follows:

1. I am a first-line supervisor in the Policy Management Division (AHP-300), Office of Human Resource Management Programs and Policies, Office of the Assistant Administrator for Human Resource Management, FAA. I manage a team of employees who provide policy implementation, advice and guidance in the areas of staffing, classification, compensation and pay-setting. I have held that position for two years. Prior to that time, I was a Classification/Pay/Compensation Specialist in the Policy Management Division. I have been with the FAA since 1991 as a personnel specialist within the Office of Human Resources Management, and have worked in the Human Resources field since 1986.

**The FAA's Personnel Management System**

2. On November 15, 1995, Congress authorized the Administrator of the FAA to develop and implement (no later than January 1, 1996), a new personnel management system for the FAA. (Department of Transportation and Related Agencies Appropriations Act of 1996, P.L. 104-50, Section 347(a)(November 17, 1995). The Administrator was to develop the FAA Personnel Management System ("PMS") "[i]n consultation with the employees of the FAA and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of Title 5, United States Code, and other Federal personnel laws." *Id.* The FAA Administrator is authorized to negotiate over compensation and benefits with labor organizations representing FAA employees. 49 U.S.C. § 106(l)(1).

3. The FAA consulted with its employees and implemented the Personnel Management System effective April 1, 1996. The Administrator and his designees utilized Personnel Reform Implementation Bulletins ("PRIB's") to announce personnel policies, procedure changes or amendments to the PMS. For example, the Administrator issued PRIB 1 on April 1, 1996 as a bridge between Title V and the FAA's PMS. The Agency held certain provisions of Title V would continue to apply to the FAA until they were changed by the PMS. The FAA PMS is also comprised of the Agency Human Resource Policy Manual (HRPM), Human Resource Operating Instructions ("HROI"), and guidance contained in FAA orders, action notices, the Federal Aviation Personnel Manual (FAPM), Letters, Line of Business (LOB) PRIB's and memoranda. Pay administration is governed by FAA Order No. 3550.10.

**Credit Hours**

4. In 1998, the FAA entered into a collective bargaining agreement with the National Air Traffic Controllers Association ("NATCA") allowing air traffic control specialists ("ACTS's") and Traffic Manager Coordinators ("TMC's") to earn credit hours in conjunction with any shift on a recurring basis. NATCA is the labor organization that represents plaintiffs pursuant to the Federal Service Labor-Management Relations Statute (FSLMRS), 5 U.S.C. § 7101 *et seq.* In September 2003, this agreement was extended and then replaced in September 2006.

5. Article 34, Section 7 of the 2003 and 2006 NATCA CBAs specifically provides that

> "credit hours" are non-overtime hours worked under an AWS which are in excess of an employee's basic work requirement and which are worked at the election of the employee after approval by the Agency.

6. The FAA applied this provision to Staff Support Specialists, who had not been organized and were not represented at the time the parties negotiated the 1998 NATCA CBA.

7. Credit hours are not used at the FAA to compensate employees for overtime payment.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief

Executed on this 3rd day of October, 2007.

Ellen B. Cook

Ellen B. Cook

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MARK G. ABBEY, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | No. 07-272C (Judge Emily C. Hewitt) |

**DECLARATION OF MICHAEL MASSON**

I, Michael Masson, declare and state as follows:

1. I am currently a Section Manager in the Technical Services Group, Information Technology Directorate, Acquisitions and Business Services (AJA), of the Air Traffic Organization (ATO), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT), and have held this position since September 15, 2005. I have been an employee of the FAA since May 13, 1982, in the following positions:

   a. Air Traffic Control Specialist, Lake Charles LA, Air Traffic Control Tower (ATCT);
   b. Air Traffic Control Specialist, New Orleans LA International, Air Traffic Control Tower (ATCT);
   c. Automation Support Specialist, New Orleans LA International ATCT;
   d. Air Traffic Manager, Houma, LA ATCT;
   e. Air Traffic Manager, New Orleans, LA Lakefront ATCT.

2. In my current position as a Section Manager, Technical Services Group, my office is responsible for application development and maintenance. My office is responsible for the Cru-X suite of software applications, including Cru-X/ART and Cru-Support.

3. Cru-X/ART is a management tool that allows the FAA to record and collect a variety of data concerning its workforce. The FAA began implementation Cru-X/ART in FAA air traffic control facilities in November 2004 and completed implementation in all facilities in August 2005.
4. Operational employees, such as Air Traffic Control Specialists (ATCSs) and Traffic Management Coordinators (TMCs), use Cru-X/ART to record their time and attendance. These employees are required to sign-in and sign-out of their assigned shifts using Cru-X/ART. They are also required to use Cru-X/ART to sign-in and sign-out each time they work an operational position, such as a radar scope, or perform any other task, such as receiving training.
5. The Cru-X/ART software will not allow an employee to record work before the scheduled start time of her shift unless the employee changes the start time of her shift or indicates that she is working time outside shift (TOS), such as overtime. The employee must affirmatively make an entry into the software in order to sign-in, either by entering her scheduled shift start time; indicating that she is changing her shift time; or that she is working TOS.
6. Similarly, the Cru-X/ART software will not allow an employee to record work after the scheduled end time of her shift unless the employee indicates that she is working TOS, such as overtime. The employee must affirmatively make an entry to sign-out, either by entering her scheduled shift end time or that she is working TOS if she enters a sign-out time later than her scheduled shift end time.
7. How the Cru-X/ART software operates can be demonstrated through an example using an employee whose scheduled shift starting time is 7:00 a.m. and attempts to sign-in at 6:45 a.m. If the employee does not enter 7:00 a.m. as her start time when prompted by the Cru-

X/ART software, she must indicate that she is either changing her shift to begin at 6:45 a.m. or that she is working TOS, such as overtime, from 6:45 a.m. to 7:00 a.m. If she indicates that she is changing her shift to begin at 6:45 a.m., the software automatically updates to show that her shift ending fifteen (15) minutes earlier than previously scheduled. If the employee enters 7:00 a.m. as her starting time, she should not perform any work between 6:45 a.m. and 7:00 a.m. The Cru-X/ART software would preclude her from recording that she performed any work prior to 7:00 a.m.

8. Should an employee, for some reason, disregard FAA policy and perform work prior to the scheduled beginning time or after the scheduled ending time of her shift without making the appropriate entries in Cru-X/ART, she can notify the watch supervisor to modify her time and attendance record in Cru-X/ART to reflect that work. Employees also certify their time and attendance records in Cru-X/ART at then end of each shift while signing out, which gives the employee another opportunity to correct that she worked before or after her scheduled shift.

9. Non-operational employees, such as Staff Support Specialists, use a software program called Cru-Support to record their time and attendance. These employees are not required to sign-in and sign-out as are operational employees.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 4th day of October, 2007.

MICHAEL MASSON

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-272C (Judge Emily C. Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION OF THOMAS CASSADY**

I, Thomas Cassady, declare and state as follows:

1. I am currently the Manager of the Field Labor Relations and Customer Service Group, Office of the Assistant Administrator for Human Resource Management (AHR), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT), and have held this position since April 3, 2005. I have been an employee of the FAA since March 29, 1982, in the following positions:

   a. Air Traffic Control Specialist, Jacksonville FL, Air Traffic Control Tower (ATCT)
   b. Staff Support Specialist, Jacksonville FL ATCT
   c. Front Line Manager, Chattanooga, TN ATCT
   d. Front Line Manager, Jacksonville, FL ATCT
   e. Staff Specialist, Air Traffic Labor Relations Division, FAA Headquarters, Washington, DC.
   f. Operations Manager, Miami, FL Air Route Traffic Control Center (ARTCC)
   g. Support Manager, Miami, FL, ARTCC
   h. Acting Air Traffic Manager, Ft. Lauderdale, FL, ATCT
   i. Acting Assistant Air Traffic Manager, Miami, FL, ARTCC.

2. In my current position as the Manager, Field Labor Relations and Customer Service Group, my office functions as the Human Resource Business Partner for all FAA lines of business,

including the Air Traffic Organization (ATO), which oversees air traffic control operations. My office provides technical expertise to Human Resource and Labor Relations Specialists and is also responsible for coordinating collective bargaining agreement (CBA) interpretations to all field facilities, including air traffic control facilities.

3. Through my current and previous positions with the FAA, I have become familiar the various processes used by employees who are Air Traffic Control Specialists (ATCSs) and Traffic Management Coordinators (TMCs), including plaintiffs, to select their work schedules, known as "bidding the basic watch schedule (BWS)," and vacation leave schedules.

4. Plaintiffs, including ATCSs, TMCs, and Staff Support Specialists, are represented by the National Air Traffic Controllers Association (NATCA or Union) for purposes of the Federal Service Labor-Management Relations Statute (FSLMRS). From May 2004 until September 2006, the terms and conditions of employment of ATCSs and TMCs were governed by a CBA between NATCA and the FAA dated September 2003 ("2003 CBA"). Since September 2006, the terms and conditions of employment of ATCSs and TMCs have been governed by a CBA dated September 2006 ("2006 CBA"). The FAA and NATCA have not yet completed negotiations over a CBA for Staff Support Specialists. The terms and conditions of employment for Staff Support Specialists are governed by an interim agreement between the FAA and NATCA and FAA policies in effect at the time NATCA became their exclusive representative pursuant to the FSLMRS.

5. Air Traffic Control Specialists (ATCSs) and TMCs, referred to henceforth as "employees," are assigned to over 300 different FAA air traffic control facilities. Under the 2003 and 2006 CBAs, each FAA facility manager has the authority to negotiate procedures for employees to use for bidding the BWS and vacation leave with the NATCA Facility Representative, who

represents the Union at the facility level. Because each facility has the ability to negotiate local procedures, not all facilities bid the BWS and vacation leave schedules the same way. Under the 2003 CBA, the Union conducted the bidding processes at many facilities by agreement with the facility manager.

6. The FAA does not require any ATCSs or TMCs to bid the BWS or vacation leave schedule. Bidding is completely voluntarily with the employee. Should the employee elect not to bid either the BWS or vacation leave schedule, he or she will be assigned a work schedule by his or her supervisor and permitted to submit requests for non-vacation leave during the leave year.

7. Bidding for the BWS and vacation leave schedule takes place once annually at each facility. Employees bid in order by seniority, per the applicable CBA. An employee's turn to bid may arise when the employee is not scheduled to be at work. The vast majority of facilities allow employees the option of submitting a "proxy" bid with a coworker or the NATCA Facility Representative in order to assist in their bidding when they are not scheduled to work. Some employees, however, still choose to bid when they are not at work even though they have the option of submitting a proxy bid or waiting until they return to duty.

8. The total time that an individual employee spends annually bidding the BWS and vacation leave schedule combined is approximately five (5) to ten (10) minutes, regardless of whether he or she is at work or not. In no circumstances should any employee spend more than one (1) hour per year bidding the BWS and vacation leave schedule, regardless of whether he or she is at work or not.

9. Plaintiffs who are Staff Support Specialists generally work an administrative workweek, i.e. Monday through Friday during "business hours," and generally do not bid or select their

work schedules. Staff Support Specialists are not required by collective bargaining agreement to bid their vacation leave schedules. They may schedule their vacation leave directly with their supervisor.

10. Operational employees, including ATCSs and TMCs, work an eight (8) hour shift, including a paid thirty (30) minute meal break, because they are always subject to recall. Non-operational employees, such as Staff Support Specialists, work an eight and a half hour (8.5) shift, which includes an unpaid thirty (30) minute meal break.

11. Employees, including plaintiffs, currently continue to receive Controller Incentive Pay (CIP). It should be noted, however, that the NATCA contract implemented in September 2006 contains a five-year phase out of CIP. The 2006 NATCA contract applies to ATCSs and TMCs. The phase out began January 2007. Staff Support Specialists continue to receive CIP under the terms of their pay plan.

12. Prior the implementation of the Cru-X/ART software, time and attendance for employees, including ATCSs, TMCs, and Staff Support Specialists, was collected manually. The employee or her supervisor would record the time worked on a personnel log which was used for compilation of time and attendance data. The FAA compensated employees for all time worked before or after an employee's scheduled shift that was in addition to their scheduled shift.

13. Employees receive Leave and Earnings Statements on a biweekly basis that reflect their time worked for the relevant pay period. If an employee believes she was not paid correctly, e.g. the employee worked overtime during the pay period but the L&E Statement did not reflect that, she could bring the issue to FAA management's attention for resolution. If the employee

was not satisfied by management's response, she could grieve the issue under the grievance procedure contained in the applicable agreement.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 3 day of October, 2007.

THOMAS CASSADY

## ARTICLE 34
## WORKING HOURS

**Section 1.** A full-time employee's basic workday shall consist of eight (8) consecutive hours and the basic workweek shall consist of five (5) consecutive days except as authorized in this Article. At an employee's request, the Agency may consider non-consecutive hours and/or non-consecutive days off.

**Section 2.** Employees with a regularly scheduled shift who would otherwise lose an hour of work because of the changeover to daylight savings time must be afforded an opportunity to remain on duty at the end of their normal shift to maintain their full number of hours with normal pay.

**Section 3.** The Agency may change an employee's shift to an administrative schedule eight and one-half (8½) hour shift including an unpaid thirty (30) minute meal period) for the purpose of administrative travel or to receive official training away from the operational environment. Employees will adhere to the tour of duty of the organizational segment to which they are temporarily assigned. If an employee who has been assigned an eight and one-half (8½) hour shift is recalled to operational duties, his/her shift shall revert to an eight (8) hour shift to include a thirty (30) minute paid meal period. Employees who are disciplined for conduct offenses or are undergoing performance related training may be reverted to an administrative workday(s) shift to ensure closer supervision.

**Section 4.** Alternate Work Schedules (AWS) shall be authorized in accordance with this Agreement.

**Section 5.** "Core time" means those designated hours and days during the biweekly pay period established by the Agency when an employee on certain flexible schedules must be present for work.

**Section 6.** The Parties agree that in conjunction with the development of the basic watch schedule under Article 32 Section 1, FWS and CWS are authorized on an annual basis provided any schedule agreed to by the Parties would not have an adverse Agency impact.

a. Adverse Agency impact is defined as:

(1) a reduction of the level of productivity of the Agency;

(2) a diminished level of service furnished to the public by the Agency; or

(3) an increase in the cost of Agency operations (other than a reasonable administrative cost relating to the process of establishing a compressed schedule).

b. For the purpose of this Agreement, FWS means:

(1) A minimum of seven (7) hours core time each workday.

(2) A maximum of one (1) flexible hour which must be worked each workday.

(3) Employees may vary start times on a daily basis only during the established flexible times.

**Section 7.** "Credit hours" are non-overtime hours worked under an FWS which are in excess of an employee's basic work requirement and which are worked at the election of the employee after approval by the Agency.

Employees may accrue and carry over a maximum of twenty-four (24) credit hours into any pay period. However, on the effective date of this Agreement, employees with credit hour balances in excess of twenty-four (24) hours will carryover that balance but will not be eligible to earn additional credit hours until their balance has been reduced to less than twenty-four (24) hours.

Employees receive pay for a maximum of twenty-four (24) unused credit hours at his or her current rate of basic pay when federal employment ends, when the employee transfers to another agency, or when the employee otherwise is no longer subject to a flexible work schedule. Upon the signing of this Agreement, any balances in excess of twenty-four (24) hours shall continue to have no cash value.

**Section 8.** The Agency shall not require employees to work additional hours or days for credit hours.

**Section 9.** Credit hours must be earned prior to their use. Procedures for approving the use of earned credit hours shall be the same as those for approving annual leave requests under Article 24 of this Agreement. When requested in advance, the employee may substitute credit hours for approved annual leave.

**Section 10.** Participants in any AWS shall be bargaining unit employees who volunteer.

**Section 11.** If at any time, the Agency determines that any schedule established under the provisions of this Article has had or would have an adverse Agency impact as defined in Section 6, it will follow the provisions of Article 7 of this Agreement to seek termination of the schedule.

**Section 12.** The express terms of this Article apply separately and distinctly to each of the following bargaining units: air traffic controllers, traffic management coordinators/specialists and NOTAM specialists.

## ARTICLE 34
## WORKING HOURS

**Section 1.** The basic workday shall consist of eight (8) consecutive hours and the basic workweek shall consist of five (5) consecutive days.

**Section 2.** On changing to daylight savings time, employees shall be afforded the opportunity to remain on duty for eight (8) hours.

**Section 3.** The Agency may change an employee's shift to an administrative schedule (eight and one-half (8 ½) hour shift including an unpaid thirty (30) minute meal period) for the purpose of administrative travel or to accommodate official training, unless the employee is subject to operational recall. Employees will adhere to the tour of duty of the organizational segment to which they are temporarily assigned. Employees who are disciplined for conduct offenses or are undergoing performance related training may be reverted to an administrative workday(s) shift to ensure closer supervision.

**Section 4.** Upon request of the Union, Alternate Work Schedules (AWS) shall be authorized in accordance with this Agreement.

**Section 5.** Participants in an AWS shall be employees who volunteer in writing.

**Section 6.** "Core time" means those designated hours and days during the biweekly pay period established by the Agency when an employee on certain flexible schedules must be present for work.

**Section 7.** AWS means:

a. A minimum of seven (7) hours core time each workday.

b. A maximum of one (1) flexible hour which must be worked each workday..

c. Employees may vary start times on a daily basis only during the established flexible times.

d. Employees scheduled to work Sunday midshifts may not flex into the previous day.

e. At the union's request, maxiflex and compressed work weeks shall be negotiated at facilities that operate less than 24 hours/day.

**Section 8.** "Credit hours" are non-overtime hours worked under an AWS which are in excess of an employee's basic work requirement and which are worked at the election of the employee after approval by the Agency. Upon request of the Union, the Parties at the local level shall negotiate procedures for earning credit hours in conjunction with any particular shift(s) on a recurring basis, provided that the Agency may rescind such agreement with twenty-eight (28) days' advance notice. Employees may submit advance requests to earn credit hours. Employees may accrue and carry over credit hours into any pay period.

**Section 9.** The Agency shall not require employees to work additional hours or days for credit hours.

**Section 10.** Credit hours must be earned prior to their use. Procedures for approving the use of earned credit hours shall be the same as those for approving annual leave requests under Article 24 of this

Agreement. When requested in advance, the employee may substitute credit hours for approved annual leave.

**Section 11.** The exchange of shift assignments for employees working an AWS shall be in accordance with Article 32, Section 5 of this Agreement.

**Section 12.** Participants in any AWS shall be bargaining unit employees who volunteer. All employees who volunteer and subsequently participate will be expected to participate until their schedules are re-negotiated. An employee may be relieved from an AWS for hardship reasons. The reasons shall be set forth in writing to the Agency and the Union at the local level. Removals from AWS for hardship reasons shall be based on the merits of each case, and if found acceptable by the Agency, after direct discussion with the Union, employees shall be accommodated as soon as operational and scheduling requirements permit.

**Section 13.** Developmentals may participate in an AWS unless the Agency determines that it will adversely impact their training.

**Section 14.** If the Agency determines under the criteria established by 5 USC 6131 that any schedule established under the provisions of this Article has had or would have an adverse Agency impact, it will follow the provisions of 5 USC 6131 to seek termination of the schedule.

**Section 15.** The express terms of this Article apply separately and distinctly to each of the following bargaining units: air traffic controllers, traffic management coordinators/specialists and NOTAM specialists.

# ROI - Flexible Work Schedules (fws)

ted: 12:50 pm ET November 8, 2006

---

information in this HROI should be used in conjunction with the appropriate policy chapters found within the Human Resource Policy Manual PM).

**s HROI established: 05/04/2005**
**s version effective: 05/04/2005**


ırpose
eneral
ptions Available under the FWS
redit Hours
xcused Absence
vertime
ight Pay & Night Differential
oliday
bsence from Work during the Basic Work Requirement


---

**urpose:** This Human Resource Operating Instructions (HROI) explains FWS and prescribes the basic work requirement.

**eneral:** The basic work requirement is the hours, excluding overtime, an employee is required to work or account for by leave or other approvec ence. The basic work requirement is different for each FWS option. For example, the basic work requirement for an employee on a maxiflex schec ) hours a pay period, with no daily or weekly requirement. Employees on a flexitour or gliding schedule must work 8 hours a day, 40 hours a wee 80 hours a pay period.

tour of duty is the range of hours an employee is authorized to work. In organizations that perform primarily administrative functions, core hour ):30 a.m. to 2:30 p.m., with a 30-minute non-paid meal break. Flexible time bands are the hours between 6:00 a.m. and 9:30 a.m. and 2:30 p.m. 6:00 p.m. These are the hours during which employees may choose their arrival and departure times and accumulate credit hours. Organization: establish different core hours and flexible time bands based on operational and/or geographic requirements.

)loyees must not begin work before 6:00 a.m. or work after 6 p.m., unless directed or approved in advance by management. Subject to managem :oval, an employee may select to work a schedule that includes core hours and a period within the limits of the flexible time bands. For purposes ing credit hours, the flexible time bands are expanded to include Saturday and Sunday.

**ption Available Under the FWS:** Under the FWS Program, five options are available for selection, with management approval; as shown bel

## Available FWS Options

| Schedules | Hours Daily | Hours Weekly | Hours Bi-weekly |
|---|---|---|---|
| Flexitour | 8 | 40 | 80 |
| Gliding Schedule | 8 | 40 | 80 |
| Variable Day Schedule | | 40 | 80 |
| Variable Week Schedule | | | 80 |
| Maxiflex Schedule | | | 80 |

The basic work requirement and tour of duty for each option is described in detail below:

**(a) Flexitour: Employee works 8-hour days and pre-selects arrival and stop times within the flexible time band.**

**(1) Basic Work Requirement:** A full-time employee has an 8-hour day, 40-hour week, 80-hour biweekly pay period basic work requirement.

## Core Hours Plus Lunch Period

| Early Shift | Late Shift |
|---|---|
| 6:00 a.m. to 9:30 a.m. | 2:30 p.m. to 6:00 p.m. |

**(2) Tour of Duty:** An employee requests his or her fixed arrival time during the flexible time band in advance of the upcoming pay period. The arrival and departure times are fixed until a new schedule is requested and approved. The employee must be present during core hours, or other accounted for by leave and/or other approved absences.

**(b) Gliding:** Employee works 8 hours per day and varies arrival and departure times during the flexible time band.

**(1) Basic Work Requirement:** A full-time employee has an 8-hour day, 40-hour week, and 80-hour pay period basic work requirement. A pa time employee basic work requirement is the hours the employee must work each day; hours in the administrative workweek, and hours in a pay period.

## Core Hours Plus Lunch Period

| Early Shift | Late Shift |
|---|---|
| 6:00 a.m. to 9:30 a.m. | 2:30 p.m. to 6:00 p.m. |

**(2) Tour of Duty:** An employee on a management approved gliding schedule may vary arrival and departure times daily within the flexible tim bands, without prior management approval. During core hours, the employee must be present or otherwise accounted for by leave or other approved absences.

**(c) Variable Day: Full-time employee works 40 hours per week but varies number of hours per day and arrival and departur times during the flexible time band.**

**(1) Basic Work Requirement:** A full time employee has a 40-hour week and an 80-hour pay period basic work requirement. A part-time employee's basic work requirement is the hours the employee must work in the administrative workweek and in a pay period.

Example of an employee's tour of duty on a **Variable Day Schedule:**




**(2) Tour of Duty:** An employee may vary daily arrival and departure times within the flexible time bands, as well as the length of the workday. **However, management may require such daily variations requested and approved in advance of each pay period.** A full-time employee is limited to a 40-hour workweek. Even with the flexibility of this schedule, core hours are always in effect during the workweek. Durin core hours, the employee must be present or otherwise accounted for by leave or other approved absences.

**(d) Variable Week: Full?time employee works 80 hours per pay period. May vary number of hours per day and days per wee and arrival and departure times within flexible time band.**

**(1) Basic Work Requirement:** A full-time employee has an 80-hour pay period basic work requirement. For a part-time employee, the basic work requirement is the hours the employee must work in a biweekly pay period.

Example of an employee's tour of duty on a **Variable Week Schedule:**




Hours Worked = 45




**Hours Worked = 37**
**Total Hours Worked = 82**
**Basic Work Requirement = 80**
**Earned Credit Hours = 2**

**(2) Tour of Duty:** An employee may vary arrival and departure times daily within the flexible time bands. An employee may also vary the lengt the workday and the workweek. **However, management may require such daily variations be requested and approved in advance each pay period.** A full-time employee is limited to an 80-hour pay period. This schedule allows flexibility within the flexible time bands as we the length of the workday and workweek. The employee must be present during core hours all week or otherwise accounted for by leave or other approved absences.

**(e) Maxi flex: Full-time employee works 80 hours in a pay period.**

**(1) Basic Work Requirement:** The basic work requirement for a full-time employee is an 80-hour pay period. A part-time employee's basic v requirement is the hours the employee must work in a pay period. The following is an example of an employee's tour of duty on **maxi flex:**




Hours Worked = 45




**Hours worked first week of pay period = 45**
**Hours worked second week of pay period = 35**
**Hours Worked for the pay period = 80**

**(2) Tour of Duty:** An employee may vary arrival and departure times daily within the flexible time bands. An employee may also vary the lengt the workday and the workweek. **However, the management may require such daily variations be requested and approved in advance of each pay period.** A full-time employee is limited to an 80-hour pay period. An employee is expected to be in a duty status during core hours for a minimum of 3 days during an administrative workweek. Therefore, an employee may work less than 5 days per week and/or less than 10 days during the biweekly pay period. This schedule allows flexibility within the flexible time bands as well as the length of the workday ai workweek. The schedule allows flexibility in the number of days off. Employees must be present during core hours or otherwise accounted for by leave or other approved absences.

**redit Hours:**

**(a) Entitlement to earn and use credit hours:** Employees working a FWS are eligible to earn and use credit hours, with prior management approval. Credit hours are only earned in the flexible time band. Credit hours are not officially ordered and approved in advance by managemen Employees are compensated with overtime pay or compensatory time when management officially orders the accomplishment of work outside a time employee's regular schedule.

**(b) Earning and Using Credit Hours:**

- **Increment Amount:** Credit hours can be earned and used in 1-minute increments. Organizations may determine higher increment levels t earn and use credit hours.
- **Carry forward limit:** An employee may earn an unlimited amount of credit hours in a day or in a pay period. However, a full-time employ may only carry forward up to 24 hours of credit hours to the next pay period. A part-time employee may only carry forward up to one-fourth the employee's pay period work requirement to the next pay period. Credit hours in excess of the maximum carryover are forfeited.
- **Timeframe:** There is no requirement for using earned credit hours within a particular timeframe. Credit hours may be earned and used on same workday, another workday, workweek, or biweekly pay period. Credit hours are part of the applied basic work requirement.
- **Management approval:** Credit hours use is subject to management approval, as with any other form of leave.
- **Advancement of hours:** Credit hours are earned before used. Credit hours are never advanced. For example, an employee may not take cı hours on Monday and earn the credit hours later in the day, in the week, or the pay period.
- **Documentation:** Credit hours earned and used are always documented on the Time and Attendance Record.
- **Saturday and/or Sunday:** Credit hours may be earned, with management approval, in the flexible time bands that include Saturday and/ Sunday.
- **Basic requirement hours:** Credit hours are not basic requirement hours. For example, the ninth hour is not a credit hour when an emplo completes a 9- hour workday of an 80-hour basic work requirement. However, an employee on a FWS would earn 1 credit hour if the employ voluntarily work a tenth hour on the same day.
- **Eligibility of FAA executives:** FAA executives are not eligible to earn credit hours

- Participation in FWS ends: When an employee is no longer subject to a FWS program



- **Payment for maximum unused earned credit hours when a full-time employee is no longer subject to a FWS:** A full-tim employee receives payment for all unused earned credit hours up to the 24-hour maximum.

- **Payment for maximum unused earned credit hours when a part-time employee is no longer subject to a FWS:** A part-ti employee receives payment for unused earned credit hours up to one-fourth of the biweekly basic work requirement.

- **Rate of pay for unused earned credit hours when no longer subject to a FWS program:** Employees receive lump-sum paym for the 24 hour maximum of credit hours when they leave the agency. The payment is made at the employee's current rate of pay at the ti that payment is made. An employee may not be compensated for credit hours for any other reason (e.g., excess unused credit hours that cannot be carried forward into the next pay period).

- **Circumstances that end employee's subject to FWS program:** An employee is no longer subject to a flexible work schedule wher
  - **Employee leaves agency:** Employee separates from agency, transfers to another agency, or retires; or
  - **Employee chooses to not participate in the FWS program:** Employee elects not to participate in the FWS program, or
  - **Management decides to end FWS Program options:** The FWS Program management determines the FWS Program is not an available option for selection.

**(c)Travel:** Credit hours are not earned for travel because travel is always ordered by the agency. Travel hours are not hours that an employee el to work. However, credit hours are earned for travel if stipulated in a negotiated agreement.

**(d)Training and Homework:** Credit hours are not earned when training or homework is required.

**(e) Premium Pay:** Overtime or compensatory time are not paid when employees earn credit hours or when credit hours are liquidated.

**(f) Night Pay:** Night pay is not paid when credit hours are earned because night hours are not part of the employee's basic work requirement.

**(g) Sunday premium pay:** Sunday premium pay is not paid for credit hours earned or used. Sunday is not part of the employee's basic work requirement.

**(h) Holiday pay:** Employees electing to work credit hours during holiday hours are not entitled to holiday pay. If approved by management, employees may earn credit hours for work in excess of their basic work requirement on a holiday. Under FWS, full-time employees are excused o for 8 hours of their basic work requirement because of a holiday. With management approval, accrued credit hours or annual leave must be used the ninth or tenth hour of day's scheduled tour of duty.

**xcused Absence:**

**(a) Circumstances that warrant excused absences:** Employees under a FWS are granted excused absence with pay under the same circumstances as employees covered by other work schedules. For additional guidance refer to LWS-8.8, Excused Absence.

**(b) Basis for excused absences:** Under FWS, excused absence is granted based on the employee's established basic work requirement in effe at the time.

**(c) Employees not entitled to another day off for unscheduled office closures:** Employees not scheduled to work on the day of an unscheduled office closure (e.g., due to weather conditions) are not granted another non-workday. Under a FWS, employees on a regular day off (RDO) are in a non-pay status. Therefore, the employee on a RDO is not entitled to an additional day off when the agency is closed due to an emergency.

**(d) Excused absence for delayed opening or early dismissal:** Excused absence granted for a delayed opening or an early dismissal is bas on the employee's established scheduled arrival or departure times. For example, employees are dismissed three hours earlier than their normal departure time. An employee would leave by 12:30 p.m. if his or her normal departure time were 3:30 p.m.

**(e) Methods used to discern individual patterns of arrival or departure:** Hours of granted excused absence may be determined on individual patterns of arrival or departure. The following methods may be used:

- **Constant Pattern of Arrival:** An employee's established pattern of arrival each workday is used to determine the amount of granted excu absence.

- **Predominant Pattern of Arrival:** An employee's predominant particular arrival time is used to determine the amount of excused absenc

- **Variable Pattern of Arrival:** A mathematical average of the employee's arrival time for the previous pay period is used when there is a variable pattern of the employee's arrival time. The average arrival time is used as a reference for determining excused absence.

**vertime:**

**(a) Definition of overtime:** Overtime is hours of work outside the employee's basic work requirement that are officially ordered or approved management. Hours in a paid leave status (e.g., annual leave, sick leave, etc.) are counted as hours of basic work requirements when determinin hours of work for overtime purposes. Refer to Order 3550.10, Section 2 for additional overtime information on exempt employees. Refer to Orde 3550.10, appendix 10 for additional overtime information on non-exempt employees.

**(b) Flexitour and Gliding Work Schedules:** Overtime in a flexi tour and gliding work schedules is work in excess of 8 hours in a day or 40 hours in an administrative workweek. This excludes credit hours.

**(c) Variable Day Work Schedule:** Overtime in a variable day work schedule is a work in excess of 8 hours in a day or 40 hours in an administrative workweek. This excludes credit hours.

**(d) Variable Week and Maxiflex Work Schedules:** Overtime in a variable week and maxiflex work schedules means work in excess of 8 h in a day or 40 hours in an administrative workweek. This excludes credit hours.

**(e) Part-time employees eligibility for overtime:** Except for certain employees on alternative work schedules, part-time employees are eligible for overtime when ordered and approved in advance for hours in excess of 8 hours in a day or 40 hours in a week.

**(f) Regular and irregular overtime and compensatory time:** Under FWS, overtime may be regularly or irregular (occasional) overtime hours. Compensatory time may be earned in lieu of overtime pay for irregular, occasional, or regularly scheduled overtime.

**ight Pay and Night Differential:** Employees are not approved to work flexible work schedules between the hours of 6:00 p.m. to 6:00 a.m. loyees receive night pay when required by management to work between 6:00 p.m. and 6:00 a.m. to complete an 8-hour tour of duty.

**Ioliday:**

**(a) Full-time employees eligibility:** Full-time employees receive their rate of basic pay for 8 hours on the holiday (or an in lieu of holiday) w not required to work. Under a FWS, a full time employee is entitled to holiday premium pay plus their regular rate of basic pay for non-overtime work on a holiday (or a day designated as the ?in lieu of? holiday). Holiday premium pay is limited to a maximum of 8 hours.

**(b) Part-time employees eligibility:** A part-time employee is entitled to a holiday when the holiday falls on a day when he or she would otherwise be required to work or take leave. This does not include overtime work. Part-time employees who are excused from work on a holiday receive their rate of basic pay for the hours they are regularly scheduled to work on that day. Under a FWS, part-time employees are generally excused from duty for the number of hours of their "basic work requirement" (i.e., nonovertime hours) on that day, not to exceed 8 hours.

A work schedule submitted in advance of the administrative workweek is used to determine the part-time employee's pay for the holiday hours. Managers must ensure that there is no abuse of entitlement. For example, an employee should not schedule more hours of work on a holiday tha scheduled in prior weeks on days corresponding to the holiday.

**(c) Rate of pay for basic work requirement on a holiday:** Under a FWS, employees are paid their rate of basic pay while working in their basic work requirement (excluding overtime) on a holiday.

**Example:** An employee on an FWS schedule works 10 hours on a holiday (including 1 hour of overtime ordered by a manager). The employee's regular basic work requirement on that day is 9 hours. The employee earns holiday premium for the 8 holiday hours designated by the agency. The employee earns his or her rate of basic pay for 1 hour (within the basic work requirement) and 1 hour of overtime pay.

**(d) Holiday premium pay for part-time employees:** Under a FWS, a part-time employee is entitled to holiday premium pay only for work performed during his or her basic work requirement on a holiday (not to exceed 8 hours). A part-time employee is not entitled to holiday premiu pay for work performed on a designated ?in lieu of? holiday for full-time employees. Refer to LWS-8.15 AWS for additional guidance.

**(e) When an Executive Order grants a ?half-day? holiday:** Full-time employees working a FWS are entitled to half the hours regularly schedule to work, not to exceed 4 hours.

**bsence from Work During the Basic Work Requirement:**

**(a) Absence during the basic work requirement:** Absence during the basic work requirement must be charged to an appropriate leave category, credit hour, compensatory time off, or excused absence, if warranted.

**(b) Adjustment of Work Schedules to account for absence:** Employees are not required to adjust their work schedules for medical or de appointments or other personal matters. The employee may charge this time to leave. An employee may not use more sick or annual leave on a given day, than he or she scheduled to work on that day.

Federal Aviation Administration

This page can be viewed online at:
https://employees.faa.gov/org/staffoffices/ahr/policy_guidance/hr_policies/hrpm/hroi/lws/flexible/

# \A National PRIB #01 - Personnel Reform Implementation System

ted: 10:37 am ET November 8, 2006

---

## :rsonnel Reform Implementation System

l 1, 1996

**pose:** To establish the Federal Aviation Administration Personnel Reform Implementation Bulletin (PRIB) System and to convey the FAA onnel Management System (FAA PMS).

**icy/Guidance:** Congressional action, through Section 347 of the 1996 DOT Appropriations Act, authorized establishment of this new personnel em and it is implemented under the authority of the Administrator. The FAA Personnel Management System (FAA PMS) replaces most parts of 1 :neral government-wide personnel laws.

B's announce personnel management initiatives, procedures and direction to implement the new FAA PMS. They explain which existing policies :edures change and describe authority which has been delegated to the heads of the LOB's and staff offices.

**current systems and procedures remain in effect until superseded by a PRIB.**

Director of Human Resource Management, AHR-1, has the delegated authority to issue PRIB's. PRIB's will be announced through cc:Mail, ntained on a cc:Mail Bulletin Board, and distributed in paper form using the agency distribution processes. Regional Program Divisions will be onsible for additional disk or hard copy dissemination to facilities without cc:Mail. PRIB's will be incorporated into the automated Federal Aviat onnel Manual (FAPM) as soon as possible.

local Human Resource Management Division is available to provide information and advice concerning the establishment of this bulletin system the implementation of FAA PMS.

**this PRIB in conjunction with:**
. Personnel Management System (FAA PMS)

**plementing authority:**
**Kay Frances Dolan**
**ector of Human Resource Management**

additional information or assistance, contact your servicing Human Resource Management Division.

---

Federal Aviation Administration

# \A Personnel Management System (FAA PMS)

.ted: 10:24 am ET November 8, 2006

---

ch 28, 1996

**troduction**

ection 347 of the 1996 DOT Appropriations Act, Congress directed the Federal Aviation Administration (FAA) to develop and implement a new onnel management system that addresses the unique demands on the agency's workforce. By signing this document, I am implementing a new onnel management system for FAA that will be more efficient; cost less to operate; provide greater flexibility in the hiring, training, compensatio location of FAA personnel; and, above all, be fundamentally fair.

---

**pplicable Statutes**

er Section 347(b), FAA's new personnel management system is exempt from all of Title 5 of the United States Code (U.S.C.) except for the follow

- Section 2302(b), relating to whistleblower protection;
- Sections 3308-3320, relating to veterans' preference;
- Section 7116(b)(7), relating to limitations on the right to strike;
- Section 7204, relating to antidiscrimination;
- Chapter 73, relating to suitability, security, and conduct;
- Chapter 81, relating to compensation for work injury; and
- Chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage.

ion 347(b) does not wholly exempt FAA from all of Title 5. The FAA continues to be subject to the following portions of Title 5:

- 5 U.S.C. Chapter 3 (Powers);
- 5 U.S.C. Chapter 5 (Administrative Procedure);
- 5 U.S.C. Chapter 15 (Political Activity of Certain State and Local Employees); and
- 5 U.S.C. Chapter 91 (Access to Criminal History Records for National Security Purposes).

:hermore, FAA's new personnel management system is covered by the non-personnel management provisions of Title 5 and those portions of Titl specifically apply to the Secretary, including:

- 5 U.S.C. Section 3307 (Maximum Entry Age);
- 5 U.S.C. Section 5501 (Disposition of Lapsed Salaries);
- 5 U.S.C. Section 5502 (Unauthorized Office);
- 5 U.S.C. Section 5503 (Recess Appointments);
- 5 U.S.C. Sections 5511-20 (Withholding Pay);
- 5 U.S.C. Sections 5533-37 (Dual Pay);
- 5 U.S.C. Sections 5561-70 (Payments to Missing Employees); and
- 5 U.S.C. Chapter 79 (Services to Employees).

ough Section 347(b) exempts the new personnel system from substantially all of Title 5, FAA has the discretion to adopt the substance of any ion of Title 5 as deemed appropriate. In some instances, I have decided that FAA employees should be covered by the same provisions that apply ther Federal employees. Therefore, the following sections of Title 5 are incorporated by reference in FAA's new personnel management system:

- 5 U.S.C. Sections 2901-06 (Commissions, Oaths);
- 5 U.S.C. Section 3111 (Acceptance of Volunteer Service);
- 5 U.S.C. Sections 3331-33 (Oath of Office);
- 5 U.S.C. Sections 5351-5356 (Student-Employees); and
- 5 U.S.C. Sections 5511-20 (Withholding Pay).



---