IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-272C<br>Judge Emily C. Hewitt |

**APPENDIX TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**(Pages 19-35)**

Gregory K. McGillivary
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, DC 20005
Phone: (202) 833-8855

Attorney of Record for Plaintiffs

Lauren E. Schwartzreich
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, DC 20005
Phone: (202) 833-8855

Of Counsel

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-272C<br>Judge Emily C. Hewitt |

**DECLARATION OF DONALD A. PETERSON**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the following is true and correct:

1. I am a current employee of the Federal Aviation Administration ("FAA") and have been working for the FAA since 1982.

2. I presently am assigned to the Houston Terminal Radar Approach Control ("TRACon") facility, located in the Southwest region. My job title is Traffic Management Coordinator ("TMC"). I have worked in this position at Houston since November 1, 2004. From January 2003 through October 31, 2004, I worked as an Air Traffic Controller at the D10 TRACon in Ft. Worth, Texas

3. All of the following statements pertain to the period of time from November 1, 2004 through the present, i.e., during my time as a TMC, unless specifically noted otherwise.

4. I am regularly scheduled to work eight hour shifts for five days each week.

5. I regularly work in excess of 40 hours each week. I have not received compensation for all of the hours I have worked in excess of 40 hours each week.

Credit Hours

6. My employer has given me what is commonly referred to as "credit hours" for some of the hours I worked in excess of 40 hours per week. I received credit hours at the straight time rate.

7. My direct supervisor or other supervisory employee approved my accrual of these "credit hours."

8. On or around 2006, FAA unilaterally implemented a 24 hour cap on accrual of credit hours.

9. Prior to 2006, my employer permitted me to accrue more than 24 hours of "credit hours." At the time of FAA's unilateral implementation of its 2006 personnel policies, I had a balance of approximately 180 accrued credit hours. However, it was my understanding that FAA intended to expire all of my accrued credit hours that were in excess of 24 credit hours. Therefore, I have started to use my credit hours and have to date used approximately 50 credit hours.

10. Since 2006, I have been credited with compensatory time for some of the overtime hours I worked in excess of 40 hours in a given workweek. I received this compensatory time at the straight time rate.

Bidding Time

11. My employer has enforced a bidding system whereby I bid for work schedules and vacation dates.

12. My supervisor approved the dates and times during which I and the other TMCs at Houston bid for our work schedule and vacation dates. I was directly notified by my supervisor that FAA had approved the TMCs' bidding schedule.

13. I have engaged in bidding outside my scheduled hours of work. I have not been compensated for bidding performed outside my scheduled hours of work. I was unable to use a proxy for my bidding.

14. During 2005, I spent approximately 40-50 hours engaged in the bidding process,[1] 2 hours of which were spent bidding for my own schedule, while outside my scheduled hours of work. I was not compensated for this time.

15. During 2006, I spent approximately 50 hours engaged in the bidding process, 2 hours of which were spent bidding for my own schedule, while outside my scheduled hours of work. I was not compensated for this time.

16. During 2007, I spent approximately 40 hours engaged in the bidding process, 2 hours of which were spent bidding for my own schedule, while outside my scheduled hours of work. I was not compensated for this time.

17. It is my understanding that other employees engage in similar bidding outside scheduled hours of work. I have observed other employees bidding outside what I know to be their scheduled hours of work.

<u>Other Activities Performed Off The Clock</u>

18. My workplace uses the Cru-X/ART timekeeping system ("Cru-X"). My employer introduced the Cru-X system on or around approximately May 2005. Prior to

[1] FAA delegated the bidding process for all TMCs at Houston to me. Thus, I had to work with other TMCs on their off-duty-time and my off-duty-time to assist them in bidding.

Cru-X, my employer maintained hand-written records of my scheduled and credited hours of work.

19. My employer requires me to perform work-related activities prior to the scheduled start time of my shift each day. I perform the following activities prior to the scheduled start time of my shift: review the FAA mandatory review binder and other briefing items and exchange air-traffic control information with the TMC whom I am relieving. A supervisor is often present in the room when I perform these activities. I am not compensated for my performance of these activities.

20. I perform the aforementioned duties prior to the scheduled start time of my shift. I regularly spend over 10 minutes performing these duties.

21. I am only paid for duties performed after the scheduled start of my shift.

22. I log into the Cru-X system prior to my scheduled shift start time, however, I manually change the start time to indicate the start time of the shift even though I begin working prior to that time. It is my understanding that my employer expects me to manually change the time on the Cru-X system to reflect the start time of my shift because my employer expects me to perform my pre-shift duties without compensation. Therefore, the start time indicated on the Cru-X system merely reveals the start time of my shift and not the actual time I commenced work.

23. The time recorded on the Cru-X system can be altered in increments of less than 15 minutes.

24. I do not change my scheduled shift start and end times on the Cru-X system to reflect my commencement of the above activities. It is my understanding that

my employer expects me to perform these activities off-the-clock and without compensation.

25. I only refrain from changing the time indicated on the Cru-X system when my supervisor explicitly told me to perform duties other than those listed above prior to the scheduled start time of my shift or subsequent to the scheduled end time of my shift. These alterations would be reflected in my Cru-X time as, Time Outside Shift ("TOS"). TOS does not reflect any of the job duties I perform prior to the scheduled start time of my shift.

26. Prior to the implementation of the Cru-X system, my supervisor approved and credited me with certain overtime hours of work. My supervisor did not credit as work time the pre-shift activities described above.

27. Prior to the implementation of the Cru-X system, I performed the above pre-shift activities. Even under the system whereby my supervisor approved and credited me with certain overtime hours of work, I was not compensated for having performed any of my pre-shift activities. It was my understanding that my employer expected me to perform these activities off-the-clock and without compensation.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the aforementioned is true and correct:

DATE: 12-13-2007

Donald A. Peterson

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-272C |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF MICHAEL F. ROBICHEAU**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the following is true and correct:

1. I am a current employee of the Federal Aviation Administration ("FAA") and have been working for the FAA since approximately 1991.

2. I presently work at the Boston Air Route Traffic Control Center located in the New England region. My job title is Air Traffic Control Specialist. I have worked in this position at the Boston Air Route Traffic Control Center since 1991.

3. Since approximately September 2006, I have served as the Regional Vice President of the New England region for the National Air Traffic Controllers Association ("NATCA"). In this position, I am aware of many of the disciplinary charges filed against union members within my region.

4. Prior to 2006, and throughout a period of two years, I studied the Cru-X/ART ("Cru-X") system and its effects on employees' terms and conditions of

employment. While I did not approve of the Cru-X system, I did have an opportunity to learn about the capabilities of the Cru-X system and it's design.

5. I received informal Cru-X system training by FAA's own personnel and engaged in discussions with FAA's personnel regarding the effects of the Cru-X system.

6. The current release of Cru-X that has been implemented by FAA is the same release about which I received training.

7. The Cru-X/ART system is a time-keeping software that plaintiffs log-in and out of each workday. Plaintiffs sign-in and out of Cru-X/ART on a computer located at their workplace.

8. The Cru-X software cannot be used to prevent non-exempt employees from working before or after their scheduled shift without compensation.

9. When an employee signs in on the Cru-X/ART software at the beginning of her shift, the first screen to appear shows her actual sign in time. For example, if an employee signs in at 6:16 a.m. for a 6:30 a.m. shift, the screen will show "6:16" as the time of sign-in. However, the software does not automatically use her actual time as the "start time" of her work hours. Instead, the software prompts her to manually enter a "start time." If the actual time of her sign-in precedes her scheduled shift-start time, she may enter her shift-start time as the "start time" in Cru-X/ART. The program does not prevent her from inputting a future time, as opposed to the actual time, as the "start time."

10. If an employee signs-in on Cru-X/ART at a time greater than 15 minutes prior to the scheduled start of her shift, the software will only allow her to change her shift time to start at the actual time, indicate that the more than 15 minutes

before her shift is Time Outside Shift. If the employee refrains from selecting either of the aforementioned two options, the software will not allow her to log in at all.

11. FAA facility computers using Cru-X software are connected through a Local Area Network ("LAN") connection. This means that when an employee signs into Cru-X, the supervisor's computer – which also uses Cru-X software – shows that the employee has signed into the system.

12. From the supervisor's computer screen, the supervisor can see when an employee signs into Cru-X on a 'real time' basis. For example, if an Air Traffic Controller ("ATC") signs into Cru-X at 6:14 a.m., the supervisor will see that ATC's name appear on the Cru-X computer screen at 6:14 a.m.. Moreover, if an ATC signs into Cru-X at 6:14 a.m. and manually changes her log-in time to reflect 6:30 a.m., her shift start time, the supervisor will see that ATC's name appear on the Cru-X computer screen at 6:14 a.m. and will also see that she is not being credited with having worked between the hours of 6:14 a.m. and 6:30 a.m..

13. The design of Cru-X does not preclude an operational employee from performing work before or after her scheduled shift without compensation. For example, an ATC who is scheduled to work a 7:00 a.m. shift may commence radar scope prior to 6:45 a.m. by signing into the Cru-X system at 6:45 a.m., manually changing the official log-in time on Cru-X to reflect 7:00 a.m. – even though the actual time is 6:45 a.m. – then collect her headset, plug the headset into the radar scope and commence radar scope duties, all before 7:00 a.m.. The Cru-X/ART software does not require her to indicate Time Outside Shift ("TOS") for the fifteen minutes of job duties she performs prior to the scheduled start time of her shift. In this example, even though

the employee signs into the Cru-X system and commences radar control duties at 6:45 a.m., she will only be paid for duties performed after 7:00 a.m., the log-in time reflected on the Cru-X system.

14. When an employee signs into the Cru-X system prior to her scheduled shift start time, the Cru-X system records her actual sign in time. Specifically, the Cru-X system records the date and time of each individual's key stroke within the Cru-X software.[1] For example, when an employee signs into the Cru-X system at 6:16 a.m., even though her shift start time is 6:30 a.m., her key stroke entries will indicate that she signed into the system at 6:16 a.m.. Similarly, even if this employee manually changes her log-in time at 6:16 a.m. to reflect 6:30 a.m., her key strokes will reflect that she actually performed this manual change at 6:16 a.m..

15. The Cru-X system is configured to credit employees only for hours of work performed after the log-in time and before the log-out time indicated on Cru-X. Even though the Cru-X system records, via key strokes, the actual time employees sign into and out of the Cru-X system, the Cru-X system is not configured to credit employees with work performed between their first key stroke into and their last key stroke out of the Cru-X system.

16. Employees are not given access to Cru-X records of key stroke times.

17. FAA has used employees' Cru-X key stroke times to support disciplinary charges or investigations of bargaining unit employees who have been accused of wrong-doing.

---

[1] A "key stroke" is a common term used to describe any instance in which a key on a computer keyboard is struck as well as any instance in which a new screen appears or a program is entered as a result of the computer-user's actions.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the aforementioned is true and correct:

DATE: Dec 14 2007

Michael F. Robicheau

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-272C<br>Judge Emily C. Hewitt |

**DECLARATION OF FRANK J. SAVASTA**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the following is true and correct:

1. I am a current employee of the Federal Aviation Administration ("FAA") and have been working for the FAA for approximately 21 years.

2. I presently work at the Morristown traffic control tower located in the Eastern region. My job title is Air Traffic Controller. I have worked in this position at Morristown airport for approximately 21 years.

3. All of the following statements pertain to the period of time from May 1, 2004 through the present, unless specifically noted otherwise.

4. I am regularly scheduled to work 10 hour shifts for four days each week.

5. I regularly work in excess of 40 hours each week. I have not received compensation for all of the hours I have worked in excess of 40 hours each week.

Activities Performed Off The Clock

6. My workplace uses the Cru-X/ART timekeeping system ("Cru-X"). My employer introduced the Cru-X system on or around approximately 2005. Prior to Cru-X, my employer maintained hand-written records of my scheduled and credited hours of work.

7. I perform the following activities prior to the scheduled start time of my shift: replace the tape recorder; review any FAA-issued memoranda; turn on all machines, radars and computers (including Cru-X). I spend over 10 minutes performing these duties. .

8. I perform these activities prior to engaging or logging into the Cru-X system and/or after logging into the Cru-X system but prior to the shift start time.

9. I log into the Cru-X system prior to my scheduled shift start time, however, I alter the start time to indicate the start time of the shift even though I begin working prior to that time. It is my understanding that my employer expects me to alter the time on the Cru-X system because I am expected to perform my pre-shift duties without compensation. Therefore, the start time indicated on the Cru-X system merely reveals the start time of my shift and not the actual time I commenced work.

10. The time recorded on the Cru-X system can be altered in increments of less than 15 minutes.

11. I only alter the time indicated on the Cru-X system to reflect Time Outside Shift when my supervisor explicitly told me to perform duties, other than those listed above, prior to the scheduled start time of my shift or subsequent to the scheduled end time of my shift. These alterations would be reflected in my Cru-X time as, Time

Outside Shift ("TOS"). TOS does not reflect any other duties I perform prior to the scheduled start time of my shift.

12. After the scheduled end of my shift, I am required to perform the following activities: the traffic count; close out the log; turn off the tape recorder; turn off the machines, radars, computers and lights. I spend over 10 minutes performing these duties. I am not compensated for these post-shift activities.

13. I perform these post-shift activities without altering the time indicated on the Cru-X system. It is my understanding that my employer expects me to perform these post-shift activities off-the-clock.

14. I perform these post-shift activities after signing out of Cru-X.

15. Attached to this declaration is a copy of a portion of FAA's Standard Operating Procedures that lists many of my required pre-shift and post-shift activities.

16. Prior to the implementation of the Cru-X system, I documented my scheduled and credited hours of work on a general sign in sheet. It is my understanding that I was required to record my shift start time rather than my actual hours of work, because I was expected to perform the pre- and post-shift activities before and after my shift without compensation.

17. Prior to the implementation of the Cru-X system I performed the aforementioned pre-shift and post-shift activities.

18. Prior to the implementation of the Cru-X system, I performed the above pre-shift and post-shift activities. Even under the system whereby my scheduled and credited hours of work were documented by hand, I was not compensated for having performed any of my pre-shift or post-shift activities. It was my understanding that my

employer expected me to perform these activities off-the-clock and without compensation.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the aforementioned is true and correct:

DATE: 12/13/07

Frank J. Savasta

9. Make an entry closing out FAA Form 7230-4 at the close of business.

10. The ATM, or his/her designee, shall initial the form after reviewing the entries to ensure that the facility operation is adequately and accurately described.

508. OPENING PROCEDURES

a. Change Tapes in accordance with directions in MMUO 7230.3 Paragraph 310.
b. Check NOTAM's with Applicable AFSS. On the desktop computer in the Tower there is a link for checking FDC NOTAM's. Click on link and then click on "Radius Search" when the web page pops up. Type "MMU", then click "SUBMIT". All pertinent FDC NOTAM's will be displayed. Check when feasible.
c. OS/CIC enter the traffic count via Web-based OPSNET.
d. Log into CRU/ART as CIC, **DO NOT RESTRICT ACCESS** (See Para. 322)
e. Go through watch checklist (See Appendix 8).
f. Advise New York TRACON that 121.2 be switched back to our control.
g. **Broadcast on ALL Frequencies "Time 0645Local Time, Morristown Tower Resuming Class Delta Services"**

509. CLOSING PROCEDURES. The OS/CIC shall ensure the following is accomplished prior to leaving the facility:

a. Ensure logs are closed out/signed and strips collated. Log out of CRU/ART. (See Para. 322)
b. Set lights to "Remote Control"
c. Set MALSR to "air-to-ground"
d. **Broadcast on ALL Frequencies "Time 2230 Local Time, Morristown Tower terminating Class Delta Services, Class Echo in effect".**
e. Record Closing ATIS and ensure it is broadcasting.
f. Advise New York TRACON and remind New York TRACON that 121.2 is their control.
g. Ensure the appearance of the operational quarters reflect the high standards of the agency
h. Set thermostat to 72°
i. Secure windows and doors
j. Stop recording on the DVR.
k. Turn off stairwell lights.

510-599. RESERVED.