IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-272C |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**APPENDIX TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**(Pages 36-54)**

Gregory K. McGillivary
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, DC 20005
Phone: (202) 833-8855

Attorney of Record for Plaintiffs

Lauren E. Schwartzreich
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, DC 20005
Phone: (202) 833-8855

Of Counsel

**Federal Aviation Administration**

# Memorandum

Date: January 17, 2007

To: All Personnel

From: Air Traffic Manager

Subject: Vacation Leave

Attached are the schedules for the next two rounds of vacation leave selections. Any employee who does not make a selection for round number six (6) by 2100 Local on January 24, 2007 will not be eligible to participate in any further leave selection rounds.

Michael Wagner
Air Traffic Manager

## 2007 Schedule and First Round Leave Picks

| | | | | | |
|---|---|---|---|---|---|
| **22-Jan** | | **23-Jan** | | **24-Jan** | |
| 1 GT | 0700-0730 | 33 LH | 0900-0930 | 66 KM | 1130-1200 |
| 2 KZ | 0730-0800 | 34 RM | 0930-1000 | 67 BE | 1200-1230 |
| 3 CM | 0800-0830 | 35 CD | 1000-1030 | 68 DG | 1230-1300 |
| 4 DL | 0830-0900 | 36 MK | 1030-1100 | 69 HO | 1300-1330 |
| 5 WW | 0900-0930 | 37 RH | 1100-1130 | 70 VC | 1330-1400 |
| 6 JK | 0930-1000 | 38 CF | 1130-1200 | 71 PR | 1400-1430 |
| 7 OY | 1000-1030 | 39 PW | 1200-1230 | 72 MO | 1430-1500 |
| 8 SY | 1030-1100 | 40 ZM | 1230-1300 | 73 DI | 1500-1530 |
| 9 ST | 1100-1130 | 41 RV | 1300-1330 | 74 IZ | 1530-1600 |
| 10 DK | 1130-1200 | 42 AH | 1330-1400 | 75 ZZ | 1600-1630 |
| 11 HN | 1200-1230 | 43 AM | 1400-1430 | 76 AW | 1630-1700 |
| 12 WH | 1230-1300 | 44 VB | 1430-1500 | 77 SW | 1700-1730 |
| 13 JB | 1300-1330 | 45 DJ | 1500-1530 | | |
| 14 JL | 1330-1400 | 46 BB | 1530-1600 | | |
| 15 YU | 1400-1430 | 47 WS | 1600-1630 | | |
| 16 NJ | 1430-1500 | 48 HS | 1630-1700 | | |
| 17 MD | 1500-1530 | 49 ER | 1700-1730 | | |
| 18 RR | 1530-1600 | 50 ST | 1730-1800 | | |
| 19 JC | 1600-1630 | 51 KL | 1800-1830 | | |
| 20 BK | 1630-1700 | 52 ES | 1830-1900 | | |
| 21 GR | 1700-1730 | 53 PU | 1900-1930 | | |
| 22 BP | 1730-1800 | 54 JP | 1930-2000 | | |
| 23 TB | 1800-1830 | 55 TM | 2000-2030 | | |
| 24 CE | 1830-1900 | 56 JJ | 2030-2100 | | |
| 25 AA | 1900-1930 | | | | |
| 26 BC | 1930-2000 | **24-Jan** | | | |
| 27 BS | 2000-2030 | 57 JW | 0700-0730 | | |
| 28 FJ | 2030-2100 | 58 DB | 0730-0800 | | |
| | | 59 PB | 0800-0830 | | |
| **23-Jan** | | 60 TA | 0830-0900 | | |
| 29 VG | 0700-0730 | 61 BD | 0900-0930 | | |
| 30 LL | 0730-0800 | 62 JQ | 0930-1000 | | |
| 31 CW | 0800-0830 | 63 CB | 1000-1030 | | |
| 32 ME | 0830-0900 | 64 JA | 1030-1100 | | |
| | | 65 CN | 1100-1130 | | |

MISSING SOME INITIALS

ROUND #6

PLF APP000000037

**25-Jan**

| | | |
|---|---|---|
| 1 | GT | 0700-0730 |
| 2 | KZ | 0730-0800 |
| 3 | CM | 0800-0830 |
| 4 | DL | 0830-0900 |
| 5 | WW | 0900-0930 |
| 6 | JK | 0930-1000 |
| 7 | DY | 1000-1030 |
| 8 | SY | 1030-1100 |
| 9 | BT | 1100-1130 |
| 10 | DK | 1130-1200 |
| 11 | HN | 1200-1230 |
| 12 | WH | 1230-1300 |
| 13 | JB | 1300-1330 |
| 14 | JL | 1330-1400 |
| 15 | YU | 1400-1430 |
| 16 | NJ | 1430-1500 |
| 17 | MD | 1500-1530 |
| 18 | RR | 1530-1600 |
| 19 | JC | 1600-1630 |
| 20 | BK | 1630-1700 |
| 21 | GR | 1700-1730 |
| 22 | BP | 1730-1800 |
| 23 | TB | 1800-1830 |
| 24 | CE | 1830-1900 |
| 25 | AA | 1900-1930 |
| 26 | BC | 1930-2000 |
| 27 | BS | 2000-2030 |
| 28 | FJ | 2030-2100 |

**26-Jan**

| | | |
|---|---|---|
| 29 | VG | 0700-0730 |
| 30 | LL | 0730-0800 |
| 31 | CW | 0800-0830 |
| 32 | ME | 0830-0900 |
| 33 | LH | 0900-0930 |
| 34 | RM | 0930-1000 |
| 35 | CD | 1000-1030 |
| 36 | MK | 1030-1100 |
| 37 | RH | 1100-1130 |
| 38 | CF | 1130-1200 |
| 39 | PW | 1200-1230 |
| 40 | ZM | 1230-1300 |
| 41 | RV | 1300-1330 |
| 42 | AH | 1330-1400 |
| 43 | AM | 1400-1430 |
| 44 | VB | 1430-1500 |
| 45 | DJ | 1500-1530 |
| 46 | BB | 1530-1600 |
| 47 | WS | 1600-1630 |
| 48 | HS | 1630-1700 |
| 49 | ER | 1700-1730 |
| 50 | ST | 1730-1800 |
| 51 | KL | 1800-1830 |
| 52 | ES | 1830-1900 |
| 53 | PU | 1900-1930 |
| 54 | JP | 1930-2000 |
| 55 | TM | 2000-2030 |
| 56 | JJ | 2030-2100 |

**27-Jan**

| | | |
|---|---|---|
| 57 | JW | 0700-0730 |
| 58 | DB | 0730-0800 |
| 59 | PB | 0800-0830 |
| 60 | TA | 0830-0900 |
| 61 | BD | 0900-0930 |
| 62 | JQ | 0930-1000 |
| 63 | CB | 1000-1030 |
| 64 | JA | 1030-1100 |
| 65 | CN | 1100-1130 |

**27-Jan**

| | | |
|---|---|---|
| 66 | KM | 1130-1200 |
| 67 | BE | 1200-1230 |
| 68 | DG | 1230-1300 |
| 69 | HO | 1300-1330 |
| 70 | VC | 1330-1400 |
| 71 | PR | 1400-1430 |
| 72 | MO | 1430-1500 |
| 73 | DI | 1500-1530 |
| 74 | IZ | 1530-1600 |
| 75 | ZZ | 1600-1630 |
| 76 | AW | 1630-1700 |
| 77 | SW | 1700-1730 |

Round #7

# CHAPTER 1. GENERAL

**1-1. PURPOSE.** This order establishes standard operating procedures for the use in providing a safe, orderly and expeditious flow of air traffic in and around the Roanoke Approach Control terminal airspace.

**1-2. DISTRIBUTION.** All Roanoke Tower personnel and Manager, Washington Hub.

**1-3. CANCELLATION.** Roanoke Order 7220.1, Standard Operating Procedures, dated September 26, 2005.

**1-4. PRE-DUTY FAMILIARIZATION.** All Roanoke Tower personnel shall, prior to assuming operational duties, review the Hot Board and Read and Initial (R&I), current weather, runway configuration, equipment condition/configuration and NOTAM information.

**1-5. TEAMS.** The Roanoke operational area consists of two teams; the Tower team and the Radar team. The First Line Manager (FLM) and/or Watch Controller-in-Charge (WCIC) are responsible for the efficient management of the operation and personnel.

**1-6. HEADSET OPERATION.** All personnel working a radio/telephone position shall be in a headset operation between the hours 0700L and 2100L, unless otherwise authorized by the FLM/CIC.

**1-7. COORDINATION RECORDING.** Controllers shall use override keys for coordination and/or control messages.

**1-8. PRIMARY WIND SOURCE.** The centerfield row of the LLWAS is designated as the primary wind source. The ASOS magnetic wind may be used when the LLWAS is not available.

**1-9. STATUS INFORMATION AREAS (SIA).**

a. Areas designated as official SIAs:

(1) ARTS system area, which shall contain, at a minimum, ATIS code.

(2) Position strip board.

(3) IDS4.

b. Facility authorized sources of information to be used during the transfer of position responsibility are IDS4, weather displays, position strip board, airport lighting panel in tower cab and overhead map panel at the radar positions.



Plans &Programs
NAS
**Bulletin**

Number 07-23
October 5, 2007

# CRU-ART RESPONSIBILITIES

FAA Order 7210.3, paragraph 2-2-6 outlines the requirements for using the CRU-ART system. Since the system is the official system for time and attendance as well as time on position, it is important that the procedures contained in the order be followed properly. Control room personnel need to be aware of the following responsibilities:

- Personnel acting in a supervisory capacity (FM, OM, STMC, etc.) are responsible for the accuracy of CRU-ART data for their shifts. This responsibility begins once the supervisor has signed on to the position.
- For time and attendance purposes, personnel must sign on at their scheduled shift time, or up to 15 minutes before their regular shift time. Personnel may sign out anytime between 15 minutes before, up to 15 minutes after, their shift ends.
- CRU-ART is the official method of recording time on position. The controller that was relieved is responsible for entering the transfer of control time into CRU-ART.
- In cases where there is no relieved controller (i.e. sector being opened), the controller assuming the new position is responsible for entering time on position data in CRU-ART.
- In case of a CRU-ART failure, FAA form 7230-10 may be used to track time on position. Data gathered via the form shall be entered into CRU-ART as soon as the system is restored.

Ralph Schwarz
Support Manager, ZBW-510

MYFAA
Employee Site

# FAA Personnel Management System (FAA PMS)

Updated: 10:24 am ET November 8, 2006

March 28, 1996

## I. Introduction

In Section 347 of the 1996 DOT Appropriations Act, Congress directed the Federal Aviation Administration (FAA) to develop and implement a new personnel management system that addresses the unique demands on the agency's workforce. By signing this document, I am implementing a new personnel management system for FAA that will be more efficient; cost less to operate; provide greater flexibility in the hiring, training, compensation, and location of FAA personnel; and, above all, be fundamentally fair.

## II. Applicable Statutes

Under Section 347(b), FAA's new personnel management system is exempt from all of Title 5 of the United States Code (U.S.C.) except for the following:

- Section 2302(b), relating to whistleblower protection;
- Sections 3308-3320, relating to veterans' preference;
- Section 7116(b)(7), relating to limitations on the right to strike;
- Section 7204, relating to antidiscrimination;
- Chapter 73, relating to suitability, security, and conduct;
- Chapter 81, relating to compensation for work injury; and
- Chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage.

Section 347(b) does not wholly exempt FAA from all of Title 5. The FAA continues to be subject to the following portions of Title 5:

- 5 U.S.C. Chapter 3 (Powers);
- 5 U.S.C. Chapter 5 (Administrative Procedure);
- 5 U.S.C. Chapter 15 (Political Activity of Certain State and Local Employees); and
- 5 U.S.C. Chapter 91 (Access to Criminal History Records for National Security Purposes).

Furthermore, FAA's new personnel management system is covered by the non-personnel management provisions of Title 5 and those portions of Title 5 that specifically apply to the Secretary, including:

- 5 U.S.C. Section 3307 (Maximum Entry Age);
- 5 U.S.C. Section 5501 (Disposition of Lapsed Salaries);
- 5 U.S.C. Section 5502 (Unauthorized Office);
- 5 U.S.C. Section 5503 (Recess Appointments);
- 5 U.S.C. Sections 5511-20 (Withholding Pay);
- 5 U.S.C. Sections 5533-37 (Dual Pay);
- 5 U.S.C. Sections 5561-70 (Payments to Missing Employees); and
- 5 U.S.C. Chapter 79 (Services to Employees).

Although Section 347(b) exempts the new personnel system from substantially all of Title 5, FAA has the discretion to adopt the substance of any portion of Title 5 as deemed appropriate. In some instances, I have decided that FAA employees should be covered by the same provisions that apply to all other Federal employees. Therefore, the following sections of Title 5 are incorporated by reference in FAA's new personnel management system:

- 5 U.S.C. Sections 2901-06 (Commissions, Oaths);
- 5 U.S.C. Section 3111 (Acceptance of Volunteer Service);
- 5 U.S.C. Sections 3331-33 (Oath of Office);
- 5 U.S.C. Sections 5351-5356 (Student-Employees); and
- 5 U.S.C. Sections 5511-20 (Withholding Pay).

---

### III. Labor Management Relations

Congress did not include Chapter 71 of Title 5, "Labor Management Relations," in the list of sections that will continue to apply to FAA's new personnel management system. The FAA has elected to continue the rights and benefits of union representation to our employees by providing for recognition of exclusive representatives, collective bargaining, and union representation in accordance with the provisions of Chapter 71. Accordingly, present and future changes and ongoing matters related to FAA's personnel management system under this directive shall not be implemented for bargaining unit members until after the completion of substantive and/or impact and implementation bargaining to the same extent as would be required by Chapter 71.

---

### IV. Modification of this System

FAA reserves the right to modify, add to, or delete any portion of this personnel management system, either in whole or in part, as deemed appropriate by the Administrator.

---

### V. Administrative Authority

The Associate Administrator for Administration is responsible for setting the broad agency human resources policies and operating principles. These policies and principles provide the agency framework for the lines of business and staff organizations to establish the human resources programs necessary to accomplish their organizations' missions. The Director of Human Resources Management, under the executive direction of the Associate Administrator for Administration, is authorized to issue these policies and other guidance following appropriate coordination.

---

### VI. Pilot Programs

With the advance approval of the Associate Administrator for Administration, the head of a line of business or staff organization is authorized to implement a pilot program that deviates from the provisions of this directive. A pilot program must:

- (a) last for a set period of time, but no more than 3 years;
- (b) include specific objectives and criteria by which success will be measured; and
- (c) otherwise be consistent with applicable law.

---

### VII. Merit Principles

The FAA personnel management system shall be implemented consistent with the following merit system principles:

- **(a)** Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a workforce from all segments of society; selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition, which assures that all receive equal opportunity.
- **(b)** All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, sexual orientation, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.
- **(c)** Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector; appropriate incentives and recognition should be provided for excellence in performance.
- **(d)** All employees should maintain high standards of integrity, conduct, and concern for the public interest.
- **(e)** The Federal workforce should be used efficiently and effectively.
- **(f)** Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.
- **(g)** Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.
- **(h)** Employees should be:
  - **(i)** protected against arbitrary action, personal favoritism, or coercion for partisan political purposes; and
  - **(ii)** prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for election.
- **(i)** Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences:
  - **(i)** a violation of any law, rule, or regulation; or
  - **(ii)** mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

---

### VIII. Prohibited Personnel Practices

- **(a)** Any FAA employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority:
  - **(i)** discriminate for or against any employee or applicant for employment, on the basis of:
    - race, color, religion. sex, or national origin, as prohibited under Section 717 of the Civil Rights Acts of 1964 (42 U.S.C. 2000e-16);
    - age, as prohibited under Sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);
    - sex, as prohibited under Section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206 (d));
    - handicapping condition, as prohibited under Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or
    - marital status, sexual orientation, or political affiliation, as prohibited under any law, rule, or regulation;
  - **(ii)** coerce the political activity of any person (including the providing of any political contribution or service) or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;
  - **(iii)** deceive or willfully obstruct any person to withdraw with respect to such person's right to compete for employment;
  - **(iv)** influence any person to withdrawal from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;

- **(v)** grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;
- **(vi)** take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of:
  - any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences: a violation of any law, rule or regulation; gross mismanagement, a gross waste of funds, an abuse of authority; or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law, and if such information is not specifically required by Executive Order to be kept secret in the interest of national defense or the conduct of foreign affairs; or
  - any disclosure to the Special Counsel or to the Inspector General of an agency, or another employee designated by the head of the agency to receive such disclosures of information which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;
- **(vii)** to take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of:
  - the exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation;
  - testifying for or otherwise lawfully assisting of any individual in the exercise of any right referred to in subparagraph VIII (a);
  - cooperating with or disclosing information to the Inspector General of any agency, or the Special Counsel, in accordance with applicable provision of the law; or
  - for refusing to obey an order that would require the individual to violate a law;
- **(viii)** discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account, in determining suitability or fitness, any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or the United States; or
- **(ix)** take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation, implementing or directly concerning, the merit system principles contained in this paragraph.

- **(b)** Paragraph VIII (a) shall not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress.
  - **(i)** The head of each line of business or staff organization shall be responsible for the prevention of prohibited personnel practices, for the compliance with and enforcement of applicable civil service laws, rules, and regulations, and other aspects of personnel management. Any individual to whom the head of a line of business or staff organization delegates authority for personnel management, or for any aspect thereof, shall be similarly responsible within the limits of the delegation.
  - **(ii)** This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to employee or applicant for employment in the civil service under:
    - Section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;
    - Sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), prohibiting discrimination on the basis of age;
    - Section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206 (d)), prohibiting discrimination on the basis of sex;
    - Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), prohibiting discrimination on the basis of handicapping condition; or

- the provision of any law, rule, or regulation prohibiting discrimination on the basis of marital status, sexual orientation, or political affiliation.

David R. Hinson

---

## Table of Contents


Chapter I: Staffing
1. General Authority to Employ
2. Employment of Relatives
3. Types of Employees
4. Employment Status
5. Notification of Employment Status
6. Probationary Period
7. Selection of Employees
8. Permanent Internal Assignments
9. Temporary Internal Assignments
10. Promotion Qualifications
11. Return Rights
12. Air Traffic Controller
13. Equal Employment Opportunity Complaints
14. Downsizing
15. Flexible and Compressed Work Schedules

Chapter II: Compensation
1. Base Pay, Personnel Compensation, and Benefits
2. Classification of Positions
3. Waiver of Restriction on Re-employed Retirement Offset
4. Biweekly Pay Periods
5. Premium Pay
6. Permanent Change of Station Benefits
7. Federal Employees Pay Comparability Act
8. Highest Rate Previously Paid
9. Back Pay
10. Attendance at Meetings

Chapter III: Performance Management
1. Performance Evaluations
2. Awards
3. Discipline and Removals
4. FAA Grievance Procedure
5. FAA Appeals Procedure-Guaranteed Fair Treatment
6. FAA National Employee's Forum

Chapter IV: Training
1. Authorization to Expend Funds
2. Training Agreements
3. Continued Service Agreements
4. Fee for Service Plan

Chapter V: Labor Relations

1. Employees Rights
2. Management Rights
3. FAA National Labor-Management Partnership Council

Chapter VI: Executive Systems

1. Reassignments
2. Executive System Performance Incentive Plan
3. Adverse and Disciplinary Actions

---

## Chapter I: Staffing

1. General Authority to Employ
2. Employment of Relatives
3. Types of Employees
4. Employment Status
5. Notification of Employment Status
6. Probationary Period
7. Selection of Employees
8. Permanent Internal Assignments
9. Temporary Internal Assignments
10. Promotion Qualifications
11. Return Rights
12. Air Traffic Controller
13. Equal Employment Opportunity Complaints
14. Downsizing
15. Flexible and Compressed Work Schedules

### 1. General Authority to Employ

1. The FAA may employ such number of employees as permitted under the appropriations provided by Congress from year to year. The number of employees employed in FAA shall be determined solely by reference to the amount of funds available for the payment of personnel, compensation, and benefits. Each head of a line of business or staff organization is authorized to determine the number of employees for their organization based on the amount of funds allocated to the line of business or staff organization by the Administrator, except to the extent as the Administrator may otherwise direct.

### 2. Employment of Relatives

1. No FAA official may, with respect to any position in the FAA, appoint, employ, promote, advance, or advocate for appointment, employment, promotion or advancement, any relative. An individual may not be appointed, employed, promoted, or advanced in or to a civilian position in FAA if such appointment, employment, promotion, or advancement has been advocated by an FAA official who is a relative of the individual.
2. For purposes of this provision, "official" means any FAA employee who has the authority to appoint, employ, promote, or advance an individual, or to recommend an individual for appointment, employment, promotion, or advancement in connection with employment in FAA.
3. For purposes of this provision, "relative" means an individual who is related to an FAA official as father, mother, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, husband, wife, father-in-law, mother-in-law, son-in-law, daughter-in law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, or half sister.

### 3. Types of Employees

1. Except as restricted by this directive, each line of business and staff organization is authorized to hire any type or category of employee it deems necessary for the performance of duties related to their respective responsibilities.

### 4. Employment Status

- **(a)** Effective April 1, 1996, FAA shall use temporary and permanent appointments and utilize the following categories of employees:
  - Political Appointees;
  - Executive System Employees; (See PRIB 13 - "FAA Executive System")
  - Permanent Employees; (See PRIB 18 - "External Hiring Options" and PRIB 22 - "Permanent Internal Assignment")
  - Temporary Employees; and (See PRIB 18 - "External Hiring Options", and PRIB 23 -"Temporary Internal Assignment")
  - Support Service Employees.
- **(b)** All persons in FAA occupying political appointee positions, as defined on March 31, 1996, shall continue to be political appointees after April 1, 1996. The pay, benefits, and employment rights of political appointees in FAA shall continue to be determined in accordance with the standards and procedures in effect for political appointees of the Federal Government.
- **(c)** The Executive System shall be composed of:

  - **Officers**: The Chief of Staff and all nonpolitical Associate Administrators and Assistant Administrators.
  - **Executives:** All nonpolitical positions that were designated as Senior Executive Service positions on March 31, 1996, that are not Officers. These positions may be filled on a term basis.
  - **Senior Professionals:** All positions that were designated as ST or SL on March 31, 1996. These positions may be filled on a temporary basis.

- **(d)** All nonpolitical positions that were in the competitive and excepted service on March 31, 1996, and that were not subject to a time-limited appointment, are converted to the status of permanent positions. Any employee encumbering such a position on or after April 1, 1996, except those employees serving under a time-limited appointment, and any employee hired into such positions on or after April 1, 1996, shall be a permanent employee for purposes of this directive.
- **(e)** All employees who were serving under a time-limited appointment on March 31, 1996, or who are hired for other than a permanent position after April 1, 1996, shall be temporary employees for purposes of this directive.
- **(f)** All employees providing support services to FAA pursuant to a contract shall be considered support service employees for purposes of this directive. Support service employees are not employees of FAA.

### 5. Notification of Employment Status

- **(a)** All employees of FAA shall be provided with written notification of their status under this directive by the Director of Human Resource Management no later than October 1, 1996.

### 6. Probationary Period

- **(a)** There shall be a probationary period of one year for new FAA employees and for FAA employees entering into a supervisory or managerial position for the first time. (See PRIB 20 - "Probationary Period")

### 7. Selection of Employees

- **(a)** Executive System
  - **(i)** Effective April 1, 1996, no vacant Officer position in the FAA shall be filled by any means other than selection and approval by the Administrator. The Administrator may, at his/her sole discretion, first solicit and consider

applications for an Officer position from current Executive and/or permanent employees of FAA before advertising the position to non-FAA candidates.

- **(ii)** Effective April 1, 1996, no vacant Executive or Senior Professional position in FAA shall be filled by any means other than selection by the head of the line of business or staff organization in which the position is located, and approval by the Administrator. The head of a line of business or staff organization may, with the approval of the Administrator, first solicit and consider applications for a vacant Executive or Senior Professional position from current FAA employees before advertising the position to non-FAA candidates. All FAA employees shall be eligible for selection to any vacant permanent and/or Executive Systems position for which they are qualified regardless of their employment status on March 31, 1996.
- **(iii)** Nothing in this provision shall prohibit the temporary assignment of an employee into a vacant Officer, Executive position, or the designation of an individual to serve in an acting capacity during the absence of an Officer or Executive.

- **(b)** Permanent and Temporary Employees (See PRIB 18 - "External Hiring Options", PRIB 22 - "Permanent Internal Assignment" and PRIB 23 - "Temporary Internal Assignment")
  - **(i)** Effective April 1, 1996, each head of a line of business or staff organization is authorized to use any of the following methods to solicit applications from outside applicants:
  - **Central Register:** used to realize economies of scale while managing large numbers of pre-screened and highly qualified applicants.
  - **Announced Vacancies**: used to solicit applications locally, or from discontinuous geographical areas, to obtain the best available candidates through targeted recruitment.
  - **On the Spot:** used to accommodate special program needs and to staff hard-to-fill positions or facilities.
- **(c)** Support Service Employees
  - **(i)** All support service employee contracts must adhere to the standards, procedures, and limitations issued by the Associate Administrator for Research and Acquisitions.

### 8. Permanent Internal Assignments

- **(a)** Effective April 1, 1996, all FAA employees shall be eligible for selection to any vacant permanent position regardless of their employment status on March 31, 1996. A line of business or staff organization is authorized, subject to guidance from the Associate Administrator for Administration, and to use the following procedures to solicit and consider applications from FAA employees prior to advertisement of a position:

  **(i)** open competition;
  **(ii)** automatic consideration; and
  **(iii)** no formal competition.
  (See PRIB 22 - "Permanent Internal Assignment")

### 9. Temporary Internal Assignments

- **(a)** Effective April 1, 1996, the head of a line of business or staff organization is authorized, subject to guidance from the Associate Administrator for Administration, to fill a non-Executive System position temporarily with an FAA employee either with competition or with no competition.
  (See PRIB 23 - "Temporary Internal Assignment")

### 10. Promotion Qualifications

- **(a)** Effective April 1, 1996, all time in grade requirements, other than qualification requirements, for promotion of FAA employees are abolished. Time requirements may only be maintained as part of the qualification standards for a position. Employees shall be eligible for career ladder promotions when qualifications for that grade are met; however, eligibility for promotion shall not create any entitlement to promotion until all administrative requirements have been met.
  (See PRIB 21 - "Promotion Qualifications")

**11. Return Rights**

- **(a)** Effective April 1, 1996, no vacancy announcement shall include an offer of return rights unless:
  - **(i)** the offer is required by an existing collective bargaining agreement;
  - **(ii)** the line of business or staff organization has made a written determination that an offer of return rights is necessary for attracting employees to hard-to-staff positions or locations where other methods have failed to attract qualified applicants; or
  - **(iii)** the offer is related to an international assignment and interchange agreements, as appropriate.
- **(b)** A determination that a position or location is hard-to-staff must be made in accordance with the following guidelines:
  - **(i)** FAA supports interchange programs with Federal, state and local governments, educational institutions, non-profit organizations, private industry, public international organizations, and foreign governments through voluntary assignments of FAA employees and/or through hosting employees of other organizations. The FAA also may support the use of return rights to positions within FAA, when appropriate.
  - **(ii)** FAA will no longer have a mandatory return rights program. Each line of business or staff organization should determine if there are any positions for which "blanket" return rights should be granted. Whether or not there are any "blanket" occupations/locations for which return rights are always granted (e.g., remote locales), there may be specific circumstances for which return rights would be appropriate. Each line of business or staff organization may also determine whether or not to grant return rights as the situations arise.
- **(c)** Once it has been determined that an employee will be guaranteed return rights, an individualized contract must be developed and signed by the employee and an authorized Executive in the line of business or staff organization, and filed in the employee's Official Personnel Folder or equivalent.
- **(d)** No employee will be granted return rights without a validly executed return rights agreement that fully complies with the standards and criteria established by the Associate Administrator for Administration.
- **(e)** All return right obligations incurred prior to April 1, 1996 shall be honored.( **See FAPM Letter 352-1, Reemployment Rights** )

**12. Air Traffic Controller**

- **(a)** For purposes of this directive, "air traffic controller" or "controller" means a civilian employee of FAA who, in an air traffic control facility or flight service station facility, is:
  - **(i)** actively engaged in the separation and control of air traffic; or
  - **(ii)** providing preflight, inflight, or airport advisory service to aircraft operations; or
  - **(iii)** the immediate supervisor of any employee described in Paragraph 12 (a)(i) or (a)(ii).

**13. Equal Employment Opportunity Complaints**

- **(a)** Effective April 1, 1996, the Administrator of FAA shall be the "head of the agency" for purposes of receiving recommended decisions from Equal Employment Opportunity Commission administrative judges and issuing final agency decisions under 29 CFR Part 1614 for all administrative complaints pending or filed with respect to FAA by current or former FAA employees. The Assistant Administrator for Civil Rights and the Associate Administrator for Administration are directed and authorized to take all steps necessary to effect this change.

**14. Downsizing**

- **(a)** Until superseded, the existing FAA procedures for conducting reductions in force will apply, including provisions for calculating severance pay. The Associate Administrator for Administration is authorized to determine whether employees who are eligible for severance payments will be offered the opportunity to elect payment in one or two lump sum payments, rather than on the current bi-weekly basis.
- **(b)** The Director of Human Resource Management will prepare a recommendation for the Administrator, no later than June 30, 1996, of actions that can be used to mitigate the adverse effects of a reduction in force. The

recommendations might include, but are not limited to, the use of buyouts, negotiated job exchanges, and alternative separation packages. The Administrator reserves the right to modify and/or implement either in whole or in part any recommendations made by the Director.

- **(c)** Career Transition Services
  - **(i)** The Associate Administrator for Administration shall develop an agency wide Career Transition Service Program. This program will provide options for employees in an organization, facility, occupation, or position that is to be reduced. The options should include such features as: skills assessment, retraining for other FAA positions, and counseling. A reasonable amount of official time to use these services or engage in job searches will be made available to affected employees. The definition of "reasonable" will be based solely on the need to accomplish the agency mission. The amount of time will be determined on a case-by-case basis and will be applied equitably for all affected employees.
  - **(ii)** When retraining is an option, employees generally will be offered retraining opportunities for positions in FAA where managers determine that there is the greatest need. In no case will retraining be made available to an employee who has declined a continuing job with FAA that does not involve a reduction in pay. Employees receiving retraining under this provision will be required to execute an agreement to continue in service for an appropriate amount of time or to repay the cost of retraining on a pro-rated basis.
- **(d)** Selection Priority
  - **(i)** Permanent employees who receive reduction in force notices will be eligible for selection priority. This means that the employee must be selected before any non-FAA candidate for any vacancy in the employee's local commuting area, so long as the employee is well-qualified for the vacancy. At the time an employee is given a reduction in force notice, he or she may choose another location (city and state) for this consideration. In this case, the employee will agree to pay relocation costs.
  - **(ii)** Selection priority will begin as soon as the reduction in force notice is issued and will continue:
    - for 2 years from the date of separation;
    - until the employee, or former employee, accepts a permanent position at the same or a higher salary with any organization, Federal or non-Federal;
    - until the employee, or former employee, either fails to respond to or declines a job offer; or
    - asks to be removed from the program.
  - **(iii)** The employee is responsible for completing any application forms that may be required. If more than one employee is eligible for selection priority, the selecting official may choose from all eligibles.
- **(e)** Individuals who are entitled to priority consideration on the basis of recovery from compensable illness, injury, or return from military service will be given consideration in accordance with existing regulations.
  (See PRIB 24 - "Career Transition and Priority Selection")

### 15. Flexible and Compressed Work Schedules

- **(a)** FAA employees shall continue to be eligible to work flexible and compressed work schedules under the same criteria, procedures, and limitations that were applicable on March 31, 1996, provided that effective April 1, 1996, the head of a line of business or staff organization shall have the authority to approve a part-time work schedule for any permanent employee in their line of business or staff organization. This authority may be redelegated.( See PRIB 24-"Career Transition and Priority Selection".

---

## Chapter II: Compensation

1. Base Pay, Personnel Compensation, and Benefits

2. Classification of Positions
3. Waiver of Restriction on Re-employed Retirement Offset
4. Biweekly Pay Periods
5. Premium Pay
6. Permanent Change of Station Benefits
7. Federal Employees Pay Comparability Act
8. Highest Rate Previously Paid
9. Back Pay
10. Attendance at Meetings

## 1. BASE PAY, PERSONNEL COMPENSATION, AND BENEFITS

- **(a)** From April 1, 1996 until September 30, 1997, the base pay for all FAA positions shall be determined at the rate of base pay in effect for that position on March 31, 1996, plus any periodic step increases, promotions, comparability increases, or locality pay otherwise available or granted to Federal employees.
- **(b)** Except as provided below, from April 1, 1996 until September 30, 1997, the personnel compensation and benefits of all FAA employees shall continue to be determined in accordance with the standards and procedures that were in effect on March 31, 1996.
- **(c)** No later than April 1, 1997, the Associate Administrator for Administration shall submit a draft Compensation Revision Plan to the heads of the lines of business and staff organizations for review. The draft shall include recommendations for further changes to FAA's method of determining the personnel compensation and pay benefits of FAA employees. After reviewing the comments of the heads of the lines of business and staff organizations, and making such changes as deemed appropriate, the Associate Administrator for Administration shall forward a final Compensation Revision Plan to the Administrator no later than September 30, 1997.
- **(d)** In drafting the Compensation Revision Plan, the Associate Administrator for Administration shall address the following initiatives and concepts:
  - **(i)** classification standards;
  - **(ii)** FAA-wide pay system;
  - **(iii)** specialized pay systems for lines of business or staff organizations;
  - **(iv)** salary-based pay system for lines of business or staff organizations;
  - **(v)** Airway Facilities Pay and Fiscal Management System;
  - **(vi)** air traffic pay system that values job complexity and compensates employees based on the level of work performed;
  - **(vii)** FLSA status of all FAA employees;
  - **(viii)** premium pay structure;
  - **(ix)** executive pay systems;
  - **(x)** time off compensation instead of double pay for an in-lieu-of-holiday;
  - **(xi)** locality pay and FAA-wide cost-of-living allowance;
  - **(xii)** pay compression;
  - **(xiii)** use of compensatory time rather than overtime;
  - **(xiv)** payment of appropriate salary or annuities to retired members of the Federal and uniform services; (PRIB 8)
  - **(xv)** line of business or staff organization flexibility to attract and retain employees for hard-to-staff facilities or positions; (PRIB 9)
  - **(xvi)** gainsharing programs; (PRIB 10)
  - **(xvii)** pay system pilot programs;
  - **(xviii)** first 40/80 hour work schedules; (PRIB 11)
  - **(xix)** permanent change of station entitlements, including more flexible reporting dates; (PRIB 12)
  - **(xx)** travel and temporary duty programs;

- (xxi) annual, sick and compensatory time policy;
- (xxii) pay and grade retention;
- (xxiii) dual career tracks;
- (xxiv) leave bank program;
- (xxv) sick leave buyback exchange program;
- (xxvi) reduction in force procedures;
- (xxvii) permanent change of station; and
- (xxviii) student loan repayments.

- **(e)** The Associate Administrator for Administration may submit portions of the final Compensation Revision Plan to the Administrator for approval prior to September 30, 1997. The Administrator reserves the right to modify and/or implement, either in whole or in part, any recommendations made by the Associate Administrator for Administration in the final Compensation Revision Plan.

### 2. Classification of Positions

- **(a)** The Office of Personnel Management classification standards and companion FAA classification guides shall continue to be used by FAA for classification of positions until replaced or supplemented by the Associate Administrator for Administration.
- **(b)** No later than April 1, 1997, each head of a line of business or staff organization shall conduct a classification review of all positions in their organization. As part of this review, the number of position descriptions shall be consolidated and reduced to the maximum extent feasible. Classification level and Fair Labor Standards Act status will be verified for all remaining positions.

### 3. Waiver of Restriction on Re-Employed Retirement Offset

- **(a)** Effective April 1, 1996, under special circumstances, a head of a line of business or staff organization may request that the Administrator approve a full to partial waiver of the required reduction to retired or retainer pay of military retirees employed by FAA. All authority to approve the waiver of salary or annuity offset that was previously vested in the Office of Personnel Management with respect to FAA on March 31, 1996, shall, to the extent permitted consistent with Chapter 83 of Title 5 of the United States Code, transfer to the Administrator of FAA effective April 1, 1996. The exercise of this authority, or the authority to approve the request for a waiver, shall rest in the sole discretion of the Administrator and shall not be delegated or reviewable in any other forum. The Administrator will exercise this authority on a case by case basis for employees in positions for which there is an exceptional difficulty in recruiting or retaining a qualified employee or in emergency situations involving a direct threat of life or property or other unusual circumstances.
- **(b)** At the request of a head of a line of business or staff organization, the Administrator may seek a partial to full waiver from Office of Personnel Management of the required reduction of re-employed civilian annuitants' retirement pay.

### 4. Biweekly Pay Periods

- **(a)** The pay period for FAA employees will continue to cover two administrative work weeks.
- **(b)** When it is necessary for computation of pay to covert an annual rate of basic pay to a basic hourly, daily, weekly, or biweekly rate, the following rules govern:
  - **(i)** To derive an hourly rate, divide the annual rate by 2,087.
  - **(ii)** To derive a daily rate, multiply the hourly rate by the number of daily hours of service required.
  - **(iii)** To derive a weekly or biweekly rate, multiply the hourly rate by 40 or 80, as the case may be.
- **(c)** Rates are computed to the nearest cent, counting one-half and over as a whole cent.

### 5. Premium Pay

- **(a)** Eligibility for Overtime Pay
  - **(i)** Overtime work will include officially ordered and approved hours of work in excess of an employee's

scheduled tour of duty, e.g., hours in excess of 40 hours in an administrative workweek, 80 hours in a pay period, five 8hour days, four 10-hour days. In the case of "quick turnarounds," time worked in excess of 8 hours in a 24 hour period, but within an employee's regularly scheduled tour of duty, does not qualify as overtime and will be paid at the basic rate. (See PRIB 6)

- **(b)** Compensatory Time Off
  - **(i)** An FAA employee whose personal religious beliefs require the abstention from work during certain periods of time may, after advance approval by his/her supervisor, elect to engage in overtime work for time lost for meeting those religious requirements. Any employee who so elects shall be granted equal compensatory time off from his/her scheduled tour of duty (in lieu of overtime pay) for such religious reasons, notwithstanding any other provision of law. Requests for compensatory time off for religious observances shall be granted unless to do so would interfere with FAA's ability to efficiently carry out the mission of the agency.
- **(c)** Sunday and Night Differential
  - **(i)** Effective April 1, 1996, or as soon thereafter as may practically be implemented, non wage-grade employees will earn Sunday premium pay at an additional rate of 25 percent of hourly base and night differential at an additional rate of 10 percent of hourly base pay for those hours actually worked on Sunday or between the hours of 6:00 PM and 6:00 AM respectively. Employees working between the Sunday hours of 6:00 PM and 11:59 PM or 12:00 AM and 6:00 AM will receive both Sunday premium pay and night differential. (Modified by PRIB 25, attachment 2)
  - (ii) thru (vi) Added by PRIB 25, attachment 2

#### 6. Permanent Change of Station Benefits

- **(a)** Effective April 1, 1996, no employee shall be entitled to permanent change of station benefits simply by virtue of competitive selection to a position with higher grade, pay, or promotion potential. Such selections will not be considered primarily for the benefit of the Government unless the vacancy announcement or solicitation for applications included a specific statement that permanent change of station benefits were available. (See PRIB 12)

#### 7. Federal Employees Pay Comparability Act

- **(a)** Effective April 1, 1996, all authority to approve payments to FAA employees under all provisions of the Federal Employees Pay Comparability Act shall be vested solely in the Administrator. This authority may be redelegated by the Administrator. (See Order 3550.15)

#### 8. Highest Rate Previously Paid

- **(a)** Effective April 1, 1996, the heads of the lines of business and staff organizations shall have the authority to determine whether the pay of an employee entering into, returning to, or remaining in their organizations shall be retained at the highest rate previously paid to the employee. (See PRIB 5)

#### 9. Back Pay

- **(a)** Agency funds may be used to pay back pay to an FAA employee or former employee who, as the result of a decision or settlement under the FAA Grievance Procedure, a collective bargaining agreement, FAA Appeals Procedure, or the Executive System Appeals Procedure is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due to the employee.
- **(b)** The amount of back pay shall be limited to making the employee financially whole, to the extent possible, for losses of pay (other than premium pay) to which the employee was entitled by statute or regulation by virtue of the performance of a Federal function. No employee shall be granted more pay, allowances, or differentials in back pay than would have been received if the unjustified or unwarranted personnel action had not occurred.
- **(c)** "Unjustified or unwarranted personnel action" means an act of commission or omission that an appropriate authority subsequently determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law, Executive Order, rule, regulation, or mandatory personnel policy established by

FAA or through a collective bargaining agreement. Such actions include personnel actions and pay actions, alone or in combination.

- **(d)** In calculating a back pay award, no back pay shall be awarded for:
  - **(i)** any period during which the employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury; provided, however, that an employee, upon written request, may be granted any sick or annual leave available to them for a period of incapacitation if the employee can establish that the period of incapacitation was the result of illness or injury; and
  - **(ii)** any period during which the employee was unavailable to perform their duties for reasons other than those related to the unjustified or unwarranted personnel action.
- **(e)** The following amounts shall be deducted from any amount of back pay award:
  - **(i)** any amounts earned by an employee from other employment undertaken during the time the employee was separated or unable to perform duties because of the unjustified or unwarranted personnel action, but not including additional or "moonlight" employment the employee could have engaged in if the unjustified or unwarranted personnel action had not occurred;
  - **(ii)** any payments received from the Government as a result of the unjustified or unwarranted personnel action which, in the case of payments received from a Federal employee retirement system, shall be returned to the appropriate system. Such payments shall be recovered from the back pay award prior to payment in the following order:
    - retirement annuity payments (except health benefits and life insurance premiums);
    - refunds of retirement contributions;
    - severance pay;
    - lump-sum payment for annual leave (and the annual leave shall be recredited for the employee's use);
    - health benefits and life insurance premiums, if coverage continued during the period of erroneous separation; and
    - other authorized deductions.
- **(f)** Annual leave restored to an employee under this provision shall be accredited to a separate leave account for use by the employee, and must be used in accordance with standards issued by the Associate Administrator for Administration.
- **(g)** Agency funds may not be used to pay either interest or attorney fees as the result of a decision in FAA Grievance Procedure, FAA Appeals Procedure, or the Executive System Appeals Procedure.

#### 10. Attendance at Meetings

- **(a)** FAA funds may be expended for attendance at meetings concerned with the functions or activities of the line of business or staff organization which will contribute to improved conduct, supervision, or management of the functions or activities of the line of business or staff organization. The amount of funds available for such training or attendance at meetings shall be determined by the head of a line of business or staff organization based on the strategic goals of the organization. Funds may be used for payment or reimbursement for travel and per diem.

---

## Chapter III: Performance Management

1. Performance Evaluations
2. Awards
3. Discipline and Removals
4. FAA Grievance Procedure
5. FAA Appeals Procedure-Guaranteed Fair Treatment
6. FAA National Employee's Forum