IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-272C<br>Judge Emily C. Hewitt |

**APPENDIX TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**(Pages 55-75)**

Gregory K. McGillivary
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, DC 20005
Phone: (202) 833-8855

Attorney of Record for Plaintiffs

Lauren E. Schwartzreich
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, DC 20005
Phone: (202) 833-8855

Of Counsel

1. Performance Evaluations

- **(a)** The Performance Planning and Recognition System issued by the Director of Human Resource Management and implemented by FAA on October 1, 1995 shall remain in effect for FAA employees unless modified by the head of a line of business or staff organization.
- **(b)** FAA's Senior Executive Service Performance Plan is hereby retitled as FAA's Executive System Performance Plan. It shall remain in effect for Executive System employees for the rating periods of October 1, 1995 to September 30, 1996. No later than September 1, 1996, the Associate Administrator for Administration shall present the Administrator with a proposal on what changes, if any, should be made to FAA's Executive System Performance Plan.

2. Awards

- **(a)** Effective April 1, 1996, the heads of the lines of business and staff organizations are authorized to give individual or group cash, nonmonetary, or time off awards to any FAA employees for performance as part of a unit, based on the overall achievements of the unit.

3. Discipline and Removals

- **(a)** Except as described below, disciplinary and removal actions taken for conduct occurring on or after April 1, 1996 shall continue to be administered in accordance with FAA Order 3750.4A, "Conduct and Discipline", as it may be modified by the Associate Administrator for Administration, and all FAA collective bargaining agreements still in effect at the time action is proposed.
- **(b)** This paragraph contains the guidance and procedures for processing disciplinary actions, involuntary reduction in grade or pay, furloughs of 30 days or less (but not including placement in a nonpay status as the result of a lapse of appropriations or action by Congress), and removal actions except for employees covered by a collective bargaining agreement. Effective April 1, 1996, all actions covered by this paragraph will be taken only for such cause as will promote the efficiency of the Federal service, regardless of whether they are based on conduct or performance.
- **(c)** Definitions
  - **(i)** "Employee" means an employee of FAA who is not serving a probationary or trial period, or who has served more than one year of service on a temporary appointment.
  - **(ii)** "Employer" means any element of FAA management who exercises direct or indirect supervision over employees.
  - **(iii)** "Suspension" means the placing of an employee, for disciplinary reasons, involuntarily in a non-duty and non-pay status.
  - **(iv)** "Grade and pay" means the grade level or rate of basic pay fixed by law or administrative action for the position held by an employee.
  - **(v)** "Day" means calendar day.
- **(d)** The procedures and standards in this paragraph do not apply to:
  - **(i)** a reduction in grade or pay of a supervisor or manager who has not completed a probationary period if such a reduction in grade or pay is to the grade and pay held immediately before becoming a supervisor or manager;
  - **(ii)** terminations of employees on probationary/trial periods, other than a supervisory/managerial probationary period, or whose appointment is temporary;
  - **(iii)** a political appointee;
  - **(iv)** actions involving an employee in FAA Executive System or on a temporary executive assignment;
  - **(v)** an employee whose position is downgraded as a result of reclassification and who has been granted grade and pay retention;
  - **(vi)** placement in a nonpay status as the result of a lapse of appropriations or action by Congress;
  - **(vii)** placement on a nonduty pay status;
  - **(viii)** actions involving an employee in a temporary appointment with less than one year in the position;
  - **(ix)** termination of temporary promotions;

- **(x)** actions involving reduction in force procedures;
- **(xi)** termination of re-employed annuitants; or
- **(xii)** non-disciplinary actions involving temporary employee, i.e., furloughs, reduction in force or end of required service.

- **(e)** An employee is entitled to communicate with and seek advice from the servicing Human Resource Management Division, the Office of Civil Rights either in Washington or at the region/center, an Equal Employment Opportunity counselor, or a supervisor or management official of higher rank than the employee's immediate supervisor who will provide counsel on the procedures of the case, but will not review the merits.
- **(f)** Supervisors are responsible for determining if corrective disciplinary action is warranted. Whether the action decided upon is formal or informal, the principles set out in this section should be observed in determining the severity of the discipline. Not all factors apply in every case. Some of the factors may weigh in the employee's favor, while others may not, or may even constitute aggravating circumstances. The following factors must be considered and a responsible balance reached:
  - **(i)** the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
  - **(ii)** the employee's job level and type of employment, including supervisor or fiduciary role, contacts with the public, and prominence of the position;
  - **(iii)** the employee's past disciplinary record;
  - **(iv)** the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
  - **(v)** the effect of the offense upon the employee's ability to perform at a satisfactory level, and its effect upon the supervisor's confidence in the employee's ability to perform assigned duties;
  - **(vi)** the consistency of the penalty with those imposed upon other employees for the same or similar offenses;
  - **(vii)** the consistency of the penalty with any applicable agency table of penalties;
  - **(viii)** the notoriety and/or egregiousness of the offense, or its impact upon the reputation of the agency;
  - **(ix)** the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
  - **(x)** the potential for the employee's rehabilitation;
  - **(xi)** the mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others involved in the matter; and
  - **(xii)** the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.
- **(g)** All written notices of proposed disciplinary or removal actions covered by this policy must be delivered to the employee in advance of the proposed effective date, and will contain the following information:
  - **(i)** the specific reason(s) for the proposed action in sufficient detail for the employee to make a reply;
  - **(ii)** a statement informing the employee of the right to make an oral and/or written reply, the time limits to do so, and to whom the reply should be made;
  - **(iii)** a statement of the employee's right to have representation during the reply period; and
  - **(iv)** a statement of the employee's right to review all of the material relied upon to support the proposed action and copies unless otherwise prohibited by law.
- **(h)** Written Reprimand
  - **(i)** A decision to issue a written reprimand is made by the official who signs the reprimand, usually the immediate supervisor. No advance notice is required. The employee may file an oral and/or written reply within 15 days from receipt of the reprimand. If the reprimand is sustained, it will be placed in the employee's Official Personnel Folder, along with the employee's response. If no reply is made within these time limits, the reprimand will be

placed in the employee's Official Personnel Folder for a period of time not to exceed two years.

- **(i)** Suspensions
  - **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 15 days before the proposed effective date of the suspension. Employees will have 15 days from the date they are given the notice to reply either orally and /or in writing, except as provided for in Paragraph 3(r). After receipt and consideration of the employee's timely reply, the deciding official will issue a final decision. If no reply is made within these time limits, the deciding official will issue the final decision within ten days. Documentation of the suspension shall be maintained in the employee's Official Personnel Folder.
- **(j)** Reduction in Grade or Pay
  - **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days in advance of the proposed effective date. Employees will have 15 days from the date they are given the notice to respond orally and/or in writing. After receipt and consideration of the employee's timely reply, the deciding official will issue a final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.
- **(k)** Removal
  - **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days prior to the proposed effective date, except as provided in Paragraph 3(r). Employees will have 15 days from the date they are given the notice to make an oral and/or written reply. After receipt and consideration of the employee's timely reply, the deciding official will issue the final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.
- **(l)** Furlough
  - **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days prior to the proposed effective date. Employees will have 15 days from the date they are given the notice to make an oral and/or written reply. After receipt and consideration of the employee's timely reply, the deciding official will issue the final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.
- **(m)** The coordination requirements with FAA Office of Civil Rights for employees who have filed Equal Employment Opportunity complaints shall remain in effect after April 1, 1996.
- **(n)** An employee is entitled to have a representative or attorney of his/her choice to be present during the presentation of any reply to the deciding official, provided the attendance of the representative or attorney does not require a delay in the proceedings. The employee may also designate his/her representative to make the reply, on their behalf, to the deciding official. If the employee's representative is an FAA employee, he/she shall be excused absence, if otherwise in a duty status, to be present during the reply presentation; however, the request for representation by an FAA employee can be denied if either operational considerations or the nature of the requested representative's official duties presents a conflict. A decision to deny a request for representation by an FAA employee shall be made by the head of the requested representative's line of business or staff organization. Travel for the employee's representative will not be paid by FAA. Employees will be accommodated with schedule changes, as necessary, to perform their duties as representatives.
- **(o)** Employees and/or their designees will be given an opportunity to make an oral and/or written reply within the time limits specified above and to furnish affidavits and other documentation in support of their reply. If the deciding official cannot receive the oral reply personally, a management representative can be designated to receive the reply on behalf of the deciding official. In either case, the individual hearing the oral response will prepare a written summary. The written summary and a copy of any written reply will be forwarded to the deciding official. A copy of the summary will be provided to the employee.
- **(p)** An employee who is otherwise in a paid duty status will be given up to 16 hours of excused absence to review the material relied upon and to prepare any reply to a proposed suspension, reduction in grade or pay, or removal. The timing of the grant of excused absence shall, to the maximum extent possible, (but consistent with operational

needs), be scheduled at the employee's convenience.

- **(q)** A final decision shall contain the following information:
  - **(i)** the effective date of the action, if appropriate;
  - **(ii)** a statement of which charge(s) and/or reason(s) were sustained and which were not;
  - **(iii)** a statement advising the employee of the right to file an appeal, the time limits to file such an appeal, and to whom such an appeal must be filed; and
  - **(iv)** a statement advising the employee of the right to seek counseling for an Equal Employment Opportunity complaint, the time limits for seeking counseling, and whom the employee must contact.
- **(r)** When there is reasonable cause to believe an employee has committed a crime for which a sentence of imprisonment may be imposed, or when, by the employee's conduct, continued presence in the work place poses an imminent threat to employees and/or agency property, the advanced notice period specified above is not required. In such cases, the employee may be given a shortened notice and reply period, but not less than seven days from the date the employee is given the notice of proposed action. In addition, an employee may be removed from the work site and placed in a nonduty pay status until the final decision is effected without prior written notice, at any time management determines that it is not in the best interest of the agency for the employee to remain in a duty status. Placement in a nonduty pay status is not an adverse action and may not be appealed by an employee.
- **(s)** Supervisors and managers shall consult with their Human Resource representatives before issuing a proposed action under this policy.
- **(t)** Employees may appeal:
  - **(i)** written reprimands, denials of within grades, and suspensions of 14 days or less by filing a written grievance as provided by the agency grievance procedure; and
  - **(ii)** suspensions of more than 14 days, reductions in grade or pay, furloughs of 30 days or less, and removals under FAA Appeals Procedure.
- **(u)** When an employee is given advance notice, the official who proposed the action will establish a disciplinary file. The file will be retained in the servicing Human Resource Management Division if the proposed action is taken. If the employee appeals, the file will become the appeal file, and a copy will be provided to the panel at the panel's request. The file shall contain the advance notice and any employee response, material relied on to support the notice, correspondence or notations of conversations with the employee, the written summary of an oral response, a copy of the final decision, and a copy of the employee's appeal.

### 4. FAA Grievance Procedure

- **(a)** Effective April 1, 1996, the following grievance procedure shall be implemented for all employees of FAA not covered by a collective bargaining grievance procedure. This FAA Grievance Procedure shall be the sole and exclusive method by which such employees can seek relief from the FAA, Department of Transportation, and/or the United States Government for issues related to the matters covered by this paragraph. Employees and supervisors involved in grievances shall be free from restraint, interference, coercion, discrimination, reprisal, and intimidation in connection with their respective roles in such proceedings. Actions on the part of employees or supervisors intended to intimidate, coerce, or take reprisal against witnesses offering information in such cases are expressly prohibited and can result in disciplinary action.
- **(b)** The following matters are covered by the provisions of the new FAA Grievance Procedure:
  - **(i)** adverse or disciplinary actions covered under agency wide orders or directives, except for those matters subject to appeal under the FAA Appeals Procedure or the Executive System Appeals Procedure (this includes sustained written reprimands, denials of within grade increases, and suspensions of 14 days or less);
  - **(ii)** matters of personal concern or dissatisfaction to an employee that are subject to control of FAA management or any matter in which an employee alleges that coercion, reprisal, or retaliation have been practiced against him/her.
- **(c)** The FAA Grievance Procedure shall not apply to:

- (i) any employee covered by a collective bargaining agreement;
- (ii) retirement;
- (iii) life or health insurance;
- (iv) national security determinations under 5 U.S.C. Section 73;
- (v) revocation or denial of security clearances;
- (vi) examination, certification, or appointment;
- (vii) classification of any position that does not result in reduction in grade or pay;
- (viii) removal of an employee on a trial or probationary period;
- (ix) matters relating to overtime entitlement or designation of status under Fair Labor Standards Act;
- (x) nonselection for selection priority retention or promotion from a list of properly ranked and/or certified candidates;
- (xi) decisions by a manager to fill a vacant position with no competition, either permanently or temporarily;
- (xii) an action taken in accordance with the terms of a formal agreement voluntarily entered into by an employee and the agency;
- (xiii) a decision on an earlier grievance;
- (xiv) matters involving waiver of annuity or salary offset;
- (xv) matters involving highest previous rate determinations;
- (xvi) matters involving requests for part-time work schedules;
- (xvii) matters that are covered by any other statutory appeals process; and
- (xviii) matters that are subject to appeal under FAA Appeals Procedure or the Executive System Appeals Procedure.

- **(d)** For purposes of this section:
  - **(i)** "Day" means calendar day.
  - **(ii)** "Employee" means an employee of FAA who is not serving a probationary or trial period, or who has served more than one year service on a temporary appointment.
  - **(iii)** "Personal relief" means a specific remedy personally benefiting the grievant(s), but shall not include disciplinary action or other action affecting another employee.
- **(e)** Stage 1: Problem Solving
  - **(i)** If an employee wishes to seek relief on a covered matter other than the denial of a within grade increase, a suspension of 14 days or less, or a written reprimand, he/she must submit the issue to his/her first level supervisor either orally or in writing within ten days of the incident, or within ten days of the time the employee knew or may have been reasonably expected to have learned of the event.
  - **(ii)** A meeting shall be held within ten days of receipt of notification by the first level supervisor to allow the employee to freely present, receive, and exchange information and views on the situation. The employee may have a representative present during the meeting. If the representative is an FAA employee and is otherwise in a duty status, the representative will be granted excused absence for attendance at the meeting. The FAA will not pay travel or per diem. A resolution will be sought, and if one is reached, it will be acted upon with mutual agreement. Resolution is highly encouraged at this level, and the supervisor may use whatever tools necessary to resolve the issue at this level.
  - **(iii)** If no resolution is reached within ten days after the meeting, the grievance can be elevated to the formal stage by the employee, in writing, with the next level manager. This formal grievance must be filed within 15 days of the resolution meeting.
  - **(iv)** Grievances involving denials of within grade increases or suspensions of 14 days or less must be filed at the formal stage within ten days of receipt of the decision letter. The formal grievance must be filed with the next level above the deciding official for the denial or suspension. Grievances involving written reprimands must be filed at the formal stage within ten days of the date the reprimand was sustained with the next level above the deciding official.

- **(f)** Stage 2: Formal
  - **(i)** A meeting shall be held with the manager who received a formal grievance within ten days of filing to allow the employee to freely present, receive, and exchange information and views on the situation. The employee is entitled to have a representative present during this meeting. Employees may designate their representative to present the grievance. If the employee's representative is an FAA employee, he/she shall be given duty time to be present during the presentation; however, the request for representation by an FAA employee can be denied if either operational considerations or the nature of the requested representative's official duties presents a conflict. A decision to deny a request for representation by an FAA employee shall be made by the head of the requested representative's line of business or staff organization.
  - **(ii)** The manager has ten days from the close of the meeting with the employee to resolve the grievance. The decision shall be in writing and will specify what relief is granted or why the grievance is denied. This decision is the final decision of FAA Grievance Procedure and shall be issued at the sole discretion of the manager. The final decision of FAA Grievance Procedure is not subject to review in any other forum.
- **(g)** A grievance can be canceled:
  - **(i)** at the employee's request;
  - **(ii)** as the result of a settlement agreement;
  - **(iii)** upon the death of the employee, unless the grievance involves a financial consideration on the part of the employee;
  - **(iv)** for the failure of the grievant to comply with the appropriate time frames and procedures contained in this policy; or
  - **(v)** when the grievant has previously filed or later files a formal appeal, complaint, or other challenge on the same matter.

## 5. FAA Appeals Procedure-Guaranteed Fair Treatment

- **(a)** In order to provide Guaranteed Fair Treatment to employees, the FAA establishes, effective April 1, 1996, the following FAA Appeals Procedure. This procedure covers cases involving suspensions of more than 14 days; reductions in pay or grade; removals for conduct, performance or non-disciplinary removals; furloughs of 30 days or less (but not including placement in a nonpay status as the result of a lapse of appropriations or action by Congress); and reduction in force actions. The FAA Appeals Procedure is the only method by which employees not covered by a collective bargaining agreement may seek administrative review of claims arising out of a covered action, except for claims which may be reviewed under a statutorily mandated administrative appeal process.
- **(b)** Employees and supervisors involved in appeals shall be free from restraint, interference, coercion, discrimination, reprisal, and intimidation in connection with their respective roles in such proceedings. Actions on the part of employees or supervisors intended to intimidate, coerce, or take reprisal against witnesses offering information in such cases are expressly prohibited and can result in disciplinary action.
- **(c)** For purposes of this section:
  - **(i)** "Day" means calendar day.
  - **(ii)** "Partisan" means an employee of FAA who is knowledgeable of the working conditions, environment, and practices where the appeal was filed. A person cannot be designated as a partisan if they were directly involved with the case. A designated partisan cannot have served as an advocate for FAA or employee in any phase of the disciplinary or removal action being appealed. The partisan for management cannot be the proposing official or the deciding official.
  - **(iii)** "Employee" means a permanent employee of the FAA who is not serving a probationary or trial period.
- **(d)** Employees wishing to appeal a covered action must submit the appeal to the next level above the deciding official within ten days of the date the decision is given to them. The appeal must be in writing and contain all of the supporting documentation and a statement of the specific relief requested.
- **(e)** A panel will be designated within ten days of receipt of the appeal by the management official. The panel shall be

comprised of three persons: one partisan selected by the deciding official from within the FAA where the appeal was generated, one partisan selected by the appellant from within FAA, and one arbitrator. Partisans shall be selected from an area as close as possible to the location of the hearing while meeting all the criteria for partisans outlined above. Partisans shall be on official time while performing their responsibilities as members of the panel. The arbitrator shall set aside a period of time to instruct the partisans in due process, how to weigh evidence and testimony, and how to judge the merits of the case.

- **(f)** A pool of three to five arbitrators will be selected and maintained by each servicing Human Resource Management Division for use in the appeals process. Selection of the arbitrator from the pool will be by mutual agreement of the appellant and the deciding official, or by alternative striking of names by the appellant and the deciding official until one selection remains. The servicing Human Resource Management Division will provide logistical support for program implementation and maintenance.
- **(g)** The hearing shall take place as soon as is practicable. There will be no discovery for either side but the parties shall exchange documents and witness lists ten days before the hearing. Hearings will be scheduled during normal administrative duty hours. If they choose a representative, the appellant and the deciding official shall designate their representatives and inform the other party in writing prior to the hearing date. If the appellant requests an FAA employee as a representative, that request can be denied if either operational considerations or the nature of the requested representative's official duties present a conflict. A decision to deny a request for representation by an appellant shall be made by the head of the requested representative's line of business or staff organization.
- **(h)** The panel will convene within the commuting area of the appellant whenever possible. If the hearing cannot be held in the commuting area, FAA shall pay the appellant's travel to the hearing, regardless of whether the appellant is in a paid duty status. The FAA will accommodate employees with schedule changes as necessary if the employee is otherwise in an active duty status, to attend and participate in the hearing as a witness, appellant, or representative. All time frames may be extended by the panel with mutual written agreement of the deciding official and the appellant.
- **(i)** There shall be a verbatim transcript prepared of the hearing. Copies of transcripts must be ordered by the parties from the official court reporter. All appeal records and documents from the hearing will be maintained in accordance with applicable agency rules and laws.
- **(j)** Each party is responsible for securing their own witnesses. Each party will be responsible for paying the travel costs for their witnesses and representatives, except for employees of FAA who are summoned to testify by the panel as witnesses. Such employees shall be on official time, including travel and per diem.
- **(k)** The panel will render a written decision within ten days of hearing the case. Decisions made by the panel will be final and binding, but not precedential. The panel shall have no authority to mitigate the penalty on performance cases but shall have the authority to mitigate the penalty on cases involving conduct. The panel shall be limited to ruling on the merits of the case and the application of agency rules and laws. The panel shall not reverse or mitigate an action based on a finding of violation of agency rules, unless the record demonstrates more likely than not, that absent the violation, the deciding official would have reached a different decision. The ruling will be made by majority vote of the panel.
- **(l)** The decision of the panel may include an award of back pay; however, no attorney or representation fees for the appellant will be ordered by the panel or paid by FAA.
- **(m)** Decisions of the panel shall be issued as final orders of the Administrator under 49 U.S.C. Section 46110. An appellant may seek judicial review of the panel's order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit, or in the court of appeals of the United States for the circuit in which the appellant resides, no later than 60 days after the panel's decision is issued.
- **(n)** Claims of statutorily prohibited discrimination may not be raised in FAA Appeals Procedure. The FAA Appeals Procedure shall be designated as an alternative disputes resolution process for purposes of 29 CFR Part 1614. Accordingly, if an employee wishes to raise a claim of statutorily prohibited discrimination, with respect to a matter that is subject to appeal under FAA Appeals Procedure, the employee must:

- (i) contact an Equal Employment Opportunity counselor no later than 45 days after the effective date of the action being appealed;
- (ii) file an appeal under FAA Appeals Procedure in accordance with the time limits stated above;
- (iii) complete FAA Appeals Procedure and receive a final decision; and
- (iv) file a formal complaint of discrimination within ten days of receipt of the final FAA Appeals Procedure decision, or within 90 days of the first contact with the Equal Employment Opportunity counselor.

### 6. FAA National Employee's Forum

- **(a)** The FAA shall establish an Employee's Forum so that employees will have the opportunity to express their opinion on matters affecting their membership, regardless of job, grade series, or pay band. The Employee's Forum will serve as a vehicle to gather general input on specific issues as requested by senior management and as originated by individual employees or employee groups. Special Emphasis Groups and Employee Associations whose constituency primarily focuses on civil rights matters will have an opportunity to provide input on matters related to FAA's Equal Employment Opportunity, Affirmative Action, and diversity initiatives as mandated by law.
- **(b)** The Employee's Forum will have as its core members the Administrator (ex officio), the Deputy Administrator (ex officio), the Assistant Administrator for Civil Rights, the Director of Human Resource Management, the National Special Emphasis Program Managers, and the National Presidents of the Employee Associations. Other employees may be invited to attend as deemed appropriate by the Administrator.
- **(c)** The FAA will provide training to members of the Forum that is designed to ensure the success of the Forum. Such training may include team building, dispute resolution, partnering for success, Equal Employment Opportunity, Affirmative Action, and other types of training.

---

## Chapter IV: Training

1. Authorization to Expend Funds
2. Training Agreements
3. Continued Service Agreements
4. Fee for Service Plan

### 1. Authorization to Extend Funds

- **(a)** All the heads of the lines of business and staff organizations, in accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, are authorized to expend funds to provide or reimburse their employees for technical, management, or career development training. This includes: reimbursement of tuition expenses in pursuit of a formal degree or certificate program at an accredited institution of higher learning, training for the purposes of qualifying for another career field when approved under a job loss retraining program, and membership fees in professional societies. To the extent authorized by regulation of the President, contributions and awards incident to training in non-Government facilities and payment of travel, subsistence, and other expenses incident to attendance at meetings, may be made to and accepted by an FAA employee without regard to 18 U.S.C. Section 209, if the contributions, awards, and payments are made by an organization determined by the Secretary of the Treasury to be an organization described by 26 U.S.C. Section 501(c)(3), as exempt from taxation under 26 U.S.C. Section 501(a). When a contribution, award, or payment, in case or in kind, is made to an FAA employee for travel, subsistence, or other expenses, an appropriate reduction shall be made from payment by FAA to the employee for travel, subsistence or other expenses incident to training in a non-Government facility or to attendance at a meeting.

### 2. Training Agreements

- **(a)** The head of a line of business or staff organization, or the Associate Administrator for Administrator on behalf of the Administrator, is authorized to enter into agreements with other agencies in any branch of the Government, on a

reimbursable basis, for:

- (i) use of Government facilities under the jurisdiction or control of the other agencies in any branch of Government;
- (ii) extension to FAA employees of training programs of other agencies; and
- (iii) use of FAA facilities and training programs by other Government agencies.

- **(b)** In accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, the heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, are authorized to make agreements or other arrangements for the training of FAA employees by, in, or through non-Government facilities. Agreements or arrangements may not be made for payment for training of an FAA employee:
  - **(i)** by, in, or through a non-Government facility which teaches or advocates the overthrow of the Government of the United States by force or violence;
  - **(ii)** by or through individuals concerning whom determination has been made by a proper Government administrative or investigatory authority that, on the basis of information or evidence developed in investigations and procedures authorized by law or Executive Order, there exists a reasonable doubt of their loyalty to the United States; or
  - **(iii)** by, in, or through a non-Government facility a substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; or participating or intervening, including publishing or distributing statements, in a political campaign on behalf of a candidate for public office.
- **(c)** In accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, heads of FAA training facilities and training programs are authorized to make agreements or other arrangements for the training of non-Government employees or use of FAA training facilities by non-Government organizations on a reimbursable basis when this serves as the mission of the agency and is otherwise consistent with applicable law.

### 3. Continued Service Agreements

- **(a)** The heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, may require continuous service agreements as a condition of attending training of substantial duration or cost. Employees shall agree in writing before commencing such training that they will:
  - **(i)** continue in the service of FAA following completion of the training for a specified period of time, not to exceed one year, for each instance of training or pay the Government the amount of the additional expense incurred by FAA in connection with their training if they are voluntarily separated from service with FAA before the end of the period for which the employee has agreed to continue in FAA service.
- **(b)** The payment agreed to under Paragraph 3(a)(i) is recoverable by FAA from employees or their estates by:
  - **(i)** set off against accrued pay, compensation, amount of retirement credit, or other amounts due the employee from the Government; and
  - **(ii)** such other methods as provided by law for the recovery of amounts owing to the Government.
- **(c)** The Administrator may, in an exercise of discretion, waive in whole or in part, a right of recovery under this paragraph if the Administrator decides that the recovery would be against equity and good conscience or against the public interest. A decision to deny waiver, either in whole or in part, shall not be reviewable in any forum.

### 4. Fee for Service Plan

- **(a)** No later than October 1, 1996, the Associate Administrator for Administration shall submit a Fee for Service Plan to the Administrator. This plan shall contain recommendations on the methods by which FAA can establish a program to provide services to private or governmental entities in exchange for a fee that will be retained by FAA. The Administrator reserves the right to implement, either in whole or in part, any recommendation made by the Associate Administrator for Administration, provided that the recommendation is otherwise consistent with applicable law.

## Chapter V: Labor Relations

1. Employees Rights
2. Management Rights
3. FAA National Labor-Management Partnership Council

### 1. Employees Rights

- **(a)** The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71. Each FAA employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal; and each employee shall be protected in the exercise of such rights.

### 2. Management Rights

- **(a)** Consistent with 5 U.S.C. Section 7106 and Executive Order 12871, FAA reserves the authority of its management officials.

### 3. FAA National Labor-Management Partnership Council

- **(a)** The FAA and its unions have established a National Labor-Management Partnership Council (NLMPC). This council will integrate and coordinate activities of the various labor management partnerships within the agency and will interact with the Department of Transportation's Labor Management Partnership Council.
- **(b)** The NLMPC shall be strategically focused and shall provide direction for agency partnerships. It will also assure that adequate resources and training are provided to the partnerships, establish policy and guidelines for measuring and evaluating the effectiveness of partnerships, and measure and evaluate responsiveness to the public.
- **(c)** The NLMPC will be comprised of thirteen members: four Associate Administrators or designees from lines of business with bargaining units, seven union representatives (one from each union within FAA), one representative from the Office of Civil Rights, and one Executive Advisor (Program Director of Labor and Employee Relations). All members of the NLMPC shall be current employees of FAA.
- **(d)** The NLMPC will operate under the following guidelines:
  - **(i)** conduct the initial NLMPC organizational meeting prior to June 30, 1996, with subsequent quarterly meetings;
  - **(ii)** will approve and issue a Partnership Model;
  - **(iii)** respect institutional values of the agency, as well as each line of business or staff organization, unions, and recognized organizations;
  - **(iv)** assess issues to be addressed in terms of probability of success and strategic goals of the agency;
  - **(v)** balance the interest of the public and FAA employees;
  - **(vi)** utilize a binding consensus decision making process, (the decisions of the NLMPC are not subject to third party review); and
  - **(vii)** publish agendas and minutes of NLMPC meetings.

---

## Chapter VI: Executive Systems

1. Reassignments
2. Executive System Performance Incentive Plan
3. Adverse and Disciplinary Actions

1. **Reassignments**

- **(a)** Employees in FAA Executive System may not be involuntarily reassigned within 120 days after the appointment of the Administrator, or within 120 days after the appointment of the employee's most immediate supervisor who is a political appointee and has the authority to make an initial appraisal of the employee's performance.

2. **Executive System Performance Incentive Plan**

- **(a)** Effective April 1, 1996, the Administrator or the head of a line of business or staff organization may pay a performance incentive to an employee in the Executive System in accordance with the criteria that were in effect for Senior Executive Service employees on March 31, 1996; no approval other than that of the Administrator's shall be necessary or required for the payment of such an incentive. The total amount available to a line of business or staff organization to pay incentives to employees in the Executive System after April 1, 1996, shall be determined solely by the Administrator.
- **(b)** No later than April 1, 1997, the Associate Administrator for Administration shall present a draft Executive System Performance Incentive Plan to the heads of the lines of business and staff organizations for review and comment. This plan shall design a long-term incentive plan for the Executive System that will include procedures for establishing and reporting long-term objectives.
- **(c)** After reviewing the comments by the heads of the lines of business and staff organizations, and making such changes as deemed appropriate, the Associate Administrator for Administration shall forward a final Executive Systems Incentive Plan to the Administrator no later than June 1, 1997. The Administrator reserves the right to implement, either in whole or in part, any recommendations made by the Associate Administrator for Administration in the final plan.

3. **Adverse and Disciplinary Actions**

- **(a)** Except as provided below, effective April 1, 1996, employees in FAA Executive System may be disciplined, downgraded, suspended, and/or removed in accordance with the procedures and standards contained in Chapter III that are applicable to all other agency employees.
- **(b)** The FAA Administrator or the heads of the lines of business or staff organizations, for employees in their organizations, shall be the final authority on whether any FAA Executive System employee should be disciplined, downgraded, suspended, and/or removed.
- **(c)** An Executive System employee wishing to appeal an adverse or disciplinary action must use the agency wide appeal procedure unless and until the Administrator approves another procedure.

---

Federal Aviation Administration

This page can be viewed online at:
https://employees.faa.gov/org/staffoffices/ahr/policy_guidance/hr_policies/PMS/personnel/

copied 11/16/... VK

# HOT BINDER

## OPERATIONAL/ CRITICAL INFO THAT MUST BE READ AND INITIALED PRIOR TO START OF SHIFT

Federal Aviation Administration

# Memorandum

Date: May 17, 2007

To: All Operational Personnel

From: Donna L. Martin, Support Manager, Training DLM

Subject: MBI H0751T- Operational Position Responsibilities

## MBI 0751T Operational Position Responsibilities

****THIS BRIEFING MUST BE COMPLETED PRIOR TO TAKING AN OPERATIONAL POSITION ON OR AFTER MAY 17, 2007****

The attached is a read and sign briefing prepared by the Air Traffic Manager regarding **Operational Position Responsibilities.** It should take approximately **5 minutes** to complete the briefing.

All personnel shall sign and date the attached roster upon completion of the briefing. Retain the briefing information in the area for future reference. Forward the completed roster to the Training Support Office no later than **May 31, 2007.**

Federal Aviation Administration

# Memorandum

Date: May 17, 2007

To: All Personnel

From: KA Air Traffic Manager, ZOB-1

Subject: Operational Position Responsibilities

This is a reminder that at no time shall any Controller leave their immediate operational position which they are signed on and responsible for.

In accordance with Order 7110.65, Air Traffic Control, paragraph 2-10-1 c, when you are assigned an operational position, one of your primary responsibilities is to scan the radar display. Paragraph 2-10-1 states that there are no absolute divisions of responsibility regarding position operations. The team as a whole has responsibility for the safe and efficient operation of the sector. Included in your performance description are major duties which can only be accomplished by being at your position of operation.

If you have any questions or need clarification ask your Operational Supervisor in Charge. Thank you for your professional attention to this issue.

**Federal Aviation Administration**

# Memorandum

Date: May 16, 2007

To: Areas 1 & 2, OMs, TMU

From: Donna L. Martin, Support Manager, Training DLM

Subject: MBI A0752T – HARWL Departures

## MBI A0752T HARWL Departures

**THIS BRIEFING MUST BE COMPLETED PRIOR TO TAKING AN OPERATIONAL POSITION ON OR AFTER MAY 16, 2007.**

The attached is a read and sign briefing prepared by the Airspace and Procedures Office regarding **HARWL Departures.** It should take approximately **5 minutes** to complete the briefing.

All personnel shall sign and date the attached roster upon completion of the briefing. Retain the briefing information in the area for future reference. Forward the completed roster to the Training Support Office no later than **June 1, 2007.**

If you have any questions concerning this briefing, contact Mark Agostinelli in the Airspace and Procedures Office, extension 0609.

**FAA**
**Cleveland ARTCC**
**Airspace & Procedures Office**

# MBI A0752T

Date: May 16, 2007

Subject: HARWL Departures

Attention: WS, TMU, Areas 1 & 2

---

Until further advised, Detroit area departures over HARWL to ZAU must adhere to the procedures below:

Aircraft filed above FL220 must either be:

- Capped @ FL220.
- Routed over DUNKS or FWA1.FWA.

This procedure will remain in effect until a clarification is obtained from ZAU and incorporated in the ZAU LOA.

---

For more information, contact Mark Agostinelli at extension 0609.

**Federal Aviation Administration**

# Memorandum

Date: May 17, 2007

To: Areas 2,3,4,5,7,8, TMU, OMs

From: Donna L. Martin, Support Manager, Training DLM

Subject: MBI A0753T- DKK Frequency Change

## MBI A0753T DKK Frequency Change

****THIS BRIEFING MUST BE COMPLETED PRIOR TO TAKING AN OPERATIONAL POSITION ON OR AFTER MAY 24, 2007****

The attached is a read and sign briefing prepared by the Airspace and Procedures Office regarding the **DKK Frequency Change.** It should take approximately **5 minutes** to complete the briefing.

All personnel shall sign and date the attached roster upon completion of the briefing. Retain the briefing information in the area for future reference. Forward the completed roster to the Training Support Office no later than **May 24, 2007**.

If you have any questions concerning this briefing, contact Dan Sutton in the Airspace and Procedures Office, extension 0363.

FAA
Cleveland ARTCC
Airspace & Procedures Office

# MBI A0753T

Date: May 17, 2007

Subject: DKK Frequency Change

Attention: WS, TMU, Areas 2,3,4,5,7, & 8

---

**DATE CHANGE !**
**EFFECTIVE:** Thursday May 24, 2007 between 0800 and 1000 local.

DKK Sector frequencies will be permanently changed to: VHF 127.075 UHF 292.175

Adjacent facilities have been notified of this change.

Until new frequency collars are printed, please make the appropriate changes with the revision kits distributed previously.

---

For more information, contact Dan Sutton at extension 0363.

Federal Aviation Administration

# Memorandum

Date: May 18, 2007

To: All Operational Personnel

From: Donna L. Martin, Support Manager, Training FOR HLK

Subject: MBI P0754T- URET Direct to Fix Problem and Work Around

## MBI P0754T URET Direct to Fix Problem and Work Around

****THIS BRIEFING MUST BE COMPLETED PRIOR TO TAKING AN OPERATIONAL POSITION ON OR AFTER MAY 18, 2007****

The attached is a read and sign briefing prepared by the Airspace and Procedures Office regarding the **Direct to Fix Problem and Work Around**. It should take approximately **10 minutes** to complete the briefing.

All personnel shall sign and date the attached roster upon completion of the briefing. Retain the briefing information in the area for future reference. Forward the completed roster to the Training Support Office no later than **June 1, 2007**.

If you have any questions concerning this briefing, contact Rich Kleinheinz in the Plans and Programs Office, extension 0307.

**Federal Aviation Administration**

# Mandatory Briefing Item

Date: 5/18/2007

To: All CPC's, Supervisors, Area Managers

From: William W. Wallis Staff Support Manager for Plans & Programs

Prepared by: Rich Kleinheinz

Subject: URET Direct to Fix Problem and Work Around

---

A problem has been uncovered in the URET direct-to-fix pick list that reroutes an aircraft off his filed route when traversing Canadian airspace. A controller in ZID issued direct YWG to an aircraft bound for PANC. The filed route of flight was J89.YWG.J515.YXE.J576.YWV. NCA11.LEPET.J515.FAI..PANC. When the controller used the URET to input direct YWG, URET did not recognize NCA11. URET skipped over that part and rejoined the route on J515 after LEPET. When the information was passed to Canada, the new route (YWG.J515.FAI..PANC) was coordinated. The aircraft was in fact on the filed route, which put him about 50 miles north of the expected route in non-radar airspace. See Figure 1.

The problem occurred when an amendment was made direct to a fix that is on an airway that is repeated in the field 10 route. Also there are international fixes and/or airways prior to the last occurrence of the repeated airway that are unrecognized. URET does not handle this case correctly and drops route elements between the first and second repeated airway.

Lockheed-Martin is aware of the problem and is working on a fix.

Until further advised, **when using URET** to amend a flight that goes outside the U.S., restrict the choice of "direct to" fix to no further than the last known fix in the U.S. In the example above, when the route menu is brought up, the choices for "direct to" show "DLH" is the last known U.S. fix. A HOST route amendment or 6-7-10 amendment can be used to clear the aircraft further direct down route.

This problem also exists in domestic airspace when the route contains airway segments that are separate but repeated in the field 10 route. The domestic problem will be fixed with the next upgrade of URET, due on May 24. Until then exercise caution when using URET to amend routes to points outside of Cleveland Center, or use the HOST route amendment or 6-7-10 amendment to enter the route.


FAI
J515
LEPET
NCA11
YQU
J576
YWV
J515
YXE
YEG
J515
YWG
URET Inserted and Coordinated Route
Not To Scale

Figure 1.