IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 07-272C<br>Judge Emily C. Hewitt |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(h)(1) of the Rules of this Court, plaintiffs respectfully submit the following proposed findings of uncontroverted facts in support of plaintiffs' motion for summary judgment and in opposition to defendant's motion to dismiss and motion for summary judgment.

A. FAA Is Aware That It Must Comply With Federal Law

1. FAA's personnel handbook acknowledges that "[w]henever legislative, regulatory, or other authoritative changes invalidate any portion of this handbook, that portion is voided automatically." FAA Pay Order p.1 (Plf. App. 94).[1] FAA's Personnel Management System also reveals that FAA is aware that it is not covered by the relevant provisions of Title V. Personnel Management System, Sections II and III (Plf. App. 41-42) (Section 5543 of Title V not listed in section of "Applicable Statutes"; conceding that "Congress did not include Chapter 71 of Title 5 . . . in the list of section that will continue to apply to FAA's new personnel management system.")

[1] Plaintiff's Appendix, submitted in opposition to Defendants' Partial Motion to Dismiss and Partial Motion for Summary Judgment and in support of Plaintiffs' Cross-Motion for Partial Summary Judgment shall hereinafter be referred to as, "Plf. App. ___." In addition, due to the voluminous nature of the document "FAA Pay Order," plaintiffs submit only the relevant portions of the document, but can provide the document in its entirety at the Court's request.

B. FAA Provides Compensatory Time for Hours Worked in Excess of 40

2. FAA provides plaintiffs with compensatory time for hours worked in excess of plaintiffs' required 40 hours of work per week. FAA Pay Order pp. 9-10 (Plf. App. 95-96)(authorizing the payment of compensatory time for hours worked in excess of 40 hours per workweek).

3. Plaintiffs receive compensatory time at the straight rate, not the time and one-half rate of pay. Instead, plaintiffs receive compensatory time for hours worked in excess of forty (40) hours per week at the rate of "one hour for one hour of overtime work." FAA Pay Order p. 10 (Plf. App. 96) (employees receive compensatory time at a rate of "one hour for one hour of overtime work.").

C. FAA Also Provides "Credit Hours" for Hours Worked in Excess of 40 Hours Per Week

4. FAA considers "credit hours" to be "non-overtime hours" worked by plaintiffs with Flexible Work Schedules Yet FAA provides "Credit Hours" for hours worked in excess of these plaintiffs' required 40 hours of work per week. Bukovsky decl. ¶6 (Plf. App. 8); Def. App. 14.

5. To receive credit for overtime hours that result in accrual of credit hours, plaintiffs must obtain prior management approval. Bukovsky decl. ¶7 (Plf. App. 8); Def. App. 20 ("Credit hours may be earned, with management approval"))

6. "Credit hours" may be "used" by an employee for paid time off. Def. App. 14 ("credit hours" are accrued based on hours worked and may be used upon request to "substitute credit hours for approved annual leave"); Def. App. 20 ("Credit hours use is subject to management approval, as with any other form of leave").

7. "Credit hours" are not given at a cash rate of time and one-half but are instead provided at the straight rate of pay and any "credit hours" accrued in excess of 24 hours are forfeited. Def. App. 14 ("credit hours" are provided "at [the employee's] current rate of basic pay" and "any balances in excess of twenty-four (24) hours shall continue to have no cash value"); Def. App. 20 ("Credit hours in excess of the [24 hour] maximum carryover are forefeited"); Def. App. 21 ("Employees receive lump-sum payment for the 24 hour maximum of credit hours when they leave the agency. The payment is made at the employee's current rate of pay at the time that payment is made").

8. Prior to September 3, 2006, the FAA did not give bargaining unit members any cash value for accrued credit hours, nor was there a cap on the number of credit hours an employee could accrue. (Krasner decl. ¶16)(Plf. App. 16).

9. By September 3, 2006, many FAA employees, including plaintiffs, had accrued in excess of 1,000 credit hours. (Krasner decl. ¶17)(Plf. App. 16). FAA was aware of potential legal liability for its employees' accrual of credit hours. *Id*.

10. Subsequent to September 3, 2006, FAA implemented a cap of 24 accrued credit hours whereby employees who had already accrued credit hours in excess of 24 hours were required to use all excess credit hours until the accrued hours level reached 24 hours. Only when their accrued credit hours dipped below 24 accrued credit hours were employees allowed to recommence accrual of credit hours. (Krasner decl. ¶18)(Plf. App. 16-17).

D. <u>Plaintiffs' Performance of Off-the-Clock Work</u>

11. The Cru-X/ART system is a time-keeping software that plaintiffs log-in and out of each workday. Plaintiffs sign-in and out of Cru-X/ART on a computer located at their workplace. Robicheau decl. ¶7 (Plf. App. 26).

12. The Cru-X/ART system was not in effect in all FAA facilities throughout the period of May 2004 through present. Def. Br. at 6[2] (Cru-X/ART was started at some facilities "as early as November 2004" but "implementation was not completed at all facilities until August 2005").

13. Prior to the implementation of the Cru-X/ART system, plaintiffs' hours of work were recorded manually. Bukovsky decl. ¶¶21, 29 (Plf. App. 9, 11); Savasta decl. ¶ 16 (Plf. App. 32); Peterson decl. ¶ 26 (Plf. App. 23).

14. When plaintiffs' hours of work were recorded manually, plaintiffs performed job duties prior to and after their scheduled shifts for which they were never compensated. Bukovsky decl. ¶¶ 29-31 (Plf. App. 11); Savasta decl. ¶¶ 17-18 (Plf. App. 32-33 ); Peterson decl. ¶¶ 26-27 (Plf. App. 23 ).

15. Plaintiffs perform job duties prior to signing on to the Cru-X/ART system. Savasta decl. ¶¶ 7-8, 15 (Plf. App. 31-32); Savasta decl. attach. (Plf. App. 35).

16. Plaintiffs are not compensated for performing job duties prior to signing on to the Cru-X/ART system. Savasta decl. ¶ 9 (Plf. App. 31); Savasta decl. attach. (Plf. App. 35).

17. Plaintiffs perform job duties after signing on to the Cru-X/ART system, but before their paid work time begins. Bukovsky decl. ¶¶ 24, 31 (Plf. App. 10-11 ); Savasta decl. ¶ 9 (Plf. App. 31); Peterson decl. ¶¶ 19-22 (Plf. App. 22).

18. Plaintiffs are not compensated for performing job duties when they sign on to the Cru-X/ART system prior to the start of their paid time. Bukovsky decl. ¶ 31 (Plf. App. 11 ); Savasta decl. ¶ 8 (Plf. App. 31); Peterson decl. ¶¶ 19-22 (Plf. App. 22).

---

[2] References to Defendant's Partial Motion to Dismiss and Partial Motion for Summary Judgment shall hereinafter be referred to as, "Def. Br. __."

19. Plaintiffs perform job duties after signing off from the Cru-X/ART system. Bukovsky decl. ¶ 27 (Plf. App. 10 ); Savasta decl. ¶¶ 12-15 (Plf. App. 32); Savasta decl. attach. (Plf. App. 35).

20. Plaintiffs are not compensated for performing job duties after signing off from the Cru-X/ART system. Bukovsky decl. ¶ 27 (Plf. App. 10); Savasta decl. ¶ 12-15 (Plf. App. 32); Savasta decl. attach. (Plf. App. 35); Robicheau decl. ¶¶ 13, 15 (Plf. App. 27-28).

21. Plaintiffs spend over 10 minutes performing these pre- and post-shift activities per day. Bukovsky decl. ¶ 32 (Plf. App. 11 ); Peterson decl. ¶ 20 (Plf. App. 22).

22. As a regular practice, plaintiffs sign in for their shifts within 15 minutes prior to the scheduled start of their shift. When they do so, the Cru-X/ART system allows them to (1) manually change the time on Cru-X/ART to indicated the scheduled start of the shift; (2) change the shift start and end time if the plaintiffs is allowed to work a flex schedule; or (3) indicate that the time is Time Outside of Shift ("TOS"). Robicheau decl.¶¶ 9-10 (Plf. App. 26-27); Bukovsky decl. ¶ 24 (Plf. App. 10); Savasta decl. ¶ 9 (Plf. App. 31).

23. When plaintiffs sign into Cru-X/ART within 15 minutes before the scheduled start time of their shift, they manually change the time indicated on Cru-X/ART to reflect the scheduled start time of the shift. Robicheau decl. ¶¶ 9-10 (Plf. App. 26-27); Bukovsky decl. ¶ 24 (Plf. App. 10); Savasta decl. ¶ 9 (Plf. App. 31); Plans and Programs Bulletin (Plf. App. 40).

24. For example, if an employee signs in at 6:16 a.m. for a 6:30 a.m. shift, the Cru-X/ART screen will show "6:16" as the time of sign-in. However, Cru-X/ART does not automatically use her actual time, 6:16 a.m., as the "start time" of her work hours. Instead, Cru-X/ART prompts her to manually enter a "start time." If the actual time of her sign-in precedes her scheduled shift-start time, she will enter her scheduled start time as the recorded "start time".

25. When plaintiffs sign into Cru-X/ART within 15 minutes before the scheduled start time of their shift and manually change the time indicated on Cru-X/ART to reflect the scheduled start time of the shift, plaintiffs are not compensated for any job duties performed during those 15 minutes. Bukovsky decl. ¶ 22, 24, 31 (Plf. App. 9-11); Savasta decl. ¶ 9 (Plf. App. 31); Robicheau decl. ¶13-15 (Plf. App. 27-28).

26. FAA allows plaintiffs to manually change the time indicated on Cru-X/ART to reflect the scheduled start time of the shift even if the actual time is up to 15 minutes prior to the scheduled start time of the shift. Plans & Programs Bulletin (Plf. App. 40)("[p]ersonnel must sign on at their scheduled shift time, or up to 15 minutes before their regular shift time"); FAA Order 7210.3U, § 2-2 (Plf. App. 76-87)("[s]ign in, using the assigned shift start time, may occur up to 15 minutes before an employee's assigned shift. . . . [overtime] time at the beginning of an assigned shift must receive approval . . . prior to . . . recording it into Cru-X/ART"); Bukovsky decl. ¶ 24 (Plf. App. 10).

27. Plaintiffs perform the following pre- and post-shift activities without compensation:

a. replace the tape recorder; turn on all machines, radars and computers (including Cru-X/ART), close out logs, give verbal broadcast of termination of services, contact other FAA facilities regarding transfer of control, "[e]nsure the appearance of the operational quarters", set thermostat, secure windows and doors, turn off tape recorders, machines, radars, computers and lights (Savasta decl. ¶¶ 7, 12, 15) (Plf. App. 31-32);

b. review: FAA mandatory review binders and other briefing items (Peterson decl. ¶19) (Plf. App. 22); Hot Binder (Plf. App. 66);

c. review "Hot Boards," "Read and Initial" documents, current weather, runway configuration, equipment condition/configuration and other information (Roanoke ROA 7110.1A) (Plf. App. 39);

d. review FAA training memoranda (FAA training memoranda) (Plf. App. 67-75); Bukovsky decl. ¶22 (Plf. App. 9);

e. exchange air-traffic control information with the person being relieved (Peterson decl. ¶19) (Plf. App. 22) (Bukovsky decl. ¶22) (Plf. App. 9 ); (FAA Order 7210.3U, § 2-2) ("[t]he [Air Traffic Control] specialist being relieved shall be responsible for ensureing that any pertinent status information of which he/she is aware is relayed to the relieving specialist . . . . [and] [t]he specialists engaged in apposition relief shall conduct the relief process at the position being relieved . . .")(Plf. App. 76-87);

f. check in with supervisor (Bukovsky decl. ¶22) (Plf. App. 9 ); (FAA Order 7210.3U, § 2-2) (Air Traffic Managers shall "[e]nsure that all employees . . . are thoroughly briefed on [procedure/practice] change[s] prior to performing their duties.") (Plf. App. 11 )

g. use the radar scope (Bukovsky decl. ¶33) (Plf. App. 11-12); Robicheau decl. ¶ 13 (Plf. App. 27).

28. Plaintiffs have logged out of Cru-X/ART up to 15 minutes prior to the scheduled end of their shifts. However, when they do so, plaintiffs are required to remain on premises until the scheduled end of their shifts in case FAA needs them to cover a post. Plaintiffs are subject to

discipline for leaving the work premises prior to the scheduled end of their shifts, even if they have logged out of the Cru-X/ART system. Bukovsky decl. ¶ 28 (Plf. App. 10-11 )

E. <u>FAA's Implementation of Bidding Procedures For Work Schedules and Annual Leave</u>

29. Subsequent to September 3, 2006, FAA unilaterally (without negotiation with the union) implemented bidding procedures plaintiffs' work schedules and vacation time. (Krasner decl. ¶13)(Plf. App. 16).

30. Plaintiffs are scheduled to bid for their work and vacation time schedules while off-duty. Bukovsky decl. ¶¶ 11-15 (Plf. App. 8-9 ); Adcock decl. ¶¶ 6-9 (Plf. App. 2-3, 5-6) (actual bidding schedules); Peterson decl. ¶¶ 11-12 (Plf. App. 2021).

31. Plaintiffs spend over 10 minutes per day bidding while off-duty. Adcock decl. ¶¶ 8-9 (Plf. App. 2, 5-6)(bidding schedule showing 3-hour bidding windows on specific dates); FAA Memorandum, Subject: Vacation Leave (Plf. App. 36-38)(bidding schedule showing 30-minute bidding windows on specific dates).

32. Plaintiffs spend over 1 hour per year bidding while off-duty. Bukovsky decl. ¶ 16-18 (Plf. App. 9 ); Adcock decl. ¶¶ 8-9 (Plf. App. 2, 5-6); Peterson decl. ¶ 14-16 (Plf. App. 21).

33. Plaintiffs bid over the course of several days per year. Adcock decl. ¶ 8-9 (Plf. App. 2, 5-6).

34. Plaintiffs are not compensated for time spent bidding while off-duty. Bukovsky decl. ¶ 15 (Plf. App. 8 ); Adcock decl. ¶ 10 (Plf. App. 3); Peterson decl. ¶¶ 13-16 (Plf. App. 21).

35. Plaintiffs do not use proxies for bidding. Peterson decl. ¶ 13 (Plf. App. 21).

36. FAA is aware of and/or schedules the times during which plaintiffs engage in bidding while off-duty. Bukovsky decl. ¶¶ 12-15 (Plf. App. 8 ); Adcock decl. ¶¶ 6-8 (Plf. App. 2, 5-6); Peterson decl. ¶ 12 (Plf. App. 21).

F. Collective Bargaining Agreement Status

37. NATCA and FAA commenced negotiations ("the negotiations") in July 2005 regarding a successor agreement to the 2003 Extension Agreement. Those negotiations continued through early April 2006. (Krasner decl. ¶6)(Plf. App. 15) On or about April 5, 2006 FAA declared an impasse of the negotiations. (Krasner decl. ¶8)(Plf. App. 15). On June 5, 2006, FAA notified NATCA of the FAA's intention to implement its last offer. On September 3, 2006, FAA unilaterally implemented its last offer. Thus, since September 3, 2006 FAA has operated unilaterally and not subject to a collective bargaining agreement. (Krasner decl. ¶9)(Plf. App. 15). There is no 2006 bargaining agreement between NATCA and FAA. (Krasner decl. ¶10)(Plf. App. 15).

Respectfully submitted,

Dated: December 17, 2007

/s/ Gregory K. McGillivary
Gregory K. McGillivary
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Counsel of Record

Lauren Schwartzreich
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Of Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiffs' Proposed Findings of Uncontroverted Facts was electronically filed on this 17th day of December with the Clerk of the Court using the CM/ECF System which will send notification of such filing to defendant's attorney:

Hillary A. Stern
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
(202) 616-0177 (telephone)
(202) 305-7643 (facsimile)

/s/ Gregory K. McGillivary
Gregory K. McGillivary