IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-272C |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND
PARTIAL MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HILLARY A. STERN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0177
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

EDEN BROWN GAINES
ELIZABETH HEAD
MICHAEL DOHERTY
Federal Aviation Administration
600 Independence Ave., S.W.
Suite 1E-100
Washington, D.C. 20591
Tele: (202) 385-8254
Facsimile: (202) 493-5085

March 12, 2008

**TABLE OF CONTENTS**

**PAGE(S)**

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Count II Of Plaintiffs' Complaint Should Be Dismissed Because The FAA Has Authority To Grant Plaintiffs Compensatory Time And Credit Hours . . . . . 4

A. Title 49 U.S.C. §§ 40122(g)(1) and 106(l) Authorize The FAA To Provide Compensatory Time And Credit Hours . 4

1. Prior To 1995, FAA Had Authority To Grant Compensatory Time And Credit Hours. . . . . . . . . 4

2. Title 49 §§ 40122(g)(1) and 106(l) Gave The FAA More, Not Less, Flexibility Than It Had Before . . . 6

3. The FAA's Personnel Management System Authorizes The Granting Of Compensatory Time And Credit Hours . 8

4. The FAA Properly Interpreted Its Authority Pursuant To Title 49 As Permitting It To Grant Compensatory Time And Credit Hours . . . . . . . . . . . . . . . . 12

B. Alternatively, The FAA Has Authority Pursuant Pursuant To 5 C.F.R. § 551.531 To Grant Plaintiffs Compensatory Time In Lieu Of FLSA Overtime . . . . . . . . 14

C. Plaintiffs Are Not Entitled To Be Paid FLSA Overtime Pay For Extra Hours Worked Under In A FWS As These Hours Are, By Definition, Not Overtime Hours . . . . . . . 17

III. Plaintiffs' Count III Claims Concerning Their Alleged Lack of Compensation For Pre- and Post-Shift Work Are Without Merit. . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV. Count IV Should Be Dismissed Because Any Off-Duty Time Spent By Plaintiffs Bidding On Work And Leave Schedules Is Performed Primarily For The Benefit Of The Employee, Thus, It Is Not Work And, In Any Event It Is De Minimis . . 23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Alvarez v. IBP, Incl,
546 U.S. 21 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 26

Anderson v. Mt. Clemens Pottery Co.,
328 U.S. 680 (1946) . . . . . . . . . . . . . . . . . . . . . . . . 23

Brodowy v. United States,
482 F.3d 1370 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . 11

Bull v. United States,
68 Fed. Cl. 212 (2005) . . . . . . . . . . . . . . . . . . . . . . 24

Chevron, U.S.A. v. Natural Resources Defense Council,
104 U.S. 2778 (1984) . . . . . . . . . . . . . . . . . . . . . . . 12

Cooley v. United States,
1982 WL 19290 (Ct. Cl. 1982) . . . . . . . . . . . . . . . . . . . 27

Crandon v. United States,
494 U.S. 152 (1990) . . . . . . . . . . . . . . . . . . . . . . . . 13

de minimis. Anderson v. Mt. Clemens Pottery Co.,
328 U.S. 680 (1946) . . . . . . . . . . . . . . . . . . . . . . . . 24

Doe v. United States,
74 Fed. Cl. 592 (2007) . . . . . . . . . . . . . . . . . . . . . . 17

Doe v. United States,
513 F.3d 1348 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . passim

Haggar Co., v. Helvering,
308 U.S. 389, 394 (1940) . . . . . . . . . . . . . . . . . . . . . 12

Ingersoll-Rand Co. V. McClendon,
498 U.S. 133 (1990) . . . . . . . . . . . . . . . . . . . . . . . . 12

NATCA v. FSIP,
437 F.3d 1256 (D.C.Cir. 2006) . . . . . . . . . . . . . . . . . . . 10

NLRB v. Lion Oil Co.,,
352 U.S. 282 (1957) . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES AND REGULATIONS**


5 U.S.C. § 2105(a) . . . . . . . . . . . . . . . . . . . . . . . 15

5 U.S.C. § 5543 . . . . . . . . . . . . . . . . . . . . . . . passim

5 U.S.C. § 5548 . . . . . . . . . . . . . . . . . . . . . . . 4, 6

5 U.S.C. §§ 6120 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6121 . . . . . . . . . . . . . . . . . . . . . . 5,6

5 U.S.C. §§ 6122 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6123 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6124 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6125 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6126 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6127 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6128 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6129 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6130 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6131 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6132 . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. §§ 6133 . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 203(g) . . . . . . . . . . . . . . . . . . . . . . . 19

29 U.S.C. 204(f) . . . . . . . . . . . . . . . . . . . . . . passim

29 U.S.C. § 207(o) . . . . . . . . . . . . . . . . . . . . . . . 17

49 U.S.C. § 106(l) . . . . . . . . . . . . . . . . . . . . 8, 13, 18

49 U.S.C. § 40122 . . . . . . . . . . . . . . . . . . . . . . 11, 13

49 U.S.C. § 40122(a)(1) . . . . . . . . . . . . . . . . . . . . . 10

49 U.S.C. §§ 40122(g)(1) . . . . . . . . . . . . . . . . . . passim

5 C.F.R. § 551.531 . . . . . . . . . . . . . . . . . . . . . passim

29 C.F.R. § 553.20 . . . . . . . . . . . . . . . . . . . . . . 17

29 C.F.R. § 785.11 . . . . . . . . . . . . . . . . . . . . . passim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-272C |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S PARTIAL MOTION TO DISMISS
AND PARTIAL MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

In our opening motion, we established that the Federal Aviation Administration ("FAA" or "agency") has authority pursuant to 49 U.S.C. §§ 40122(g)(1) and 106(l) and the FAA's implementing regulations, to grant plaintiffs compensatory time in lieu of Fair Labor Standards Act ("FLSA") overtime pay and to provide credit hours as part of a flexible work schedule ("FWS"). We demonstrated that sections 40122(g)(1) and 106(l), which authorized the FAA to create a personnel system for its employees in place of the title 5 statutes formerly applicable to them and to fix their compensation and benefits, reflected Congress's explicitly stated intention to give the FAA more, not less, flexibility than it had under title 5, particularly in the area of compensation and benefits. Thus, sections 40122(g)(1) and 106(l) clearly authorized the FAA, at a minimum, to continue flexible compensation practices it had utilized in the past, such as the granting of compensatory time and credit

hours.

Alternatively, we demonstrated that the FAA has authority to grant compensatory time pursuant to regulations promulgated by the Office of Personnel Management ("OPM") in accordance with the broad authority granted to it by Congress in 29 U.S.C. 204(f). Pursuant to section 204(f), OPM has authority to promulgate regulations implementing the FLSA for all Federal employees. As plaintiffs are Federal employees, OPM's regulation at 5 C.F.R. § 551.531, which provides for the granting of compensatory time in lieu of FLSA overtime pay is applicable to them.

In addition, we demonstrated that plaintiffs' claims that they were improperly compensated with credit hours for overtime work are based upon a faulty premise. It is well-established that credit hours earned in the context of a flexible work schedule do not constitute overtime hours for purposes of the FLSA. Doe v. United States, 513 F.3d 1348 (Fed. Cir. 2008).

Finally, we established that the FAA did not fail to compensate plaintiffs for pre- and post-shift work performed by them and that any bidding for vacation schedules performed outside of plaintiffs' regularly scheduled shifts was de minimis.

In their response to our motion, plaintiffs argue that by removing FAA employees from the provisions of 5 U.S.C. § 5543, Congress revealed its "intent to preserve FAA employees' FLSA rights" and to revoke the FAA's authority to pay compensatory time

in lieu of FLSA overtime to non-exempt employees who request it or to grant credit hours. Pl. Opp. ___.[1] However, plaintiffs cite to nothing in the statutory language or legislative history to support this view. And Congress's expressly stated intent to give the FAA more, rather than less, flexibility in terms of managing and compensating its employees directly rebuts plaintiffs' position.

Plaintiffs also assert that 5 C.F.R. § 551.531 does not apply to FAA employees because this regulation was promulgated "solely" pursuant to the authority contained in 5 U.S.C. § 5543, one of the title 5 provisions which is no longer applicable to FAA employees. However, in Doe v. United States, supra at 1356, the court of appeals stated that section 551.531 was promulgated pursuant to OPM's authority under 29 U.S.C. § 204(f). As noted, OPM's authority under section 204(f) extends to all Federal employees, a category that includes plaintiffs.

Finally, plaintiffs purport to introduce evidence demonstrating that they do perform uncompensated pre- and post-shift duties and that time spent bidding on vacation schedules is more than de

[1]"Pl. Opp. ___" is a citation to plaintiffs' motion for partial summary judgment and opposition to defendant's motion for summary judgment and motion to dismiss. "Pl. App. __" is a citation to the appendix to plaintiffs' motion. "Def. App. __" is a citation to the appendix attached to our partial motion to dismiss and partial motion for summary judgment. "Def. Supp. App. ___" is a citation to the appendix attached to defendant's reply to plaintiffs' opposition to defendant's motion for summary judgment and motion to dismiss.

miminis. However, the declarations submitted by plaintiffs in support of these propositions, fail to establish the facts critical to defeating our motion for summary judgment as to these issues.

## II. Count II Of Plaintiffs' Complaint Should Be Dismissed Because The FAA Has Authority To Grant Plaintiffs Compensatory Time And Credit Hours

### A. Title 49 U.S.C. §§ 40122(g)(1) and 106(l) Authorize The FAA To Provide Compensatory Time And Credit Hours

In our opening motion, we briefly reviewed the history of Congress's treatment of FAA employees, including its most recent effort to give the FAA broad flexibility and broad authority in the management of its personnel. In light of plaintiffs' response to our motion, a somewhat more detailed discussion of the relevant legislation is in order.

#### 1. Prior To 1995, FAA Had Authority To Grant Compensatory Time And Credit Hours.

It is undisputed that prior to 1995, FAA employees, including plaintiffs were covered by the provisions of title 5 of the United States Code, including section 5543 pertaining to the granting of compensatory time. They were also covered by the provisions of the FLSA set forth in title 29. In these respects, they were like most other Federal employees.

OPM has authority, pursuant to 5 U.S.C. § 5548, to promulgate regulations implementing section 5543, and also has authority, pursuant to 29 U.S.C. § 204(f), to promulgate regulations implementing the FLSA for Federal employees, including plaintiffs.

OPM's regulations implementing title 5 and the FLSA are set forth in Chapter 5 of the Code of Federal Regulations. It is undisputed that, prior to 1995, OPM's regulations implementing title 5 and the FLSA applied to plaintiffs.

In 1982, Congress amended title 5 by enacting the Federal Employees Flexible and Compressed Work Schedules Act, codified at 5 U.S.C. §§ 6120-6133. The Act authorized agencies to establish programs that allow for the use of flexible work schedules in which employees are granted credit hours for working during certain designated hours. Section 6121(6) specifically states that credit hours are not to be considered overtime hours. At the time it was enacted, FAA's employees were covered by this Act.

In 1990, Congress again amended title 5 when it enacted the Federal Employees Pay Comparability Act ("FEPCA"). Among other things, FEPCA amended 5 U.S.C. § 5543. That section had long permitted Federal agencies, including the FAA, to grant compensatory time to employees in lieu of Federal Employees Compensation Act ("FECA") overtime. However, if an employee earned both FECA overtime and FLSA overtime, the employing agency was required to calculate the compensation due under each statute and pay the employee the higher of the two.

FEPCA eliminated the necessity of performing this dual calculation. It also allowed agencies to grant compensatory time to employees who requested it regardless of whether they had earned

FECA overtime or FLSA overtime or both. At the time of its enactment, FEPCA covered FAA employees.

OPM promulgated regulations implementing the procedures set forth in FEPCA. In doing so, OPM cited to its promulgating authority set forth in 29 U.S.C. § 204(f). It did not cite to its promulgating authority set forth in 5 U.S.C. § 5548. Plaintiffs concede that, when promulgated, these OPM regulations, set forth at 5 C.F.R. § 551.531, were applicable to FAA employees along with the rest of the Federal workforce.

2. Title 49 §§ 40122(g)(1) and 106(l) Gave The FAA More, Not Less, Flexibility Than It Had Before

In 1995, Congress enacted the Department of Transportation and Related Agencies Appropriation Act of 1996 ("DOT Appropriations Act"), Pub. L. No. 104-50, 109 Stat. 436 (Nov. 15, 1995). This act exempted the Agency from most of title 5 and, in section 347(a), provided that the Agency:

> In consultation with the employees of the Administration and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of title 5 and other Federal personnel laws, the Administrator shall develop and implement a personnel management system . . . that addresses the unique demands of the agency's workforce. Such a new system shall, at a minimum, provide for <u>greater flexibility in the hiring, training, compensation and location of personnel</u>.

Pub. L. No. 104-50, § 347(a), codified at 49 U.S.C. § 40122(g)(1) (emphasis added). As plaintiffs note, among the provisions of title 5 from which plaintiffs were excluded, were 5 U.S.C. §§ 5543 and 6121.

Subsequently, in October 1996, Congress passed the Air Traffic Management System Performance Improvement Act of 1996, Title II (Improvement Act), as part of the Federal Aviation Reauthorization Act of 1996. Pub. L. No. 104-264, 110 Stat. 3213 (Oct. 9, 1996). As set forth in section 221 of the Improvement Act, Congress recognized that the FAA is an agency that performs a unique function and is one of the few non-defense government agencies that operate 24 hours a day, 365 days of the year. Congress further acknowledged that the national air transportation system faced “significant problems without significant changes,” and improving air traffic management and safety was of critical national importance. Id. § 221. In response, Congress authorized the FAA to change its personnel and procurement systems to ensure that it had the ability to keep pace with new technology and to match resources with its personnel needs. Id.

The Improvement Act gave the FAA Administrator broad authority to fashion a new personnel management system that would grant increased flexibility in personnel matters, including the authority to set pay for employees. Section 225 of the Act provided:

> Except as provided in subsections (a) and (g) of section 40122, the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122 (a), nor shall the Administrator be

> bound by any requirement to establish such compensation or benefits at particular levels.

Pub. L. No. 104-264, § 225, codified at 49 U.S.C. § 106(l).

As the statutory language makes clear, when Congress excluded the FAA from most of the personnel rules in title 5, it intended for the Agency to replace them with regulations promulgated as part of its newly created personnel management system. Congress did not expressly or implicitly indicate any intention to limit the FAA's authority to pay compensatory time in lieu of FLSA overtime or to issue credit hours, authorities the FAA had possessed since 1990 and 1982, respectively.

Instead, Congress expressed its intention to give the FAA more flexibility in administering its personnel management system. This greater flexibility logically must have included, at a minimum, the ability to continue flexible compensation practices the FAA had enjoyed prior to 1996.

3. The FAA's Personnel Management System Authorizes The Granting Of Compensatory Time And Credit Hours

The agency responded to the new legislation by promulgating a new personnel system, known as the FAA Personnel Management System ("PMS"), effective April 1, 1996. The PMS replaced those portions of title 5 from which the FAA was excluded. For example, Chapter II, Section 7(a) of the PMS states:

> Effective April 1, 1996, all authority to approve payments to FAA employees under all provisions of the FEPCA, shall be vested solely in the Administrator. This authority may be

> redelegated by the Administrator. (See Order 3550.15)

However, because the drafters of the PMS were aware that it might take some time to produce a PMS sufficiently comprehensive to address all of the matters previously covered by the provisions of title 5 from which FAA employees had been excluded, the PMS explicitly provided that existing personnel policies and procedures not affirmatively changed by the PMS remained the same. FAA National Personnel Reform Implementation Bulletin ("PRIB") No. 01, Personnel Reform Implementation System (April 1, 1996) ("All current systems and procedures remain in effect until superseded by a PRIB.")

Prior to 1996, the FAA's compensatory time policies were set forth in FAA Order 3550.10, Pay Administration, as modified by FAA Order 3550.15. In 1996, through PRIB #01, the FAA adopted the 1990 version of FAA Order 3550.15 as a part of its PMS. Section 171(e) of FAA Order 3550.15 states: "Nonexempt employees (other than prevailing rate employees) can be granted compensatory time off for irregular or scheduled overtime."

The PMS also provides for employees to earn credit hours within the context of a flexible work schedule. The FAA's credit hours policy is contained in Section 13 of Human Resource Policy Manual (HRPM) LWS 8.15, Alternative Work Schedules: "Credit hours are only available under a Flexible Work Schedule. Credit hours are hours that employees voluntarily elect to work in excess of their basic

work requirements, subject to manager's approval. Credit hours are not used on compressed or traditional work schedules . . . Credit hours are not considered overtime hours and managers may not direct employees to work credit hours.”

The FAA’s policies with respect to both compensatory time and credit hours as they apply to plaintiffs in particular are set out in great detail and specificity in the 2006 collective bargaining agreement between the FAA the National Air Traffic Controllers Association (NATCA), the union representing plaintiffs. Pursuant to 49 U.S.C. § 40122(a)(1), negotiated bargaining agreements are an approved method for developing and making changes to the PMS.[2]

Contrary to plaintiffs’ contention, the 2006 collective bargaining agreement is valid and binding.[3] Article 38, Section 9 of the 2006 CBA addresses compensatory time as follows:

At the request of the employee, the Agency may grant

---

[2]“ In developing and making changes to the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996, the Administrator shall negotiate with the exclusive bargaining representatives of employees of the Administration..." 49 U.S.C. § 40122(a)(1).

[3] The Federal Labor Relations Authority has determined that the FAA’s actions relating to the negotiation and implementation of the 2006 contract were lawful. Pursuant to the U.S. Court of Appeals for the District of Columbia Circuit, the FLRA is the proper forum for adjudicating disputes of this nature. NATCA v. FSIP, 437 F.3d 1256, 1264-66 (D.C.Cir. 2006). Regardless of Plaintiffs’ protestations about “ratification,” the 2006 NATCA/FAA contract is legal and binding upon the Union and the Agency. See Decl. Miniace para. 4-7, Def. Supp. App. 38-39.

> compensatory time off from an employee's tour of duty instead of payment for an equal amount of irregular or occasional overtime work. At the request of an employee, the Agency may grant compensatory time off from an employee's basic work requirement under a flexible work schedule instead of payment for an equal amount of overtime work, whether or not irregular or occasional in nature.[4]

The CBA also speaks to credit hours: "'Credit hours' are non-overtime hours worked under an FWS which are in excess of an employee's basic work requirement and which are worked at the election of the employee after approval by the Agency." 2006 NATCA/FAA CBA, Art. 34, § 7.[5]

The United States Court of Appeals for the Federal Circuit has endorsed the FAA's retention of personnel rules in existence prior to its conversion to the PMS in 1996. In Brodowy v. United States, 482 F.3d 1370 (Fed. Cir. 2007), the court of appeals acknowledged that the portions of title 5 containing the General Schedule (GS) pay system were no longer applicable to the FAA. Id. at 1375, citing 49 U.S.C. § 40122. The court approved, however, the FAA's decision to continue compensating employees pursuant to the GS system in accordance with regulations contained in its new PMS.

4. The FAA Properly Interpreted Its Authority Pursuant To Title 49 As Permitting It To Grant Compensatory Time And Credit Hours

The FAA has interpreted title 49's language as granting it

---

4 The 2003 CBA contained an identical provision. See 2003 NATCA/FAA CBA Art. 38, § 7. Def. App. ___.

5 The 2003 CBA contained a similar provision. Def. App. ___.

authority to promulgate regulations providing for the granting of compensatory time in lieu of FLSA overtime pay as well as credit hours for employees who work a FWS as indicated by the adoption of policies permitting both in the FAA PMS. When a court reviews an agency's construction of a statute the agency administers, the court must determine: whether the intent of Congress is clear from the statute itself, and, if not, whether the agency's interpretation is a permissible construction of the statute. Chevron, U.S.A. v. Natural Resources Defense Council, 104 U.S. 2778, 2781-82 (1984).

"If a court, employing traditional tools of statutory construction ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, 467 U.S. at 843 n. 9. "All statutes must be construed in the light of their purpose." Haggar Co., v. Helvering, 308 U.S. 389, 394 (1940).

To discern Congress' intent, it is appropriate to examine the explicit statutory language and the structure and purpose of the statute. Ingersoll-Rand Co. V. McClendon, 498 U.S. 133, 138 (1990). The Court should "find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purpose that Congress manifested." NLRB v. Lion Oil Co.,, 352 U.S. 282 (1957). Thus, it is proper to "look not only to the particular statutory language, but to the design of the statute as a whole and to its

object and policy." Crandon v. United States, 494 U.S. 152 (1990).

"When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges -- who have no constituency -- have a duty to respect legitimate policy choices made by those who do." Id. at 2782.

As noted above, when Congress authorized an overhaul of the FAA personnel system, it charged the FAA with developing and administering its own PMS. 49 U.S.C. §§ 40122 and 106(l). The language of these statutes clearly and unambiguously gave FAA the authority to "fix compensation."

Moreover, Congress plainly intended to provide the FAA with even greater flexibility in administering its personnel system than it had enjoyed before. In light of: 1) Congress's intent to grant the FAA greater flexibility; 2) the FAA's long-standing prior ability to grant compensatory time and issue credit hours; and 3) the absence of any indication that Congress intended to take away the FAA's ability to do either, it is clear that the FAA's interpretation of title 49 as permitting it to continue both of these practices in the context of its new PMS is reasonable.

In their response to our dispositive motion, plaintiffs assert

that Congress's decision to remove FAA employees from 5 U.S.C. § 5543 reveals "Congressional intent to preserve FAA employees' FLSA rights" and revoke the FAA's authority to grant its employees compensatory time. Pl. Opp. 30. However, they fail to cite to anything in either the statutory language or legislative history of title 49 to support this view. In light of Congress's expressly stated intent to give the FAA more, rather than less, flexibility in terms of managing and compensating its employees, plaintiffs' contrary position simply is without merit.

B. Alternatively, The FAA Has Authority Pursuant Pursuant To 5 C.F.R. § 551.531 To Grant Plaintiffs Compensatory Time In Lieu Of FLSA Overtime

In our opening brief, we established that, assuming the Court finds title 49 does not authorize the FAA to promulgate regulations allowing it to grant compensatory time and credit hours, the FAA still is authorized to grant compensatory time to plaintiffs pursuant to regulations promulgated by OPM and set forth at 5 C.F.R. § 551.531. We demonstrated that OPM was given broad authorization by Congress to promulgate regulations implementing the FLSA for all Federal employees, that FAA employees are Federal employees, and that OPM's regulation permitting agencies to grant compensatory time to Federal employees who request it is consistent with Congressional intent.

In their response, plaintiffs assert that the FAA may not rely upon section 551.531 because OPM's "sole source of authority for

promulgating that regulation is 5 U.S.C. § 5543." Pl. Opp. __. However, as our discussion of the history of FEPCA demonstrates, OPM promulgated section 551.531 pursuant to its authority as set forth in 29 U.S.C. § 204(f). Although Congress excluded FAA employees from most provisions of title 5, it did not exclude them from the FLSA, 29 U.S.C. § 204(f) or from OPM regulations implementing the FLSA.

In Doe v. United States, 513 F.3d 1348 (Fed. Cir. 2008), the court of appeals cited to 29 U.S.C. § 204(f) for the proposition that the FLSA delegates to OPM the task of determining how to apply the FLSA to non-exempt federal employees. The court expressly stated that OPM promulgated 5 C.F.R. § 551.531 "under the authority of that delegation" (i.e. the delegation contained in 29 U.S.C. 204(f)). Id. at 1359.

Section 204(f) authorizes OPM to make regulations implementing the FLSA for all Federal employees. Plaintiffs are Federal employees. 5 U.S.C. § 2105(a). Congress has never amended section 204(f) or limited OPM's authority to make regulations implementing the FLSA only for employees covered by title 5. Accordingly, plaintiffs' assertion that the FAA may not rely upon section 551.531 as authority to grant them compensatory time is without merit.

Plaintiffs contend that our interpretation of OPM's authority pursuant to 29 U.S.C. § 204(f) renders 5 U.S.C. § 5543 unnecessary. Pl. Opp. __. They argue that if OPM had always had authority to

promulgate regulations permitting Federal agencies to grant compensatory time to their employees in lieu of FLSA overtime pay pursuant to 29 U.S.C. § 204(f), there would have been no need for Congress to enact 5 U.S.C. § 5543.

Plaintiffs' contention is merely an alternate way of saying that the sole authority for OPM's promulgation of section 551.531 is 5 U.S.C. § 5543 rather than 29 U.S.C. § 204(f). We have already demonstrated that this argument is contrary to the court of appeals' decision in Doe, supra.

In addition, it is intellectually insupportable. The conclusion that section 551.531 was promulgated pursuant to OPM's authority under section 204(f) does not lead inescapably to a determination that section 5543 was a waste of Congress's time. Although OPM always had authority pursuant to section 204(f) to permit Federal agencies to grant compensatory time in lieu of FLSA overtime pay, it declined to exercise that authority until Congress amended 5 U.S.C. § 5543. Congress's action stripped OPM of its discretion to withhold this permission from Federal agencies.

Finally, plaintiffs assert that OPM regulations must be consistent with FLSA standards set by the Department of Labor for comparable employees in the private sector. Pl. Opp. _. Because employees in the private sector, save those explicitly excepted by statute, may not be granted compensatory time in lieu of overtime pay, plaintiffs argue that they, too, may not be granted

compensatory time. Id.

It is clear that OPM's regulations allowing compensatory time for Federal employees, including plaintiffs, meet the test of treating Federal employees the same as those non-Federal employees to whom they are most comparable. The category of non-Federal employees most closely comparable to Federal employees is comprised of employees of state and local governments. The FLSA and DOL's implementing regulations permit the granting of compensatory time for employees of state and local governments. 29 U.S.C. § 207(o); 29 C.F.R. § 553.20. OPM's regulation allowing the same treatment of Federal employees, including plaintiffs, is completely consistent with the FLSA and Congress's intent for Federal employees to be treated consistently with comparable non-Federal employees.

C. Plaintiffs Are Not Entitled To Be Paid FLSA Overtime Pay For Extra Hours Worked Under In A FWS As These Hours Are, By Definition, Not Overtime Hours

In our opening motion, we demonstrated that credit hours are hours worked under a FWS that are in excess of an employee's basic work week and are worked at the election of the employee after approval by the agency. We established that these excess hours are expressly defined as non-overtime hours and, therefore, the FLSA's provisions pertaining to overtime are irrelevant to credit hours earned pursuant to a flexible work schedule. We cited to this Court's decision Doe v. United States, 74 Fed. Cl. 592 (2007), for the proposition that credit hours are not overtime hours.

That portion of this Court's decision in Doe was adopted by the court of appeals. In particular, the court of appeals stated, "[w]ith respect to credit hours, we reject the appellants' argument because credit hours, by statutory definition, are not overtime hours." 513 F.3d 1348 at 1358.

Plaintiffs have not responded to our argument that credit hours are not overtime hours, apparently content to rest upon their argument that all hours in excess of 40 per week, even those earned within an FWS, require FLSA overtime compensation. As demonstrated above, the FAA regulations pertaining to credit hours were promulgated pursuant its reasonable interpretation of the authority set out in 49 U.S.C. § 106(l) and 42011 (g). As such, these regulations have the force and effect of law. Because credit hours are not overtime hours, the provisions of the FLSA are irrelevant to credit hours earned by plaintiffs.

## III. Plaintiffs' Count III Claims Concerning Their Alleged Lack of Compensation For Pre- and Post-Shift Work Are Without Merit.

In our opening motion, we demonstrated that the FAA's computerized time keeping system, known as the CRU-X/ART, is designed to prevent employees from being deprived of compensation for work performed before or after their scheduled shift. We explained that the system allows FAA employees to serve as their own time-keepers and to record time spent performing any assigned work even if it occurs before or after a scheduled shift.

The FLSA permits recovery for overtime work "suffered or permitted." 29 U.S.C. § 203(g). In order to recover pursuant to this statute, an employee must demonstrate not only that they performed work in excess of 40 hours per week but that their employer "knew or should have known" of the performance of that work. 29 C.F.R. § 785.11. Because the CRU-X/ART system makes plaintiffs responsible for their own time-keeping, the system reflects all work that the agency has "suffered or permitted."

Plaintiffs do not contest our assertion that they are responsible for signing onto the CRU-X/ART system. They also do not claim that they were not compensated for any time recorded by the system. Rather, they assert that they have submitted evidence "fully rebutting defendant's insinuation that plaintiffs did not perform off-the-clock work during the recovery period of this case." Pl. Opp. 35. Their evidence essentially consists of declarations by x plaintiffs attesting to their circumvention of FAA's policies.

The Cru-X/ART system allows an employee to sign on when they begin working and to sign out after they have completed work. Def. Supp. App. 3-5. If an employee chooses to hide the fact that they are performing work by performing it before signing onto the system, the system cannot prevent them from doing that. However, the hidden nature of the work prevent the employer from being "aware" that the work has been performed.

If an individual plaintiff performed work before or after their

scheduled shift prior to implementation of the cru-x art system, he or she should have notified her supervisor and requested compensation in the form of overtime, compensatory time or credit hours depending upon their situation. Def. Supp. App. 2. No plaintiffs claims to have done this.

Additionally, each pay period, plaintiffs are required to certify to the accuracy of their time and attendance record for that pay period. Id. If the time and attendance record does not accurately reflect work performed outside of their scheduled shifts, plaintiffs have an opportunity to have the record corrected so that they will not be certifying an inaccurate time and attendance record. Id. Again, no plaintiff do claims to have requested the FAA to correct his or her time and attendance records to reflect overtime hours worked.

Finally, plaintiffs receive leave and earning statements on a bi-weekly basis. Def. App. 11. If a plaintiff believes her or she has not been properly compensated for all hours worked, including hours worked outside of his or her scheduled shift, he or she can bring the issue to FAA management's attention. Id. There is no evidence that any plaintiff, including those who provided declarations for this lawsuit, ever recorded or reported time worked outside their regular shift or brought such work to the attention of FAA management.

In addition, all of the tasks that plaintiffs claim to have

performed during uncompensated pre and post-shift times are tasks that, according to FAA policy, are to be performed while in a paid duty status. Def. Supp. App. 28-29. Shifts are scheduled in such a way that the employees assigned to open the control tower are scheduled to report so that they will perform all of the "opening procedures" while on paid, duty time. Id. FAA management normally schedules two air traffic controllers to the opening shift so that all of the tasks can be completed prior to the opening of the tower. Id. The tower closes at 10:30 pm and the closing procedures are all performed prior to 10:30 pm so that all occur during a paid shift. Id.

An employee who performs work prior to the start of her scheduled shift without either changing her shift or requesting permission to do so is acting contrary to FAA policy. Def. Supp. App. 14-15. Similarly, employees should not be performing any duties after signing off the Cru-X/ART system, without the express authorization of their supervisor or manager. Id.

Finally, the declarations furnished by plaintiffs simply do not demonstrate that the FAA knew or should have known they were performing work before and after their scheduled shifts for which they were not being compensated. Of the six plaintiffs who furnished declarations in support of plaintiffs' cross-motion, three, Ms. Adcock, Mr. Krasner, and Mr. Robicheau, did not allege that they performed uncompensated pre and post-shift work at all.

Pl. App. 1-6, 14-18, 25-29.

Another plaintiff, Mr. Savasta alleges that he or other plaintiffs performed work before or after their scheduled shifts, but does not allege that the FAA was aware he was doing so. Pl. App. 30-33. Rather, he alleged that it was his understanding the FAA required him to do so. Id.

The allegation that plaintiffs were required to perform uncompensated work before and after their shifts is refuted by plaintiffs' supervisors in declarations provided by them and attached to this response. Def. Supp. App. 17-20, 21-24. However, even assuming that plaintiffs' assertions are correct, the mere fact that an employer requires an employee to do something is not proof that the employee does it or that the employer is aware of the employee doing it outside of her scheduled shift. Mr. Savasta did not allege that the FAA was aware plaintiffs were performing uncompensated work before and after their shifts. Pl. App. 3-33.

Plaintiffs Bukovsky and Peterson allege that they perform activities prior to and after their shifts and that a supervisor is often present in the room. Pl. App. 9, 22. Again, these allegations fall short of actually demonstrating that plaintiffs' supervisors or FAA management was aware that they were performing work outside their shift and for which they were not being compensated.

One may be present in a room without being aware of everything

that is transpiring in that room. Indeed, Messrs. Peterson's and Bukovsky's supervisors, Messrs. Dunn and Miller, has furnished declarations in which each states that he was unaware of his employee performing uncompensated work.

Def. Supp. App. 17-20, 21-24.

It is plaintiffs' burden to establish all of the elements of their prima facie case including that the agency "suffered or permitted" the work for which they seek compensation. Absent proof that the agency was aware of the uncompensated pre or post-shift work allegedly performed by plaintiffs prior to signing on to the CRU-X/ART system or after signing off, plaintiffs have no entitlement to overtime pay.

IV. Count IV Should Be Dismissed Because Any Off-Duty Time Spent By Plaintiffs Bidding On Work And Leave Schedules Is Performed Primarily For The Benefit Of The Employee, Thus, It Is Not Work And, In Any Event It Is De Minimis

In our opening brief, we established that work that is otherwise compensable pursuant to the FLSA will not be compensated if it is determined that the time involved in performing the work is de minimis. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). We demonstrated that the work allegedly performed by plaintiffs in the course of bidding for work and leave schedules is de minimis because it requires, at most, five to ten minutes, once or twice a year.

In response to our motion, plaintiffs assert that the time they

spend bidding is more than de minimis. They dispute our contention that they spend no more than ten minutes each time they bid. They also assert that we have not demonstrated that the work they allegedly perform meets two other tests for finding time de minimis: that it is administrative difficult to record and irregularly performed. Pl. Opp. 37, citing Bull v. United States, 68 Fed. Cl. 212, 226 (2005). Specifically, they claim that it is administratively feasible for the FAA to record their bidding time because the FAA maintains bidding schedules, listing the date, time, and duration of plaintiffs' off-duty time. Pl. Opp. 38.

Contrary to plaintiffs' implicit assertion, the bidding schedules included the appendix to their brief do not record the duration of time plaintiffs spend bidding, nor is there anything in the declarations submitted by plaintiffs that suggests the schedules do provide such evidence. In fact, the schedules do no such thing.

The time periods contained in the bidding schedules are only windows of opportunity that a plaintiff may utilize to make a bid. Def. Supp. App. 23-26. The schedules do not indicate whether a particular plaintiff has taken advantage of this opportunity or, if he or she has taken advantage, how long he or she has spent bidding. Id. Plaintiffs admit that the schedules establishing the windows of time during which they may bid for work and leave schedules vary those windows with respect to the time of day and day of the week. Pl. App. 1-3. Sometimes their given window of opportunity to bid

occur during their work shift. Id. Other times, their window of opportunity falls outside their work shift. Id.

Moreover, plaintiffs are free to select for themselves when, within the window of opportunity, they will choose to make their bid. Id. It is difficult to imagine a more irregularly performed task. Thus, in addition to the minimal time spent by plaintiffs bidding, their bidding time claim fails according to the other two tenets of the de minimis test because it is irregularly performed and administratively difficult to record. Plaintiffs contend that they have submitted evidence disputing our contention that they spend no more than ten minutes per day on bidding and that they bid only once or twice a year. Pl. Opp. 37. However, the declarations submitted by plaintiffs in support of this contention are internally inconsistent and do not support their claims. For example, plaintiff Bukovskey states that in 2004, 2005, and 2006, he spent approximately 70 to 95 minutes each year bidding while off duty. Pl. App. 7-9. Yet, he also states that "[p]rior to 2006, bidding was performed during scheduled hours of work." Pl. App. 9.

Moreover, Mr. Bukovsky claims only that he spent 70 to 95 minutes bidding in a year. Assuming those minutes were spread out over the 52 weeks in a year, the amount of time Mr. Bukovsky spent bidding per week in 2004, 2005, and 2006 ranged between one and two minutes per week.

Plaintiff Adcock's declaration indicates when her bidding

windows occurred but not whether the entire period of the window provided was actually consumed by bidding. Pl. App. 1-3. The mere fact that she may have been provided with a three hour window in which to bid does not establish that she spent three hours bidding, nor does it constitute evidence that disputes our contention that the actual bidding time consumes less than ten minutes.

Finally, further analysis of the evidence concerning the bidding done by plaintiffs, both that supplied by plaintiffs and that supplied by the agency, demonstrates that the bidding done by plaintiffs does not constitute "work" at all for purposes of the FLSA. The Supreme Court has defined "work" as that term is used in the FLSA as time spent necessarily and primarily for the benefit of the employer and his business. Alvarez v. IBP, Incl, 546 U.S. 21 (2005). In this case, bidding on work and vacation schedules is not part of plaintiffs' actual job duties, nor is it time spent necessarily or primarily for the benefit of the FAA. Rather, the bidding procedure is an accommodation made by the FAA on behalf of plaintiffs.

The FAA does not need employee input to make up its work schedules. Most employees are provided with ample time to bid during work hours. Those that are unable to participate may submit their bid by proxy. Def. App. 10; Def. Supp. App. 23-24, 31-32, 36. However, if a plaintiff is unable to participate in bidding either during their shift or by proxy for some reason, he or she would not

lose or be ineligible to take leave, nor would she be left off the work schedule. Id. At worst, his or her preferences in terms of work and leave schedules would not be granted by FAA management when those schedules were made. Id.

As this description of the bidding process makes clear, allowing employees to bid or to express their preferences in work and leave schedules primarily benefits the employees themselves. Because any time spent bidding on work and leave schedules is primarily for the benefit of plaintiffs rather than the benefit of the FAA, time spent by plaintiffs does not constitute "work" as that term is defined by the FLSA and is not compensable. See Cooley v. United States, 1982 WL 19290 (Ct. Cl. 1982) (Guards were not required to use their lockers to store their equipment overnight, thus, time spent walking to and from lockers is not compensable work time.) Accordingly, plaintiffs' claims for compensation for this time should be denied.

## Conclusion

For the foregoing reasons, defendant respectfully requests that the Court dismiss count II of the complaint and grant summary judgment in favor of the Government with respect to counts III and IV.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE M. DAVIDSON
Director

s/Hillary A. Stern
HILLARY A. STERN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0177
Facsimile: (202) 305-7643

OF COUNSEL:

EDEN BROWN GAINES
ELIZABETH HEAD
MICHAEL DOHERTY
Federal Aviation Administration
600 Independence Ave., S.W.
Suite 1E-100
Washington, D.C. 20591
Tele: (202) 385-8254
Facsimile: (202) 493-5085

March 12, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2008, a copy of the foregoing “DEFENDANT’S REPLY TO PLAINTIFFS’ OPPOSITION TO DEFENDANT’S PARTIAL MOTION TO DISMISS AND PARTIAL MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS’ MOTION FOR SUMMARY JUDGMENT AND APPENDIX” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/Hillary A. Stern