During the many months of contract bargaining, including six weeks of mediation with the Federal Mediation and Conciliation Service (FMCS), both parties repeatedly revised their proposals and made concessions. The parties reached agreement on 100 contract articles, but did not agree on others. On April 5, 2006, FAA submitted its final contract proposal to Congress. When Congress took no action on the matter within 60 days, FAA notified NATCA that its final contract proposal was in effect. As NATCA did not agree that there was a final agreement, it did not conduct a ratification vote on FAA's final contract proposal.

NATCA alleges that the overall pattern of FAA's conduct in the negotiations evidenced bad faith bargaining. In this regard, NATCA claims that FAA bargained from a fixed position concerning pay matters, with the overall goal to reach impasse, submit the matter to Congress and implement its desired changes without meaningful impasse resolution. NATCA also asserts, as evidence of the overall pattern of conduct (1) that FAA improperly submitted earlier versions of Articles 4 and 63 to Congress, rather than what the parties had tentatively agreed on these articles; (2) that FAA insisted to impasse on permissive topics in the negotiation of Articles 17, 18, 33, 38 and 106; (3) that FAA engaged in regressive bargaining with respect to Articles 18, 38, 106, and Facility ATC levels/developmental pay stages; (4) that FAA submitted NATCA's Pay Administration proposal to Congress but did not submit a management proposal; (5) that FAA's overall conduct amounted to surface bargaining over NATCA's proposed articles on Child Care Subsidies, Student Loan Repayment, Dependent Education, and Flight Training Incentives; (6) that FAA denied NATCA the opportunity to conduct a ratification vote; and (7) that FAA's conduct when the parties met for the final time on April 5, 2006 evidenced a desire to reach impasse rather than to continue bargaining. NATCA also contends that because of the FAA's alleged bad faith in negotiations, the parties were not at impasse on April 5, 2006. As to the facts of NATCA's specific allegations:

<u>Articles 4 and 63</u>: The parties initialed Article 4 as TAU on January 11, 2006 and Article 63 as TAU on February 20, 2006. When FAA made its submission to Congress on April 5, 2006, it included versions of these articles from earlier in the negotiations. Therefore, what was submitted to Congress did not include the TAU language. The FAA included the correct, TAU language for both Article 4 and Article 63 when it implemented its final contract proposal on September 3, 2006.

<u>Insistence to Impasse on Permissive Topics</u>: NATCA objected to FAA's last offer on Articles 17, 18, 33, 38 and 106 on the basis that it would foreclose negotiations during the life of the agreement based on "covered by." The parties had agreed in bargaining over Article 7 to very limited local level bargaining and to a waiver of the second prong of the Authority's "covered by" test. In NATCA's view, FAA's proposals on these five articles contained language that would render certain subjects "specifically contained" in the agreement and, therefore, subject to the first prong of the "covered by" test. NATCA argues that agreeing to the inclusion of this language was permissive to the union and that FAA engaged in bad faith bargaining by insisting to impasse on the inclusion of the disputed language.

<u>Regressive Bargaining</u>: NATCA alleges that FAA's conduct with respect to four contract provisions evidenced regressive, bad faith bargaining. NATCA raised the allegations with respect to three of these articles, Controller-In-Charge, Duration of Agreement, and Facility ATC

Levels in separate unfair labor practice charges in which it was alleged that FAA had withdrawn from tentative agreements and substituted regressive proposals. In each case it was concluded that the FAA had not withdrawn from prior agreements and, therefore, had not engaged in regressive bargaining as alleged.[2]

The fourth contract provision involves Article 38 on Overtime. The parties first discussed the Overtime article at the table on July 20, 2005. At that time, NATCA explained its proposals to add local level bargaining over assignment procedures, overtime bypass remedies, and providing the union with overtime rosters. In addition, NATCA proposed new types of overtime pay in certain circumstances, e.g. when the employee was already receiving other premium pay. NATCA also proposed a definition of the beginning and end of the work day and the work week, sections 11 and 12, to which FAA consistently objected and would not agree. In addition, throughout the negotiations, FAA asserted that these two proposals might be nonnegotiable.

The parties discussed their proposals and revised them repeatedly throughout the negotiations, but never reached agreement on Overtime. FAA did not alter its position after making its last counterproposal on February 17, 2006. NATCA's proposed sections 11 and 12 remained key parts of the dispute. At the final session on April 5, 2006, NATCA offered a revised proposal that retained the disputed sections. NATCA asserted that FAA believed these provisions were nonnegotiable. FAA neither agreed or disagreed with this assessment. NATCA requested a written allegation of nonnegotiability. FAA never provided the allegation. Instead, on April 5, 2006, FAA submitted both parties' final offers on Overtime to Congress, as part of the impasse.

Surface Bargaining: During the negotiations, NATCA proposed five entirely new contract articles and contends that FAA's conduct with respect to these proposals evidences surface, bad faith bargaining. After this charge was filed, in August 2006, the Authority found that one of these articles, involving a proposed Runway Incursion Program, was outside the duty to bargain. To summarize the facts with respect to the other articles:

Childcare Subsidies: The parties discussed NATCA's proposed article on childcare subsidies on August 9, 2005 and again on December 1, 2005, but FAA did not make any counterproposal. When NATCA inquired about when it would receive a counterproposal, FAA asserted either that the issue was not negotiable or that it was permissive. Aside from those exchanges, the parties did not discuss the matter again until the final session on April 5, 2006. When asked to take a specific position at that time, FAA rejected the proposal on the merits.

Student Loan Repayments: The parties discussed this proposed article on October 12, 2005, but FAA did not offer any counterproposals. Once or twice during the course of negotiations, NATCA asked when FAA would make a counterproposal on this article. FAA asserted that the article was either nonnegotiable or permissive. FAA never made a counter-proposal to the union's proposed student loan repayment article. When NATCA asked FAA for a specific position at the final meeting on April 5, 2006, FAA rejected the proposal on the merits.

[2] These allegations were addressed in the dismissal letters issued today in Case Nos. WA-CA-06-0358, WA-CA-06-0363 and WA-CA-06-0716.

Dependent Education: Payment for Non-CONUS dependent education in DODDS schools existed as a practice for NATCA unit employees and in the 2005/6 contract negotiations, NATCA proposed to make it a matter of agreement. FAA had attempted to terminate the practice prior to these negotiations. The parties first discussed NATCA's proposed contract article on December 1, 2005. The discussion turned around the costs and whether all of the dependents covered by the NATCA proposal were eligible. The parties discussed a revised NATCA proposal on December 8, 2005, but FAA made no counter offers. The article was never addressed again and FAA never provided any counterproposal before FAA declared an impasse in bargaining. NATCA argues that the FAA never bargained over the proposal at all. According to NATCA, from the outset, FAA insisted that it had decided to terminate this long-standing practice and refused to bargain on the union's negotiable proposal to establish a contractual program for paying education expenses for dependents in non-CONUS locations.

Flight Training: The FAA did not make any counter-proposals on NATCA's proposed contract article to provide flight training incentives for air traffic controllers. The proposal was discussed at the bargaining table on December 6, 2005. FAA did not engage in much discussion of the proposal or agree to it. During the discussion, one FAA negotiator asserted that the proposal was outside the duty to bargain as it did not involve conditions of employment. Another FAA negotiator asserted that FAA would not agree to the proposal because management did not want to give awards to employees for enhancing their own promotion prospects. The article was among those submitted at impasse to Congress.

April 5, 2006: The FMCS Commissioner had released the parties from mediation on March 31, 2006. The April 5, 2006 session was scheduled as the final meeting to review the status of proposals. In the absence of agreement, FAA intended to submit its final offer to Congress that day. The meeting on April 5, 2006 took place at the NATCA offices. The parties started in the morning reviewing all of the articles, one by one. NATCA, verbally, made a new offer on Pay. According to NATCA, the parties had made progress on pay issues during mediation. Throughout the negotiations, NATCA had moved toward the FAA's Pay proposals. FAA claimed that NATCA wanted to revert to the current system when the contract expired. NATCA insisted it on preserving the right to bargain to renew the system after the expiration of the contract. This dispute was critical to the negotiations on Pay and is referred to as savings in the out years.

When NATCA made its new proposal, FAA discussed the issues and appeared receptive, even offering verbal counters. FAA agreed to review the revised NATCA proposal and NATCA agreed to provide it in writing. Just before the lunch break on April 5, 2006, NATCA gave FAA the written proposal. After lunch, the parties discussed NATCA's proposal and FAA rejected it. FAA explained that the proposal was not acceptable because it did not offer savings in the out years. The parties then continued discussing the articles still in dispute.

Some of the FAA's bargaining team members did not appear at the afternoon session on April 5, 2006. In mid-afternoon, FAA's Chief Negotiator declared an impasse. Before the FAA team left the NATCA building on that day, two things happened that NATCA believes were significant.

First, the FAA Administrator held a press conference to announce that the parties were at impasse and the dispute had been submitted to Congress. Also, a messenger arrived to serve NATCA with a copy of FAA's submission.

Based on these events, NATCA argues that the FAA was only interested in reaching impasse and not in reaching agreement on April 5 and that its conduct amounted to bad faith.

Pay: NATCA also alleges that FAA engaged in bad faith conduct in the overall negotiations on pay by bargaining from a fixed position over pay matters. FAA entered the contract negotiations insisting on changing the NATCA pay system to be consistent with the rest of the agency and to reduce escalating costs. Throughout the negotiations, FAA took the position that the existing pay system and NATCA's proposals to extend it were not effective and cost too much. The parties did make progress in their negotiations over pay matters, but were not able to reach agreement. In the end, NATCA held out for an agreement to allow room for to reestablish the existing system when the contract expired and FAA insisted on securing out year savings by establishing the new rules on a permanent basis.

As additional evidence of bargaining from a fixed position, NATCA points to two documents it received unofficially during the negotiations. One of these documents is clearly the result of a management effort to engage in strategic planning for the contract negotiations. This includes identifying sides' perceived negotiation positions, strengths, and weaknesses. FAA's fallback position on the issues is listed as reaching impasse. The other document apparently is notes from a conference call in which managers were given an update on the NATCA contract. An unnamed individual is noted as stating during this conference, no pay bargaining with NATCA.

Pay Administration: NATCA contends that FAA engaged in bad faith bargaining by submitting only the NATCA version of the Pay Administration Article. FAA proposed to eliminate the Pay Administration Article and include any necessary procedures in the article on Pay. NATCA proposed to retain a Pay Administration article, to facilitate bargaining to restore existing pay rules when the new agreement expired. The parties did not agree on whether or not to include a Pay Administration article in the contract. FAA submitted NATCA's proposed article to Congress, but did not submit anything for the agency.

Section 7103(a)(12) of the Statute defines collective bargaining as the "performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees. . ." but that obligation "does not compel either party to agree to a proposal or to make a concession."

In order to determine whether a party has met its obligation to bargain in good faith, the Authority examines the totality of the charged party's conduct. E.g. *U.S. Dep't. of the Air Force, Headquarters, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio*, 36 FLRA 524, 531 (1990) (*Wright-Patterson*). Further, while evidence of bad faith bargaining may be found in withdrawal of a tentative or previous agreement, such action does not necessarily

establish *per se* an absence of good faith. *Dept. of Treasury, Internal Revenue Serv., Memphis Serv. Ctr.*, 15 FLRA 829, 845 (1984).

There is no FLRA precedent on regressive bargaining as part of the good faith bargaining obligation. In the private sector, the term regressive bargaining is used to refer to a party offering a proposal and, when it is favorably received, withdrawing it for a lesser proposal. The NLRB has found that, in certain circumstances, if a party withdraws a bargaining proposal on which tentative agreement has been reached and, in its place, substitutes a regressive proposal, the conduct has the effect of impeding collective-bargaining in an attempt to prevent an agreement. *See, e.g., Arrow Smith and Door Co.*, 281 NLRB 1108 (1980). The NLRB's determination of whether the withdrawal of previously advanced proposals constitutes bad faith bargaining is based on the totality of the circumstances. *Driftwood Convalescent Hosp.*, 312 NLRB 247, 252 (1993). Although currently pending on exceptions to the Authority, an Administrative Law Judge recently applied private sector precedent in a decision finding that a party had engaged in regressive, bad faith bargaining. *American Federation of Government Employees, Local 3937, AFL-CIO*, OALJ 07-15, May 24, 2007.

Surface bargaining, similarly, is a term of art in private sector labor relations. It refers to negotiation conduct in which an employer bargains from a fixed position on contract proposals that would so restrict the union's rights that the exclusive representative could not effectively represent its unit if it accepted the proposals. *See, e.g., A 1 King Size Sandwiches, Inc.*, 265 NLRB 850 (1982), *enfd.* 732 F. 2d 872, 116 LRRM 2658 (11th Cir. 1984), *cert. denied* 469 U.S. 1034 [unlawful surface bargaining found where proposals would strip the union of the ability to represent its members effectively and that, if accepted, would have left the union with less than the rights conferred by its certification]; *compare, Reichhold Chemicals*, 288 NLRB 69 (1988), reconsidering 277 NLRB 639 (1985) (no surface bargaining where employer insisted on a broad no strike clause, a narrow grievance clause, and a broad management rights clause, but made some concessions on the no strike clause and the management rights clause, and the parties agreed to some matters). The bad faith conduct found to violate the Statute in *U.S. Geological Survey, Caribbean Dist. Office, San Juan, P.R.*, 53 FLRA 1006 (1997) arguably involved surface bargaining.

As to the FAA's inclusion of incorrect versions of Article 4 and 63 in its submission to Congress, there is nothing to show that FAA acted in bad faith by submitting the wrong language to Congress. It appears that this was an administrative error. The articles were not in dispute, as there was no question that the parties had agreed to the TAU language. The FAA implemented what the parties had agreed upon.

It is an unfair labor practice to insist to impasse in bargaining over a topic permissive to the other party *See, e.g., Sport Air Traffic Controllers Org. (SATCO)*, 52 FLRA 339 (1996). Contrary to NATCA, however, there is nothing here to suggest this occurred with respect to Articles 17, 18, 33, 38 and 106. NATCA argues that its agreement on the waiver of the second prong of the "covered by" test renders the inclusion of specific language permissive to the union. NATCA also argues that the inclusion of specific language that would render a topic "covered by the contract" and foreclose bargaining on that matter for the life of the agreement is permissive to the union.

These arguments presuppose that contract language that covers a topic is tantamount to a waiver of bargaining rights. Under the Authority's precedent, the fact that a topic is "covered by" a contract means that the parties already have bargained over a topic and reached agreement. *U.S. Dept. of Health & Human Servs., Soc. Sec. Admin., Baltimore, Md.*, 47 FLRA 1004 (1994). It does not mean that either party has waived a right. Instead, the parties have successfully collectively determined the conditions of employment addressed in their agreement. Inclusion of language that renders a topic "covered by" is not permissive to either party to a negotiation. Therefore, whether only one or both prongs of the Authority's "covered by" test applies, FAA did not insist to impasse on permissive topics as alleged.

As to the alleged regressive bargaining, it has been concluded that FAA did not withdraw from agreed upon provisions concerning Facility ATC Levels, Controller In Charge or Duration of the Agreement. In regard to the Overtime article, the evidence again fails to show that the parties reached an agreement on the provisions. No tentative agreement was initialed as required by the parties' groundrules. FAA did not give a formal allegation of nonnegotiability concerning the Overtime article and submitted both parties' final offers on the article to Congress as part of the impasse. The parties had no tentative agreement concerning Overtime and FAA did not withdraw from an agreement and submit a lesser proposal. In these circumstances, the evidence fails to establish that FAA withdrew from tentative agreements concerning any of these contract provisions as NATCA alleges. *Compare, Army and Air Force Exchange Serv.*, 52 FLRA 290 (1996) (ground rules rendered parties' tentative agreement on a partial pay proposal binding, although not effective before all other issues were resolved).

As regards the alleged bad faith bargaining concerning NATCA's proposed new contract articles, FAA did not make counterproposals to the Union's proposals and little bargaining time was spent discussing them. Also, FAA changed its position on whether these provisions were outside the duty to bargain, permissive to management, or whether it simply did not wish to agree to these proposals. In one proposed article, the FAA's own negotiators differed about whether the proposals were nonnegotiable or undesirable to management. The FAA's conduct with respect to all of these proposed new contract articles was, arguably, perfunctory.

In the context of the contract negotiations as a whole, there is no overall evidence of bad faith with respect to these proposals. The effort to reach agreement applies to the totality of the circumstances and not to single or modest groupings of proposals. Here, FAA did not want to agree to anything that entailed additional costs, which these proposals did. However, this does not establish that FAA's approach to the entire bargaining process was an attempt to avoid agreement. Therefore, the agency's conduct with respect to these proposals did not amount to bad faith bargaining.

As to the failure to submit a proposal on Pay Administration, the evidence establishes that FAA proposed to include all pay administration matters in the Pay article, instead of in a separate article on Pay Administration. This is consistent with the position the FAA had taken throughout negotiations and is not evidence of more than a desire to include all pay matters in one article. This conduct does not amount to bad faith bargaining.

Further, the evidence does not establish that FAA bargained from a fixed position on pay. FAA wanted to change the entire pay system to reduce costs and maintained that position throughout negotiations. The FAA's insistence on changing to a different system reflects hard bargaining. FAA was consistent and determined to achieve its bargaining goals regarding pay. However, the parties met, bargained, made concessions and moved toward each others' positions as negotiations progressed. In circumstances where the parties' reached agreement on 100 contract articles, the FAA's insistence on changing the pay system and reducing costs does not amount to bargaining from a fixed position or surface bargaining.

The documents NATCA received unofficially do not establish that FAA bargained in bad faith. It is not unlawful for a party to strategize over upcoming negotiations, including identifying options if agreement is not reached. The FAA's recognition that there might be an impasse in bargaining if no agreement was reached is not sufficient to establish that the FAA's entire goal in negotiations was to reach an impasse. As to the conference call notes, while an unidentified person may have conveyed that there was to be no pay bargaining with NATCA, this was belied by the facts. The notes reflect nothing more than what was said in a call, not what happened in the overall course of negotiations. There is no evidence of bad faith bargaining with respect to pay, based on these documents.

NATCA had reserved its right to conduct a ratification vote among its members prior to the implementation of a final agreement. NATCA did not submit the contract to the membership because it did not agree that there was a final agreement. If the members had voted against an agreement and FAA had refused to enter into further negotiations, this might provide a basis for finding an unlawful failure or refusal to bargain. *See, e.g., Dept. of the Air Force, Griffiss Air Force Base, Rome, NY*, 25 FLRA 579 (1987). In circumstances where NATCA did not hold a ratification vote, the evidence does not establish that FAA's conduct deprived NATCA of an opportunity to exercise this right.

As to the question of whether the overall pattern of FAA's conduct constituted bad faith bargaining, in the totality of the circumstances, the evidence does not support finding such a violation. The FAA engaged in hard bargaining. It insisted to impasse on mandatory topics, including pay bargaining. It did not, as alleged here, insist to impasse on permissive topics or engage in regressive bargaining by withdrawing from what it had agreed in order to prevent overall agreement. It did not engage in surface bargaining, by insisting on such stringent terms that the union would lose all rights through the agreement. FAA did not refuse to bargain on NATCA's proposed new articles, although FAA did not engage in significant bargaining over the matters or submit counter offers. Instead, FAA simply refused to agree.

The evidence shows that the FAA met and bargained, made concessions and reached agreements, and participated in weeks of mediation. When FMCS released the parties, FAA made no secret that it would exercise what it saw to be its impasse right to submit the matter to Congress. When no agreement was reached by April 5, 2006, it proceeded to do so. The overall pattern of this conduct does not establish that the FAA acted in bad faith in the negotiation of the agreement. FAA wished to reduce costs and to move the NATCA units to the prevailing FAA pay system. FAA never changed its position on this issue, but such hard bargaining insistence is not *per se* bad faith. Here, the parties tentatively agreed to 100 contract articles. The parties made

extensive but ultimately unsuccessful efforts effort to resolve basically intractable disputes over the remaining matters. When these efforts failed, FAA invoked what it perceived as the appropriate impasse resolution procedure. In these circumstances, the evidence fails to demonstrate that FAA acted in bad faith.

Based on the evidence presented, in the totality of the circumstances, the FAA's conduct with respect to its contract negotiations did not amount to bad faith in negotiations. *Wright-Patterson*. Further, in the absence of evidence of bad faith or that FAA failed to bargain as alleged, the parties were at impasse on April 5, 2006 as their many months of bargaining and mediation had not resolved the entire contract. The FAA did not violate the Statute by engaging in regressive or surface bargaining, by insisting to impasse on permissive topics, or by acting in bad faith as alleged in the charge. In reaching this conclusion, it is noted that no allegation was made or evidence presented to establish that a violation of section 7116(a)(8) of the Statute occurred in this case.

Accordingly, the charge is dismissed.

An appeal may be filed by mail or by hand delivery with the Office of the General Counsel. Your appeal should include the Case Number (WA-CA-06-0366) and be addressed as follows:

Federal Labor Relations Authority
Office of the General Counsel
1400 K Street NW, Second Floor
Attention: Appeals
Washington DC 20424-0001

Whichever method you choose, please note that the last day for filing an appeal of the dismissal is **August 27, 2007.** This means that an appeal that is mailed must be postmarked, or an appeal must be hand delivered, no later than **August 27, 2007.** Please send a copy of your appeal to the Regional Director.

If you need more time to prepare your appeal, you may ask for an extension of time. Mail or hand deliver your request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time must be **received** at least five days before the date the appeal is due, any request for an extension of time in this case must be received at the above address no later than **August 22, 2007.**

The procedures, time limits and grounds for filing an appeal are contained in Volume 5 of the Code of Federal Regulations at section 2423.11(c)-(g). 5 C.F.R. § 2423.11(c)-(g). The regulations may be found at any FLRA Regional Office, public law library, some large general purpose libraries, Federal Personnel Offices and the Authority's Home Page internet site-- www.FLRA.gov.

I have also enclosed a document which summarizes frequently-asked questions and answers regarding the Office of the General Counsel's unfair labor practice appeals process.

Sincerely,

Gerald M. Cole

Gerald M. Cole
Regional Director

Enclosures: Questions and Answers About Appeals

cc: Elizabeth J. Head, Esq.
Office of the Chief Counsel
Federal Aviation Administration
Labor and Personnel Division, AGC-30
600 Independence Avenue, SW, 1st Floor
Washington, DC 20591

Colleen Duffy Kiko, General Counsel
Office of the General Counsel
Federal Labor Relations Authority
1400 K Street, NW, 2nd Floor
Washington, D.C. 20424-0001

UNITED STATES OF AMERICA
**FEDERAL LABOR RELATIONS AUTHORITY**
**SAN FRANCISCO REGION**
901 Market Street, Suite 220
San Francisco, California 94103-1791
(415) 356-5000 Fax:(415) 356-5017

July 25, 2007

Eugene Freedman, Policy Counsel
National Air Traffic Controllers Association
1325 Massachusetts Avenue, NW
Washington, DC 20005

Re: Federal Aviation Administration
Washington, D.C.
Case No. WA-CA-06-0563

Dear Mr. Freedman:

The unfair labor practice charge in this case was filed with the Washington Regional Office on July 11, 2006 and was transferred to the San Francisco Regional Office on September 7, 2006. After investigation, consideration of the evidence and application of the law to the facts, issuance of a complaint is not warranted.

The charge alleges that since on or about April 7, 2006, the Federal Aviation Administration (FAA) refused to bargain under the auspices of the Federal Service Impasses Panel (FSIP) when at impasse in contract negotiations with the National Air Traffic Controllers Association (NATCA). This conduct is alleged to violate section 7116(a)(1) and (5) of the Federal Service Labor-Management Relations Statute (Statute). The FLRA has jurisdiction over the matters raised in this timely filed charge.

In 1996, Congress passed legislation which authorized FAA to change its personnel and procurement systems. Pub L. No. 104-264 (October 9, 1996).[1] While ultimately the legislation provided that the FAA personnel management system created under that legislation would be subject to Chapter 71 of Title 5 and that negotiations over proposed changes to the system shall take place, the legislation also provided a unique mechanism for the resolution of bargaining impasses. 49 U.S.C. § 40122(a)(1). Specifically, in § 40122(a)(2), the legislation provided that where the services of the Federal Mediation and Conciliation Service (FMCS) do not lead to an agreement, the Administrator's proposed changes to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change to Congress.

[1] The relevant sections are set out in full in Attachment A.

take effect until 60 days have elapsed after the Administrator has transmitted the proposed change to Congress.

In this case, the investigation revealed that for nearly 10 months in 2005 and 2006, FAA and NATCA were in negotiations over a successor to the 2003 agreement in their three nationwide air traffic bargaining units. During bargaining, the parties agreed on many issues but agreement was not reached on all matters and the groundrules specified that any agreement was tentative until a final agreement was consummated. The parties participated in six weeks of mediation conducted by FMCS. On March 31, 2006, the FMCS Commissioner released the parties from mediation. On April 5, 2006, FAA declared that the parties were at impasse.[2]

On April 5, 2006, pursuant to 49 U.S.C. §§ 40122(a)(1) and (2), FAA submitted its position on impasse to Congress as well as an explanation of NATCA's opposition to its position. On April 7, 2006, pursuant to 5 U.S.C. § 7119, NATCA sought the assistance of FSIP. FAA asserted that FSIP lacked jurisdiction in these matters, as Congress had provided FAA with a unique impasse resolution procedure set forth in § 40122(a)(1) and (2). On July 15, 2006, FSIP declined to assert jurisdiction over the parties' impasse, finding that under § 40122(a) it was unclear whether or not FSIP had jurisdiction to resolve the parties' impasse dispute.

Consistent with § 40122(a)(2), sixty days after submitting the matter to Congress, on June 5, 2006, FAA notified NATCA that its final contract proposal was in effect. NATCA then filed this charge, alleging that FAA had failed to bargain under the auspices of FSIP concerning the bargaining impasse.

Fairly construed, § 40122(a)(1) and (2) replaced the provisions under the Statute for resolution of impasses. While that section provides for bargaining under Chapter 71 of Title 5, it explicitly provides for the resolution of bargaining impasses under the scheme set forth in that section. Here, FAA submitted the dispute to Congress after impasse was reached in April 2006. When the 60 day period expired without Congressional action, FAA was free to implement the proposal that was submitted to Congress.

NATCA asserts that the resolution of bargaining impasses set forth in § 40122(a)(2) applies only to bargaining disputes over "compensation and benefits." In this regard, NATCA relies on 49 U.S.C. §106(l) which provides that "in fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in § 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation and benefits at particular levels." NATCA contends that only bargaining over those matters is covered by § 40122(a)(2). NATCA further asserts that neither section precludes impasse resolution through FSIP, prior to any submission to Congress.

Contrary to NATCA's claim, the procedure set forth in § 40122(a)(2) is not limited to impasses involving "compensation and benefits." In this regard, while § 40122(a)(1) provides that negotiations must take place, the same subsection (a) provides for a specific and clear procedure

[2] NATCA's allegation that the parties were not at impasse on April 5, 2006 is addressed in the dismissal letter issued today in Case No. WA-CA-06-0366.

for the resolution of impasses. Further there is no differentiation between impasses over compensation and other bargaining topics. Accordingly, this procedure must apply to the entire dispute at impasse.

Therefore, FAA did not violate section 7116(a)(1) and (5) of the Statute by submitting the contract bargaining impasse to Congress. Based on the foregoing, this charge is dismissed.

An appeal may be filed by mail or by hand delivery with the Office of the General Counsel. Your appeal should include the Case Number (WA-CA-06-0563) and be addressed as follows:

Federal Labor Relations Authority
Office of the General Counsel
1400 K Street NW, Second Floor
Attention: Appeals
Washington DC 20424-0001

Whichever method you choose, please note that the last day for filing an appeal of the dismissal is **August 27, 2007.** This means that an appeal that is mailed must be postmarked, or an appeal must be hand delivered, no later than **August 27, 2007.** Please send a copy of your appeal to the Regional Director.

If you need more time to prepare your appeal, you may ask for an extension of time. Mail or hand deliver your request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time **must be received** at least five days before the date the appeal is due, any request for an extension of time in this case must be **received** at the above address no later than **August 22, 2007.**

The procedures, time limits and grounds for filing an appeal are contained in Volume 5 of the Code of Federal Regulations at section 2423.11(c)-(g), 5 C.F.R. § 2423.11(c)-(g). The regulations may be found at any FLRA Regional Office, public law library, some large general purpose libraries, Federal Personnel Offices and the Authority's Home Page internet site-- **www.FLRA.gov.**

I have also enclosed a document which summarizes frequently-asked questions and answers regarding the Office of the General Counsel's unfair labor practice appeals process.

Sincerely,

Gerald M. Cole

Gerald M. Cole
Regional Director

Enclosures: Questions and Answers About Appeals

cc: Elizabeth J. Head, Esq.
Office of the Chief Counsel
Federal Aviation Administration
Labor and Personnel Division, AGC-30
600 Independence Avenue, SW, 1st Floor
Washington, DC 20591

Colleen Duffy Kiko, General Counsel
Office of the General Counsel
Federal Labor Relations Authority
1400 K Street, NW, 2nd Floor
Washington, D.C. 20424-0001

# ATTACHMENT A

In October 1996, Congress passed the Air Traffic Management System Performance Improvement Act of 1996, Title II, as part of the Federal Aviation Reauthorization Act of 1996. Pub. L. No. 104-264, 110 Stat. 3213 (Oct. 9, 1996).

Section 253, codified as 49 U.S.C. § 40122)(a), provides:

(a) In general.—

(1) Consultation and negotiation.—In developing and making changes to the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996, the Administrator shall negotiate with the exclusive bargaining representatives of employees of the Administration certified under Section 7111 of title 5 and consult with other employees of the Administration.

(2) Mediation.—If the Administrator does not reach an agreement under paragraph (1) with the exclusive bargaining representatives, the services of the Federal Mediation and Conciliation Service shall be used to attempt to reach such agreement. If the services of the Federal Mediation and Conciliation Service do not lead to an agreement, the Administrator's proposed changes to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change, along with the objections of the exclusive bargaining representatives to the change, and the reasons for such objections, to Congress. The 60-day period shall not include any period during which Congress has adjourned sine die. 49 U.S.C. § 40122(a).

Section 225, codified as 49 U.S.C. §106(l), provides that, in fixing compensation and benefits:

Except as provided in subsections (a) and (g) of section 40122 [49 U.S.C. §§40122], the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a) [49 U.S.C. § 40122(a)], nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.

UNITED STATES OF AMERICA
**FEDERAL LABOR RELATIONS AUTHORITY**
**SAN FRANCISCO REGION**
901 Market Street, Suite 220
San Francisco, California 94103-1791
(415) 356-5000 Fax:(415) 356-5017

July 25, 2007

Eugene Freedman, Policy Counsel
National Air Traffic Controllers Association
1325 Massachusetts Avenue, NW
Washington, DC 20005

Re: Federal Aviation Administration
Washington, D.C.
Case No. WA-CA-06-0648

Dear Mr. Freedman:

The unfair labor practice charge in this case was filed with the Washington Regional Office on September 6, 2006 and was transferred to the San Francisco Regional Office on September 12, 2006. After investigation, consideration of the evidence and application of the law to the facts, issuance of a complaint is not warranted.

The charge alleges that on or about September 3, 2006, the Federal Aviation Administration (FAA) unilaterally implemented its final contract proposal despite the fact that bargaining with the National Air Traffic Controllers Association, AFL-CIO (NATCA) had not been completed. This conduct is alleged to violate section 7116(a)(1)(5) and (8) of the Federal Service Labor-Management Relations Statute (Statute).[1] The FLRA has jurisdiction over the matters raised in this timely filed charge.

In 1996, Congress passed legislation which authorized FAA to change its personnel and procurement systems. Pub L. No. 104-264 (October 9, 1996)[2] While ultimately the legislation provided that the FAA personnel management system created under that legislation would be subject to Chapter 71 of Title 5 and that negotiations over the creation of changes to the system shall take place, the legislation also provided a unique mechanism for the resolution of

[1] Along with other allegations that FAA engaged in bad faith bargaining, the allegation of this charge that FAA denied NATCA an opportunity to conduct a ratification vote is addressed in the dismissal letter issued today in Case No. WA-CA-06-0366.

[2] The relevant sections are set out in full in Attachment A.

bargaining impasses. 49 U.S.C. § 40122(a)(1). Specifically, in § 40122(a)(2), the legislation provided that where the services of the Federal Mediation and Conciliation Service (FMCS) do not lead to an agreement, the Administrator's proposed changes to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change to Congress.

In this case, the investigation revealed that for nearly 10 months in 2005 and 2006, FAA and NATCA were in negotiations over a successor to the 2003 agreement in their three nationwide air traffic bargaining units. During the bargaining, the parties agreed on many issues but agreement was not reached on all matters and the groundrules specified that any agreement was tentative until a final agreement was consummated. The parties participated in six weeks of mediation conducted by FMCS. On March 31, 2006, the FMCS Commissioner released the parties from mediation. On April 5, 2006, FAA declared that the parties were at impasse.[3]

On April 5, 2006, pursuant to 49 U.S.C. §§ 40122(a)(1) and (2), FAA submitted its position on impasse to Congress as well as an explanation of NATCA's opposition to its position. On April 7, 2006, pursuant to 5 U.S.C. § 7119, NATCA sought the assistance of the Federal Service Impasses Panel (FSIP). FAA asserted that FSIP lacked jurisdiction in these matters, as Congress had provided FAA with a unique impasse resolution procedure set forth in § 40122(a)(1) and (2). On July 15, 2006, FSIP declined to assert jurisdiction over the parties' impasse, finding that under § 40122(a) it was unclear whether or not FSIP had jurisdiction to resolve the parties' impasse dispute.

Consistent with § 40122(a)(2), sixty days after submitting the matter to Congress, on June 5, 2006, FAA notified NATCA that its final contract proposal was in effect. On August 21, 2006, FAA notified NATCA that its final proposal would be implemented September 3, 2006. Local FAA managers then began notifying local NATCA representatives that after September 3, 2006, they no longer would be bound by existing local agreements and/or past practices which had developed under the 2003 agreement. In some instances, local managers terminated all existing local past practices. In other instances, managers retained some existing local past practices and terminated others. When FAA implemented its final proposal, NATCA filed this charge.

Fairly construed, §§ 40122(a)(1) and (2) replaced the provisions under the Statute for resolution of impasses. While that section provides for bargaining under Chapter 71 of Title 5, it explicitly provides for the resolution of bargaining impasses under the scheme set forth in that section. Here, FAA submitted the dispute to Congress after impasse was reached in April 2006. When the 60 day period expired without Congressional action, FAA was free to implement the final contract proposal that was submitted to Congress.

NATCA asserts that the resolution of bargaining impasses set forth in § 40122(a)(2) applies only to bargaining disputes over "compensation and benefits." In this regard, NATCA relies on section 106(l) which provides that "in fixing compensation and benefits of officers and

[3] NATCA's allegations that the parties were not at impasse on April 5, 2006 and that the FAA violated the Statute by failing to resolve the bargaining disputes through FSIP are addressed in the dismissal letters issued today in Case Nos. WA-CA-06-0366 and WA-CA-06-0563.

employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in § 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation and benefits at particular levels." NATCA contends that only bargaining over those matters is covered by § 40122(a)(2). NATCA further asserts that neither section precludes resolution of compensation impasses through FSIP, prior to any submission to Congress.

Contrary to NATCA's claim, the procedure set forth in § 40122(a)(2) is not limited to impasses involving "compensation and benefits." In this regard, while § 40122(a)(1) provides that negotiation must take place, the same subsection (a) provides for a specific and clear procedure for the resolution of impasses. Further there is no differentiation between impasses over compensation and other bargaining topics. Accordingly, this procedure must apply to the entire dispute at impasse.

Therefore, having followed the § 40122(a) procedure for resolving the contract bargaining impasse, FAA did not violate section 7116(a)(1) and (5) of the Statute by proceeding forward and implementing its final proposal on September 3, 2006. *U.S. Dept. of Labor, Wash., D.C.*, 60 FLRA 68 (2004) (contract terms implemented after opportunity for impasse resolution constitute binding agreements). Further, no allegation was raised or evidence submitted to support finding a violation of section 7116(a)(8) of the Statute.

Accordingly, the charge is dismissed.

An appeal may be filed by mail or by hand delivery with the Office of the General Counsel. Your appeal should include the Case Number (WA-CA-06-0648) and be addressed as follows:

Federal Labor Relations Authority
Office of the General Counsel
1400 K Street NW, Second Floor
Attention: Appeals
Washington DC 20424-0001

Whichever method you choose, please note that the last day for filing an appeal of the dismissal is **August 27, 2007.** This means that an appeal that is mailed must be postmarked, or an appeal must be hand delivered, no later than **August 27, 2007.** Please send a copy of your appeal to the Regional Director.

If you need more time to prepare your appeal, you may ask for an extension of time. Mail or hand deliver your request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time must be received at least five days before the date the appeal is due, any request for an extension of time in this case must be received at the above address no later than **August 22, 2007.**

The procedures, time limits and grounds for filing an appeal are contained in Volume 5 of the Code of Federal Regulations at section 2423.11(c)-(g). 5 C.F.R. § 2423.11(c)-(g). The regulations may be found at any FLRA Regional Office, public law library, some large general

purpose libraries, Federal Personnel Offices and the Authority's Home Page internet site--www.FLRA.gov. I have also enclosed a document which summarizes frequently-asked questions and answers regarding the Office of the General Counsel's unfair labor practice appeals process.

Sincerely,

Gerald M. Cole

Gerald M. Cole
Regional Director

Enclosures: Questions and Answers About Appeals

cc: Elizabeth J. Head, Esq.
Office of the Chief Counsel
Federal Aviation Administration
Labor and Personnel Division, AGC-30
600 Independence Avenue, SW, 1st Floor
Washington, DC 20591

Colleen Duffy Kiko, General Counsel
Office of the General Counsel
Federal Labor Relations Authority
1400 K Street, NW, 2nd Floor
Washington, D.C. 20424-0001

ATTACHMENT A

In October 1996, Congress passed the Air Traffic Management System Performance Improvement Act of 1996, Title II, as part of the Federal Aviation Reauthorization Act of 1996, Pub. L. No. 104-264, 110 Stat. 3213 (Oct. 9, 1996).

Section 253, codified as 49 U.S.C. § 40122)(a), provides:

(a) In general.—

(1) Consultation and negotiation.—In developing and making changes to the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996, the Administrator shall negotiate with the exclusive bargaining representatives of employees of the Administration certified under Section 7111 of title 5 and consult with other employees of the Administration.

(2) Mediation.—If the Administrator does not reach an agreement under paragraph (1) with the exclusive bargaining representatives, the services of the Federal Mediation and Conciliation Service shall be used to attempt to reach such agreement. If the services of the Federal Mediation and Conciliation Service do not lead to an agreement, the Administrator's proposed changes to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change, along with the objections of the exclusive bargaining representatives to the change, and the reasons for such objections, to Congress. The 60-day period shall not include any period during which Congress has adjourned sine die. 49 U.S.C. § 40122(a).

Section 225, codified as 49 U.S.C. §106(l), provides that, in fixing compensation and benefits:

Except as provided in subsections (a) and (g) of section 40122 [49 U.S.C. §§40122], the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a) [49 U.S.C. § 40122(a)], nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

2008 FEB -4 P 2:06

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
Charged Party

and

Case No. WA-CA-06-0366

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION, AFL-CIO
Charging Party

**Order Denying Appeal**

The Rules and Regulations (Regulations) of the Federal Labor Relations Authority (FLRA) provide that a "Charging Party may obtain review of the Regional Director's decision not to issue a complaint by filing an appeal with the General Counsel within 25 days after service of the Regional Director's decision." 5 C.F.R. § 2423.11(c).

The decision of the Regional Director not to issue a complaint was issued on July 25, 2007, and was served on the parties by mail. Accordingly, an appeal must be filed by August 27, 2007. (An additional five days is added to the time period if the decision is served by mail. *See* 5 C.F.R. § 2429.22). The appeal was filed on August 27, 2007; therefore, it is timely filed and is properly before the General Counsel for consideration.

The Regulations at 5 C.F.R. § 2423.11(e) provide the following grounds upon which the General Counsel may grant an appeal of a Regional Director's decision to dismiss an unfair labor practice charge: (1) the decision did not consider a material fact that would have resulted in issuance of complaint; (2) the decision is based on a finding of a material fact that is clearly erroneous; (3) the decision is based on an incorrect statement of the applicable rule of law; (4) there is no Authority precedent on the legal issue in the case; or (5) the manner in which the Region conducted the investigation has resulted in prejudicial error. *Id.* and 5 C.F.R. § 2423.11(f).

On appeal, the Charging Party alleged, among other things, that the Regional Director's decision is based on a finding of a material fact that is clearly erroneous. In this regard, the Charging Party contended that Regional Director erred in concluding that the evidence was insufficient to establish a violation of 5 U.S.C. § 7116(a)(1) and (5). In particular, the Charging Party submitted that the Regional Director erred in failing to find that the Charged Party engaged in regressive bargaining tactics, a subject on which there is no FLRA precedent, and that the totality of circumstances established bad faith bargaining. In addition, the Charging Party submitted that

the Regional Director erred in failing to find that the Charged Party bargained to impasse over permissive subjects of bargaining.

This appeal has been carefully considered. The Regional Director's rationale for dismissing the charges is supported by the evidence of record. The appeal has failed to establish any ground for either reversing the Regional Director's decision or remanding the case for further investigation in accordance with 5 C.F.R. § 2423.11(e). The dismissal letter issued by the Regional Director constitutes the written statement of the reasons for not issuing a complaint as required by 5 U.S.C. § 7118(a)(1).

ORDERED: For the foregoing reasons, the appeal is hereby DENIED.*

Date Issued: 1.29.2008

Colleen Duffy Kiko
General Counsel

* Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
Charged Party

and

Case No. WA-CA-06-0366

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION, AFL-CIO
Charging Party

CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005

**Cert No. 7006 2760 0005 6476 6239**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591

**Cert No. 7006 2760 0005 6476 6246**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

2008 FEB -4 P 2:07

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
Charged Party

and

Case No. WA-CA-06-0563

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION, AFL-CIO
Charging Party

**Order Denying Appeal**

The Rules and Regulations (Regulations) of the Federal Labor Relations Authority (FLRA) provide that a "Charging Party may obtain review of the Regional Director's decision not to issue a complaint by filing an appeal with the General Counsel within 25 days after service of the Regional Director's decision." 5 C.F.R. § 2423.11(c).

The decision of the Regional Director not to issue a complaint was issued on July 25, 2007, and was served on the parties by mail. Accordingly, an appeal must be filed by August 27, 2007. (An additional five days is added to the time period if the decision is served by mail. *See* 5 C.F.R. § 2429.22). The appeal was filed on August 27, 2007; therefore, it is timely filed and is properly before the General Counsel for consideration.

The Regulations at 5 C.F.R. § 2423.11(e) provide the following grounds upon which the General Counsel may grant an appeal of a Regional Director's decision to dismiss an unfair labor practice charge: (1) the decision did not consider a material fact that would have resulted in issuance of complaint; (2) the decision is based on a finding of a material fact that is clearly erroneous; (3) the decision is based on an incorrect statement of the applicable rule of law; (4) there is no Authority precedent on the legal issue in the case; or (5) the manner in which the Region conducted the investigation has resulted in prejudicial error. *Id.* and 5 C.F.R. § 2423.11(f).

On appeal, the Charging Party alleged, among other things, that the Regional Director's decision is based on a finding of a material fact that is clearly erroneous. In this regard, the Charging Party contended that Regional Director erred in concluding that the evidence was insufficient to establish a violation of 5 U.S.C. § 7116(a)(1) and (5). In particular, the Charging Party submitted that the Regional Director erred in failing to find that the Charged Party violated the Statute when it refused to bargain under the auspices of the Federal Service Impasses Panel when at impasse in contract negotiations with the Charging Party.

This appeal has been carefully considered. The Regional Director's rationale for dismissing the charges is supported by the evidence of record. The appeal has failed to establish any ground for either reversing the Regional Director's decision or remanding the case for further investigation in accordance with 5 C.F.R. § 2423.11(e). The dismissal letter issued by the Regional Director constitutes the written statement of the reasons for not issuing a complaint as required by 5 U.S.C. § 7118(a)(1).

ORDERED: For the foregoing reasons, the appeal is hereby DENIED.*

Date Issued: 1·29·2008

Colleen Duffy Kiko
General Counsel

* Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**
**OFFICE OF THE GENERAL COUNSEL**

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
**Charged Party**

**and** **Case No. WA-CA-06-0563**

**NATIONAL AIR TRAFFIC CONTROLLERS**
**ASSOCIATION, AFL-CIO**
**Charging Party**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED** **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005 **Cert No. 7006 2760 0005 6476 5812**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591 **Cert No. 7006 2760 0005 6476 5829**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

2008 FEB -4 P 2:0
PERSONNEL LAW ... LABOR AGC-30

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
**Charged Party**

**and** **Case No. WA-CA-06-0648**

**NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO**
**Charging Party**

**Order Denying Appeal**

The Rules and Regulations (Regulations) of the Federal Labor Relations Authority (FLRA) provide that a "Charging Party may obtain review of the Regional Director's decision not to issue a complaint by filing an appeal with the General Counsel within 25 days after service of the Regional Director's decision." 5 C.F.R. § 2423.11(c).

The decision of the Regional Director not to issue a complaint was issued on July 25, 2007, and was served on the parties by mail. Accordingly, an appeal must be filed by August 27, 2007. (An additional five days is added to the time period if the decision is served by mail. *See* 5 C.F.R. § 2429.22). The appeal was filed on August 27, 2007; therefore, it is timely filed and is properly before the General Counsel for consideration.

The Regulations at 5 C.F.R. § 2423.11(e) provide the following grounds upon which the General Counsel may grant an appeal of a Regional Director's decision to dismiss an unfair labor practice charge: (1) the decision did not consider a material fact that would have resulted in issuance of complaint; (2) the decision is based on a finding of a material fact that is clearly erroneous; (3) the decision is based on an incorrect statement of the applicable rule of law; (4) there is no Authority precedent on the legal issue in the case; or (5) the manner in which the Region conducted the investigation has resulted in prejudicial error. *Id.* and 5 C.F.R. § 2423.11(f).

On appeal, the Charging Party alleged, among other things, that the Regional Director's decision is based on a finding of a material fact that is clearly erroneous and there is no Authority precedent on the legal issue in the case. In this regard, the Charging Party contended that the Regional Director erred in concluding that the parties were at impasse. The Charging Party alleged that the Regional Director erred in failing to find that the FSIP is the final and binding arbiter of impasses. The Charging Party also submitted that there is no Authority precedent that

concerns the interpretation of 49 U.S.C. § 40122, and that nowhere in subsection (a) does it provide that unilateral implementation is a substitute for final agreement similar to the FSIP.

This appeal has been carefully considered. The Regional Director's rationale for dismissing the charges is supported by the evidence of record. The appeal has failed to establish any ground for either reversing the Regional Director's decision or remanding the case for further investigation in accordance with 5 C.F.R. § 2423.11(e). The dismissal letter issued by the Regional Director constitutes the written statement of the reasons for not issuing a complaint as required by 5 U.S.C. § 7118(a)(1).

ORDERED: For the foregoing reasons, the appeal is hereby DENIED.*

Date Issued: 1·29·2008

Colleen Duffy Kiko
General Counsel

* Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g.*, *Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
Charged Party

and

Case No. WA-CA-06-0648

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION, AFL-CIO
Charging Party

CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED** **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005

Cert No. 7006 2760 0005 6476 6253

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591

Cert No. 7006 2760 0005 6476 6260

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst