**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**
**OFFICE OF THE GENERAL COUNSEL**

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
**Charged Party**

**and** **Case No. WA-CA-06-0366**

**NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO**
**Charging Party**

**Order Denying Motion for Reconsideration**

The Rules and Regulations of the Federal Labor Relations Authority at 5 C.F.R. § 2423.11(g) provide that a Charging Party may move for reconsideration of the General Counsel's final decision if it can establish extraordinary circumstances. Further, the Motion for Reconsideration must be filed within 10 days after the date on which the General Counsel's final decision is postmarked. The final General Counsel's Order denying the appeal was postmarked January 29, 2008. As the Charging Party's Motion for Reconsideration was filed on February 6, 2008, it was timely filed. *See* 5 C.F.R. § 2429.21 (the date of hand delivery is the filing date).

In determining whether extraordinary circumstances have been established, the General Counsel applies a similar standard to that set forth by the Authority in *U.S. Dep't of the Air Force, 375th Combat Support Group, Scott Air Force Base, Ill.*, 50 FLRA 84 (1995). Specifically, the General Counsel will not grant a Motion for Reconsideration unless the moving party establishes that: (1) an intervening court decision or change in the law affects dispositive issues; (2) evidence, information or an issue crucial to the decision was not considered by the General Counsel; or (3) the General Counsel made an error in material fact or law. A Motion for Reconsideration may not be used to reopen a case merely to reargue contentions previously advanced and already considered by the General Counsel.

The contentions asserted in the Motion for Reconsideration have been carefully considered. Nothing in the Motion for Reconsideration establishes extraordinary circumstances under the standard set forth above. Therefore, the Motion for Reconsideration is denied. This decision is final. 5 C.F.R. § 2423.11(g).

ORDERED: For the foregoing reasons, the Motion for Reconsideration is hereby DENIED.*

Date Issued: 2-26-2008

Colleen Duffy Kiko
General Counsel

* Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**
**OFFICE OF THE GENERAL COUNSEL**

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
**Charged Party**

**and** **Case No. WA-CA-06-0366**

**NATIONAL AIR TRAFFIC CONTROLLERS**
**ASSOCIATION, AFL-CIO**
**Charging Party**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED** **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005
**Cert No. 7006 2760 0005 6476 6697**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591
**Cert No. 7006 2760 0005 6476 6703**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
Charged Party

and

Case No. WA-CA-06-0563

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION, AFL-CIO
Charging Party

**Order Denying Motion for Reconsideration**

The Rules and Regulations of the Federal Labor Relations Authority at 5 C.F.R. § 2423.11(g) provide that a Charging Party may move for reconsideration of the General Counsel's final decision if it can establish extraordinary circumstances. Further, the Motion for Reconsideration must be filed within 10 days after the date on which the General Counsel's final decision is postmarked. The final General Counsel's Order denying the appeal was postmarked January 29, 2008. As the Charging Party's Motion for Reconsideration was filed on February 6, 2008, it was timely filed. *See* 5 C.F.R. § 2429.21 (the date of hand delivery is the filing date).

In determining whether extraordinary circumstances have been established, the General Counsel applies a similar standard to that set forth by the Authority in *U.S. Dep't of the Air Force, 375th Combat Support Group, Scott Air Force Base, Ill.*, 50 FLRA 84 (1995). Specifically, the General Counsel will not grant a Motion for Reconsideration unless the moving party establishes that: (1) an intervening court decision or change in the law affects dispositive issues; (2) evidence, information or an issue crucial to the decision was not considered by the General Counsel; or (3) the General Counsel made an error in material fact or law. A Motion for Reconsideration may not be used to reopen a case merely to reargue contentions previously advanced and already considered by the General Counsel.

The contentions asserted in the Motion for Reconsideration have been carefully considered. Nothing in the Motion for Reconsideration establishes extraordinary circumstances under the standard set forth above. Therefore, the Motion for Reconsideration is denied. This decision is final. 5 C.F.R. § 2423.11(g).

ORDERED: For the foregoing reasons, the Motion for Reconsideration is hereby DENIED.*

Date Issued: 2-26-2008

Colleen Duffy Kiko
General Counsel

* Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**
**OFFICE OF THE GENERAL COUNSEL**

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
**Charged Party**

**and** **Case No. WA-CA-06-0563**

**NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO**
**Charging Party**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED** **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005 **Cert No. 7006 2760 0005 6476 6710**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591 **Cert No. 7006 2760 0005 6476 6727**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**
**OFFICE OF THE GENERAL COUNSEL**

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
**Charged Party**

**and** **Case No. WA-CA-06-0648**

**NATIONAL AIR TRAFFIC CONTROLLERS**
**ASSOCIATION, AFL-CIO**
**Charging Party**

**Order Denying Motion for Reconsideration**

The Rules and Regulations of the Federal Labor Relations Authority at 5 C.F.R. § 2423.11(g) provide that a Charging Party may move for reconsideration of the General Counsel's final decision if it can establish extraordinary circumstances. Further, the Motion for Reconsideration must be filed within 10 days after the date on which the General Counsel's final decision is postmarked. The final General Counsel's Order denying the appeal was postmarked January 29, 2008. As the Charging Party's Motion for Reconsideration was filed on February 6, 2008, it was timely filed. *See* 5 C.F.R. § 2429.21 (the date of hand delivery is the filing date).

In determining whether extraordinary circumstances have been established, the General Counsel applies a similar standard to that set forth by the Authority in *U.S. Dep't of the Air Force, 375th Combat Support Group, Scott Air Force Base, Ill.*, 50 FLRA 84 (1995). Specifically, the General Counsel will not grant a Motion for Reconsideration unless the moving party establishes that: (1) an intervening court decision or change in the law affects dispositive issues; (2) evidence, information or an issue crucial to the decision was not considered by the General Counsel; or (3) the General Counsel made an error in material fact or law. A Motion for Reconsideration may not be used to reopen a case merely to reargue contentions previously advanced and already considered by the General Counsel.

The contentions asserted in the Motion for Reconsideration have been carefully considered. Nothing in the Motion for Reconsideration establishes extraordinary circumstances under the standard set forth above. Therefore, the Motion for Reconsideration is denied. This decision is final. 5 C.F.R. § 2423.11(g).

ORDERED: For the foregoing reasons, the Motion for Reconsideration is hereby DENIED.*

Date Issued: 2-26-2008

Colleen Duffy Kiko
General Counsel

* Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g.*, *Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY**
**OFFICE OF THE GENERAL COUNSEL**

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
**Charged Party**

**and** **Case No. WA-CA-06-0648**

**NATIONAL AIR TRAFFIC CONTROLLERS**
**ASSOCIATION, AFL-CIO**
**Charging Party**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED** **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005 **Cert No. 7006 2760 0005 6476 6734**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591 **Cert No. 7006 2760 0005 6476 6741**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

NATCA®

# AGREEMENT
between the
NATIONAL AIR TRAFFIC
CONTROLLERS ASSOCIATION
AFL/CIO
and the
Federal Aviation Administration
Department of Transportation

FEDERAL AVIATION ADMINISTRATION

SEPTEMBER 2003

## NATIONAL OFFICERS

**President**
John Carr
1325 Massachusetts Avenue, NW
Washington, DC 20005
202-628-5451 FAX 202-628-5767
Email: jcarr@natcadc.org

**Executive Vice President**
Ruth Marlin
1325 Massachusetts Avenue, NW
Washington, DC 20005
202-628-5451 FAX 202-628-5767
Email: rmarlin@natcadc.org

## REGIONAL VICE PRESIDENTS

**ALASKAN REGION**
Rick Thompson
PO Box 233291
Anchorage, AK 99523
907-346-3372 FAX 907-346-3373
Email: rtnatca@pobox.alaska.net

**CENTRAL REGION**
John Tune
27094 Hospital Drive
Paola, KS 66071
913-294-2861 FAX 913-557-9966
Email: jtune@natca.org

**EASTERN REGION**
Phil Barbarello
1303 Main Street
Port Jefferson, NY 11777
631-331-3273 FAX 631-331-2986
Email: nearvp@natca.net

**GREAT LAKES REGION**
Patrick Forrey
1910 Highland, Suite 210
Lombard, IL 60148
630-268-8430 FAX 630-268-8476
Email: nglrvp@natca.net

**NEW ENGLAND REGION**
Mike Blake
20A Northwest Blvd., Suite 226
Nashua, NH 03063
603-673-7443 FAX 603-673-3432
Email: mblake@natca.org

**NORTHWEST MOUNTAIN REGION**
Carol Branaman
PO Box 2250
Monument, CO 80132
719-487-7711 FAX 719-487-7722
Email: carolrvp@earthlink.net

**SOUTHERN REGION**
Andy Cantwell
100 Hartsfield Centre Parkway,
Suite 510
Atlanta, GA 30354
404-766-3118 FAX 404-766-4265
Email: nsorvp@natca.org

**SOUTHWEST REGION**
Darrell Meachum
1001 West Euless Boulevard,
Suite 215
Euless, TX 76040
817-540-6661 FAX 817-354 8589
Email: nswrvp@natca.net

**WESTERN PACIFIC REGION**
Bob Marks
751 Rancheros Drive, Suite 1
San Marcos, CA 92069
760-752-3400 FAX 760-752-3434
Email: skylord@cox.net

**REGION X**
James D'Agati
231 W. Main Street, #207
Carpentersville, IL 60110
847-551-3320 FAX 847-551-3396
Email: jdagati@natca.net

# AGREEMENT

between the

# NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION AFL/CIO AIR TRAFFIC CONTROLLERS UNIT

and the

# Federal Aviation Administration Department of Transportation

SEPTEMBER 2003

**AGREEMENT**

between the

**NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION**

**AFL/CIO**

**TRAFFIC MANAGEMENT UNIT**

and the

**Federal Aviation Administration**

**Department of Transportation**

SEPTEMBER 2003

0000085

Intentionally Left Blank



000086

# TABLE OF CONTENTS


| ARTICLE | SUBJECT | PAGE |
|---|---|---|
| ARTICLE 1 | PARTIES TO THE AGREEMENT | 1 |
| ARTICLE 2 | UNION RECOGNITION AND REPRESENTATION | 1 |
| ARTICLE 3 | RIGHTS OF UNION OFFICIALS | 7 |
| ARTICLE 4 | EMPLOYEE RIGHTS | 8 |
| ARTICLE 5 | MANAGEMENT RIGHTS | 12 |
| ARTICLE 6 | REPRESENTATION RIGHTS | 13 |
| ARTICLE 7 | MID-TERM BARGAINING | 15 |
| ARTICLE 8 | PROBLEM SOLVING | 17 |
| ARTICLE 9 | GRIEVANCE PROCEDURE | 19 |
| ARTICLE 10 | DISCIPLINARY/ADVERSE ACTIONS | 29 |
| ARTICLE 11 | DUES WITHHOLDING | 33 |
| ARTICLE 12 | ADDITIONAL VOLUNTARY ALLOTMENT DEDUCTIONS | 37 |
| ARTICLE 13 | UNION PUBLICATIONS AND INFORMATION AND USE OF AGENCY'S FACILITIES | 40 |
| ARTICLE 14 | NAMES OF EMPLOYEES AND COMMUNICATIONS | 43 |
| ARTICLE 15 | USE OF OFFICIAL GOVERNMENT TELEPHONES | 44 |
| ARTICLE 16 | AGENCY DIRECTIVES | 45 |
| ARTICLE 17 | POSITION DESCRIPTIONS | 46 |
| ARTICLE 18 | CONTROLLER-IN-CHARGE (CIC) TRAFFIC MANAGEMENT SPECIALIST-IN-CHARGE (TMSIC) TRAFFIC MANAGEMENT COORDINATOR-IN-CHARGE (TMCIC) NOTAM SPECIALIST-IN-CHARGE (NSIC) | 48 |
| ARTICLE 19 | HAZARDOUS GEOLOGICAL/WEATHER CONDITIONS | 49 |
| ARTICLE 20 | PERFORMANCE STANDARDS AND APPRAISALS | 51 |
| ARTICLE 21 | RECOGNITION AND AWARDS PROGRAM | 53 |
| ARTICLE 22 | EMPLOYEE RECORDS | 55 |
| ARTICLE 23 | LIAISON AND FAMILIARIZATION TRAVEL | 59 |
| ARTICLE 24 | ANNUAL LEAVE | 62 |
| ARTICLE 25 | SICK LEAVE | 65 |
| ARTICLE 26 | LEAVE FOR SPECIAL CIRCUMSTANCES | 68 |

| | | |
|---|---|---|
| ARTICLE 27 | JURY DUTY AND COURT LEAVE | 71 |
| ARTICLE 28 | HOLIDAYS | 72 |
| ARTICLE 29 | EXCUSED ABSENCES | 76 |
| ARTICLE 30 | PRENATAL/INFANT CARE | 77 |
| ARTICLE 31 | CHILD CARE | 78 |
| ARTICLE 32 | WATCH SCHEDULES AND SHIFT ASSIGNMENTS | 79 |
| ARTICLE 33 | POSITION ROTATION AND RELIEF PERIODS | 81 |
| ARTICLE 34 | WORKING HOURS | 82 |
| ARTICLE 35 | PART-TIME EMPLOYMENT | 85 |
| ARTICLE 36 | PAY ADMINISTRATION | 87 |
| ARTICLE 37 | BACK PAY | 88 |
| ARTICLE 38 | OVERTIME | 88 |
| ARTICLE 39 | NATIONAL PAY PROCEDURES | 90 |
| ARTICLE 40 | SEVERANCE PAY | 90 |
| ARTICLE 41 | RETIREMENT AND BENEFITS ADMINISTRATION | 91 |
| ARTICLE 42 | BIDDING PROCEDURES | 94 |
| ARTICLE 43 | TEMPORARY PROMOTIONS | 96 |
| ARTICLE 44 | TEMPORARY ASSIGNMENTS AWAY FROM THE FACILITY | 97 |
| ARTICLE 45 | TEMPORARILY DISABLED EMPLOYEES/ ASSIGNMENTS | 98 |
| ARTICLE 46 | REALIGNMENT OF WORK FORCE | 99 |
| ARTICLE 47 | REDUCTION-IN-FORCE (RIF) | 100 |
| ARTICLE 48 | TECHNOLOGICAL/PROCEDURAL CHANGES | 101 |
| ARTICLE 49 | STUDIES OF EMPLOYEES AND THEIR WORKING CONDITIONS | 103 |
| ARTICLE 50 | SURVEYS AND QUESTIONNAIRES | 104 |
| ARTICLE 51 | FACILITY EVALUATIONS | 105 |
| ARTICLE 52 | REINVENTING GOVERNMENT | 105 |
| ARTICLE 53 | OCCUPATIONAL SAFETY AND HEALTH | 107 |
| ARTICLE 54 | WELLNESS CENTERS AND PHYSICAL FITNESS PROGRAMS | 110 |
| ARTICLE 55 | HUMAN FACTORS | 111 |
| ARTICLE 56 | EQUAL EMPLOYMENT OPPORTUNITY (EEO) | 111 |
| ARTICLE 57 | EMPLOYEE ASSISTANCE PROGRAM (EAP) | 112 |
| ARTICLE 58 | MOVING EXPENSES | 114 |
| ARTICLE 59 | RETURN RIGHTS | 119 |


4800009




| | | |
|---|---|---|
| ARTICLE 60 | FACILITY OF PREFERENCE | 122 |
| ARTICLE 61 | PROCEDURES FOR VOLUNTARY APPLICATION AND INTERNAL PLACEMENT | 123 |
| ARTICLE 62 | IMMUNITY PROGRAM | 125 |
| ARTICLE 63 | NATIONAL TRANSPORTATION SAFETY BOARD (NTSB) UNION REPRESENTATIVES | 125 |
| ARTICLE 64 | OPERATIONAL ERROR/DEVIATION INVESTIGATION, REPORTING AND REVIEW BOARD | 126 |
| ARTICLE 65 | CONTROLLER/EMPLOYEE PERFORMANCE | 129 |
| ARTICLE 66 | MEDICAL QUALIFICATIONS | 130 |
| ARTICLE 67 | TRAINING | 133 |
| ARTICLE 68 | ON-THE-JOB-TRAINING | 135 |
| ARTICLE 69 | DRESS CODE | 136 |
| ARTICLE 70 | PARKING | 137 |
| ARTICLE 71 | EMPLOYEE SERVICES | 138 |
| ARTICLE 72 | CALENDAR DAYS | 138 |
| ARTICLE 73 | SUBSTANCE TESTING | 139 |
| ARTICLE 74 | CRITICAL INCIDENT STRESS MANAGEMENT (CISM) | 144 |
| ARTICLE 75 | INJURY COMPENSATION | 146 |
| ARTICLE 76 | NEW FACILITIES/CURRENT FACILITY EXPANSION | 148 |
| ARTICLE 77 | ASBESTOS | 149 |
| ARTICLE 78 | ACQUIRED IMMUNO-DEFICIENCY SYNDROME (AIDS) | 151 |
| ARTICLE 79 | FARE SUBSIDIES FOR EMPLOYEES | 152 |
| ARTICLE 80 | EMPLOYEE RECERTIFICATION | 153 |
| ARTICLE 81 | HAZARDOUS DUTY PAY | 154 |
| ARTICLE 82 | AERONAUTICAL CENTER | 154 |
| ARTICLE 83 | SENIORITY | 155 |
| ARTICLE 84 | DISABLED VETERANS AFFIRMATIVE ACTION PROGRAM | 155 |
| ARTICLE 85 | ACCOMMODATION OF DISABLED EMPLOYEES | 156 |
| ARTICLE 86 | CAREER TRANSITION PROGRAM | 156 |
| ARTICLE 87 | FLEXIBLE SPENDING ACCOUNTS | 156 |
| ARTICLE 88 | GAIN SHARING | 157 |
| ARTICLE 89 | GOVERNMENT CREDIT CARD | 158 |
| ARTICLE 90 | LEAVE TRANSFER | 159 |

ARTICLE 91 INTERCHANGE AGREEMENT .................. 163
ARTICLE 92 PERSONAL PROPERTY CLAIMS .................. 163
ARTICLE 93 SELF-REFERRAL .................. 163
ARTICLE 94 STAFFING .................. 165
ARTICLE 95 AVAILABILITY OF THE CENTER FOR MANAGEMENT DEVELOPMENT (CMD) ....... 166
ARTICLE 96 TEMPORARY DUTY TRAVEL .................. 167
ARTICLE 97 SECURITY .................. 170
ARTICLE 98 PROBATIONARY EMPLOYEE .................. 170
ARTICLE 99 OPERATIONAL REQUIREMENTS .................. 170
ARTICLE 100 PRIORITY CONSIDERATION .................. 171
ARTICLE 101 FAA REFORM .................. 171
ARTICLE 102 EFFECT OF AGREEMENT .................. 172
ARTICLE 103 PRINTING OF THE AGREEMENT .................. 173
ARTICLE 104 REOPENER .................. 173
ARTICLE 105 GROUND RULES .................. 174
ARTICLE 106 DURATION .................. 174

MEMORANDUM OF AGREEMENT .................. 175
MEMORANDUM OF UNDERSTANDING .................. 179

APPENDIX 1 AIR TRAFFIC CONTROLLER UNIT FLRA CERTIFICATION .................. 187
APPENDIX 2 TRAFFIC MANAGEMENT UNIT FLRA CERTIFICATION .................. 189
APPENDIX 3 NOTAM UNIT FLRA CERTIFICATION .................. 191

INDEX .................. 193




880000

# ARTICLE 1
## PARTIES TO THE AGREEMENT

**Section 1.** This Agreement is made by and between the National Air Traffic Controllers Association, AFL-CIO (hereinafter "the Union"), and the Federal Aviation Administration, Department of Transportation (hereinafter "the Agency"). The Union and the Agency are referred to collectively herein as "the Parties."

**Section 2.** For the purposes of this Agreement, the Parties agree that within the David J. Hurley Air Traffic Control Systems Command Center (ATCSCC) structure, ATT-2 is the equivalent of the Air Traffic Manager and ATT-1 is the equivalent of the regional level/Air Traffic Division Manager.

# ARTICLE 2
## UNION RECOGNITION AND REPRESENTATION

**Section 1.** The Agency hereby recognizes the Union as the exclusive bargaining representative of Air Traffic Control Specialists, FG-2152 series, located in terminal and enroute facilities, as certified by the Federal Labor Relations Authority (FLRA) on June 19, 1987 (Appendix 1). The agency also recognizes the Union as the exclusive bargaining representative of traffic management coordinators/specialists, FG-2152 series, in terminal and enroute facilities and the Air Traffic Control System Command Center (ATCSCC), as certified by the FLRA on May 25, 2000 (Appendix 2), and NOTAM specialists, FG-2152 series, at the ATCSCC, as certified by the FLRA on March 23, 1999 (Appendix 3).

**Section 2.** If the bargaining unit(s) described in Section 1 is/are amended to include other employees, those employees shall be covered by this Agreement.

**Section 3.** The Union may designate Facility Representatives for each facility. The Union may designate one (1) representative and

departs his/her duty station. The employee shall be released from his/her facility and will be considered on duty time for up to two (2) hours so as to reasonably arrive at the departure airport one (1) hour prior to the proposed departure time.

**Section 11.** All familiarization trip requests must be submitted to the facility sufficiently in advance to permit three (3) administrative days for internal processing. This is in addition to the advance notice required by the air carrier and time for mailing.

**Section 12.** Familiarization flights are on-the-job training. An employee traveling on such a flight on his/her regularly assigned duty day receives the same premium pay he/she would have received had he/she worked his/her regular shift. An employee shall be considered on duty time for one (1) hour prior to the proposed departure time until one (1) hour after the actual arrival time at the final destination, if otherwise in a duty status. An employee is not entitled to premium pay, overtime, or compensatory time/credit hours when traveling on off-duty days.

**Section 13.** All familiarization travel shall be subject to the approval of the Agency. Such approval will be governed by the operational and staffing requirements of the facility.

## ARTICLE 24
## ANNUAL LEAVE

**Section 1.** Employees are entitled to annual leave with pay that accrues as follows:

a. four (4) hours for each full biweekly pay period for an employee with less than three (3) years of service,

b. six (6) hours for each full biweekly pay period, except that the accrual for the last biweekly pay period in the year is ten (10) hours, for an employee with three (3) but less than fifteen (15) years of service,

000089



c. eight (8) hours for each full biweekly pay period for an employee with fifteen (15) or more years of service.

**Section 2.** Except for those facilities where a leave exigency exists, employees shall be authorized the use of the leave they are entitled to earn within a leave year at any time during the leave year. All employees shall be afforded the opportunity to take two (2) consecutive weeks annual leave each year.

**Section 3.** Annually, prime time leave periods shall be negotiated at the local level for each bargaining unit so as to allow a minimum of two (2) consecutive or non-consecutive weeks of annual leave during prime time for all bargaining unit employees. The procedures for selecting, scheduling and relinquishing of prime time leave shall be negotiated at the local level for each bargaining unit.

**Section 4.** Conflicting prime time leave requests of bargaining unit employees shall be resolved by seniority.

**Section 5.** Non-prime time leave is annual leave that is requested utilizing other than the prime time leave bidding procedure negotiated under Section 3 and prior to the schedule being posted. Non-prime time leave requests shall be recorded and approved/ disapproved as soon as practicable after the request is made or as mutually agreed upon at the local level. Approval/disapproval shall not be subject to conditional circumstances. If the request was disapproved and annual leave for that time period, or any portion of that time period, later becomes available, the leave shall be approved on a first requested basis. The Parties at the local level shall establish the method for recording non-prime time leave requests.

**Section 6.** Annual leave requested for any period during a posted watch schedule, for the shift being worked, shall normally be approved/disapproved within thirty (30) minutes of the request being made. Leave requests for future shifts shall normally be

approved/disapproved within two (2) hours of when the request was made, or prior to the end of the shift, whichever is less. Approval/disapproval shall not be subject to conditional circumstances. Leave requests shall be approved in the order that they were requested. If the request was disapproved and annual leave for that time period later becomes available, the leave shall be approved in the order that the request was received. The Parties, at the local level, shall establish a secure method for recording leave requests.

**Section 7.** Except as authorized in OPM regulations, no employee will be forced to take annual leave.

**Section 8.** Unless operational requirements do not permit, bargaining unit employees may be authorized the use of all accumulated leave.

**Section 9.** An employee may cancel annual leave at any time. When an employee cancels scheduled annual leave and returns to duty, he/she shall be assigned to work the shift which he/she would have worked, if the annual leave had not been scheduled, unless operational requirements dictate or allow assignment to a different shift.

**Section 10.** Employees on annual leave who become sick shall have the right to convert the annual leave to sick leave.

**Section 11.** Employees shall not be required to provide reasons for annual leave requests.

**Section 12.** Unless otherwise negotiated locally, all annual leave requests shall be submitted on an SF-71. The form shall be dated, signed, approved/disapproved as appropriate, and a copy returned to the employee.

**Section 13.** Exigencies for public business must be determined by the head of the Agency or his/her designee. Except where made by

000090



the head of the Agency, the determination may not be made by an official whose leave would be affected by the decision. The Agency will notify the Union, at the national level, when the Agency makes the decision to place any facility in a leave exigency status. Upon written request of the Union, the Agency shall provide, in writing, within fourteen (14) days, the justification the Agency used in determining the need for the facility to be placed in a leave exigency status. If the Agency determines that an emergency exists at a facility not covered by a leave exigency, which precludes an employee from using appropriately scheduled use-or-lose leave, such leave shall be retained by the employee.

**Section 14.** In the event a leave exigency exists, the Parties at the local level shall negotiate the amount of annual leave each employee can use and the procedures to be used to distribute the leave equitably among bargaining unit employees.

**Section 15.** In determining years of service, an employee is entitled to credit for all service of a type that would be creditable under 5 USC 8332, regardless of whether or not the employee is covered by Subchapter III of Chapter 83.

**Section 16.** Except as otherwise provided for in this Agreement, employees are covered by the annual leave and lump sum payment provisions contained in 5 USC Chapter 55, Chapter 63 and the associated regulations in 5 CFR.

**Section 17.** The express terms of this Article apply separately and distinctly to each of the following bargaining units: air traffic controllers, traffic management coordinators/specialists and NOTAM specialists.

## ARTICLE 25
## SICK LEAVE

**Section 1.** An employee shall earn sick leave at a rate of four (4) hours a pay period.

## ARTICLE 31
## CHILD CARE

**Section 1.** The Parties recognize the relationship of adequate child care to employee satisfaction and productivity and that this is mutually beneficial. However, the Parties further recognize that it is not within the authority of the Agency to directly provide on-site child care at its facilities.

**Section 2.** In accordance with governing regulations, the Agency shall provide advice and assistance concerning employee child care. Such advice and assistance may include conducting needs assessment surveys, maintaining information about private child care facilities available to employees and maintaining information about tuition assistance programs.

**Section 3.** In accordance with governing regulations, the Agency may provide suitable government-owned or leased space and space-related services without charge for the purpose of establishing child care facilities in or near the Agency's facilities.

When any facility is constructed and there will be at least fifty (50) employees in the facility, the Agency shall conduct a needs assessment survey to determine the feasibility of establishing a child care facility. The Agency shall compile a list of other government facilities within the commuting area, so that such facilities may combine resources for the purpose of meeting the basic eligibility requirements as determined by GSA.

If requested, the Union shall be involved in all phases of this process.

**Section 4.** When work groups are formed for the purpose of establishing on-site or off-site child care facilities, the Union shall be entitled to name a representative on the group. The representative will be allowed duty time to participate in the

000091



activities of the group if otherwise in a duty status. If requested by the representative and operational requirements permit, the Agency shall change his/her days off to allow participation in a duty status for these purposes. If the Agency is unable to approve the change as specified above, the work group meeting will be rescheduled to a mutually agreeable time.

**Section 5.** If space is available, the Agency shall provide for the use of a private area in all of its facilities for employees who are breast-feeding their children.

## ARTICLE 32
## WATCH SCHEDULES AND SHIFT ASSIGNMENTS

**Section 1.** The basic watch schedule is defined as the days of the week, hours of the day, rotation of shifts and change in regular days off. The basic watch schedule must satisfy coverage requirements. Assignments of individual employees to the watch schedule are not considered changes to the basic watch schedule. Once posted, the basic watch schedule may not be renegotiated except for substantial operational reasons, or unless specifically requested by the Union. Permanent/rotating shifts and/or permanent/rotating days off are options which may be considered.

**Section 2.** Procedures for employees bidding and assignment to the basic watch schedule shall be negotiated by the Union and the Agency at the local level. Upon request of the Union, bidding and/or assignment to the basic watch schedule shall be according to seniority.

**Section 3.** The basic watch schedule shall be posted at least one (1) year in advance.

**Section 4.** Assignments to the watch schedule shall be posted at least twenty-eight (28) days in advance or for a longer period where local conditions permit. The Agency recognizes that

changes of individual assignments to the watch schedule are undesirable; therefore, the Agency agrees to make every reasonable effort to avoid such changes. Changes with less than seven (7) days notice shall not be made for the purpose of avoiding payment of overtime, holiday or other premium pay. When the Agency determines that overtime will not be used, the Agency shall use the following alternatives to the extent feasible prior to making the change to an employee's posted shift assignment with less than seven (7) days notice:

a. employees who have volunteered to change shifts;

b. employees who have volunteered to earn credit hours;

c. personnel on permanent assignments that are required to maintain currency;

d. line supervisors;

e. personnel on detail assignments;

f. rescheduling of training.

In the event the above alternatives are found not to be feasible, the employee's posted shift assignment can be changed. Whenever an employee's shift is changed involuntarily, the affected employee shall be paid all differentials or premium pay to which he/she would otherwise have been entitled.

**Section 5.** The Agency shall approve the exchange of shifts and/or days off by employees of equal qualifications, provided the exchange is consistent with operational requirements and does not result in overtime or violation of the basic work week.

The Agency shall approve the change of shifts and/or days off, provided the change is consistent with operational requirements and does not result in overtime or violation of the basic work week.

000092



**Section 6.** The Agency shall establish a policy that shift adjustments for the purpose of continuing an employee's off-duty education or professional training shall be handled on an individual basis. However, the Agency agrees that in no instance shall shift adjustments for this purpose interfere with the watch schedule rotation of any other employee at that facility, without the consent of the employee so affected. No employee may receive preference at the expense of another unless both employees agree to the arrangement. The employee requesting education shift adjustment shall be responsible for obtaining the consent of all other employees affected.

**Section 7.** The express terms of this Article apply separately and distinctly to each of the following bargaining units: air traffic controllers, traffic management coordinators/specialists and NOTAM specialists.

## ARTICLE 33
## POSITION ROTATION AND RELIEF PERIODS

**Section 1.** Unless operational requirements do not permit, employees shall not be required to spend more than two (2) consecutive hours performing operational duties without a break away from operational areas. The supervisor is responsible for ensuring that breaks are administered in accordance with this Article.

In any facility where employees routinely spend more than two (2) consecutive hours on position without a break, the NATCA Regional Vice President and the Regional Air Traffic Division Manager shall meet to develop a plan to alleviate the problem.

**Section 2.** Breaks are defined as a period of time during which no duties are assigned.

**Section 3.** To the extent traffic volume and staffing levels within a facility on a given day permit, position assignments shall be rotated

among the qualified employees. The Agency shall seek input from the Union with respect to the rotational plan that the facility will normally follow.

**Section 4.** First priority for breaks shall be given to providing a reasonable amount of time away from the position of operation for meals. In the event the employee is required to work during the fourth (4th) hour through the sixth (6th) hour of their shift without a minimum thirty (30) minute uninterrupted meal break, they shall be compensated at the rate of fifty percent (50%) of one-half of the applicable hourly rate of basic pay. If the employee requests and receives the meal break during some other period they will not be eligible for the missed meal premium pay.

**Section 5.** Since position rotation and breaks may be restricted or precluded during shifts with the majority of hours between 2330 and 0630 local time, breaks/assignments to less busy positions shall be accomplished in the last two (2) hours of the shift as soon as operational conditions permit.

## ARTICLE 34
## WORKING HOURS

**Section 1.** The basic workday shall consist of eight (8) consecutive hours and the basic workweek shall consist of five (5) consecutive days.

**Section 2.** On changing to daylight savings time, employees shall be afforded the opportunity to remain on duty for eight (8) hours.

**Section 3.** The Agency may change an employee's shift to an administrative schedule (eight and one-half (8 ½) hour shift including an unpaid thirty (30) minute meal period) for the purpose of administrative travel or to accommodate official training, unless the employee is subject to operational recall. Employees will adhere to the tour of duty of the organizational segment to which

000093



they are temporarily assigned. Employees who are disciplined for conduct offenses or are undergoing performance related training may be reverted to an administrative workday(s) shift to ensure closer supervision.

**Section 4.** Upon request of the Union, Alternate Work Schedules (AWS) shall be authorized in accordance with this Agreement.

**Section 5.** Participants in an AWS shall be employees who volunteer in writing.

**Section 6.** "Core time" means those designated hours and days during the biweekly pay period established by the Agency when an employee on certain flexible schedules must be present for work.

**Section 7.** AWS means:

a. A minimum of seven (7) hours core time each workday.

b. A maximum of one (1) flexible hour which must be worked each workday.

c. Employees may vary start times on a daily basis only during the established flexible times.

d. Employees scheduled to work Sunday midshifts may not flex into the previous day.

e. At the union's request, maxiflex and compressed work weeks shall be negotiated at facilities that operate less than 24 hours/day.

**Section 8.** "Credit hours" are non-overtime hours worked under an AWS which are in excess of an employee's basic work requirement and which are worked at the election of the employee after approval by the Agency. Upon request of the Union, the Parties at the local level shall negotiate procedures for earning credit hours in conjunction with any particular shift(s) on a

recurring basis, provided that the Agency may rescind such agreement with twenty-eight (28) days' advance notice. Employees may submit advance requests to earn credit hours. Employees may accrue and carry over credit hours into any pay period.

**Section 9.** The Agency shall not require employees to work additional hours or days for credit hours.

**Section 10.** Credit hours must be earned prior to their use. Procedures for approving the use of earned credit hours shall be the same as those for approving annual leave requests under Article 24 of this Agreement. When requested in advance, the employee may substitute credit hours for approved annual leave.

**Section 11.** The exchange of shift assignments for employees working an AWS shall be in accordance with Article 32, Section 5 of this Agreement.

**Section 12.** Participants in any AWS shall be bargaining unit employees who volunteer. All employees who volunteer and subsequently participate will be expected to participate until their schedules are re-negotiated. An employee may be relieved from an AWS for hardship reasons. The reasons shall be set forth in writing to the Agency and the Union at the local level. Removals from AWS for hardship reasons shall be based on the merits of each case, and if found acceptable by the Agency, after direct discussion with the Union, employees shall be accommodated as soon as operational and scheduling requirements permit.

**Section 13.** Developmentals may participate in an AWS unless the Agency determines that it will adversely impact their training.

**Section 14.** If the Agency determines under the criteria established by 5 USC 6131 that any schedule established under the provisions of this Article has had or would have an adverse Agency impact, it will follow the provisions of 5 USC 6131 to seek termination of the schedule.



000094

**Section 15.** The express terms of this Article apply separately and distinctly to each of the following bargaining units: air traffic controllers, traffic management coordinators/specialists and NOTAM specialists.

## ARTICLE 35
## PART-TIME EMPLOYMENT

**Section 1.** Part time career employment and job sharing opportunities can help employees balance personal needs with their professional responsibilities. It is the intent of the Agency to make part-time career employment opportunities available consistent with the Agency's resource and operational requirements, for employees who are certified professional controllers in their current facility and for employees in the TMC/TMS and NOTAM bargaining units who are fully certified in their area of expertise. Denials of requests for part-time employment will be discussed with the employees, and they will be provided specific written reasons for denials.

While the Union recognizes the statutory rights of the Agency with respect to the establishment of permanent part time positions, such positions have not previously existed. Should the Agency make the determination to establish part time positions as a condition of employment, this determination shall form the basis for negotiations under Article 7 of this Agreement.

**Section 2.** Except as provided in Section 3 below:

a. the tour of duty for a part-time employee will be no less than sixteen (16) and no more than thirty-two (32) hours per week;

b. the tour of duty for a part-time employee on an AWS may be set on the basis of thirty-two (32) to sixty-four (64) hours per pay period and must include at least one (1) hour in each workweek;

## ARTICLE 37
## BACK PAY

**Section 1.** In accordance with 5 USC Chapter 71, the Parties recognize the power of an appropriate authority to render a remedy in accordance with the provisions of 5 USC 5596.

## ARTICLE 38
## OVERTIME

**Section 1.** The facility manager shall maintain a roster of qualified bargaining unit employees who have indicated a desire to work overtime. When overtime work is to be performed, it shall first be made available to employees on the roster, on an equitable basis. In the event no employees on this roster can be reached, the Agency may require other unit employees to work the overtime. The roster and distribution of overtime provided for in this Article shall be available to facility employees. Employees must provide a telephone number where they may be reached. Any assignments to employees not listed on the roster shall be made on an equitable basis.

**Section 2.** If an employee assigned to work overtime can secure a qualified replacement, he/she shall be relieved of the assignment. If the employee cannot secure a qualified replacement, the employee will work the overtime. An employee may be relieved of an overtime assignment when, in the judgment of the Agency:

a. the health or efficiency of the employee may be impaired; or

b. personal circumstances make it impossible for the employee to perform the overtime duty.

**Section 3.** In the event of holdover overtime, the Agency shall notify the employee as soon as possible before the end of the employee's regular shift.

00095



**Section 4.** Annual leave may be granted to any employee regardless of whether or not overtime work is being performed at the time by other employees on the shift.

**Section 5.** Overtime pay computations for non-exempt bargaining unit employees must be made solely in accordance with the Fair Labor Standards Act (FLSA) regulations in 5 CFR Part 551 and this Agreement. Employees are not eligible for overtime pay for work in excess of eight hours in an administrative workday, except in cases where they have been called in before the beginning, or held over beyond the end, of their scheduled shift. For the purpose of this provision, authorized leave, compensatory time used, and credit hours used are considered hours of work.

**Section 6.** Non-exempt employees shall receive base pay plus one-half of their regular rate for all FLSA overtime work. The increment of payment shall be one (1) minute. All time worked, including hours and minutes, shall be recorded on a daily basis.

**Section 7.** Except as otherwise provided for below, compensatory time off may not be substituted for overtime pay for regularly scheduled overtime work. At the request of an employee, the Agency may grant compensatory time off from an employee's tour of duty instead of payment for an equal amount of irregular or occasional overtime work. At the request of an employee, the Agency may grant compensatory time off from an employee's basic work requirement under a flexible work schedule instead of payment for an equal amount of overtime work, whether or not irregular or occasional in nature.

If an employee has any entitlement to overtime pay under FLSA at the end of a work week, the Agency cannot require the employee to take compensatory time instead of overtime pay.

**Section 8.** Overtime shall not normally be canceled without seven (7) days notice. However, if an employee cancels or returns from annual or sick leave, any overtime scheduled to cover that absence

may be canceled, provided that such overtime had been scheduled as a direct result of the returning employee's absence.

**Section 9.** When an employee is called in before or held over past his/her regularly assigned shift, he/she shall be guaranteed two (2) hours of work.

**Section 10.** If an employee is called in or scheduled for overtime on his/her regular day off and physically reports to work, he/she shall be guaranteed eight (8) hours of work.

**Section 11.** The express terms of this Article apply separately and distinctly to each of the following bargaining units: air traffic controllers, traffic management coordinators/specialists and NOTAM specialists.

## ARTICLE 39
## NATIONAL PAY PROCEDURES

**Section 1.** The Agency shall designate a nationwide payday which should be on the earliest day practicable following the close of the pay period. Such payday shall not be later than the second Tuesday after the close of the pay period.

**Section 2.** Earnings and leave statements shall be received by employees no later than the second Tuesday after the close of the pay period.

**Section 3.** The Agency shall issue W-2 forms and wage and tax statements no later than January 31 of each year.

## ARTICLE 40
## SEVERANCE PAY

**Section 1.** An employee who has been employed for a continuous period of at least twelve (12) months and who is involuntarily

960000



separated from employment for reasons other than misconduct, delinquency, or inefficiency and who is not eligible for an immediate annuity shall receive severance pay.

**Section 2.** The amount of severance pay shall be one (1) week's salary for each year of the first ten (10) years of service and two (2) week's salary for each year of service after ten (10) years.

**Section 3.** Upon separation, the Agency shall pay the employee severance pay at bi-weekly intervals in an amount equal to his/her basic salary.

## ARTICLE 41
## RETIREMENT AND BENEFITS ADMINISTRATION

**Section 1.** The Agency recognizes its obligation to fully inform employees about all benefits for which they may be eligible and the costs and consequences of benefit plans or options, and to encourage them to avail themselves of such benefits, and to assist them in initiating claims. The Agency agrees to take affirmative action to fulfill this obligation through such means as presenting video tape briefings, supplying brochures, pamphlets, other appropriate information and assisting employees in filing benefit claims. This information/assistance shall be made available on an annual basis to all bargaining unit employees.

**Section 2.** The Agency shall establish a personnel action system which requires priority processing of packages related to employee deaths. Such personnel actions shall take priority over all other personnel actions.

**Section 3.** After an employee's death, and with the beneficiary's consent, the Agency shall promptly dispatch a knowledgeable representative to the home of the deceased employee's primary beneficiary. When a personal briefing is not desired, the beneficiary shall be advised by other means, such as telephone,

5 USC Chapter 15 (Political Activity of Certain State and Local Employees); and

5 USC Chapter 91 (Access to Criminal History Records for National Security Purposes).

**Section 3.** The FAA's Personnel Management System is covered by the non-personnel management provisions of Title 5 and those portions of Title 5 that specifically apply to the Secretary including:

5 USC Section 3307 (Maximum Entry Age);

5 USC Section 5501 (Disposition of Lapsed Salaries);

5 USC Section 5502 (Unauthorized Office);

5 USC Section 5503 (Recess Appointments);

5 USC Sections 5511-20 (Withholding Pay);

5 USC Sections 5533-37 (Dual Pay);

5 USC Sections 5561-70 (Payments to Missing Employees); and

5 USC Chapter 79 (Services to Employees).

**Section 4.** The Administrator has chosen to incorporate the following provisions into the FAA's new Personnel Management System:

5 USC Sections 2901-06 (Commissions, Oaths);

5 USC Section 3111 (Acceptance of Volunteer Service);

5 USC Sections 3331-33 (Oath of Office); and

5 USC Sections 5351-5356 (Student-Employees).

## ARTICLE 102
## EFFECT OF AGREEMENT

000097

**Section 1.** Any provision of this Agreement shall be determined a valid exception to, and shall supersede any existing or future



Agency rules, regulations, directives, orders, policies and/or practices which conflict with the Agreement.

**Section 2.** All matters addressed by this Agreement, except as noted in Section 1, shall be governed by any such Agency rules, regulations, directives, orders, policies and/or practices.

**Section 3.** The Agency agrees to apply its rules, regulations, directives and orders in a fair and equitable manner. Any changes thereto will be in accordance with Article 7 of this Agreement.

**Section 4.** Any provision of the United States Code (USC) or Code of Federal Regulations (CFR) which is expressly incorporated by reference in this Agreement is binding on the Parties.

## ARTICLE 103
## PRINTING OF THE AGREEMENT

**Section 1.** The Agency shall print this Agreement in booklet form and distribute a copy to each employee in the unit. The Agency shall also provide one thousand (1000) copies to the national office of the Union.

## ARTICLE 104
## REOPENER

**Section 1.** In the event legislation is enacted which affects any provisions of this Agreement, the Parties shall reopen the affected provision(s) and renegotiate its contents.

**Section 2.** Any modification of the provisions or regulations of the Federal Labor Relations Authority affecting a provision of this Agreement or the relationship of the Parties may serve as a basis for the reopening of the affected provision(s).

MOA Number : 2936

COVINGTON & BURLING
1201 PENNSYLVANIA AVENUE, N. W.
P.O. BOX 7566
WASHINGTON, D.C. 20044-7566
(202) 662-6000
TELEFAX: (202) 662-6291

ANTHONY HERMAN
DIRECT DIAL NUMBER
(202) 662-5280
DIRECT TELEFAX NUMBER
(202) 778-5280
AHERMAN@COV.COM

LECONFIELD HOUSE
CURZON STREET
LONDON W1Y 8AS
ENGLAND
TELEPHONE: 44-171-495-5655
TELEFAX: 44-171-495-3101

BRUSSELS CORRESPONDENT OFFICE
44 AVENUE DES ARTS
BRUSSELS 1040 BELGIUM
TELEPHONE: 32-2-549-5230
TELEFAX: 32-2-502-1598

July 8, 1998

Mr. Mike McNally
President
National Air Traffic Controllers
Association
1150 17th Street, N.W., Suite 701
Washington, D.C. 20036

Dear Mike:

This confirms our agreement to delete the phrase "up to a maximum of 24 hours" in Article 34, Section 8 of the Agreement. We have also agreed that in exchange for removing the 24 hour limitation on the earning of credit hours, controllers will in no circumstances be able to convert unused credit hours into pay. Finally, this confirms our mutual understanding that because of the need for computer programming changes, removal of the 24 hour limit on credit hours will not be able to be implemented upon the signing of the new Agreement. The agreement to remove the 24 hour cap on earning credit hours will go into effect at the same time the new pay system is implemented.

Sincerely yours,

[signature]

Anthony Herman

Attorney for the Federal
Aviation Administration

AGREED:

[signature]

Mike McNally, President
National Air Traffic Controllers
Association

cc: Raymond B. Thoman, Esq.

#233c

000098