IN THE UNITED STATES OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBY, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-272C |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |

APPENDIX TO DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND PARTIAL MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HILLIARY A. STERN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0177
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

EDEN BROWN GAINES
ELIZABETH HEAD
MICHAEL DOHERTY
Federal Aviation Administration
600 Independence Ave., S.W.
Suite 1E-100
Washington. D.C. 20591
Tele: (292 385-8254
Facsimile: (202) 493-5085

March 12, 2008

INDEX TO SUPPLEMENTAL APPENDIX

ITEM PAGE

Supplemental Declaration of Ellen B. Cook
Dated February 20, 2008 .......... 1

Supplemental Declaration of Michael Masson
Dated March 4, 2008 .......... 3

Masson Attachment 1: FAA Order JO 7210.3V, Facility Operation and Administration
Dated February 14, 2008 (excerpt) .......... 7

Supplemental Declaration of Thomas Cassady
Dated March 4, 2008 .......... 10

Declaration of Rick Ducharme
Dated February 28, 2008 .......... 12

Declaration of Cindy Rooney
Dated February 29, 2008 .......... 14

Declaration of Gregory Dunne
Dated February 20, 2008 .......... 17

Declaration of Miles R. Miller
Dated February 28, 2008 .......... 21

Miller Attachment 1: Memorandum of Understanding between NATCA and FAA
Dated October 27, 2006 .......... 25

Declaration of Fred Prosperi
Dated February 28, 2008 .......... 27

Declaration of Juan Fuentes
Dated March 4, 2008 .......... 30

Fuentes Attachment 1: Memorandum of Understanding between NATCA and FAA
Dated September 19, 2007 .......... 33

Fuentes Attachment 2: 2002 Primetime Leave Bidding Notice .......... 35

Fuentes Attachment 3: 2005 Primetime Leave Bidding Notice .......... 36

Declaration of Joseph N. Miniace
Dated March 4, 2004 .......... 37

INDEX TO SUPPLEMENTAL APPENDIX

ITEM PAGE

Miniace Attachment 1: ULP Case No. WA-CA-06-0366
Dated April 7, 2006 .....41

Miniace Attachment 2: ULP Case No. WA-CA-06-0563
Dated July 11, 2006 ..... 43

Miniace Attachment 3: ULP Case No. WA-CA-06-0648
Dated September 6, 2006 .....44

Miniace Attachment 4: Dismissal of ULP Case No. WA-CA-06-0366
Dated July 25, 2007 ..... 45

Miniace Attachment 5: Dismissal of ULP Case No. WA-CA-06-0563
Dated July 25, 2007 ..... 55

Miniace Attachment 6: Dismissal of ULP Case No. WA-CA-06-0648
Dated July 25, 2007 ..... 60

Miniace Attachment 7: Order Denying Appeal, Case No. WA-CA-06-0366
Dated January 29, 2008 .....65

Miniace Attachment 8: Order Denying Appeal, Case No. WA-CA-06-0563
Dated January 29, 2008 .....68

Miniace Attachment 9: Order Denying Appeal, Case No. WA-CA-06-0648
Dated January 29, 2008 .....71

Miniace Attachment 10: Order Denying Motion for Reconsideration,
Case No. WA-CA-06-0366
Dated February 26, 2008 .....74

Miniace Attachment 11: Order Denying Motion for Reconsideration,
Case No. WA-CA-06-0563
Dated February 26, 2008 .....77

Miniace Attachment 12: Order Denying Motion for Reconsideration,
Case No. WA-CA-06-0648
Dated February 26, 2008 .....80

Miniace Attachment 13: 2003 NATCA/FAA Contract (excerpt)
Dated September 2003 .....83

Miniace Attachment 14: Letter from Herman to McNally
Dated July 8, 1998 ..... 98

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | No. 07-272C |
| v. | ) | (Judge Emily C. Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL DECLARATION OF ELLEN B. COOK**

I, Ellen B. Cook, declare and state as follows:

1. This declaration supplements the one I previously provided in this matter, dated October 3, 2007, and the paragraphs therein are incorporated by reference.

2. Appendix 10 of FAA Order 3550.10, Pay Administration, addresses the implementation of the Fair Labor Standards Act (FLSA) for Federal Aviation Administration (FAA) employees. Compensatory time policies contained in Appendix 10 are applicable to FAA employees who are not exempt from the FLSA, along with those contained in FAA Order 3550.15, FEPCA of 1990.

3. Credit hours are earned on an hour for hour basis, i.e. for each non-overtime hour worked under a flexible work schedule (FWS) which is in excess of an employee's basic work requirement and is worked at the election of the employee, the employee receives one credit hour.

4. As a general principle, all FAA employees who are not exempt from the FLSA ("non-exempt employees") are compensated for all time worked, including work performed before or after their scheduled shifts.

5. As a general principle, all overtime for non-exempt employees must be officially ordered and approved by their supervisor in advance. If a non-exempt employee performs work before or after her scheduled shift that was not officially ordered and approved in advance, she should notify her supervisor and request compensation in the form of overtime, compensatory time, or credit hours, depending upon the employee's individual situation.

6. In accordance with FAA Human Resource Policy Manual (HRPM) LWS 8.14, Workweeks, Tours of Duty, and Work Schedules: "Employees are required to record time and attendance information each pay period and attest to its accuracy and completeness with either a manual or electronic signature. Employees are required to make a timely, accurate submission of time worked and leave taken. Failure to do so may lead to disciplinary action."

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 20th day of February, 2008.

Ellen B. Cook
ELLEN B. COOK

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-272C (Judge Emily C. Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL DECLARATION OF MICHAEL MASSON**

I, Michael Masson, declare and state as follows:

1. This declaration supplements the one I previously provided in this matter, dated October 4, 2007, and the paragraphs therein are incorporated by reference.

2. The Cru-X/ART system is a management tool utilized to effectuate FAA policy. The system in and of itself does not preclude an employee from performing work without management approval or authorization, but if an employee is adhering to FAA policy regarding time and attendance and using the Cru-X/ART system properly, he will be compensated for all work performed.

3. The Cru-X/ART system does not allow an employee to record that she performed work prior to her scheduled shift start time unless she: 1) is working a Flexible Work Schedule (FWS); 2) requests to change the scheduled start time of her shift; or 3) requests to work time outside of shift (TOS). In accordance with FAA Order JO 7120.3V, Facility Operation and Administration, § 2-2-6 (Attachment 1), supervisory approval is required for an employee to either: 1) change her scheduled shift start time or 2) request TOS.

4. An FWS allows an employee to "flex" her scheduled shift start time by starting her shift within a set time (usually thirty minutes) before the scheduled start time. For example, an employee working an FWS at a facility that allows a thirty minute "flex" and whose scheduled shift start time is 7:00 a.m. could begin her shift anytime between 6:30 a.m. and 7:00 a.m. The Cru-X/ART system is designed to accommodate an FWS and the employee would not need supervisory approval to begin working thirty minutes before or after the scheduled start time of her shift.

5. The system automatically adjusts the end time of the shift of an employee working an FWS depending upon when she "flexed in" at the start. For example, if the employee "flexes in" at 6:45 a.m. for a 7:00 a.m. shift, the Cru-X/ART system would automatically change her shift end time from the scheduled time of 3:00 p.m. to 2:45 p.m. to reflect that she "flexed in" fifteen minutes early.

6. The Cru-X/ART system is not intended to be a "punch clock," whereby an employee is expected or required to begin working immediately upon signing on to the system. In accordance with section 2-2-6 of FAA Order JO 7120.3V, employees can sign in to the Cru-X/ART system up to fifteen minutes before the beginning of their scheduled shift start time and can sign out no earlier than fifteen minutes prior to the end of their scheduled shift time. The intent behind allowing employees to do is to prevent congestion in and around the Cru-X/ART system computers at the beginning and end of shifts.

7. The Cru-X/ART system maintains a time and date record of each Cru-X/ART entry made. For example, if an employee signs on to the system at 6:50 a.m. for the 7:00 a.m. scheduled start of her shift, the system would record that she made the entry at 6:50 a.m.

even though she entered 7:00 a.m. as her shift start time and is not supposed to begin working until that time.

8. The system, however, does not maintain records of when an employee performs work contrary to FAA policy. In accordance with section 2-2-6 of FAA Order JO 7210.3V, the Cru-X/ART electronic logs shall be used to indicate responsibility at all operational positions, e.g. controlling air traffic at a radar scope. An employee is required to indicate in the Cru-X/ART system that she will be working an operational position prior to assuming the position. If the employee tries to do so prior to the scheduled start time of her shift, the system will not allow that entry.

9. Assuming the employee in the foregoing example is not working an FWS and did not request to change her shift or TOS (both of which require supervisory approval), she is neither expected nor required to perform any work between 6:50 a.m. and 7:00 a.m. If she attempts to indicate in the Cru-X/ART system that she is working an operational position at 6:55 a.m., the system will not allow that entry.

10. The employee could physically begin working an operational position at 6:55 a.m. without making an entry in the Cru-X/ART system, but she would be doing so in violation of FAA policy. The Cru-X/ART system, however, would have no record of any work performed in violation of policy.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 4th day of March, 2008.

MICHAEL MASSON

U.S. Department
of Transportation
**Federal Aviation
Administration**

# *Order JO 7210.3V*

## *Facility Operation and Administration*

*February 14, 2008*

An electronic version of this publication is on the internet at
http://www.faa.gov/atpubs

Distribution: ZAT-721, ZAT-464

Initiated By: AJR-0
Vice President, System Operations Services

### 2-2-5. OPERATING INITIALS

a. Specialists shall be assigned two-letter operating initials to identify the employee for record purposes. When all combinations of letters are depleted, duplicate initials may be assigned to personnel working in different areas of specialization.

b. Unless signatures are specifically requested, use assigned operating initials for all operating forms, interphone contacts, marking of recorder tapes, and other records.

c. A current file of assigned initials shall be maintained.

### 2-2-6. SIGN IN/OUT AND ON/OFF PROCEDURES

The following is applicable to all FAA air traffic facilities, but does not apply to FAA contract facilities.

Cru-X/ART is the official time and attendance system for both signing in/out for a shift and on and off positions, not paper logs nor Common ARTS/HOST/NTML/M1FC or other Agency or local programs. Facilities may use Common ARTS/HOST/NTML/M1FC to sign on positions for position preference settings; however, these systems/programs shall not be used for official time and attendance nor position times. Duplicate paper logs for sign in/out of the shift and on and off positions shall not be utilized during normal daily operations.

a. FAA supervisory traffic management coordinators (STMC)/operations supervisors (OS)/National Traffic Management Officers (NTMO)/controllers-in-charge (CIC) of the watch are responsible for ensuring the accuracy of the personnel log for time and attendance (T&A) recording. T&A information shall be entered into and maintained within the ATO Resource Tool (ART) system.

1. The facility air traffic manager shall ensure that procedures are in place so that operational schedules are entered correctly into ART.

2. Employees shall use ART to sign in and out of their shifts.

(a) Sign in for a shift shall be accomplished no later than the shift assigned time unless the OS/STMC/NTMO/CIC and/or OMIC has approved leave at the start of the assigned shift. Sign in, using the assigned shift start time, may occur up to 15 minutes before an employee's assigned shift. Earning of, and signing in for, Time Outside Shift time at the beginning of an assigned shift must receive approval by the OS/STMC/NTMO/CIC or OMIC prior to earning or recording it into Cru-X/ART.

*NOTE-*
*Shift/Core hour changes must be in accordance with local and national policy. Earning Time Outside Shift (overtime, credit hours, etc.) must be approved by the OS/STMC/NTMO/CIC or OMIC prior to entering it into Cru-X/ART or working it.*

(b) In situations where it is known in advance that employees will not report to the facility, such as when attending an all day meeting outside the facility, facilities should enter the employee's shift in the schedule as an Other Duty Code.

(c) Sign out shall be accomplished at the end of an employee's assigned shift. Sign out using the assigned shift end time may be accomplished no earlier than 15 minutes prior to the end of the shift, or no later than 15 minutes after the end of the assigned shift. Any Time Outside Shift at the end of an assigned shift, or leave, must first receive OS/STMC/NTMO/CIC or OMIC approval prior to earning/using and recording such time in Cru X/ART.

3. The supervisor/CIC position relief briefing check list shall include:

(a) T&A status,

(b) Other Duties,

(c) Time Outside Shift (TOS) requests/approvals, and

(d) Leave requests/approvals.

*NOTE-*
*Upon signing on position the OS/STMC/NTMO/CIC assumes full responsibility of all check list items including those identified above.*

4. It is the employee's responsibility to notify the operations manager or OS/STMC/NTMO/CIC in charge of the watch of any changes to "Other Duty" shifts. *For example, an employee is outside of the facility on another duty and requests a day of sick leave.*

5. In the event of electronic system failure, scheduled system outage, or facility evacuation, the paper FAA Form 7230-10, "Position Log," shall be used to indicate position responsibility. When the

ART system has been restored or the facility reoccupied, the facility shall ensure that all data collected with the paper FAA Form 7230-10's is entered into ART. In instances where the data cannot be entered into ART, the paper FAA Form 7230-10's shall be retained in accordance with document retention guidance.

**b.** The Cru-X/ART electronic logs shall be used to indicate responsibility at all operational positions and for supervisory traffic management coordinator-in-charge (STMCIC), operations supervisor-in-charge (OSIC), traffic management coordinator-in-charge (TMCIC), and CIC functions. It is the responsibility of the relieved controller to enter the correct change of position responsibility time in Cru-X/ART. In situations where there is no relieved controller, such as when opening a position, the person opening the position is responsible for entering the correct position time or notifying the supervisor/STMC/CIC of the position opening time. The supervisor/STMC/NTMO/CIC shall then enter that time into Cru-X/ART.

## 2-2-7. CIRNOT HANDLING

A CIRNOT initiated by WMSCR/NNCC shall be transmitted to all circuit users.

**a.** WMSCR/NNCC shall maintain a record of all CIRNOTs and forward a hard copy to FAA Headquarters, Terminal Safety and Operations Support by the most expeditious means available.

**b.** AFSS/FSS air traffic managers shall provide CIRNOTs to the Terminal Operations Service Area office and/or other field facilities upon request.

**c.** CIRNOTs should be retained at the receiving facility for 120 days.

*NOTE-*
*The most expeditious means is transmitting the CIRNOT via facsimile, telephone, mail, electronic mail, etc.*

## 2-2-8. GENOT HANDLING

A GENOT initiated by headquarters ATO organizations, requiring distribution to air traffic facilities, shall be transmitted to all Service Area offices, Flight Service Stations (FSS), Automated Flight Service Stations (AFSS), and ARTCC.

**a.** Terminal Operations Service Area office shall distribute GENOTs to the following using the most expeditious means available:

**1.** FAA contract and non-Federal towers.

**2.** FAA military ATREPS assigned to the service area.

*NOTE-*
*The most expeditious means is transmitting the GENOT via facsimile, telephone, mail, electronic mail, etc.*

**b.** The AFSS/FSS shall distribute the GENOT to all FAA field facilities addressed, except ARTCCs, within their designated areas as determined by the respective Service Area office using the most expeditious means available.

*REFERENCE-*
*FAAO JO 7210.3, Para 2-2-8a2 Note.*

**c.** Terminal Hub facilities distribute all GENOTs in plain language format to all non-Federal and contract ATCTs which are located within their Hub Area. The GENOT shall be distributed in the most expeditious means available.

*REFERENCE-*
*FAAO JO 7210.3, Para 2-2-8a2 Note.*

**d.** Air traffic managers at all facilities shall:

**1.** Disseminate GENOT information to concerned facility personnel. The content of the message will dictate the priority of the distribution.

**2.** Ensure that all employees with a need to know are thoroughly briefed on the change prior to performing their duties.

**3.** Ensure that the appropriate entry is made in the employee's Training and Proficiency Record, Form 3120-1.

## 2-2-9. PERSONNEL BRIEFINGS REGARDING AIR TRAFFIC BULLETIN ITEMS

The Air Traffic Bulletin is a means of communication between headquarters and field facilities. It is routinely published and distributed quarterly. In addition, special issues are published and distributed as necessary. It is not a directive, nor is it to implement new procedures. Its intent is to transmit "reminders" concerning proper application of procedures and other instructions. To provide continuity of communication, facility air traffic managers shall:

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | No. 07-272C (Judge Emily C. Hewitt) |

**SUPPLEMENTAL DECLARATION OF THOMAS CASSADY**

I, Thomas Cassady, declare and state as follows:

1. This declaration supplements the one I previously provided in this matter, dated October 3, 2007, and the paragraphs therein are incorporated by reference.

2. Article 32, Section 3 of the 2006 contract states: "The posted watch schedule is defined as the assignment of employees to specific shifts. The posted watch schedule shall be published at least twenty-eight (28) days in advance." This means that Air Traffic Control Specialists (ATCSs) and Traffic Management Coordinators (TMCs) covered by the 2006 contract are aware of the scheduled shift start and end times of a particular shift at least twenty-eight days before that shift. Article 32 of the 2003 contract contained a similar provision.

3. The FAA expects that employees, including ATCSs and TMCs, will work their scheduled shifts. The one exception is for employees who have elected to work a flexible work schedule (FWS) as part of their watch schedule. In accordance with facility policy, employees working an FWS may "flex in" up to a preset amount of time (usually thirty

minutes) before the scheduled start time of their shift. For example, an employee working an FWS with a thirty minute "flex" who is scheduled to begin his shift at 7:00 a.m. may begin his shift anytime between 6:30 a.m. and 7:30 a.m.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 28 day of February, 2008.

THOMAS CASSADY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-272C<br>Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION OF RICHARD DUCHARME**

I, Richard Ducharme, declare and state as follows:

1. My current position is Director, Terminal Mission Support, Air Traffic Organization (ATO), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT). In my tenure at the Federal Aviation Administration, I have served as an Air Traffic Control Specialist (1982-1988); Supervisor at Boston Logan Air Traffic Control Tower (ATCT) (1988-1991); Supervisor of the Air Traffic Labor and Administrative Branch in the FAA Eastern Region (1991 -1993); Deputy Air Traffic Manager at Dulles ATCT (1993-1994); Air Traffic Manager at Philadelphia ATCT (1994-1999); Special Assistant to the Air Traffic Division Manager in the FAA Eastern Region (1999 – 2000); Deputy Air Traffic Division Manager in the FAA Eastern Region (2000 – 2002); Air Traffic Division Manager in the FAA Eastern Region (2002 – 2004); and Eastern Terminal Service Center Manager (2004 – 2007).

2. I was a member of the FAA's negotiating team during the 1998 contract negotiations with NATCA and served as the Lead Negotiator for the Air Traffic Organization during the negotiations that resulted in the 2006 contract.

3. During the 2006 contract negotiations, I had discussions with Barry Krasner, Chief Negotiator for NATCA, about employees who carried large credit hour balances (some over 1,000 hours). Since I am not an attorney, I cannot comment on the possible legal liability that either the FAA or NATCA may have based on the Parties' 1998 agreement that credit hours have no "cash" value.

4. I stated in my discussions with Mr. Krasner that there could be a significant cost to the Agency in the ultimate pay out of credit hours should controllers with large leave balances attempt to cash out prior to retirement. Also, the use of credit hours also could adversely impact the Agency since backfill overtime would likely be required if and when employees used a large number of credit hours to take time off.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 5th day of March, 2008.

Richard Ducharme

RICHARD DUCHARME

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-272C |
| v. | ) | (Judge Emily C. Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION OF CINDY ROONEY**

I, Cynthia M. Rooney, declare and state as follows:

1. I am currently the Director, Leadership and Professional Development and the Acting Director, Workforce Services, Acquisition and Business Services, Air Traffic Organization (ATO), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT) in Washington, DC. I have been the Director, Leadership and Professional Development since July, 2006 and Acting Director, Workforce Services, since February, 2007. I have been an FAA employee since September, 1999.

2. Among my duties as Acting Director, Workforce Services, is to develop and apply FAA and ATO policies. The policy applicable to the operation of air traffic facilities is FAA Order JO 7210.3V, Facility Operation and Administration. Section 2-2-6 of that Order addresses time and attendance and the use of the Cru-X/ART system.

3. Employees who utilize the Cru-X/ART system for time and attendance purposes, such as Air Traffic Control Specialists (ATCSs) and Traffic Management Coordinators (TMCs), are required to sign on to the Cru-X/ART system prior to performing any work. If Plaintiffs are

performing job duties prior to signing on to the Cru-X/ART system, they are doing so in violation of FAA policy.

4. Employees are required to sign on to the Cru-X/ART system at the beginning of their scheduled shift and are not supposed to perform any work prior to the beginning of their scheduled shift. An employee may sign on to her shift in the Cru-X/ART system prior to the scheduled start of her shift, but she is neither expected or required to perform any work until the scheduled start of her shift, unless authorized to do so by a manager or supervisor.

5. If an employee is authorized and directed to perform work prior to the scheduled start time of her shift by her supervisor, the supervisor can either change the start time of her shift or authorize time outside of shift (TOS), i.e. overtime or credit hours, depending upon the particular situation. Entries are made in the Cru-X/ART system to reflect that the employee performed work prior to the scheduled start time of her shift in order for her to be compensated for the work. If an employee performs work prior to the scheduled start time of her shift without requesting to change her shift or to work TOS, she is doing so in violation of FAA policy.

6. Employees are required to sign off the Cru-X/ART system at the end of their scheduled shift and are not supposed to perform any work after the end of their scheduled shift. An employee may sign out of her shift in the Cru-X/ART system prior to the scheduled end of her shift, but she is required to stay until the scheduled end of her shift because she is being compensated for that time. If an employee wants to leave prior to the scheduled end of her shift, she can request leave from her manager or supervisor.

7. Employees should only perform work before or after their shift with the express authorization from their manager or supervisor and should make the appropriate entries in the Cru-X/ART system to reflect the work performed.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 29 day of February, 2008.

CYNTHIA M. ROONEY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., Plaintiffs, | ) | |
| v. | ) | No. 07-272C (Judge Emily C. Hewitt) |
| THE UNITED STATES, Defendant. | ) | |

**DECLARATION OF GREGORY DUNNE**

I, Gregory Dunne, declare and state as follows:

1. I am currently the Traffic Management Officer assigned to the George Bush Intercontinental Air Traffic Control Tower (ATCT) (also known by its FAA three-letter identifier "IAH") and Houston Terminal Radar Approach Control (TRACON) (also known as "I90"), System Operations Services Unit, Air Traffic Organization (ATO), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT). I have been in this position since March 2003. I have been an employee of the FAA since June 1976 in the following positions:

   a. Air Traffic Control Specialist, New York Air Route Traffic Control Center, June 1976
   b. Airspace and Procedures Specialist, New York Air Route Traffic Control Center, May 1985
   c. Supervisory Air Traffic Control Specialist, Washington Air Route Traffic Control Center, June 1987
   d. Evaluation Specialist, Office of System Effectiveness, ATH-150, November 1989
   e. Assistant Branch Manager, Office of System Effectiveness, ATH-150, April, 1992
   f. Assistant Air Traffic Manager, Pittsburgh Air Traffic Control Tower, August 2001
   g. Traffic Management Officer, Houston TRACON, March 2003

2. As a Traffic Management Officer at IAH/I90, among my duties is to manage the Traffic Management Coordinators (TMCs) assigned there, including Donald Peterson. Mr. Peterson has been assigned to I90 since November 2004. Traffic Management Coordinators assigned to I90 are represented by the National Air Traffic Controllers Association (NATCA). The labor agreement between the FAA and NATCA contains a negotiated grievance procedure that allows employees to grieve issues surrounding their working conditions, including issues regarding pay.

3. As a general principle, all I90 employees, including Mr. Peterson, are compensated for all worked performed, including work performed before or after their schedule shifts. I am not aware of and have not observed Mr. Peterson performing work before or after his normal duty hours without compensation. I have not required to Mr. Peterson to perform work before or after his normal duty hours without compensation. Prior to this lawsuit, I do not recall nor does the facility have any record of Mr. Peterson ever claiming that he was not compensated for work performed either before or after one of his scheduled shifts. I do not recall, nor does the facility have a record of, any grievances filed by Mr. Peterson claiming that he was not compensated for work performed either before or after one of his scheduled shifts. I do not recall nor does the facility have a record of any grievances filed by NATCA claiming that Mr. Peterson was not compensated for work performed either before or after one of his scheduled shifts.

4. When Mr. Peterson works in excess of forty (40) hours in a week, he has been compensated in the form of overtime pay or credit hours earned. He has received overtime pay for those hours that he has been required to work in excess of eight (8) hours in a day and credit hours when he volunteered to earn them and there was meaningful work for him to perform. Mr. Peterson could also have requested to earn compensatory time in lieu of overtime pay. Credit

hours were requested by Mr. Peterson and earned in accordance with the provisions of applicable FAA directives. Since May 2005, Mr. Peterson has requested and earned either overtime or credit hours on over 250 separate workdays for work performed outside of his normal duty hours for time periods ranging from fifteen (15) minutes to over three (3) hours.

5. Bidding for work schedules and vacation leave at IAH and I90 is conducted in accordance with the NATCA-established seniority policy and the labor contract between the FAA and NATCA. The bidding schedule provides ample duty time for Mr. Peterson and other employees to select their work schedules and vacation leave during the bidding process.

6. FAA management at IAH/I90 did not authorize or approve Mr. Peterson spending time outside of his regular duty hours bidding his own work schedules and vacation leave or assisting other employees with bidding. Prior to this lawsuit, FAA management at IAH/I90 was never aware of Mr. Peterson's claim that he spent time outside of his regular duty hours bidding or assisting other employees with bidding.

7. In accordance with FAA policies, all TMCs, including Mr. Peterson, are required to sign-in to the Cru-X/ART system at the beginning of their shift, prior to performing any duties. Cru-X/ART has been operational at IAH/I90 since March 2005. Prior to then, time and attendance was recorded using a paper-based system. In accordance with the labor agreement with NATCA, TMCs' scheduled shift times are posted at least twenty-eight (28) days in advance of the shift.

8. Prior to assuming an operational position, Mr. Peterson and other TMCs at IAH/I90 are required to engage in "duty familiarization" functions, which include reviewing the mandatory review binder and other briefing items and exchanging air traffic control information with the TMC being relieved. These functions are part of a TMCs regularly assigned duties and are to be performed on duty time, after signing on to the Cru-X/ART

system. Ideally, shifts are designed to overlap so that these "duty familiarization" functions, including exchanging information with the TMC being relieved, occur during the relieving and relieved TMCs regularly scheduled shift. If these functions cannot be performed during the course of TMCs' assigned shifts, the FAA provides overtime or credit hours/compensatory time if requested by the TMC for the TMCs to accomplish these functions.

9. FAA management does not expect Mr. Peterson or any other employee at IAH/I90 to perform any work before or after their shifts without compensation. Both prior to and after the Cru-X/ART system was implemented at IAH/I90, FAA management regularly authorized and approved Mr. Peterson to work overtime before and after his shift to compensate him for work performed.

10. Mr. Peterson works a flexible work schedule (FWS), which permits him to begin his shift up to thirty (30) minutes prior to his scheduled shift start time. He regularly elects to "flex in" prior to his scheduled shift start time. Frequently, Mr. Peterson has requested to begin his shift earlier than thirty minutes before his scheduled shift start time. FAA management has regularly approved Mr. Peterson changing his shift in those situations, resulting in him being compensated for time worked prior to the original scheduled start time of his shift.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 11th day of March, 2008.

Gregory Dunne

GREGORY DUNNE

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-272C<br>(Judge Emily C. Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION OF Miles R. Miller**

I, Miles R. Miller, declare and state as follows:

1. I am currently the Air Traffic Manager assigned to the Jacksonville Air Route Traffic Control Center (ARTCC) (also known by its FAA three-letter identifier "ZJX"), Eastern En Route Service Area, Air Traffic Organization (ATO), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT). I have been in this position since March 1998. I have been an employee of the FAA since July 1974 in the following positions:

   a. Air Traffic Control Specialist, Miami Center, July 1974

   b. Air Traffic Control Specialist, Greer Approach Control, November 1979

   c. Air Traffic Control Specialist, Boston Center, April 1982

   d. Quality Assurance Specialist, Summer 1983

   e. Area Supervisor, Boston Center, July 1985

   f. Area Manager, Boston Center, August 1986

   g. Operations Specialist, New England Regional Office, August 1988

   h. Area Manager, Pensacola TRACON, August 1989

i. Systems and Facility Support Specialist, New England Regional Office, February 1992

j. Assistant Air Traffic Manager, Manchester Approach, February 1993

k. Acting Air Traffic Manager, Manchester Approach, February 1994

l. Air Traffic Manager, Manchester Approach, October 1995

m. Air Traffic Manager, Jacksonville Center, March 1998.

2. As an Air Traffic Manager at ZJX, among my duties is to manage Air Traffic Control Specialists (ATCSs) assigned there, including Gary Bukovskey. Mr. Bukovskey has been assigned to ZJX since July 2001. Air Traffic Control Specialists assigned to ZJX are represented by the National Air Traffic Controllers Association (NATCA). The labor agreement between the FAA and NATCA contains a negotiated grievance procedure that allows employees to grieve issues surrounding their working conditions, including issues regarding pay.

3. As a general principle, all ZJX employees, including Mr. Bukovskey, are compensated for all worked performed, including work performed before or after their scheduled shifts. Prior to this lawsuit, I do not recall nor does the facility have any record of Mr. Bukovskey ever claiming that he was not compensated for work performed either before or after one of his scheduled shifts. I do not recall nor does the facility have a record of any grievances filed by Mr. Bukovskey claiming that he was not compensated for work performed either before or after one of his scheduled shifts. I do not recall nor does the facility have a record of any grievances filed by NATCA claiming that Mr. Bukovskey was not compensated for work performed either before or after one of his scheduled shifts.

4. FAA management at ZJX has never required, authorized, or expected Mr. Bukovskey to perform work prior to the beginning of his scheduled shift or after the scheduled end of his shift without compensation. FAA management at ZJX is not aware of Mr. Bukovskey ever having performed work before or after his scheduled shift without compensation.
5. When Mr. Bukovskey works in excess of forty (40) hours in a week, he has been compensated in the form of overtime pay or credit hours earned. He has received overtime pay for those hours that he has been required to work in excess of eight (8) hours in a day and credit hours when he volunteered to earn them and there was meaningful work for him to perform. Mr. Bukovskey could also have requested to earn compensatory time in lieu of overtime pay. Credit hours were requested by Mr. Bukovskey and earned in accordance with the provisions of applicable FAA directives.
6. In 2006, as in previous years, FAA management at ZJX negotiated a memorandum of understanding (MOU) with NATCA representatives at ZJX regarding the bidding of work schedules and vacation leave. The MOU stated: 2. Each BUE will receive a bid package detailing the date and time for each employee to bid, by their area's seniority, for RDO's and Vacation Leave with bidding beginning on November 05, 2006. In the event an employee will not be available to be present to bid, the employee shall provide the NATCA area representative or the scheduling supervisor with their selection(s). 3. Each BUE will be provided with a detailed bid package that will contain dates and times for selecting RDO's and for five (5) rounds of bid vacation leave. Employees will be released from duty 15 minutes prior to their scheduled bid time, unless not operationally feasible, for the purpose of bidding. Employees will be allotted 20 minutes to make their RDO and first round of

vacation leave selection, and 15 minutes for each of the remaining four (4) rounds of vacation leave. All leave requests will be on form OPM-71.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 28 day of February, 2008.

Miles R. Miller

**Memorandum of Understanding Between the National Air Traffic Controller association, ZJX Local and the Federal Aviation Administration Jacksonville Air route Traffic Control Center**

This agreement is made by and between the National Air traffic Association ("NATCA" or "Union") and the Federal Aviation Administration ("FAA" or "Agency"), collectively known as the "Parties," This agreement represents the Parties complete understanding of the procedures to be used for RDO selection and administration of leave.

1. Schedule bidding will be accomplished by seniority as determined by NATCA. NATCA will provide seniority information for each area. Employees with two (2) radar sectors or less remaining until becoming a CPC as of November 1, 2006, will be eligible to bid as a CPC. Employees who have previously been certified in an Area within Jacksonville ARTCC shall be considered as CPC's for the purpose of bidding the 2007 schedule. Those employees deemed ineligible to bid as CPC's shall bid by seniority from designated Developmental lines. All developmentals who are certified on all their radar associate positions will bid as a radar developmental.
2. Each BUE will receive a bid package detailing the date and time for each employee to bid, by their area's seniority, for RDO's and Vacation Leave with bidding beginning on November 05, 2006. In the event an employee will not be available to be present to bid, the employee shall provide the NATCA area representative or the scheduling supervisor with their selection(s).
3. Each BUE will be provided with a detailed bid package that will contain dates and times for selecting RDO's and for five (5) rounds of bid vacation leave. Employees will be released from duty 15 minutes prior to their scheduled bid time, unless not operationally feasible, for the purpose of bidding. Employees will be allotted 20 minutes to make their RDO and first round of vacation leave selection, and 15 minutes for each of the remaining four (4) rounds of vacation leave. All leave requests will be on form OPM-71.
4. Employees may only request leave opportunities that the Agency has determined are available. For this year the Agency has determined the following;
    - A. Up to two (2) employees per area, per day, can be on vacation leave between January 7 and May 12, 2007,
    - B. Up to one per crew, per day, from May 13 through August 12 and December 23, 2007 thru January 5, 2008,
    - C. Up to three (3) employees per area, per day, between August 13 and December 22.
    - D. During each round employees may make one (1) request of one (1) week or two (2) consecutive weeks duration or portions thereof. Any portion of a week bid shall count as a full week for bidding purposes. During these five (5) rounds employees can bid accrued annual leave, annual leave that will be accrued during the year, and any restored balance for the year. Once you <u>**PASS**</u> a round you will not be able to bid any longer.

Dur 10/27/06
[initials] 10/27/06

5. Employees may submit (using form OPM-71), request for non-vacation leave beginning January 1 for the leave year ending January 5, 2008.

This MOU terminates January 5, 2008.

Air Traffic Manager 10/27/06

NATCA Facility Representative 10/27/06

Agency Head Review

Date

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | No. 07-272C (Judge Emily C. Hewitt) |

**DECLARATION OF FRED PROSPERI**

I, Fred Prosperi, declare and state as follows:

1. I am currently the Air Traffic Manager of the Morristown, New Jersey Air Traffic Control Tower (ATCT) (also known by its three-letter identifier "MMU"), Eastern Terminal Services Unit, Air Traffic Organization (ATO), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT). I have been in this position since June 2004. I have been an employee of the FAA since August 1982 in the following positions:

   a. Developmental Air Traffic Control Specialist, New York TRACON; November, 1982 – February 1984
   b. Air Traffic Control Specialist, Rochester, NY ATCT; February 1984 – December, 1988
   c. Air Traffic Control Specialist, Newark, NJ ATCT; December 1988 – August 1997
   d. Support Specialist, Newark, NJ ATCT; August 1997 – October 1999
   e. Regional AT Specialist, Eastern Region ATD; October 1999 – June 2004

2. As Air Traffic Manager of MMU, among my duties is to manage the Air Traffic Control Specialists (ATCS) assigned there, including Frank Savasta. Mr. Savasta has been assigned to MMU since December, 1990. Air Traffic Control Specialists assigned to MMU are represented by the National Air Traffic Controllers Association (NATCA). The labor

agreement between the FAA and NATCA contains a negotiated grievance procedure that allows employees to grieve issues surrounding their working conditions, including issues regarding pay.

3. As a general principle, all MMU employees, including Mr. Savasta, are compensated for all worked performed, including work performed before or after their schedule shifts. Prior to this lawsuit, I do not recall nor does the facility have any record of Mr. Savasta ever claiming that he was not compensated for work performed either before or after one of his scheduled shifts. I do not recall nor does the facility have a record of any grievances filed by Mr. Savasta claiming that he was not compensated for work performed either before or after one of his scheduled shifts. I do not recall nor does the facility have a record of any grievances filed by NATCA claiming that Mr. Savasta was not compensated for work performed either before or after one of his scheduled shifts.

4. The Morristown ATCT controls air traffic from 6:45 a.m. to 10:30 p.m. local time, seven days a week. The "opening" shift for ATCSs is regularly scheduled to begin at 6:15 a.m. local time in order for ATCSs to complete all of the tasks required to open the control tower prior to 6:45 a.m. Two ATCSs are normally assigned to the opening shift. FAA management neither expects nor requires ATCSs, including Mr. Savasta, to perform any tasks prior to the start of their scheduled shifts, including following procedures to open the control tower. The tasks performed as part of the opening procedures are part of an ATCSs regular work assignments to be carried out while in a paid status.

5. The "closing shift" at Morristown ATCT is regularly scheduled to end at 10:30 p.m. and two ATCSs are normally assigned to that shift. FAA management neither expects nor requires ATCSs, including Mr. Savasta, to perform any tasks after the end of their scheduled shifts,

including following procedures to close the control tower. The tasks performed as part of the closing procedures are part of an ATCSs regular work assignments to be carried out while in a paid status.

6. In accordance with FAA policies, all ATCSs, including Mr. Savasta, are required to sign-in to the Cru-X/ART system at the beginning of their shift, prior to performing any duties. Cru-X/ART has been operational at MMU since April 2005. Prior to that time, time and attendance was recording using a paper-based system. In accordance with the labor agreement with NATCA, ATCSs scheduled shift times are posted at least twenty-eight (28) days in advance of the shift.

7. Air Traffic Control Specialists assigned to MMU bid on their work schedules once a year in accordance with procedures negotiated with NATCA. All bidding by ATCSs is conducted on duty time. Similarly, ATCSs assigned to MMU bid on their vacation leave schedules once a year in accordance with procedures negotiated with NATCA. All bidding by ATCSs is conducted on duty time.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 28th day of February, 2008.

FRED PROSPERI

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | No. 07-272C (Judge Emily C. Hewitt) |

**DECLARATION OF JUAN FUENTES**

I, Juan Fuentes, declare and state as follows:

1. I am currently the Assistant Air Traffic Manager of the Miami Air Traffic Control Tower (ATCT) (also known by its three-letter identifier "MIA"), Eastern Terminal Service Unit, Air Traffic Organization (ATO), Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT). I have been in this position since June, 1999. I have been an employee of the FAA since May, 1988 in the following positions:

    a. Air Traffic Control Specialist, Tucson Tower (TUS), May 1988 – February 1990;
    b. Air Traffic Control Specialist, Tucson TRACON (U90), February 1989 – April 1991;
    c. Air Traffic Control Specialist, San Juan CERAP (ZSU), April 1991 – May 1992;
    d. Plans & Program Specialist, San Juan CERAP (ZSU), May 1992 – March 1994;
    e. Supervisory Air Traffic Control Specialist, San Juan CERAP (ZSU), March 1994 – October 1996;
    f. Resource Management Specialist, FAA Southern Region (ASO-540), October 1996 – June 1999.

2. As Assistant Air Traffic Manager of MIA, among my duties is to manage the Air Traffic Control Specialists (ATCS) assigned there, including Katherine Adcock. Ms. Adcock has been assigned to MIA since March 1991. Air Traffic Control Specialists assigned to MIA are represented by the National Air Traffic Controllers Association (NATCA). The labor

agreement between the FAA and NATCA contains a negotiated grievance procedure that allows employees to grieve issues surrounding their working conditions, including issues regarding pay.

3. As a general principle, all MIA employees, including Ms. Adcock, are compensated for all worked performed, including work performed before or after their schedule shifts. Prior to this lawsuit, I do not recall nor does the facility have any record of Mr. Adcock ever claiming that she was not compensated for work performed either before or after one of her scheduled shifts or for time spent bidding work schedule or vacation leave while off duty. I do not recall nor does the facility have a record of any grievances filed by Ms. Adcock claiming that she was not compensated for work performed either before or after one of her scheduled shifts or for time spent bidding while off duty. I do not recall nor does the facility have a record of any grievances filed by NATCA claiming that Ms. Adcock was not compensated for work performed either before or after one of her scheduled shifts or for time spent bidding while off duty.

4. There was no requirement for or expectation that Ms. Adcock or any other ATCS at MIA to bid while off duty. The FAA and NATCA provided for a proxy system to allow employees to submit there bids ahead of time if they were going to be out of the facility when their bidding time occurred.

5. In 2007, FAA management at MIA negotiated a memorandum of understanding (MOU) with NATCA representatives at MIA that addressed procedures for bidding work schedules. (Attachment 1). The MOU provided that employees who would be absent from the facility on their bidding days could, prior to their absence, give their bid requests to an Operational

Supervisor-in-Charge (OSIC) or a Controller-in-Charge (CIC) so that the OSIC/CIC could bid for them. (Attachment 1).

6. In prior years, NATCA was in charge of the bidding. 2002 Primetime Leave Bidding Notice (Attachment 2); 2005 Primetime Leave Bidding Notice (Attachment 3). In 2005, NATCA indicated in its bidding notice that employees could bid using a proxy. (Attachment 3).

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 4 day of March, 2008.

JUAN FUENTES

MEMORANDUM OF UNDERSTANDING
BETWEEN THE
NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION
AND THE
FEDERAL AVIATION ADMINSITRATION

This agreement is made and entered into by local National Air Traffic Controller's Association (NATCA), MIA Local, and the local Federal Aviation Administration (FAA), MIA ATCT. It represents the parties' understanding and agreement on the employee rotation through shifts and the procedures for bidding the basic watch schedule at MIA. The following procedures will become effective from the date of the Agency Head's review/signature.

1. Basic Watch Schedule (Attachment 1):

   a. RDOs

      i. The basic watch schedule will consist of 7 teams assigned to seven (7) set of Permanent Regular Days Off (RDO) as indicated in attachment 1.

   b. Shift Rotation

      i. All personnel are assigned to an eight (8) hour flexible schedule.
      ii. The shift rotation will be permanent as indicated in attachment 1.

2. Basic Watch Schedule / Bidding Process:

   a. One week prior to bidding, Management will post a notice, informing each eligible CPC of their date and times to select a schedule line.

   b. The new schedule shall become effective on January 6, 2008.

   c. Bidding for assignments to the permanent RDO teams will be conducted via Webschedules until the selection process has been completed.

   d. Eligible bidders shall choose a schedule line during the bid cycle by entering their selected line on their bidding day and designated time.

   e. An employee who will be absent from the facility on their bidding days shall:

      i. Prior to that absence, submit their schedule line requests to the OSIC/CIC for submission, or,

ii. Provide the OSIC/CIC, either by phone or in writing, their requested schedule line prior to their bidding date/time.

3. This MOU shall expire at the day prior to the first full pay period of the following calendar year, and may be extended by mutual agreement of the Parties in writing for another year.

9/19/07 9/19/2007

For NATCA Date For FAA Date

For T. h-Bon

Agency Head Review

9/ 1/07

Date

Attachment 2

# PRIMETIME LEAVE BIDDING NOTICE

On or about January 25, 2002, NATCA Local MIA will begin bidding Primetime Annual Leave for the Primetime Leave Period defined below.

Sunday, May 26, 2002 to Monday Sept. 2, 2002

Sunday, November 17, 2002 to Saturday, November 30, 2002

Wednesday, December 18, 2002 to Wednesday, January 1, 2003

Everyone is guaranteed a minimum of two consecutive or non-consecutive weeks of Primetime Annual Leave during the above Prime Time period.

We will be bidding Prime Time Leave differently than we have the past couple of years. That is; we will post a seniority list and bid individually, not as groups. The seniority list will be posted next to the roster. Please write your name in the slots and cross your name off the seniority list. Please be sure to fill out an SF-71. Use the example posted, include Team Number, and place in the NATCA Lock box in the breakroom. "A" & "B" controllers are bidding independently of one another, developmentals will bid in turn, if your name is next on the list please BID!

The following will be utilized throughout the bidding process:

- Each individual, when it is their turn has 4 (four) hours to bid after notification. Notification may be by telephone or upon arrival at the facility. If you do not bid within that time frame <u>YOU WILL BE SKIPPED!!!!</u>
- If you will be out of town or on leave during this process, please leave a proxy or phone number where you can be reached. **If for some reason you are unreachable for a period of four (4) days you will be skipped. NO EXCEPTIONS!!!!**

If you have any questions, please see any NATCA officer.

Lori Rebhan
January 14, 2002

# PRIMETIME LEAVE BIDDING NOTICE

On or about December 5, 2005, NATCA Local MIA will begin bidding Primetime Annual Leave for the Primetime Leave Period defined below.

We will be bidding Prime Time Leave differently than we have the past couple of years. That is, we will post a seniority list and bid on TWO weeks of leave. After everyone has bid their first two weeks, we will start again from the top, each person bidding ONE week of prime time in the remaining available space. Finally, we will start again from the top of the list and each person will bid ONE week in what's left. Therefore everyone will be bidding on 4 weeks of primetime in one two week, and two one weeks blocks. Primetime is now for the entire year. The old prime time periods (Spring Break, Summer, Thanksgiving, Christmas) will now have 3 A-side and 3 B-side slots available. The rest of the year will have 2 A-side and 2 B-side slots. The seniority list will be posted next to the roster. Please write your initials in the slots and cross your name off the seniority list. Please be sure to fill out an SF-71 and place it in the leave box in the tracon.

The following will be utilized throughout the bidding process:

- Each individual, when it is their turn has 4 (four) hours to bid after notification. Notification may be by telephone or upon arrival at the facility. If you do not bid within that time frame **YOU WILL BE SKIPPED!!!!**
- If you will be out of town or on leave during this process, please leave a proxy or phone number where you can be reached. **If for some reason you are unreachable for a period of THREE (3) days you will be skipped. NO EXCEPTIONS!!!!**

Because of the increase in staffing numbers, it is imperative that you plan ahead, since spot leave will be extremely limited, so think carefully about those extra two weeks. Also, since we're off to a late start because of the "negotiations", and, because we're bidding on so much, it's vital that everyone get there bids done in a timely fashion. The three day rule above is not an idle threat.

Good bidding everyone.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARK G. ABBEY, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | No. 07-272C<br>Judge Emily C. Hewitt |

**DECLARATION OF JOSEPH N. MINIACE**

I, Joseph N. Miniace, declare and state as follows:

1. I currently serve as Deputy Assistant Administrator for Strategic Human Resources and Labor Relations in the Office of Human Resource Management (AHR) with the Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT). I have been employed by the Federal Aviation Administration since May 2005. One of my primary responsibilities is to provide oversight for the Office of Labor Relations which handles the negotiation and administration of twenty-seven (27) collective bargaining agreements for forty-five (45) different bargaining units.
2. I served as the FAA's Chief Negotiator in the most recent contract negotiations with the National Air Traffic Controllers Association (NATCA) for the contract covering, among others, Air Traffic Control Specialists (ATCSs) and Traffic Management Coordinators (TMCs). Barry Krasner served as Chief Negotiator for NATCA. The negotiations commenced in July 2005 and the Parties negotiated for approximately

nine months, including one month of mediation under the auspices of the Federal Mediation and Conciliation Service (FMCS).

3. During negotiations, the Parties tentatively agreed upon 101 contract articles, including Article 32, Watch Schedules and Shift Assignments, and Article 34, Working Hours. The Parties bargained to impasse over nine other contract articles, including Article 24, Annual Leave, and Article 38, Overtime. The articles at impasse were submitted to Congress and then implemented by the FAA pursuant to authority granted under 49 U.S.C. §§ 106 and 40122. The FAA implemented its final bargaining offer on September 3, 2006, pursuant to authority granted under 49 U.S.C. §§ 106 and 40122.

4. Beginning in April 2006, NATCA filed a series of unfair labor practice (ULP) charges with the Federal Labor Relations Authority (FLRA) alleging, among other things, that the FAA had not negotiated in good faith; had impermissibly submitted the impasse to Congress; and had implemented the contract prior to the completion of bargaining. ULP Case No. WA-CA-06-0366 (April 7, 2006); ULP Case No. WA-CA-06-0563 (July 11, 2006); ULP Case No. WA-CA-06-0648 (Sept. 6, 2006) (Attachments 1-3).

5. On July 25, 2007, the FLRA Regional Director dismissed NATCA's ULP charges. Dismissal of ULP Case No. WA-CA-06-0366 (July 25, 2007); Dismissal of ULP Case No. WA-CA-06-0563 (July 25, 2007); Dismissal of ULP Case No. WA-CA-06-0648 (July 25, 2007) (Attachments 4-6). In dismissing ULP Charge WA-CA-06-0366, the FLRA Regional Director addressed the issue of NATCA's right to ratify the contract, stating: "In circumstances where NATCA did not hold a ratification vote,

the evidence does not establish that FAA's conduct deprived NATCA of an opportunity to exercise this right." Dismissal of ULP Case No. WA-CA-06-0366 (July 25, 2007) at 8 (Attachment 4).

6. NATCA appealed the dismissals to the FLRA General Counsel (GC) on August 27, 2007. Order Denying Appeal, Case No. WA-CA-06-0366 (Jan. 29, 2008); Order Denying Appeal, Case No. WA-CA-06-0563 (Jan. 29, 2008); Order Denying Appeal, Case No. WA-CA-06-0648 (Jan. 29, 2008) (Attachments 7-9). On January 29, 2008, the FLRA GC denied NATCA's appeals of the dismissals. Id. NATCA filed motions for reconsideration of the denials with the FLRA GC. On February 26, 2008, the FLRA GC denied NATCA's motions for reconsideration. Order Denying Motion for Reconsideration, Case No. WA-CA-06-0366 (Feb. 26, 2008); Order Denying Motion for Reconsideration, Case No. WA-CA-06-0563 (Feb. 26, 2008); Order Denying Motion for Reconsideration, Case No. WA-CA-06-0648 (Feb. 26, 2008) (Attachments 10-12).

7. The FLRA's dismissal of these ULP charges upholds the Agency's position that the Parties were at impasse; the FAA's submission of the impasse to Congress was proper; and the FAA's implementation of the contract upon the expiration of the 60-day Congressional review period was in accordance with applicable law. The FLRA has recognized the legality of the FAA's actions in negotiating and implementing the 2006 contract with NATCA.

8. Article 38, Section 9 of the 2006 contract addresses the earning of compensatory time off for bargaining unit employees. 2006 NATCA/FAA Contract (available at https://employees.faa.gov/org/staffoffices/ahr/labor_relations/agreements/media/06-

06%20NATCA%20CPC-%20Bus%200061%201545%200053.pdf). The 2003 contract contained a similar provision in Article 38, Section 7. 2003 NATCA/FAA Contract (Attachment 13).

9. Article 34, Section 7 of the 2006 contract addresses the earning of credit hours for bargaining unit employees. 2006 NATCA/FAA Contract. The 2003 contract contained a similar provision in Article 34, Section 8. 2003 NATCA/FAA Contract (Attachment 13). The 2003 contract was also supplemented by an agreement between the FAA and NATCA that provided employees could accrue more than twenty-four hours of credit hours and that employees "will in no instance be able to convert unused credit hours into pay." Letter from Herman to McNally (July 8, 1998) (Attachment 14).

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 4th day of March, 2008.

Joseph M. Miniace

JOSEPH N. MINIACE

Form Exempt Under 44 U.S.C. 3512

| UNITED STATES OF AMERICA<br>FEDERAL LABOR RELATIONS AUTHORITY<br>CHARGE AGAINST AN AGENCY | FOR FLRA USE ONLY<br>Case No. WA-CA-06-0366<br>Date Filed 4/7/2006 |
|---|---|

Complete instructions are on the back of this form.

| 1. Charged Activity or Agency | 2. Charging Party (Labor Organization or Individual) |
|---|---|
| Name: Federal Aviation Administration<br>Address: 800 Independence Ave. SW<br>Washington, DC 20591<br>Tel.#: (202)267-3979 Ext.<br>Fax#: (202) 267-3977 | Name: National Air Traffic Controllers Association<br>Address: 1325 Massachusetts Ave. NW<br>Washington, DC 20005<br>Tel.#: (202)628-5451 Ext.<br>Fax#: (202)628-5767 |
| **3. Charged Activity or Agency Contact Information** | **4. Charging Party Contact Information** |
| Name: Marion Blakey<br>Title: Administrator<br>Address: 800 Independence Ave., SW<br>Tel.#: (202) 267-3111 Ext.<br>Fax#: (202) 267-5047 | Name: Marc Shapiro<br>Title: Director of Labor Relations<br>Address: 1325 Massachusetts Ave., NW<br>Washington, DC 20005<br>Tel.#: (202) 628-5451 Ext. 4826<br>Fax#: (202) 628-5767 |

5. Which subsection(s) of 5 U.S.C. 7116(a) do you believe have been violated? [See reverse] (1) and (5) and (8)

6. Tell exactly WHAT the activity (or agency) did. Start with the DATE and LOCATION, state WHO was involved, including titles.

(see attached)

7. Have you or anyone else raised this matter in any other procedure? ✓ No ___ Yes If yes, where? [see reverse] ________

8. I DECLARE THAT I HAVE READ THIS CHARGE AND THAT THE STATEMENTS IN IT ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT MAKING WILLFULLY FALSE STATEMENTS CAN BE PUNISHED BY FINE AND IMPRISONMENT, 18 U.S.C. 1001. THIS CHARGE WAS SERVED ON THE PERSON IDENTIFIED IN BOX #3 BY [check "x" box] ☐ Fax ☐ 1st Class Mail ☐ In Person ☑ Commercial Delivery ☐ Certified Mail

| Marc Shapiro | [signature] | 04/07/2006 |
|---|---|---|
| Type or Print Your Name | Your Signature | Date |

On or about April 5, 2006, and continuing, the Federal Aviation Administration (FAA or Agency), engaged in bad faith bargaining with the National Air Traffic Controllers Association, AFL-CIO, (NATCA or Union) in violation of 5 U.S.C. Sections (1), (5), and (8) by, inter alia,

I. Submitting its contract proposal to the United States Congress and refusing to cooperate in impasse resolution through the processes of the Federal Service Impasses Panel as required by 5 U.S.C. Section 7119. See NATCA v. FSIP, 437 F.3d 1256 (D.C. Cir. 2006);

II. Insisting to impasse over permissive subjects of bargaining (waiver of Union bargaining rights);

III. And, engaging in a pattern and practice throughout the course of negotiations of avoiding good faith collective bargaining.

The violations by the FAA have caused and will continue to cause irreparable harm to affected bargaining unit employees and to the Union. Interim injunctive relief is therefore requested pursuant to 5 U.S.C. Section 7123.

FAX NO. 2026287286 P. 02/02

Form Exempt Under 44 U.S.C. 3512

UNITED STATES OF AMERICA

FEDERAL LABOR RELATIONS AUTHORITY

# CHARGE AGAINST AN AGENCY

FOR FLRA USE ONLY

Case No. WA-CA-06-0563

Date Filed

Complete instructions are on the back of this form.

**1. Charged Activity or Agency**

Name: Federal Aviation Administration

Address: 800 Independence Ave. SW
Washington, DC 20591

Tel.#: 202-267-3979

Fax#: 202-267-5914

**2. Charging Party (Labor Organization or Individual)**

Name: National Air Traffic Controllers Association, AFL-CIO

Address: 1325 Mass. Ave. NW, Washington, DC 20005

Tel.#: 202-628-5451

Fax# 202-628-7286

**3. Charged Activity or Agency Contact Information**

Name: Melvin Harris

Title: Director Labor and Employee Relations

Address: same as above

Tel.#: 202-267-3979

Fax: 202-267-5914

**4. Charging Party Information**

Name: Marc Shapiro

Title: Acting Director of Labor Relations

Address: same as above

Tel.#: same as above Fax#: same as above

Electronic Mail: mshapiro@natcadc.org

5. Which subsection(s) of 5 U.S.C. 7116(a) do you believe have been violated? [See reverse] (1) (5)

6. Tell exactly WHAT the activity (or agency) did. Start with the DATE and LOCATION, state WHO was involved, including titles.

Since on or about April 7, 2006 and continuing, the Federal Aviation Administration has refused to bargain under the auspices of the Federal Service Impasses Panel.

The above constitutes bad faith bargaining.

By the above the Agency has violated 5 U.S.C. 7116 (a) (1) and (5).

The violations by the FAA have caused and will continue to cause irreparable harm to affected bargaining unit employees and to the Union. Interim injunctive relief is therefore requested pursuant to 5 U.S.C. Section 7123.

7. Have you or anyone else raised this matter in any other procedure? X No ___Yes If yes, where? (see reverse)

8. I DECLARE THAT I HAVE READ THIS CHARGE AND THAT THE STATEMENTS IN IT ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT MAKING WILLFULLY FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT. 18U.S.C. 1001. THIS CHARGE WAS SERVED ON THE PERSON IDENTIFIED IN BOX #3 BY [check "x" box] x Fax ☐ 1st Class Mail ☐ In Person ☐ Commercial Delivery ☐ Certified Mail

Marc Shapiro — Type or print your name

[signature] — Your signature

Date 7-11-06

SEP-18-2006 14:38 FLRA - SFRO P.04/04

Form Exempt Under 44 U.S.C. 3512

UNITED STATES OF AMERICA
FEDERAL LABOR RELATIONS AUTHORITY

**CHARGE AGAINST AN AGENCY**

FOR FLRA USE ONLY
Case No. WA-CA-06-0648
Date Filed 09-06-2006

Complete instructions are on the back of this form.

| 1. Charged Activity or Agency | 2. Charging Party (Labor Organization or Individual) |
|---|---|
| Name: Federal Aviation Administration | Name: National Air Traffic Controllers Association, AFL-CIO |
| Address: 800 Independence Ave. SW Washington, DC 20591 | Address: 1325 Mass. Ave. NW, Washington, DC 20005 |
| Tel.#: 202-267-3111 | Tel.#: 202-628-5451 |
| Fax#: 202-267-5047 | Fax# 202-628-7286 |

| 3. Charged Activity or Agency Contact Information | 4. Charging Party Information |
|---|---|
| Name: Melvin Harris | Name: Marc Shapiro |
| Title: Director, Labor and Employee Relations | Title: Acting Director of Labor Relations |
| Address: same as above | Address: same as above |
| Tel.#: 202-267-3979 | Tel.#: same as above Fax#: same as above |
| Fax: 202-267-5914 | Electronic Mail: mshapiro@natcadc.org |

5. Which subsection(s) of 5 U.S.C. 7116(a) do you believe have been violated? (See reverse) (1) (5) (6) and (8)

6. Tell exactly WHAT the activity (or agency) did. Start with the DATE and LOCATION, state WHO was involved, including titles.

On or about 9/03/06, the Federal Aviation Administration, (FAA) through its agent, Marion Blakey, Administrator, implemented its final contract proposal in the following units where the National Air Traffic Controllers Association, AFL-CIO(NATCA) is the exclusive collective bargaining representative:

Air Traffic Controllers Bargaining Unit;
Traffic Management Bargaining Unit; and
NOTAM Bargaining Unit.

This implementation was done despite that fact that bargaining for a successor agreement with the National Air NATCA had not been completed. Moreover this was done without affording NATCA membership the opportunity to ratify any agreement.

In addition the FAA has refused to properly brief and bargain with NATCA over the changes to terms and conditions of employment brought on by the implementation of its final contract proposal.

NATCA requests a Temporary Restraining Order due to the irreparable harm caused by the aforementioned unfair labor practices and a status quo ante remedy is also requested

By the above the Agency has violated of 5 U.S.C. 7116 (a) (1) (5) (6) and (8) and 5 U.S.C. 7114.

7. Have you or anyone else raised this matter in any other procedure? x No ___ Yes If yes, where? (see reverse)

8. I DECLARE THAT I HAVE READ THIS CHARGE AND THAT THE STATEMENTS IN IT ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT MAKING WILLFULLY FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT, 18U.S.C. 1001. THIS CHARGE WAS SERVED ON THE PERSON IDENTIFIED IN BOX #3 BY (check "x" box) x Fax 1st Class Mail In Person Commercial Delivery Certified Mail

Marc Shapiro
Type or print your name

[signature]
Your signature

Date 9/5/6

FLRA Form 22 (Rev. 1/99)

TOTAL P.04

000044

UNITED STATES OF AMERICA
**FEDERAL LABOR RELATIONS AUTHORITY**
SAN FRANCISCO REGION
901 Market Street, Suite 220
San Francisco, California 94103-1791
(415) 356-5000 Fax:(415) 356-5017

July 25, 2007

Eugene Freedman, Policy Counsel
National Air Traffic Controllers Association
1325 Massachusetts Avenue, NW
Washington, DC 20005

Re: Federal Aviation Administration
Washington, D.C.
Case No. WA-CA-06-0366

Dear Mr. Freedman:

The unfair labor practice charge in this case was filed with the Washington Regional Office on April 5, 2006 and was transferred to the San Francisco Regional Office on September 7, 2006. After investigation, consideration of the evidence, and application of the law to the facts, issuance of a complaint is not warranted.

The charge alleges that the Federal Aviation Administration (FAA) insisted to impasse on permissive subjects of bargaining during term negotiations with the National Air Traffic Controllers Association (NATCA). The charge further alleges that FAA engaged in a pattern of bad faith bargaining throughout the negotiations. This conduct is alleged to violate section 7116(a)(1) (5) and (8) of the Federal Service Labor-Management Relations Statute (Statute). The FLRA has jurisdiction over this timely-filed charge.[1]

From July 2005 through April 5, 2006, NATCA and FAA were in negotiations over a new term collective bargaining agreement in their national air traffic units. The groundrules for contract bargaining, among other things, specified that once agreement on a provision was reached, the parties were to initial the provision as "tentatively agreed upon" (TAU). The groundrules also provided that any TAU provision could be reopened only by mutual agreement of both parties. Early in the negotiations, NATCA notified FAA that it reserved the right to submit a final agreement to its membership for ratification prior to implementation.

[1] The charge also alleges that FAA failed to comply with section 7119 of the Statute by submitting its final contract directly proposal to Congress and refusing to cooperate in impasse proceedings before FSIP. The charge NATCA filed in related Case No. WA-CA-06-0563 raises this same allegation. The allegation is addressed in the dismissal letter issued today in Case No. WA-CA-06-0563.