Attachment 2

MYFAA
Employee Site

# Order 3550.15 FEPCA of 1990

Updated: 10:23 am ET November 8, 2006

---

# FEPCA of 1990

March 8, 1993

### Forward

The Federal Employees Pay Comparability Act of 1990 (FEPCA) represents a significant step forward for Federal managers and employees. It offers a mechanism for reducing gaps between Federal and non-Federal pay and established a basis for ensuring continuing pay comparability. It recognizes that pay disparities may exist in white collar occupations in different localities and sets up a process to deal with them. Finally, FEPCA expands the use of some existing pay authorities and introduces new ones that will put us in a more competitive posture with employers outside of the Federal sector.

This order describes those provisions of FEPCA that have application in FAA. It also states the policies and describes the procedures that have been established to implement those provision. Their judicious use should aid us in overcoming many staffing problems.

The authority to approve use of the various provision of FEPCA is delegated to the levels specified in this order.

/s/
Joseph M. Del Balzo
Acting Administrator

---

### Table of Contents

Chapter 1. General

1. Purpose
2. Distribution
3. Background
4. Definitions
5. Policy
6. Report
7. Authority to Change this Order
8. (8.-19.) Reserved

**Changes to the General Schedule**

Chapter 2. Annual Comparability Pay Adjustments

20. General
21. Eligibility
22. Restrictions

23. Purpose
24. Special Provision for Pay Adjustments, 1992-1994
25. (25.-29.) Reserved

Chapter 3. Locality-based Comparability Payments

30. General
31. Eligibility
32. Definitions
33. Policy
34. Locality Procedures
35. Temporary Assignments
36. (36.-39.) Reserved

Chapter 4. Interim Geographic Adjustment

40. General
41. Geographic Area Determination
42. Eligibility
43. Administration of Adjusted Rates of Pay
44. Commencement and Termination of Adjustments
45. Special Salary Rates
46. Effect on the Pay Demonstration Project
47. Records and Reports
48. (48.-49.) Reserved

**Recruitment and Return Rights**

Chapter 5. Payment of Travel Expenses for Pre-Employment Interviews

50. General
51. Policy
52. Eligibility
53. Approval Authority
54. Budget Constraints
55. Merit Considerations
56. Alternative To Travel
57. Records and Reports
58. (58.-59.) Reserved

Chapter 6. Payment of Travel Expenses for Travel to an Appointee's First Post of Duty

60. General
61. Policy
62. Eligibility
63. Factors To Consider
64. Approval Authority
65. Procedures
66. Records and Reports
67. (67.-69.) Reserved

Chapter 7. Advances in Pay

70. General
71. Policy
72. Eligibility
73. Approval Authority
74. Procedures
75. (75.-79.) Reserved

Chapter 8. Appointments Above the Minimum Rates Because of Superior Qualifications

80. General
81. Policy
82. Eligibility
83. Criteria
84. Other Considerations
85. Records and Reports
86. (86.-89.) Reserved

Chapter 9. Recruitment Bonuses

90. General
91. Policy
92. Eligibility
93. Approval Authority
94. Procedures
95. Payment
96. Service Agreement
97. Recovery of a Recruitment Bonus
98. Records and Reports
99. Reserved

Chapter 10. Relocation Bonuses

100. General
101. Policy
102. Eligibility
103. Approval Authority
104. Procedures
105. Payment
106. Service Agreement
107. Recovery of a Relocation Bonus
108. Records and Reports
109. Reserved

Chapter 11. Retention Allowances

110. General
111. Policy
112. Eligibility
113. Approval Authority
114. Conditions for Payment
115. Procedures
116. Payment

117. Reduction of Termination of an Allowance
118. Annual Review
119. Records and Reports

Chapter 12. Dual Compensation -- Waiver of Offsets to the Salary of Re-Employed Annuitants and the Retirement of Military Retirees

120. General
121. Circumstances Warranting Consideration for Waiver
122. Approval Authority
123. Procedures
124. Duration of Waivers
125. Status of Individual Serving Without Penalty
126. Records and Reports
127. (127.129.) Reserved

Chapter 13. Special Salary Rates

130. General
131. Policy
132. FEPCA Provisions
133. Identifying a Need for Special Salary Rates
134. Initiating Requests for Special Salary Rates
135. Participation in Special Salary Rate Studies and Reviews
136. (136.-139.) Reserved

Chapter 14. Senior Level and Scientific and Professional Positions

140. General
141. Background
142. Policy
143. Assignment of Responsibilities
144. (144.-149.) Reserved

Chapter 15. Critical Position Pay Authority

150. General
151. Policy
152. Restrictions
153. Pay Level
154. Procedures
155. Approval Authority
156. Criteria for Requesting Critical Position Pay Authority
157. Records and Reports
158. (158.-159.) Reserved

Chapter 16. Aggregate Limitation on Pay

160. General
161. Coverage
162. Exclusions
163. Definitions
164. Policy

165. Payment of Excess Amounts
166. (166.-169.) Reserved

Chapter 17. Pay Administration Under the Fair Labor Standards Acts Overtime Pay Provisions

170. General
171. Policy
172. Exceptions
173. Changes
174. (174.-179.) Reserved

Chapter 18. Exception to Biweekly Premium Pay Restrictions for Employees Performing Emergency Work

180. General
181. Definition
182. Policy
183. Approval Authority
184. Restrictions
185. Exceptions
186. (186.-189.) Reserved

Chapter 19. Pay for Duty Involving Physical Hardship of Hazard

190. General
191. Definitions
192. Policy
193. Approval Authority
194. Procedure
195. Payment of Hazard Pay Differential
196. Termination of Hazard Pay Differential
197. (197.-199.) Reserved

Chapter 20. Supervisory Differential for GS Supervisors of Employees Not in the General Schedule

200. General
201. Definitions
202. Eligibility
203. Policy
204. Approval Authority
205. Restriction
206. Calculating the Differential
207. Adjustment or Termination of the Supervisory Differential
208. Records and Reports
209. Reserved

Chapter 21. Special Occupations Pay Systems

210. General
211. Policy
212. Approval Authority
213. Procedures
214. (214.-219.) Reserved

Chapter 22. Performance-based Cash Awards for General Schedules and Prevailing Rate Employees

220. General
221. Background
222. Definitions
223. (223.-229.) Reserved

Chapter 23. Time Off From Duty as an Incentive Awards

230. General
231. Award Description
232. Eligibility
233. Documentation
234. Scheduling and Use of Time Off Awards
235. Time Off Awards and Annual Leave
236. (236.-239.) Reserved

APPENDIX 1. Advances in Pay

---

## Chapter 1. General

1. **Purpose**. This order informs FAA managers and employees of the provisions of the Federal Employees Pay Comparability Act of 1990 (FEPCA). It also describes the policies and procedures that are to be followed to implement the Act. It should be noted that much of the regulatory guidance that has been issued by the Office of Personnel Management (OPM) and the Office of the Secretary of Transportation has been on an interim basis. Therefore, while this order is in compliance with all of the regulatory guidance that has been changes will be made on an as-needed and timely basis. This order also establishes the Pay Committee.

2. **Distribution**. This order is distributed to the branch level in Washington, regions, and Center and a limited distribution to all field offices and facilities.

3. **Background**. FEPCA is the result of the efforts of the OPM, Federal agencies, employee organizations, and many legislators and was established to relive the problems the Federal Government was facing in competing with the non-Federal sector in the area of employee compensation. The disparity between private sector and Federal wages in some localities and in some occupations was very acute.

a. Individual agencies were petitioning Congress for relief from their particular pay problems. However, the relief provided one agency was often considered in unfair advantage by another. OPM favored a comprehensive legislative remedy that would not fragment Government pay policies among agencies. Certain occupations such as law enforcement required special treatment.

b. Many bills to change Federal employee pay policies were introduced during the second session of the 101st Congress. FEPCA was passed in October in 1990 and signed by the President on November 5, 1990. It addresses many of the general pay problems that affect Federal agencies and employee. Perhaps most dramatic is the method for arriving at national pay level and at the same time instituting a process that now takes locality pay difference into account. These and the other provisions of the law that are applicable in FAA are contained herein.

4. **Definitions**.

a. **Commuting area** means the geographic area that normally is considered one area for employment purposes. It includes one population center (or two or more neighboring ones) and the surrounding localities where people live and reasonably can be expected to travel back and forth daily to work.

b. **Involuntary** separation refers to a separation initiated by FAA against the employee's will and without his or her consent for reasons other than cause on charges of misconduct or delinquency. An involuntary separation includes a separation resulting from the employee's inability to do the work following genuine efforts to do so, but does not include a separation under Part 752 of Chapter I, 5 CFR or an equivalent procedure for reasons that involve culpable wrongdoing on the part of the employee. In addition, when an employee is separated because he or she declines to accept assignment, outside the commuting area, the separation is involuntary if the employee's position description or other written agreement does not provide for such reassignment. However, an employee's separation is not involuntary if, after such a written mobility agreement is added, the employee accepts one reassignment outside the commuting area, but subsequently declines another such assignment.

c. **Pay Committee** is a committee within FAA comprised of members of the Administrator's Management Team (AMT), who meet as required to review requests for certain forms of compensation allowed under FEPCA. The Pay Committee is chaired by the Assistant of Deputy Assistant Administrator for Human Resource Management. A minimum of four AMT members must be present to consider a request.

d. **Rate of basic pay** means the rate of pay fixed by law or administrative action for the position to which the employee is being relocated, before deductions and exclusive of additional pay of any kind, such as locality-based comparability payments under 5 U.S.C. 5304 or interim geographic adjustment under Section 302 of FEPCA (Public Law 101-509).

e. **Service agreement** means a written agreement between an employee and the agency under which the employee agrees to a specified period of employment.

f. **Supervisor** means an individual employed by en agency having authority in the interest of the agency to hire, direct, assign, evaluate, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjudicate their grievances, or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in to any unit that includes firefighters or nurses, the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising such authority.

g. **Severe economic conditions** means two consecutive quarters of negative growth in the Gross National Product during the 12-month period ending two calendar quarters before they pay adjustment date.

h. **Adjusted Annual Rate of Pay** for interim geographic adjustments means an employee's scheduled annual rate of pay multiplied by 1.08, or any other appropriate geographic adjustment percentage in lieu of .08, and rounded to the nearest whole dollar accounting 50 cents and over as a whole dollar.

i. **Area** means any metropolitan statistical area, consolidated metropolitan statistical area, or primary metropolitan statistical area, with at least 5,000 General Schedule employees.

j. **Local Special Salary Rate** means a special salary rate established under 5 CFR Part 530 for one or more locations, but not for all locations nationwide or worldwide.

k. **Official Duty Station** means the duty station for an employee's recent position of record as indicated on his or her most recent Notification of Personnel Action (SF 50).

l. **Scheduled Annual Rate of Pay** means:

(1) The General Schedule rate of basic pay (or a nationwide or worldwide special salary rate under 5 CFR Part 530, where applicable) for the employee's grade and step or for GM employees, their appropriate grade and rate, exclusive of additional pay of any kind.

(2) For an employee covered by the Performance Management and Recognition System who is receiving a local special salary rate, the rate of pay resulting from the following computation:

(a) Subtract the dollar amount for step 1 of the employee's grade on the special salary rate schedule from the dollar amount for the employee's special salary rate.

(b) Add the difference derived above to the dollar amount under the General Schedule for step 1 of the

employee's grade.

(3) The retained rate of pay under 5 CFR Part 536, where applicable, exclusive of additional pay of any kind.

5. **Policy**. FAA policy is to make use of the provisions of FEPCA to the maximum extent warranted to attract, retain, and reward a highly skilled, diverse, and motivated work force. The provisions are expected to aid work force stability and improve efforts in attracting the skilled and diverse workers needed to sustain the tradition of FAA achievement. Under no circumstances will these provisions be used in a way that is inequitable, partial, or creates a reality or impression of disparate treatment of any group or class of applicant or employee.

6. **Reports**. This order contain several reporting requirements. Paragraphs 98b, 108b, and 119b describe the reporting requirements.

7. **Authority to Change This Order**. The Assistant Administrator for Human Resource Management is authorized to make changes to this order which do not affect policy or assign responsibilities.

8.-19. **Reserved**.

---

**Chapter 2. Annual Comparability Pay Adjustments**

20. **General**. Section 101 of FEPCA provides for a uniform adjustment to the General Schedule Salary scale nationwide on the rate of increase in non-Federal sector salaries as reflected in the Employment Cost Index (ECI). This is a measurement of labor costs by the Bureau of Labor Statistics. The President has full discretion to reduce the amount of increase in the event of a national emergency or serious economic conditions. However. the President must consider the impact on the Federal work force and report to Congress.

21. **Eligibility**. Employees whose positions are classified in the General Schedule (GS), including those covered by the Performance Management and Recognition System (GM).

22. **Restrictions**.

a. An increase in rates of basic pay is not an increase in pay within the meaning of section 5335 of Title 5, U.S.C.

b. Pay may not be paid at a rate in excess of the rate of basic pay payable for level V of the Executive Schedule.

23. **Purpose**. To maintain the principle of full comparability with non-Federal salaries.

24. **Special Provisions for Pay Adjustments, 1992-1994**. Special provisions relating to pay adjustment and the President's authority over those adjustments are applicable to fiscal years 1992, 1993, and 1994. (The annual pay raise is effective the first full pay period after January 1 of each calendar year.)

a. **Pay Adjustments in FY 1992 and FY 1993**. The percentage increase in the GS is equal to the annual ECI increase.

b. **Pay Adjustments in FY 1994 and Beyond**. The percentage increase in the GS will be one-half of one percentage point **below** the ECI increase.

c. **Limitations of Presidential Discretion**. Section 633 of FEPCA, in FY 1992, 1993, and 1994, curtails the Presidents regular discretion to limit GS adjustments as follows:

(1) **If the ECI increase is 5 percent or less**, the Presidents may reduce the annual pay increase only if there is a **state of war** of if **severe economic conditions** exist.

(2) **If the ECI increase is greater than 5 percent**, the President may reduce the annual pay increase to:

(a) A level of 5 percent or more, but less than the ECI determined amount, only if there is a national emergency or serious economic condition affecting the general welfare.

(b) A level of less than 5 percent only if the criteria in paragraphs 24c(1) are met.

25.-29. **Reserved.**

---

## Chapter 3. Locality-Based Comparability Payments

30. **General.** Section 101 of FEPCA directs the Bureau of Labor statistics (BLS) to conduct annual pay surveys in geographic locations in the continental United States to determine whether a locality-based pay adjustment is necessary.

31. **Eligibility**. All FAA employees occupying a position classified in the GS including those covered by the GM. Employees In foreign and non-foreign overseas areas, such as Hawaii and Alaska, do not receive locality pay.

32. **Definitions.**

a. **Agency** - an executive agency, as defined in 5 U.S.C. 105.

b. **Locality pay area** each locality pay area will be comprised of a consolidated metropolitan statistical area, a primary metropolitan statistical area or a combination thereof agreed upon by the BLS and the Federal Salary Council as being representative of an appropriate local labor market.

c. **Employee** - an individual employed In an agency who is appointed to a position with a scheduled tour of duty.

33. **Policy.**

a. It is FAA policy to administer local comparability pay adjustments in accordance-with the provisions of Section 101 of FEPCA.

b. When a member of the AMT believes that an FAA field facility has been placed in an inappropriate locality pay area, a written request for a review of the situation should be made to the Assistant Administrator for Human Resource Management. If it can be demonstrated that FAA is being put at a competitive disadvantage in a labor market because of an inappropriate inclusion In a locality pay area, the Administrator may recommend to the Secretary of Transportation that a request for a correction be made by the President's pay agent.

c. An employee's locality-based comparability payments are based on the employee's permanent duty station.

34. **Locality Procedure.**

a. The BLS will conduct annual pay surveys in geographic locations to determine whether a locality-based pay adjustment is necessary. The BLS will report its findings to the President's pay agent and the Federal Salary Council (FSC). The FSC will then make recommendations to the pay agent on the locality-based pay adjustments. The pay agent includes those recommendations with its own in a report to the President.

b. The purpose of locality-based adjustments is to completely close existing pay gaps between Federal and non-Federal salary rates; however, the President is not required to provide a locality adjustment in areas that have a pay disparity of 5 percent or less.

c. Pay localities with a pay disparity of greater than 5 percent would receive an initial locality adjustment of at least two-tenths of the local pay disparity in fiscal year 1994. The President could reduce the fiscal year 1994 locality adjustments only In the event of a state of war or severe economic conditions, defined as two consecutive quarters of negative Gross National Product (GNP) growth.

d. If the total cost of locality-based adjustments exceeds $1.8 billion in calendar 1994, the President would have discretion to alter the adjustment if he/she determines that there is a national emergency or that serious economic conditions affect the general welfare.

e. In subsequent fiscal years, the President would be required to close the local pay gap by an additional one-tenth each year until the pay disparity in each area has been closed by at least 95 percent. These adjustments would be effective as of the beginning of the first full pay period of the new calendar year.

35. **Temporary Assignments.** When a covered employee is temporarily assigned from his/her permanent duty station (detail, temporary promotion, training, official travel, etc.) to a location outside of his/her locality pay area, the employee will continue to receive the locality pay payable at his/her permanent duty location. An employee does not receive locality pay for temporary assignments to locations where a locality is payable.

36.-39. **Reserved.**

---

**Chapter 4. Interim Geographic Adjustment**

40. **General.** Section 302 of FEPCA authorizes the President, at his/her discretion, to establish an interim geographic adjustment (IGA) of up to 8 percent of basic pay for GS employees in one or more geographic areas that meet certain criteria.

41. **Geographic Area Determination.** In determining area where an ICA is needed, the President shall use the following criteria:

a. The geographic area has at least 5,00 GS/GM employees.

b. There are significant pay difference between the Federal sector and the local non-federal work force as determined by the BLS.

c. There are widespread recruitment or retention problems.

42. **Eligibility.** Employees whose positions are classified in the GS, including those covered by the GM, and whose official duty station is within the designated area. (Employees who are appointed under the Stay-in-School Program are eligible if their rates of pay area established under the GS.)

43. **Administration of Adjusted Rates of Pay.**

a. An employee is entitled to be paid the greater of:

(1) The adjusted annual rate of pay (i.e., his/her basic rate of pay with added IGA amount).

(2) His or her rate of basic pay (including a local special salary rate, where applicable), without in IGA.

b. An adjusted rate of pay is considered basic pay for the purposes of computing retirement deductions and benefits, life insurance premiums and benefits, premium pay, and severance pay.

c. An adjusted rate of pay is paid only for those hours for which an employee is in a pay status.

d. An adjusted rate of pay shall be adjusted as of the effective data of any change in the applicable scheduled rate of pay.

e. In the event of a change in the geographic area covered by a locality pay area, the effective date of a change in an employee's entitlement to an adjusted rate of pay shall be the first day of the first pay period beginning on or after the date on which a change in the definition of the area is made effective.

f. Payment of, or an increase in, any adjusted rate of pay is not an equivalent increase in pay within the meaning of section 5335 of Title 5, United States Code.

g. An adjusted rate of pay is included in an employee's "total remuneration" and "straight-time rate of pay" for the purpose of computing overtime pay under the Fair Labor Standards Act.

h. For an employee receiving an adjusted rate of pay, any withholdings made from his or her basic pay for the Thrift

Savings Plan (TSP) and the Federal Insurance Contributions Act (FICA) must be based on the employee's **adjusted** rate of pay.

i. IGA's must be included in an employee's lump-sum payment for unused accrued annual leave.

j. Adjusted rates of pay are **not to be used for any other pay administration purposes**, such as setting pay when an employee is promoted, determining an employee's highest previous rate, administering within-grade increases or computing merit increases. Unadjusted GS rates-must be used to establish the appropriate rate of pay in such cases, which will then be increased by the appropriate geographic adjustment percentage if the employee works in an IGA area.

44. **Commencement and Termination of Adjustments**. Entitlement to an IGA begins on the effective date of a change in the employee's official duty station from a location outside a designated IGA area to a location within a designated IGA area.

a. On December 12, 1990, the President issued Executive Order 12736,, designating the following Consolidated Metropolitan Statistical Areas (CMSA's) as those areas in which IGA's will be paid, effective on the first day of the first pay period beginning on or after January 1, 1991:

(1) New York-Northern New Jersey-Long Island, NY-NJ-CT.

(2) San Francisco-Oakland-San Jose, CA.

(3) Los Angeles-Anaheim-Riverside, CA.

**Note:** A **detail** into or out of one of the CMSA's listed above, regardless of how it is documented, does **not** affect the employee's entitlement to an IGA. The President may approve other areas for an IGA until January 1, 1994.

b. Entitlement to an adjustment **terminates** on the date the:

(1) Employee's official duty station is no longer in a designated IGA area.

(2) Employee moves to a position in which he or she is no longer eligible to receive an IGA.

(3) Employee separates from Federal service.

(4) Employee's local special salary rate exceeds the GS rate for his or her grade and step, by an amount equal to or greater than the IGA adjusted rate which is currently 8 percent.

c. Termination of an IGA is not an adverse action for the purpose of Part 752 of Title 5, Code of Federal Regulations.

45. **Special Salary Rates.**

a. Nationwide and worldwide special salary rates, unlike local special salary rates, are not established on the basis of local labor market factors. However, local special salary rates are set at a level relative to the local labor market. Therefore, the IGA for an employee receiving a local special salary rate will be offset by the amount of the special salary rate. In no case, however, will an employee receive less than the IGA authorized amount.

b. Under the interim regulation, an employee In one of the three CMSA's paid according to the GS will be entitled to an adjustment of 8 percent. Similarly, an employee in one of the three CMSA's receiving a nationwide or worldwide special salary rate under Part 530 of Title 5, Code of Federal Regulations,, will be entitled to an 8 percent adjustment In addition to the special salary rate.

46. **Effect on the Pay Demonstration Project**. In those areas where an IGA is paid, employees covered by the DOT/FAA Pay Demonstration Project will receive the IGA but will have their quarterly pay demo allowance percentage reduced by the corresponding percentage.

47. **Records and Reports**. OPM may require FAA to supply pertinent information concerning the administration of this provision.

48.-49. **Reserved.**

---

## Chapter 5. Payment of Travel Expenses for Pre-Employment Interviews

50. **General**. Section 206 of FEPCA allows agencies the discretion to reimburse individuals for travel expenses incurred for travel to and from preemployment interviews. Regulatory guidance is contained in 5 CFR 572.101(b).

51. **Policy**. The FAA may reimburse individuals for travel expenses Incurred as a result of participating in preemployment Interviews outside of their commuting area. A selecting official may invite a job candidate to interview for a position with the guarantee that the candidate will be reimbursed for reasonable transportation, lodging, and subsistence expenses. Travel advances may be authorized to prospective employees when the cost to the candidate would be burdensome.

52. **Eligibility**. Payment of travel expenses for preemployment interviews may be made to all persons being considered for employment. This includes both prospective candidates for Federal employment and current employees of the Federal Government.

53. **Approval Authority**. Non-Federal applicants must be issued invitational travel orders for preemployment interviews. These can be approved only by the manager of the Human Resource Management Division that provides support to the selecting official. Travel orders for employees currently employed in the Federal service may be approved by the selecting official or whomever has authority to approve travel in the selecting official's organization. In all instances the organization in which the vacancy exists will bear the costs Incurred for travel and transportation expenses. Guidelines contained in Order 1500.14A, Travel Manual, chapter 1, paragraph 0408, shall be followed when authorizing preemployment Interview travel and transportation expenses.

54. **Budget Constraints**. The reimbursement of travel expenses incurred by job candidates is payable at the discretion of the agency. Budget constraints may prohibit offering travel expense reimbursement.

55. **Merit Considerations**. Selecting officials must be careful not to violate merit principles by selectively offering to reimburse only some of the candidates from outside the commuting area who are asked to interview for the same position.

56. **Alternative to Travel**. A less costly method of evaluating Job applicants is to arrange-for preemployment interviews with appropriate FAA officials who are located within candidates' commuting areas.

57. **Records and Reports**. The same documents and records normally required for authorizing travel and transportation expenses are required for preemployment interview expenses. In addition, each servicing Human Resource Management Division will maintain a file of title agency payments of travel and transportation expenses based on 5 CFR 572.101(b) for travel to and from preemployment interviews.

58.-59. **Reserved.**

---

## Chapter 6. Payment of Travel Expenses for Travel to an Appointee's First Post of Duty

60. **General**. 5 CFR 572.101 (a) allows agencies the discretion to reimburse new appointees for travel expenses incurred in raveling to their first post of duty.

61. **Policy**. FAA may reimburse newly appointed employees for travel and transportation costs to their first post of duty. This authority is used only as a recruiting incentive to fill positions for which normal recruiting efforts have not been successful. The authority is not to be used in connection with temporary appointments. The appointee must agree in writing by signing FAA Form 1520-1, Travel and Transportation Agreement, to remain in the Government service for 12 months after his/her appointment unless separated for reasons beyond his/her control. A newly appointed employee assigned to a foreign or nonforeign overseas area is considered to have met his/her obligation for reimbursement of travel expenses after 12 months

of service at the overseas post of duty even though the employee's prescribed tour of duty may be for a longer period of time; e.g., 2 or 3 years. If the newly appointed employee violates the agreement, the money spent for the travel and transportation cost is recoverable as a debt due the United States.

> **Note:** The payment of transportation and travel costs to the first duty post in order to fill one vacancy does not require a like decision In connection with future vacancies. Also, a decision by another agency that payment is appropriate for a position does not require a like determination by FAA when filling similar positions.

62. **Eligibility**. Employees who are entering the Federal service for the first time or former Federal employees who have a break in service are eligible for the reimbursement of travel and transportation expenses under this authority.

63. **Factors to Consider**. Several factors should be given careful thought when considering this recruitment incentive.

a. Does recent recruiting experience justify the use of this incentive?

b. Do budgetary constraints allow this as a possible incentive?

c. Would some other incentive, such as a recruitment bonus, be more effective?

d. The payment of travel and transportation expenses for a new employee might be less costly than the permanent change-of-station costs that would be incurred by the transfer of a Federal employee. However, have the additional costs associated with training requirements and lost productivity been considered?

e. Have recruitment efforts been adequate to find candidates locally?

64. **Approval Authority**. The cost of travel and transportation is paid by the organization for which the new employee will work. The offer may be made to the new employee only after the reimbursement for such expenses is approved by the official having authority to approve permanent change-of-station expenditures for the selecting organization. Travel orders must be approved by a manager at least one level above the selecting official.

65. **Procedures**. The procedures to be followed and the amounts to be authorized are contained In chapter 5 of Order 1500.14A, Travel Manual.

66. **Records and Reports**. A copy of the documentation that was produced In accomplishing the payment of travel and transportation expenses paid under this authority shall be maintained in the servicing Human Resource Management Division and made available to OPM upon request. The servicing Human Resource Management Division will maintain a file describing each case and include a record of the agency travel and transportation payments based on 5 CFR 572.101(a) for newly hired employees.

67.-69. **Reserved**.

---

## Chapter 7. Advances in Pay

70. **General**. Section 107 of FEPCA established Section 5524a, of Title 5, United States Code, which allows the payment of advances of pay to new appointees. Interim regulatory guidance of OPM is contained in Subpart B, Part 550 of Title 5, Code of Federal Regulations.

71. **Policy**. Within FAA, advances in pay of up to 70 percent of an employee's basic pay for up to two pay periods may be made. This authority should be used only when failure to advance pay will result in financial hardship to the newly appointed employee.

72. **Eligibility**. Employees newly appointed to the Federal service or former employees who have a break in service of 90 or more days may be considered for advances in pay. The appointment must be permanent or a temporary appointment of not less than 1 year.

73. **Approval Authority**. The use of a pay advance and the amount of the advance will be authorized by the selecting official in coordination with the servicing Human Resource Management Division that makes the offer of appointment.

74. **Procedures.** The procedures to be followed in the use of pay advances are contained in the interim regulations issued by the Office of the Secretary of Transportation. They are Included as Appendix 1, Advances in Pay. Request/Voucher for Advance Salary Payment, Form DOT F 2730.4, must be completed and the attached instructions followed.

75.-79. **Reserved.**

---

### Chapter 8. Appointments Above the Minimum Rates Because of Superior Qualifications

80. **General**. 5 CFR 531.203 (b), as amended by Section 106 of FEPCA, gives agencies the discretion to pay a newly appointed employee above the minimum rate for the grade to which he or she is being appointed if the new appointee possesses superior qualifications and the special needs of the agency will be met. Previously, this authority could be used only for positions at GS-11 and above.

81. **Policy**. It is the policy of FAA to use this provision as a means of recruiting highly qualified employees and meeting staffing requirements.

82. **Eligibility**. Appointments may be made above the minimum rate only when the appointee possesses superior qualifications for the position to which he or she is being appointed or to meet a specific need of the agency. A superior qualifications appointment may be made by appointment or reappointment except that when made by reappointment, the candidate normally must have a break In service of at least 90 days from his or her last period of Federal employment or employment with the District of Columbia. Exceptions to the 90 day break-in-service requirement apply to candidates whose most recent appointment was for:

a. Employment by the District of Columbia (D.C.) If the candidate was first appointed by the D.C. Government on or after October 1, 1987;

b. Employment under an appointment as an expert or consultant under Section 3109 of Title 5 United States Code;

c. Employment under a temporary appointment effected primarily in furtherance of a postdoctoral research program, effected as part of a predoctoral or postdoctoral training program during which the employee receives a stipend, or employment under a temporary appointment of a graduate student when the work performed by the student is the basis for completing certain academic requirements for an advanced degree;

d. Employment in a cooperative work-study program under a Schedule B appointment made in accordance with 5 CFR, 213.3202;

e. Employment as a member of the Commissioned Corps of the National Oceanic and Atmospheric Administration or the Commissioned Corps of the Public Health Service;

f. Employment which is neither full-time employment nor the principal employment of the candidate; or

g. Employment under the Intergovernmental Personnel Act.

83. **Criteria**. A determination that an advanced hiring rate is appropriate and the specific salary to be paid are made by the servicing Human Resource Management Division. The selecting official may request consideration of a salary above the minimum rate only after ensuring that the candidate meets at least one of the criteria In paragraphs 83a and 83b and budgetary constraints are considered. Individuals hired at advanced rates under this authority must meet at least one of the following criteria:

a. Possess unusually high qualifications for the particular position and would suffer a substantial loss of income if appointed at the minimum salary rate.

b. Possess a unique combination of education and experience that meets a special need of FAA.

84. **Other Considerations**. In determining whether an employee should receive a superior qualifications appointment and, if so, at what rate the employee's pay should be set, the possibility of authorizing a recruitment bonus should be considered. (A recruitment bonus is a one-time payment while a superior qualifications appointment establishes a higher basic rate of pay which will remain continuously.)

85. **Records and Reports**. The Human Resource Management Division is required to maintain a file of all cases In which superior qualifications appointments were made. The documentation In each case must be sufficient to allow reconstruction of the action taken and include:

a. A summary of superior qualifications of the individual or special need of the agency that justified use of this authority.

b. The factors considered in determining the Individual's existing pay and the reason for setting the pay higher than that needed to match existing pay.

c. The reason for authorizing an advanced to a recruitment bonus.

86.-89. **Reserved**.

---

**Chapter 9. Recruitment Bonuses**

90. **General**. Section 208 of FEPCA added 5 U.S.C. 5753 and 5 U.S.C. 5754 to Subchapter IV of Chapter 57 of Title 5, United States Code to allow for the payment of recruitment bonuses of up to 25 Percent of an employee's basic pay. Regulatory guidance is contained in 5 CFR Part 575 and in the regulatory guidance issued by the Office of the Secretary of Transportation.

91. **Policy**. It Ls FAA policy to make use of recruitment bonuses to the extent needed to:

a. To fill vacant positions when extreme difficulty In attracting an adequate number of high quality candidates has been encountered for a prolonged period of time, or

b. To attract a candidate with special qualifications to fill a vital position he/she would otherwise not accept.

92. **Eligibility**. Newly appointed employees In the following positions may be eligible for recruitment bonuses:

a. A GS position paid under 5 U.S.C. 5332, including the GM established under chapter 54 of Title 5, United States Code.

b. A senior level, scientific, or professional position paid under 5 U.S.C. 5376.

c. A Senior Executive Service position paid under 5 U.S.C. 5383.

d. A position as a law enforcement officer within the meaning of U.S.C. 8331 (20) or 8401 (17).

e. A position under the Executive Schedule established under Subchapter II of Chapter 53 of Title 5, United States Code, or a position the rate of pay for which is fixed by law at a rate equal to a rate for the Executive Schedule.

f. An executive branch position filled by Presidential appointment (with or without the advice and consent of the Senate).

93. **Approval Authority. (Replaced by PRIB 09).**

94. **Procedures**. A recruitment bonus must be based on a written determination that, in the absence of such a bonus, the agency would encounter difficulty in filling the position with a high quality candidate. Each such determination shall be made before the employee enters on duty in the position for which he or she was appointed. While groups of Positions that have been difficult to fill may be identified as "recruitment bonus positions," a determination to pay a recruitment bonus must be made on a case-by-case basis for each employee. The following procedures apply:

a. The selecting official at a location that is experiencing recruiting difficulties may recommend the use of a recruiting bonus as an incentive; however, formal requests for the use of recruitment bonuses must be initiated no lower than the division manager level. The servicing Human Resource Management Division will assist the initiating official In preparing documentation when a recruitment bonus is considered appropriate. The recommended amount of the bonus and the reason for that amount must be included in the formal request. Supporting documentation must address the following criteria:

(1) The success of recent efforts to recruit high quality candidates for similar positions, including indicators such as offer acceptance rates, the proportion of positions filled, and the length of time required to fill similar positions.

(2) Recent turnover in similar positions.

(3) Labor-market factors that may affect the ability of FAA to recruit high quality candidates for similar positions now or In the future.

(4) Special qualifications needed for the position.

(5) The practicality of using the superior qualification appointment authority provided by 5 U.S.C. 5333 and 5 CFR 531.203 (b) alone or in combination with a recruitment bonus.

b. Any member of the AMT may forward requests for the approval of recruitment bonuses directly to the Assistant Administrator for Human Resource Management, AHR-1, Division managers In straightlined organizations must forward requests for the approval of recruitment bonuses to their respective office or service director. All requests must move up through appropriate organizational levels and must have the endorsement of a member of the AMT.

95. **Payment**. A recruitment bonus shall not be paid until authorized by the Office of the Secretary of Transportation. The bonus is paid in a single lump sum, and payment should be made no later than two pay periods after the employee agrees on duty. A recruitment bonus is not considered part of basic pay. A recruitment bonus is included in computing the aggregate limitation on pay that an employee may receive in a calendar year under 5 U.S.C. 5307.

96. **Service Agreement**. The payment of a recruitment bonus is predicated on the employee entering into a written service agreement with the agency under which the employee agrees to a specified period of employment. The length of a service agreement, which must be at least 12 months,- will vary depending upon circumstances.

97. **Recovery of a Recruitment Bonus**. When the employee falls to complete the period of employment under the service agreement, he/she will be indebted to the Department of Transportation and will be required to repay the bonus on a pro rata basis. Recovered funds are credited to the account of the organization from which the bonus was paid.

a. To determine a separated employee's indebtedness to the Department, divide the total amount of the employee's recruitment bonus by the number of months obligated to serve. Subtract the number of full months of the service obligation completed, and multiply the remainder by the number of months remaining on the service agreement. The following example illustrates the computation:

An employee who received a $5,000 recruitment bonus, incurring a 12-month service requirement, separates after 6 months and 17 days of service. To compute the employee's indebtedness, divide the $5,000 bonus by 12 and arrive at $416.67. Since only full months are credited toward fulfilling the service requirement, the employee has served 6 months of his/her obligation. Therefore multiply $416.67 by 6 and the employee's debt to the Department is $2,500.02.

b. Debts owed by an employee will be collected under the Department's collection procedures, in conformance with Section 5514 of Title 5, U.S.C. and Subpart K of Part 550 of Title 5, Code of Federal Regulations.

c. The requirement to pay back the bonus would not apply if the employee was involuntarily separated for reasons other than cause on charges of misconduct or delinquency, e.g., neglect of duty, or if the head of the agency provides a written determination that it was later necessary to relocate the employee to a Position In a different commuting area.

d. In accordance with established procedures, collection of debts may be waived in whole or in part by the Department, if it is determined that recovery would be against equity and good conscience or against the public interest.

98. **Records and Reports.** The payment of a recruitment bonus will be recorded with the execution of an SF 50, Notification of Personnel Action. Recipients of recruitment bonuses will be identified in the Consolidated Personnel Management Information System and in Consolidated Uniform Payroll System records.

a. The Human Resource Management Division servicing the organization paying the bonus will maintain a case file of bonus payments that is detailed enough to permit the reconstruction of each case.

b. Each Human Resource Management Division will submit a report to the Director of the Office of Personnel, APN-1, on October 15 of each year describing the use of recruitment bonuses during the previous fiscal year. Each report will contain the number of employees to whom a recruitment bonus was offered during the fiscal year, the percentage of salary offered, and an evaluation of the overall effect of the payment of recruitment bonuses on the agency's ability to fill key positions with high quality candidates.

99. **Reserved.**

---

**Chapter 10. Relocation Bonuses**

100. **General.** Section 208 of FEPCA added 5 U.S.C. 5753 and 5 U.S.C. 5754 to Subchapter IV of chapter 57 of Title 5, United States Code to allow for the payment of relocation bonuses. Regulatory guidance is contained in 5 CFR Part, 575 and in the regulatory guidance issued by the Office of the Secretary of Transportation.

101. **Policy.**

a. FAA may consider the payment of a relocation bonus to a maximum of 25 percent of annual basic pay for the new position.

(1) To fill vacant positions when extreme difficulty in attracting an adequate number of high quality candidates has been encountered for a prolonged period of time.

(2) When it may serve as an incentive to attract a candidate with special qualifications who would otherwise not be willing to relocate to fill a vital position.

b. The employee must permanently relocate outside of his/her existing commuting area and must sign a service agreement to remain at the new location in the employment of Department of Transportation for at least 12 months. Temporary assignments do not qualify the employed for a relocation bonus.

102. **Eligibility**. Employees in the following types of positions may be eligible for relocation bonuses.

a. A GS position paid under 5 U.S.C. 5332, including the GM established under Chapter 54 of title 5, United States Code.

b. A senior level or scientific or professional position paid under 5 U.S.C. 5376.

c. A Senior Executive Service position paid under 5 U.S.C. 5383.

d. A position as a law enforcement officer within the meaning of U.S.C. 8331 (2) or 8401 (17).

e. A position under the Executive Schedule established under subchapter II of chapter 53 of title 5, United State Code, or a position the rate of pay for which is fixed by law at rate equal to a rate for the Executive Schedule.

f. An executive branch position filled by Presidential appointment (with or without the advice and consent of the Senate).

103. **Approval Authority. (Replaced by PRIB 09).**

104. **Procedures.** A relocation bonus must be based on a written determination (made before the employee accepts the position warranting payment) that, in the absence of such a bonus, the FAA would encounter difficulty in filling the position with a high quality candidate. While groups of positions that have been difficult to fill may be identified as "relocation bonus positions," a determination to pay a relocation bonus must be made on a case-by-case basis for each employee. The following procedures apply:

a. The selecting official at a location that is experiencing recruiting difficulties may recommend the use of a relocation bonus as an incentive, however, formal requests for the use of relocation bonuses must be Initiated no lower than the division manager level. The servicing Human Resource Management Division will assist the recommending division manager in preparing documentation when a relocation bonus is considered appropriate. The recommended amount of the bonus and the reason for that amount must be Included In the formal request. Supporting documentation must address the following criteria:

(1) The success of recent efforts to recruit high quality candidates for similar positions, including indicators such as offer acceptance rates, the proportion of positions filled, and the length of time required to fill similar positions.

(2) Recent turnover in similar positions.

(3) Labor market factors that may affect the ability of FAA to recruit high quality candidates for similar positions now or in the future.

(4) Special qualifications needed for the position.

b. Regional administrators, center directors, or any member of the AMT may forward requests for the approval of relocation bonuses directly to the Assistant Administrator for Human Resource Management, AHR-1. Division managers in straightlined organizations must forward requests for the approval of relocation bonuses to their respective office or service director. All requests must move up through appropriate organizational levels and must have the endorsement of a regional administrator, a center director, an associate administrator, or an assistant administrator.

105. **Payment.** A relocation bonus may not be paid until authorized by the Office of the Secretary of Transportation. The bonus is paid in a single lump sum, and payment should be made within two pay periods after the employee enters on duty at the new location. A relocation bonus is not considered part of basic pay. A relocation bonus is included in computing the aggregate limitation on pay that an employee may receive in a calendar year under 5 U.S.C. 5307.

106. **Service Agreement.** The payment of a relocation bonus is predicated on the employee entering into a written service agreement with the agency under which the employee agrees to a specified period of employment. The length of a service agreement, which must be at least 12 months, will vary depending upon circumstances.

107. **Recovery of a Relocation Bonus.** When the employee falls to complete the period of employment under the service agreement, he/she will be indebted to the Department of Transportation and will be required to repay the bonus on a pro rata basis. Recovered funds are credited to the account of the organization from which the bonus was paid.

a. To determine a separated employee's Indebtedness to the Department, divide the total amount of the employee's relocation bonus by the number of months obligated to serve. Subtract the number of full months of the service obligation completed, and multiply the remainder by the number of months remaining on the service agreement. The following Illustrates the computation.

An employee who received a $5,000 bonus, incurring a 12-month service requirement, separates after 6 months and 17 days of service. To compute the employee's indebtedness, divide the $5,000 bonus by 12 and arrive at $416.67. Since only full months are credited toward fulfilling the service requirement, the employee has served 6 months of his/her obligation. Therefore, multiply $416.67 by 6 and the employee's debt to the Department is $2,500.02.

b. Debts owed by an employee will be collected under the Department's collection procedures, in conformance with Section 5514 of Title 5, U.S.C. and Subpart K of Part 550 of Title 5, Code of Federal Regulations.

c. The requirement to pay back the bonus would not apply if the employee was involuntarily separated for reasons other than cause on charges of misconduct or delinquency, e.g., neglect of duty, or if the head of the agency provides a written determination that it was later necessary to relocate the employee to a position in a different commuting area.

d. In accordance with established procedures, collection of debts may be waived in whole or in part by the Department, if it is determined that recovery would be against equity and good conscience or against the public interest.

108. **Records and Reports**. The payment of a relocation bonus will be recorded with the execution of an SF 50, Notification of Personnel Action. Recipients of relocation bonuses will be identified in the Consolidated Personnel Management Information System and In Consolidated Uniform Payroll System records.

a. The Human Resource Management Division servicing the organization paying the bonus will maintain a case file of bonus payments that is detailed enough to permit the reconstruction of each case.

b. Each Human Resource Management Division will submit a report covering the past fiscal year to the Director of Personnel, APN-1, on October 15 of each year describing the use of relocation bonuses during the previous year. Each report will contain the number of employees to whom a relocation bonus was offered during the fiscal year, the percentage of salary offered, and an evaluation of the overall effect of the payment of relocation bonuses on the agency's ability to fill key positions with high quality candidates.

109. **Reserved**.

---

**Chapter 11. Retention Allowances**

110. **General**. Section 208 of FEPCA added 5 U.S.C. 5753 and 5 U.S.C. 5754 to Subchapter IV of chapter 57 of Title 5, United States Code to allow for the payment of retention allowances. Regulatory guidance is contained in 5 CFR Part 575 and in the regulatory guidance issued by the Office of the Secretary of Transportation.

111. **Policy**. FAA may authorize the payment of a retention allowance up to a maximum of 25 percent of an employee's rate of basic pay to a current permanent employee if the unusually high or unique qualifications of the employee or a special need of FAA for the employee's services makes it essential to retain the employee, and that the employee would be likely to leave for employment outside of the Federal service in the absence of a retention allowance.

112. **Eligibility**. The Secretary of Transportation may authorize the payment of a retention allowance to an employee appointed to:

a. A GS position paid under 5 U.S.C. 5332, including the GM established under Chapter 54 of Title 5, United States Code.

b. A senior level or scientific or professional position paid under 5 U.S.C. 5376.

c. A Senior Executive service position paid under 5 U.S.C. 5383.

d. A position as a law enforcement officer within the meaning of U.S.C. 8331 (20) or 8401 (17).

e. A position under the Executive Schedule established under subchapter II of chapter 53 of title 5, United States Code, or a position for the rate of pay which is fixed by law at a rate equal to a rate for the Executive Schedule.

f. An executive branch position filled by Presidential appointment (with or without the advice and consent of the Senate).

113. **Approval Authority. (Replaced by PRIB 09)**

114. **Conditions for Payment.** A retention allowance:

a. May only be paid to an employee who has completed 1 year of continuous service in the Department of Transportation immediately prior to such payment, or been employed by the Department for a period established by a service agreement resulting from the payment of a recruitment bonus of relocation bonus, whichever is later. A retention allowance may be paid only to an employee who is likely to leave Federal service for non-Federal employment. The allowance may not be paid to an employee who is likely to leave for employment in the legislative, judicial, or executive branches.

b. Can be considered only if the following criteria are met:

(1) Recent efforts to recruit candidates with qualifications similar to those possessed by the employee for positions similar to the position held by the employee have not been successful.

(2) There is a lack of availability in the labor market of candidates for employment who, with minimum training or disruption of service to the public, could perform the full range of duties and responsibilities assigned to the position held by the employee.

115. **Procedures.** A retention allowance must be based on a written determination that the unusual qualifications of the employee or a special need of FAA for the employee's services make it essential to retain the employee and that, in the absence of the allowance, the employee, the employee would likely leave to accept non-Federal employment. The determination must be based on a written description of the extent to which the employee's departure would affect FAA's ability to carry out an activity or perform a function that is essential to achieving its goal.

a. When a manager becomes aware that an employee is planing to leave employment with FAA for non-Federal employment and the conditions for may consider requesting the use of a retention allowance. However, formal requests for retention allowance. However, formal requests for retention allowances cannot be initiated below the division manager level. The recommended amount of the bonus and the reason for that amount along with information detailing how the criteria for considering the use of a retention allowance apply should be included in the formal request.

b. Any member of the AMT may forward requests for the approval of retention allowances directly to the Assistant Administrator for Human Resource Management, AHR-1. Division managers in straightlined organizations must forward requests for the approval of retention allowances through appropriate organizational levels and must have the endorsement of a member of the AMT.

116. **Payment.** A retention allowance is paid biweekly and is to be included in the normal pay check. It shall be paid in the same manner as normal pay; i.e., the allowance shall be paid at an hourly rate for each hour during which the employees receives basic pay. However, a retention allowance is included in computing the aggregate limitation on pay that an employee may receive in a calendar year under 5 U.S.C. 5307.

117. **Reduction or Termination of an Allowance.** The reduction or termination of a retention allowance may not be appealed. However, this is not meant to extinguish or lessen any right or remedy under subchapter II of chapter 12 of title 5, United States Code, or any other law referred to in 5 U.S.C. 2301. A retention allowance may be reduced or terminated when it is determined that:

a. A lesser amount (or none at all) would be sufficient to retain the employee.

b. Labor-market factors make it more likely to recruit a candidate with qualifications similar to those possessed by the employee.

c. The need for the services of the employee has been reduced to a level that makes it unnecessary to continue payment at the level originally approved, or at all.

d. Budgetary considerations make it difficult to continue at the level originally approved, or at all.

118. **Annual Review**. Each determination to pay a retention allowance must be reviewed annually by the approving official to determine if the payment should continue and, if so, at what level. Any determination to continue a retention allowance must be certified by the approving official.

119. **Records and Reports.**

a. The initiation, change, or termination of a retention allowance payment will be recorded with the execution of an SF 50, Notification of Personnel Action. Recipients of retention allowances will be identified in the Consolidated Personnel Management Information System and in Consolidated Uniform Payroll System records. In addition, the Human Resource Management Division servicing the organization paying the allowance will maintain a case file of retention allowances that is detailed enough to permit the reconstruction of each case.

b. Each Human Resource Management Division will submit a report for the last fiscal year to the Director of Personnel, APN-1, on October 15 of each year describing the use of retention allowances during the previous year. Each report will contain the number of employees to whom a retention allowance was offered during the fiscal year, the percentage of salary offered, and an evaluation of the overall effect of the payment of retention allowances on the agency to retain high quality employees in key positions.

---

## Chapter 12. Dual Compensation — Waiver of Offsets to the Salary of Re-Employed Annuitants and the Retirement Payments of Military Retirees

120. **General**. Section 108 of Title I of FEPCA amends 5 U.S.C. 5532 to allow, on a case-by-case basis, the possible waiver of the offsets to the salary of reemployed annuitants and military retirement payments incurred when annuitants and military retirees are employed by the Federal Government. Such waivers may be granted only under certain circumstances and only with the approval of OPM.

121. **Circumstances Warranting Consideration for Waiver**. Offset waivers may be considered when any of the following conditions seriously hamper the accomplishment of agency program, projects, or responsibilities:

a. The services of an individual are needed on a temporary basis to respond to an emergency involving a direct threat to life or property or unusual circumstances. (Under these circumstances the authority to waive the pay offsets may be delegated to the Secretary of Transportation.)

b. Severe recruiting difficulties in filling a particular position make an offset waiver a feasible inducement to attract a high quality individual.

c. There is a need to retain the skills and abilities of a uniquely qualified individual to ensure the successful completion of a project that could not acquired by another appointee within a reasonable period of time.

122. **Approval Authority**. **(Amended by PRIB 08).**

123. **Procedures**. **(Amended by PRIB 08).**

124. **Duration of Waivers**. **(Amended by PRIB 08).**

125. **Status of Individual Serving Without Penalty**.

a. Reemployed civilian annuitants receiving full salary and annuity under an exception granted under this authority are not considered employees for purposes of Subchapter III of chapter 83 of title 5, United States Code. They may not elect to have retirement contributions withheld from their pay; they may not use any employment for which an exception is granted as a basis for a supplemental or recomputed annuity; and they may not participate in the Thrift Savings Plan.

b. Retired members of the uniformed services employed without reduction in retired or retainer pay under this authority are considered employees for the purpose of subchapter III of chapter 83 or chapter 84 of title 5, United States Code, and are subject to the provisions of those statutes on the same basis as any other employees.

126. **Records and Reports.** Employees granted pay offset waivers must be identified in the Consolidated Personnel Management Information System. The servicing Human Resource Management Division is responsible for notifying the appropriate uniformed service finance center of any approved waivers.

127.-129. **Reserved.**

---

**Chapter 13. Special Salary Rates**

130. **General.** FEPCA amended 5 U.S.C. 5305 to increase the Government's flexibility to authorize special salary rates.

131. **Policy.** It is FAA policy to recognize and utilize the flexibilities available through the intelligent application of special salary rates fro dealing with local, regional, and national recruitment and relocation problems whenever appropriate.

132. **FEPCA Provisions.** FEPCA expanded the flexibilities of special salary rates to include the following:

a. Special salary rates may be established based on actual or anticipated staffing problems for any civilian position under any pay system established by or under Federal statute within the executive branch.

b. Special salary rates may be established when the staffing problem is caused by higher non-Federal pay rates, remote locations or areas, undesirable working conditions, or any other circumstances.

c. Higher Federal pay rates established under independent statutory authority may also be allowed.

d. The highest rate at which the minimum rate of a special rate schedule may be set has been increased to 30 percent above the maximum rate of the grade.

e. The GS-10, step 1, limitation on the computation of overtime pay now includes all special pay rates established for that grade.

f. Special salary rates are automatically adjusted with general pay increase rate on new statutory pay schedules (or with "constructed" rates above the maximum rate of the grade).

133. **Identifying a Need for Special Salary Rates.** Special salary rates are used to recruit and retain qualified employees in response to a number of different circumstances. Such circumstances could be ant of the following:

a. Rates of pay offered by non-Federal employers are significantly higher than those payable by the Government within the area, location, occupational group, or other class of position under the pay system involved.

b. Work is required to be performed in a remote location.

c. The undesirability of the working conditions or the nature of the work involved (including exposure to toxic substance or other occupational hazards).

d. Any other circumstances OPM considers appropriate.

134. **Initiating Requests for Special Salary Rates.** The FAA manager faced with problems described in paragraph 133 should consider the use of special salary rates, Formal requests for special rate consideration for positions in the field should begin at the regional administrator or center director level, or at the division manager level in straight-lined organizations. The assistance of the servicing Human Resource Management Division should be requested to develop the information that will be used in support of special salary rate considerations. The information required of special salary rate considerations is outlined in 5 CFR 530.303(e)(1)-(8).

a. The servicing Human Resource Management Division should notify the Office of the Assistant Administrator for Human Resource Management before it begins developing supporting data. The division manager of s straight-lined organization should notify the corresponding AMT member.

b. Since the final approval of special salary rates rests with OPM's central office, efforts to justify a case for the use of a special salary rate will have to be coordinated among the field organization, the Washington headquarters, and the Office of the Secretary of Transportation.

135. **Participation in Special Salary Rate Studies and Reviews**. Agencies other than FAA often are confronted with recruitment and retention problems and consequently initiate efforts to establish special rates. In the event that FAA field organizations are asked to participate in such studies, they must notify the Office of Personnel of the study, the occupations involved, and the expected results.

136.-139. **Reserved**.

---

## Chapter 14. Senior Level and Scientific and Professional Positions

140. **General**. FEPCA, subject to guidelines published by OPM (Part 319, Code of Federal Regulations), authorized the establishment of Senior Level (SL) positions. Also, Title 5 U.S.C. 3104, subject to guidelines published by OPM (OPM Federal Personnel Manual, Chapter 920), authorized the establishment of Scientific and Professional (ST) positions.

141. **Background**. Characteristics of SL/ST positions: A non-management position above GS-15, including positions formerly classified in grades GS-16, GS-17, and GS-18. Further, an ST position carries our research and development functions, primarily in the physical and natural sciences and medicine, and requires the services of specially qualified personnel.

142. **Policy**. FAA, in implementing the provisions of the law and regulations cited in paragraph 140, established the following policies and procedures:

a. **Pay levels**. There shall be ten pay levels within the SL system, each using the designator SL/ST and numbered 1 through 10. The minimum rate of basic pat for SL/ST position shall equal 120 percent of the GS-15, step 1, rate of basic pay, and the increments between the levels are approximately 4.6 percent. Unless excepted by paragraph 142th, the maximum rate of basic pay payable for an SL/ST position shall be equal to the rate of pay for Level V of the Executive Schedule. Pay rates under the SL/ST system will be adjusted annually of the time of the comparability increase.

b. **Initial Appointment**. Generally, when an individual is appointed to a position under the SL/ST pay system, his/her pay will be set at the minimum rate, SL/ST-1. However, provided the criteria of 5 CFR 531.203(b) (Superior Qualification Appointments) are met, an employee may be appointed at an advanced level of the SL/ST system.

c. **Transfer**. If an employee transfers to a position under the SL/ST pay system from a similar system in another agency, his/her pay shall be set at the nearest rate of the SL/ST system that equals or exceeds his/her rate of basic pay immediately before the transfer.

d. **Promotion.**

(1) If an employee is promoted into an SL/ST position from a GS or GM (\) positions, the employee's pay shall be set at the nearest rate of the SL/ST system that equals or exceeds the rate of basic pay he/she would have received has the promotion occurred within the GS or GM. Such an increase is considered a pay adjustment, and the employee will not be eligible for another pay adjustment for 12 months from the date of promotion.

(2) Except as provided in paragraph 142h, when an employee moves into an SL/ST position from a pay system other than the GS or GM, pay will be set at the nearest SL/ST rate that equals or exceeds the employee's rate of basic pay immediately before the movement. Additionally, if this action results in an increase in pay, it will be considered a promotion. The employee will not be eligible for another pay adjustment for 12 months from the

date of promotion.

e. **Advancement within the SL/ST System**. The pay (level) of an SL/ST employee may be advanced only one time during any 12-month period. Any adjustment is at the discretion of the Administrator and the Office of the Secretary of Transportation (OST), as stipulated in paragraph 142f, and is not an employee entitlement. The annual comparability pay increase in January of each year shall not constitute the start of a new 12-month period.

f. **Effecting a Pay Adjustment**. The Administrator may advance an SL/ST employee's pay in one or two level increments through the SL/ST-8 level, which is equal to Level V of the Executive Schedule. Pay adjustments of more than two increments or those above the SL/ST-8 level require approval from the OST.

g. **Performance Appraisal**. Performance is evaluated annual to asses the achievement of agency goals and serves as a basis for granting pay adjustments.

h. **Exceptions**. As provided in paragraphs 142d and 142f of this directive, an SL/ST employee may be paid more than the rate of Level V of the Executive Schedule or may be advanced in pay by more than two levels. Additionally, according to paragraph 142d(2), and employee moving into an SL/ST position whose does not receive a 4.6 percent increase upon the move, may be placed at an advanced level of the SL/ST system. To request an exception to the provisions of paragraphs 142a, 142f, and 142d(2), the Administrator shall forward a request to OST through the Department's Executive Resource Review Committee. The request shall contain the following information:

(1) The employee's name, position title, and current salary.

(2) Proposed SL/ST level or pay rate.

(3) Justification for the proposed exception.

(4) The date of the employee's last pay adjustment.

i. **Ethical Standards**. SL/ST employees will maintain the highest level of ethics. Each is entrusted with major responsibilities in support of programs established by our national leadership. They must complete a public financial disclosure report annually and when entering and leaving their SL/ST position.

143. **Assignment of Responsibilities**. The Executive Committee for SES Selection and Succession (EXCOM) must review all SL/ST actions for recruitment, appointment, position management allocation, and compensation. The EXCOM will forward its recommendations to the Administrator through FAA Executive Board.

144.-149. **Reserved.**

---

## Chapter 15. Critical Position Pay Authority

150. **General**. Section 103 of FEPCA authorizes the Office of Management and Budget (OMB), in consultation with OPM, to grant authority upon request of the head of an agency (the Secretary of Transportation within the Department of Transportation and all of its modal administrations) to fix the rate of pay for one or more positions designated as critical.

151. **Policy**. Within FAA, members of the AMT may nominate positions that require expertise of an extremely high level in a scientific, technical, professional, or administrative files as appropriate for critical position pay authority. Critical position pay setting authority should be considered only in very exceptional circumstances.

152. **Restrictions**. Critical position pay authority will be granted to no more than 800 positions Government-wide of which no more than 30 may be Executive Schedule positions.

153. **Pay Levels**. When critical position pay authority for a position is granted, the Secretary of Transportation may set the pay for the appointee or incumbent at any amount up to Level II of the Executive schedule. The pay may be set above Level II with the approval of OMB. Presidential approval is required in order to set the pay above Level I of the Executive Schedule.

154. **Procedures**. A Formal request to identify a position for critical position pay authority must be initiated by a member of the AMT. The request is forwarded to The Assistant Administrator for Human Resource Management who chairs the Pay Committee. The Pay Committee, consisting of AMT members, will review the nomination and, if approve, forward it to the Administrator for final review within FAA.

155. **Approval Authority**. Critical position pay authority requests that are approved by the Administrator are forwarded to OST. If the request is endorsed by the Secretary of Transportation. it is sent to OPM with a copy to the OMB Director. OMB will consult with OPM in arriving at a decision.

156. **Criteria for Requesting Critical Position Pay Authority**. OMB Bulletin No. 91-09, Critical Position Pay Authority, contains the criteria for designating a position as appropriate for critical position pay authority and the guidance for administering pay when critical position pay authority is granted. A copy of the bulletin is available in your servicing Human Resource Management Division.

157. **Records and Reports**. The servicing Human Resource Management Division is required to execute an SF 50, Notification of Personnel Action, when critical position pay authority is applied to a position and when the pay under that authority is subsequently changed or terminated. Employees being paid under a critical position pay authority is subsequently changed or terminated. Employees being paid under a critical position pay authority shall be identified in the Consolidated Personnel Management Information System (CPMIS) and Consolidated Uniform Payroll System (CUPS). The executive Personnel Staff, AHR-20, shall maintain all additional records that are required by OMB directives.

158.-159. **Reserved**.

---

**Chapter 16. Aggregate Limitation on Pay**

160. **General**. Section 101 of FEPCA amends 5 U.S.C. 5307 so that no executive branch employee (or GS employee in the legislative or judicial branch) may receive any allowance, differential, bonus, award, or other similar cash payment under title 5, United States Code, in any calendar year to the extent that such payment, in combination with the employee's basic pay (whether received under title 5 or otherwise), would cause the employee's aggregate compensation to exceed the rate payable for Executive Level I on the last day of the calendar year.

161. **Coverage**. The aggregate limitation on pay applies to all FAA employees occupying a position classified in the GS or GM other than those referred to in paragraph 162.

162. **Exclusions**. Certain employees and pay are excluded from the limitation on pay. For example:

a. All FAA employees covered by 5 U.S.C. 5546a, Air Traffic Control Revitalization Act, as outlined in Order 3550.13.

b. Premium pay under chapter 55 of Title 5 and 532.503, 532.507, and 532.509 (for prevailing rate employees).

163. **Definitions**.

a. Agency - En executive agency, as defined in 5 U.S.C. 105.

b. Aggregate Compensation - The total of:

(1) Basic pay received as an employee of the executive branch or as an employee outside the executive branch to whom chapter 51 of title 5, United States Code, applies.

(2) Locality-based comparability payment under 5 U.S.C. 5304 or IGA's under section 302 of FEPCA (Public Law 101-509).

(3) Incentive awards and performance-based cash awards under chapters 45, 53, and 54 of title 5, United States Code.

(4) Recruitment and relocation bonuses under 5 U.S.C. 5753.

(5) Retention allowances under 5 U.S.C. 5754.

(6) Supervisory differential under 5 U.S.C.

(7) Allowances and differentials under chapter 59 of title 5, United States Code.

(8) Continuation of pay under 5 U.S.C. 8118.

(9) Other similar payments authorized under title 5, United States Code, excluding premium pay under chapter 55 of the title and 532.503, 532.507, and 532.509 (for prevailing rate employees); overtime pay under the Fair Labor Standards Act of 1938, as amended, and part 551 of this chapter and severance pay under 5 U.S.C. 5595.

(10) Back pay under 5 U.S.C. 5596 for any components(s) of aggregate compensation in paragraphs 163 b.(1) through (9) of this definition allocable to any period of time during the calendar year in which back is paid.

c. Basic Pay -- the total amount of pay received during any one calendar year at the rate fixed by law or administrative action for the position held by an employee, including night and environmental differentials for prevailing rate employees under 5 U.S.C. 5343(f) and 532.511 of the FEPCA of 1990 respectively, but before any deductions and exclusive of additional pay of any other kind.

d. Continuing Payment -- basic pay and any other form of pay included in an employee's aggregate compensation that is paid in the same manner and at the same time as basic pay, including, but not limited to, locality-based comparability payments or IGA's, retention allowances, supervisory differential, costs-of-living allowances, post differential, remote worksite allowances, and physicians' comparability allowances.

e. Discretionary Continuing Payment -- a continuing payment whose amount is not fixed in advance by law or regulation by virtue of the geographic location and/or system of the position held by an employee which an agency has discretion to pay or not to pay to a particular employee.

f. Employee - has the meaning given that term in 5 U.S.C. 2105.

g. Lump Sum Payment -- an amount of pay included in an employee's aggregate compensation that is paid to an employee not in the same manner or at the same time as basic pay, including, but not limited to, incentive awards, performance awards, SES Presidential Rank Awards, recruitment and relocation bonuses, uniform allowances, and excess amounts paid under 5 CFR 530.204(a).

h. FEPCA -- Public Law 101-509--November 5, 1990 (Federal Employees Pay Comparability Act of 1990).

164. **Policy**.

a. No eligible employee as defined in section 5 U.S.C. 2105 may receive any allowance, differential, bonus, award, or other similar cash payment under title 5, United States Code, in any calendar year to the extent such payment, in combination with the employee's basic pay (whether received under title 5 or otherwise), would cause the employee's aggregate compensation to exceed the rate payable for Level I of the Executive Schedule on the last day of that calendar year.

b. The limitation described in paragraph 164a applies to the total amount of aggregate compensation actually received by an employee during the calendar year, without regard to the period of service (if any) for which such compensation is received.

c. FAA will not authorize any discretionary continuing payment for an employee if such payment, when added to the annual rate of all other continuing payments to which the employee is then entitled, would cause the annual rate of all continuing payment to exceed the rate then payable for Level I of the Executive Schedule.

d. At the time FAA authorizes a lump-sum payment to an eligible employee, the employee may not receive any portion of such payment that, when added to the annual rate of any continuing payment to which the employee is then entitled

and any lump-sum payments the employee may have received earlier in the same calendar year, would exceed the rate then payable for Level I of the Executive Schedule. Any portion of a lump-sum payment not payable under this paragraph shall become available for payment as provided in 5 CFR 530.204 of FEPCA.

e. Nondiscretionary continuing payments will not be discontinued or deferred for any period of time by FAA in order to make a lump-sum payment or discretionary continuing payment that would otherwise cause an employee's pay to exceed any of the limitations described in or established by this section.

f. If the annual rate of all nondiscretionary continuing payments to which an employee is entitled and any previously authorized physicians' comparability allowance at any time exceeds the rate then in effect for Level I of the Executive Schedule, FAA will make such payments in the following order: basic pay, locality-based comparability payments or IGA's other nondiscretionary continuing payments, in chronological order of authorization; and any previously authorized physicians' comparability allowance. Any portion of a nondiscretionary continuing payment of physicians' comparability allowance not payable under this paragraph, as well as any other discretionary continuing payment authorized before the date on which this paragraph became applicable to the employee, shall become available for payment as provided in 5 CFR 530.204 of the FEPCA.

165. **Payment of Excess Amounts**.

a. Amounts in excess of the limitation described in or established by 5 CFR 530.203 shall be paid to an employee in a lump sum at the beginning of the following calendar year. The amount so paid shall be considered part of the employee's aggregate compensation for the new calendar year.

b. If an employee transfers to another agency or leaves the Federal service, FAA will be responsible for making the payment if the employee was employed by FAA when the excess was created.

c. The following conditions permit FAA to make payment of excess aggregate compensation without regard to the calendar year limitation:

(1) If an employee dies, the excess is payable immediately as part of the settlement of account, in accordance with 5 U.S.C. 5582.

(2) If an employee separates from the Federal service, the entire excess amount is payable following a 30-day break in the Federal service in the same calendar year as separation. Any previous payment of an excess amount hall be considered part of that year's aggregate compensation for the purpose of applying the limitation.

d. Compensation for employees outside the GS in excess of the limitation described in paragraph (1) of this section attributable to the payment of a performance-based cash award under 5 U.S.C. 4504(d), a recruitment or relocation bonus under 5 U.S.C. 5753, or a retention allowance under 5 U.S.C. may not be paid to an employee under this section.

166.-169. **Reserved**.

---

## Chapter 17. Pay Administration Under the Fair Labor Standards Act Overtime Pay Provisions.

170. **General**. Section 210 of FEPCA and 5 CFR 532, 550, and 551 make some significant changes to the application of the Fair Labor Standards Act of 1928 (FLSA), as amended.

171. **Policy**. FAA in implemented the provisions of the law and regulations cited in paragraph 170, establishes the following policies and procedures:

a. The requirement to perform two separate overtime computations for employees who are covered by FLSA, one under tile 5 United States Code rules, and the other under FLSA rules, is terminated.

b. Overtime pay for nonexempt employees will be computed and paid only under FLSA.

c. All hours in a paid nonwork status are deemed hours of work for the purpose of calculating overtime pay under the FLSA.

d. Hours of work in excess of 8 hours in a day are now considered overtime hours under FLSA.

e. Nonexempt employees (other than prevailing rate employees) can be granted compensatory time off for irregular or scheduled overtime.

172. **Exceptions**. The new provisions apply only to situations where such overtime computations or considerations would be appropriate. They would not be applicable in other work situations such as alternative work schedules.

173. **Changes**. The policies established herein supersede previous policies contained in Order 3550.10, Pay Administration (General). appendix 10. The changes in computing FLSA overtime are described in detail in FPM Letter 551-24 of the Federal Personnel Manual.

174.- 179. **Reserved**.

---

**Chapter 18. Exception to Bi-Weekly Premium Pay Restriction for Employees Performing Emergency Work**

180. **General**. Section 204 of FEPCA allows for exceptions to be biweekly limitation on the earnings of employees when they are required to do emergency work under certain circumstances. OPM has issued interim regulations in 5 CFR Part 550105(a), 550.105(b) and 550.106 which may be applicable to FAA operations.

181. **Definition**. "Emergency work: means work performed in connection with an natural disaster or other temporary condition including a forest wildfire emergency.

182. **Policy**. An FAA employee may not be subject to the biweekly maximum earning limitation of GS-15, step 10, when the employee:

a. Performs emergency work in connection with natural disasters or their after math that pose direct threat to human life and property, and biweekly pay limitation is waived in accordance with 5 CFR 550.106(a) and (c).

b. Performs work in connection with other conditions posing a direct threat to human life and property when OPM has approved a waiver in accordance with 5 CFR 550.106(b) and (c).

183. **Approval Authority**. Authority to approve the payment of premium pay under the annual limitation rather than a biweekly limitation when emergency work is performed no lower than at the division manager level. Any such request should move up organizational channels so that an AMT member endorses it and forwards it to the Assistance Administrator for Human Resource Management, who will review the request and forward it to the Administrator with a recommendation. The Administrator may reject the request or endorse it and forward it to the Secretary of Transportation. The final authority for approving exceptions under this provision rests with the Secretary of Transportation if the overtime from the biweekly limitation for employees performing emergency work not resulting from a natural disaster must be approved by OPM.

184. **Restrictions**. If a request requires OPM approval, it must be submitted to OPM within 30 days of the event that precipitated the use of the excessive overtime.

185. **Exception**. This limitation does not apply to employees covered by 5 U.S.C. 5546a, the Air Traffic Revitalization Act, who are excepted from any limitation on the amount of premium pay they may earn. Nor does it apply to overtime pay laid to employees who are nonexempt under FLSA.

186.-189. **Reserved**.

---

## Chapter 19. Pay for Duty Involving Physical Hardship or Hazard

190. **General**. Section 203 of FEPCA amends 5 U.S.C. 5545 (d) to permit the payment of a differential for duty involving physical hardship or hazard.

191. **Definition**.

a. Duty involving physical hardship means that in itself may not be hazardous, but causes extreme physical discomfort or distress and is not adequately alleviated by protective or mechanical devices, such as duty involving exposure to extreme temperatures for a long period of time, arduous physical exertion, or exposure to fumes, dust, or noise that causes nausea, skin, eye, ears, or nose irritation.

b. Hazardous duty means duty performed under circumstances in which an accident could result in serious injury or death, such as duty performed on a high structure where protection facilities are not used or on an open structure where adverse conditions such as darkness, lighting, steady rain, or high wind velocity exist.

c. Hazard pay differential means additional pay for the performance of hazardous duty or duty involving physical hardship.

192. **Policy**. It is FAA policy to pay hazard pay differential to all eligible employees in the amount authorized when they are required to perform work under the conditions described in appendix A of 5 CFR 550.903. FAA will seek to amend appendix A when employees are required to work under conditions that would appear to justify the payment of a hazard pa differential but the conditions are not described in Appendix A. In addition, FAA will attempt to obtain a waiver to allow the payment of a hazard pay differential to an employee whose position was classified based on the consideration of hazardous duty requirements when a sound case for such a waiver exists.

193. **Approval Authority**. The final approval authority for amending appendix A to grant a waiver to hazards pay differential restrictions rests with the central office of OPM. An such requests should be directed to the Office of Personnel. The endorsement of the Assistant Administrator for Human Resource Management and OST will be necessary forwarding the request to OPM.

194. **Procedure**. A formal request for amending appendix A or to seek a waiver to hazard pay restrictions may not be initiated below the division manager level. Such requests should be presented to the servicing Human Resource Management Division. The division will then prepare the supporting information required by 5 CFR 550.903 (b) or 550.904, respectively. The completed request should be sent to the Office of Personnel.

195. **Payment of Hazard Pay Differential**. When a employee is paid a hazard differential, he or she is paid the differential for all of the hours in a pay status on the day (a calendar day or a 24 hours period, depending upon the tour) when the duty is performed. Hours in a pay status for work performed during a continuous period extending over 2 days shall be considered to have been performed on the day on which the work began, and the allowable differential shall be charged to that day.

196. **Termination of Hazard Pay Differential**. Payment of hazard pay differential to an employee shall end when:

a. One or more of the requisite conditions for such payment ceases.

b. Adequate safety precautions have reduced the element of hazard to a negligible level.

c. Protective or mechanical devices have adequately alleviated physical discomfort or distress.

197.-199. **Reserved**.

---

## Chapter 20. Supervisory Differential for GS Supervisors or Employees not in the General Schedule

200. **General**. Section 211 of FEPCA and 5 CFR 575.401 give agencies the discretionary authority to pay a supervisor in a GS position or a position under the GM who supervises employees in other than GS positions, and who, in the absence of such differential, would be paid less than the employees supervised.

201. **Definitions**.

a. Supervisor means an individual employed by an agency having authority in the interest of the agency to hire, direct, assign, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjust their grievances, or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in nature but required consistent exercise of independent judgment. With respect to any unit that includes fire fighters or nurses, the term "supervisor: includes only those individuals who devote a preponderance of their employment time to exercising such authority.

b. Continuing pay for supervisors means basic pay (including retained rates of pay) locality-based comparability payments of IGA's, staffing differential (when authorized by OPM), retention allowances, other "continuing payments" (except night, Sunday, or holiday premium pay) paid on an annual basis.

c. Continuing pat for subordinates is defined as: basic pay (except retained rates of pay and night or environmental differentials), locality-based payments, other "continuing payments" (except Sunday or holiday pay and retention allowances, and premium paid on an annual basis.

**Note:** A retained rate is excluded because it is not related to the subordinate's current position. A retention allowance is excluded to remove any incentive for the supervisor to benefit by virtue of obtaining approval of such an allowance for a subordinate.

202. **Eligibility**. A supervisory differential may be paid to an employee whose position is classified in the GS or GM who is required to supervise subordinate in another pay system and whose duties and responsibilities reflect the definition of "supervisor" in 5 CFR 5 USC 7103(a) 10.

203. **Policy**. FAA policy holds that the added responsibilities of supervision normally warrants compensation above that received by the supervisor's subordinates. Therefore, when a manager finds a situation within his or her organization for which the payment of a supervisory differential would be appropriate, he or she should consider its use by consulting with the servicing Human Resource Management Division and his or her manager at the next higher organizational level.

204. **Approval Authority**. Each manager in FAA has the authority and the responsibility to recommend the use of a supervisory differential when it appear needed within his or her organization. However, each determination to pay a supervisory differential including the amount must be approve by the supervisor's division managers with the concurrence of the Human Resource Management Office.

205. **Restrictions**. A supervisory differential may not be paid on the basis of supervising a civilian employee whose rate of basic pay exceeds the maximum rate of basic pay established for grade GS-15 of the GS, including any applicable locality-based comparability payment or any interim geographic pay adjustment.

206. **Calculating the Differential**. The supervisory differential shall be calculated in the following way:

a. Determine the hourly rate of the continuing pay of the highest paid non-GS subordinate.

b. Add the appropriate percentage amount to the hourly rate but not more than 3 percent.

c. Subtract the continuing hourly rate paid the supervisor from the highest paid subordinate's hourly rate with the percentage added. This amount is the maximum hourly supervisory differential rate.

207. **Adjustment or Termination of the Supervisory Differential**. The supervisory differential shall be reviewed and considered for adjustment or termination whenever a change to pay of the supervisor or subordinate occurs. The following adjustments shall be made when appropriate:

a. The supervisory differential shall be reduced or terminated when the continuing pay of the supervisor, including the

supervisory differential exceeds the continuing pay of the highest paid subordinate (whose position is not under the GS) by more than 3 percent.

b. The supervisory differential may be increase to maintain the 3 percent difference of that percentage amount has fallen.

208. **Records and Reports.** Each determination to pay a supervisory differential and all subsequent adjustments to the amount of the differential must be documented. The identification of all supervisors receiving a supervisory differential will be recorded in the CPMIS with a Request for Personnel Action, SF-52, for ready access and appropriate records of the initiation, adjustment, or termination of differentials will be furnished to the supervisors receiving them.

209. **Reserved.**

---

**Chapter 21. Special Occupational Pay Systems**

210. **General.** Section 105 of FEPCA allows the President's pay agent to establish special occupational pay systems for occupations or groups of occupations for which the GS does not function properly.

211. **Policy.** FAA may consider the use of this provision of the law when human resource management problems persist and the new flexibilities provided by FEPCA do not prove to be adequate remedies.

212. **Approval Authority.** The Director of OPM, the Director of OMB, and the Secretary of Labor are designated the President's pay agent by Executive Order 12748, dated February 1, 1991. It is the President's pay agent that has the authority to identify occupations or groups of occupations that do not function adequately under the GS/GM pay system and recommend alternative systems.

213. **Procedures.** Recruiting and staffing difficulties and other human resource management problems can readily be identified by the managers who must contend with them. Therefore, the initial recognition of the inadequacy of the present pay system may originate within the agency. In the event that an organization believes that a new pay system is needed in order to enhance its effectiveness in carrying out mission responsibilities, the following steps will be required:

a. The AMT member will submit a requests for an occupational study to the Assistant Administrator for Human Resource Management. The request must identify the extent of the problems, their frequency, solutions that have been attempted, and the successes and failure that have resulted.

b. The Assistant Administrator for Human Resource Management will establish a study team to review the problems that exist, consider the conditions that contribute to them, and make recommendations as to alternative approaches, if any, that are available. The study team will prepare a written report for the Assistant Administrator for Administration for Human Resource Management and the initiating AMT member.

c. The Assistant Administrator for Human Resource Management and the initiating AMT member will consider the findings and recommendations in the report and determine whether an occupational study or another alternative should be pursued. If an occupational study will be undertaken, they will agree to a plan and the allocation of resources.

d. An occupational study of this type will identify the existing problems, propose new approaches to overcome them, and project the costs that will be incurred in implementing the changes. It will have as its foal the resolution of the problems that impede the high level of effectiveness that is necessary for the agency to accomplish its mission responsibilities, the use of sound human resource management practices, and reduced budget expenditures where possible.

e. When the Assistant Administrator for Human Resource Management and the initiating AMT member agree that a sound alternative pay system is feasible, they will present it to the Pay Committee.

f. If approved by the Pay Committee, the proposed system will be recommended to the Administrator who can endorse it and forward the plan to OST.

g. Upon approval of the Secretary of Transportation, the proposal will be presented to the President's pay agent for evaluation and to carry out the tasks mandated by 5 U.S.C. 5392. The President's pay agent must: identify occupation or groups of occupations for which the GS does not function employees in such occupations or groups occupational given thorough consideration to the views of agencies employing such employees, as well as other interested parties; publish a proposed plan for determining the pay of such employees in the Federal Register; conduct one or more public hearings; provide each House of Congress with a reports at least 90 days in advance of the date the system is scheduled to take effect setting for the details of the proposed plan; and no later than 30 days before the date the system is to take effect, publish in the Federal Register the details of the final plan for the special occupational pay system.

214.-219. **Reserved.**

---

### Chapter 22. Performance-Based Cash Awards for General Schedule and Prevailing Rate Employees

220. **General.** Section 207 of FEPCA provide statutory authority to allow payment of cash awards to GS and prevailing rate employees whose performance rating of record was at the fully successful level or higher.

221. **Background.** Performance-based cash awards for GS and prevailing rate employees have been authorized by OPM regulation and reflect the authorities contained in chapters 43 and 45 of title 5 U.S.C. FEPCA provides specific statutory authority for cash awards based on an employee's performance rating of record.

222. **Definitions.**

a. General Schedule (GS). The GS graded pay system established under the Classification Act of 1949.

b. Prevailing Rate Employee. An employee paid under the Federal Wage System which applies to most trade, craft, and labor positions. Under this system, the pay of certain federal employees is adjusted according to the rate paid by private industry for similar jobs in the same area.

c. Rating of Record. The summary rating required at the end of the normal appraisal period or under certain special circumstances, including the written notice at any time that the employee's performance is unacceptable in one or more critical elements.

223.229. **Reserved.**

---

### Chapter 23. Time Off From Duty as an Incentive Award

230. **General.** Section 201 of FEPCA provides statutory authority to permit agencies to grant employees time off from duty without loss of pay or charge to leave, as an award in recognition of superior accomplishment or other personal effort that contributes to the quality, efficiency, or economy or governmental operations.

231. **Awards Description.** A time off award is an excused absence granted to an employee without charge to leave or loss of pay. These awards may be granted for superior accomplishment and special acts or services in the public interest that are connected with or related to official employment. Time off awards are intended to increase employee productivity and creativity by rewarding their contributions to the quality, efficiency, or economy of departmental operations.

a. Contributions that may be recognized with a time off award are:

(1) Making a high quality contribution involving a difficult or important project or assignment.

(2) Displaying special initiative and skills in completing an assignment or project before the deadline.

(3) Using initiative and creativity in making improvement in a product, activity, program, or service.

(4) Ensuring the mission of the unit is accomplished during a difficult period by successfully completing additional work or a project assignment while maintaining the employee's own workload.

b. When rating and ranking an employee for promotion, due weight shall be given to approved off awards.

c. Time off awards may be used in combination with cash and/or honorary awards.

232. **Eligibility**. Individual employees may receive time off awards for contributions that have not bee recognized or considered for performance related awards under PMS, PMRS, or SES performance appraisal systems these awards may be granted to employees who occupy:

a. A position under the GS, including a position covered by the PMRS.

b. A senior level position.

c. A position in the SES.

d. A position under the Executive Schedule (Level 1 through Level V), or a position for which the rate is fixed by law at a rate equal to an Executive Schedule rate.

e. En Executive Branch position filled by Presidential appointment.

f. A position within the Federal Wage System (FWS).

g. A position the pay of which is set administratively (AD).

233. **Documentation.**

a. A time off award must be recommended and justified in writing. The written determination must:

(1) State the name and position of the employee.

(2) Describe how the employee met the required criteria described in paragraph 231a.

(3) Justify and state the number of hours of time off granted by describing he benefits realized by the Department from the employee's contribution; and

(4) Indicate whether the employee previously received a time off award during the same leave year and, if so, how many hours were granted.

b. A copy of the written justification should be retained by the approving official and the original document and a completed Standard Form 52 (SF-52) should be forwarded to the appropriate Human Resource Management Division. The amount of time granted shall be documented on a Standard Form 50 (SF-50) to be retained in the employee's Official Personnel Folder.

c. Immediate supervisors may approve time off awards for period UP TO ONE WORK DAY. A level of management higher than the recommending official must approve awards for MORE THAN ONE WORK DAY.

234. **Scheduling and Use of Time Off Awards.**

a. The total amount of time off as an incentive awards that an employee may be granted during any one leave year is 80 hours. In the case of part-time employee or an employee with an uncommon tour of duty, the average number of hours of work in the employee's biweekly scheduled tour of duty is the maximum amount they may be granted as a time off award during the leave year. For example, an employee with a part-time tour of 32 hours a week may receive 64 hours in a leave year.

b. A minimum of 4 hours to a maximum of 40 hours per contribution shall be granted as a time off incentive award. A part-time employee shall be granted a maximum of no greater than one-half the total hours allowed during a given leave year. For example, an employee with a part-time tour of 32 hours per week may receive a **total** of 64 hours in a leave year but may receive only up to 32 hours per single contribution.

c. Time off shall be granted in whole hour increments.

d. Time off must be used in whole hour increments.

e. A time off award does not convert to cash under any circumstances.

f. When physical incapacitation for duty occurs during the time off award period, sick leave may be granted for the period of incapacitation.

g. The award is documented on the Time and Attendance Report (Dot F 2740.2) under time not worked by Code 22.

h. Time off granted must be used within 1 year after the award is granted.

i. Time off award hours do not transfer outside the Department of Transportation.

j. Time off award balance hours are transferable between modal administrations within the Department of Transportation. However, these hours must still be used within the date the award is granted.

235. **Time Off Awards and Annual Leave.** Time off awards and annual leave are distinct in the way they are earned and administered. Time off earned as an award may be carried over from one leave year to another provided it is taken within 1 year after the award is granted. Time off as an award has no effect on the annual leave carryover limitation.

236. - 239. **Reserved.**

---

**Appendix 1. Advances in Pay**

1. **Purpose.** This appendix contains the Department of Transportation (DOT) policy on making advance payments to individuals newly appointed to the Department. It Implements provisions of FEPCA, and the governing, regulations contained in Subpart B, Part 550 of Title 5, Code of Federal Regulations. Chapter 1, Advances in Pay, contains FAA procedures on the use of a pay advance.

2. **Delegation.** The authority to make payments is retained by departmental officers and heads of operating administrations.

3. **Definitions.**

a. Commuting area means the geographic area that normally is considered one area for employment purposes. It Includes any population center (or two or more neighboring ones) and the surrounding localities where people live and reasonably can be expected to travel back and forth daily to work.

b. Department means the Department of Transportation or any of its operating administrations.

c. Employee means an individual employed In the Department who is appointed to a position with a scheduled tour of duty.

d. Newly appointed means the first appointment In the Federal Government regardless of tenure, or a subsequent appointment after a break in Federal service of at least 90 days.

e. Offset or setoff means repayment In Installments of an advance In pay by payroll deductions or an administrative offset under Subpart K, Part 550 of Title 5, Code of Federal Regulations, Collection by Offset from Indebted Government Employees.

f. Rate of basic pay means the rate of pay fixed by law or administrative action for the position held by the employee, including annual premium pay for standby duty; night differential for prevailing rate employees; a special rate; and locality-based comparability payments or IGA'S, but excluding additional pay of any other kind.

4. **Coverage**. An advance payment of basic pay may be authorized, In one or more installments covering up to 2 pay periods, to an Individual with a scheduled tour of duty, newly appointed under a permanent appointment or a temporary appointment of at least 1 year to:

a. A position under the GS, including a position covered by the PMRS.

b. A senior level position or scientific or professional position paid under U.S.C. 5276.

c. A position In the SES.

d. A positron as a law enforcement officer, as defined la 5 U.S.C. 8331(20)

or 8401(17).

e. A position under the Executive Schedule (Level I through Level V), or a position the rate of which is fixed by law at a rate equal to an Executive Schedule rate.

f. An Executive Branch position filled by Presidential appointment.

g. A position within the FWS.

5. **Advance in Pay Procedures**.

a. **General**.

(1) An advance In pay **may** not be made:

(a) To an employee who will receive a separate advance in pay for reassignment to a post of foreign duty within 2 pay periods after appointment.

(b) Before an employee is appointed. The payment shall be made after the employee's appointment date, but before the employee has received his or her first regular pay check.

(2) The maximum amount of pay that may be advanced to an employee shall equal 70 percent of the rate of basic pay to which he or she is entitled on the date of appointment.

b. **Determinations**. An advance payment must be based on a written determination, made before the applicant is appointed, that acceptance of the position may contribute to or create a temporary financial hardship If an advance is not authorized. Factors to De considered in making such a determination Include, but are not limited to:

(1) Whether acceptance of the offered position will require the applicant to change commuting areas.

(2) Whether a change In residence is Involved.

(3) What the applicant's employment status is at the time the offer of Federal employment is made. e.g., the applicant is unemployed or employed on a part-time basis with limited income.

c. **Processing Procedures**.

(1) When a decision to make an advance in pay is made, the approving official within the hiring office, in coordination with the servicing personnel office, shall take the following actions:

(a) Determine the amount of the advance. To make this determination, use the following steps:

**1** Divide the employee's annual rate of pay by 2087, rounding the quotient to the nearest cent, to derive an hourly rate (if covered by the FWS, use the hourly rate).

**2** Multiply the hourly rate by the number of hours represented by the advance.

**3** Multiply the product by .70.

For example, an employee hired to a GS-9, step 1, position and authorized a 1-week advance In pay would have the advance computed as follows:

$25,717 (GS-9/1) divided by 2087 = $12.32 (hourly rate)

$12.32 x 40 (hours advanced) = $492.80

$492.80 x .70 = $344.96 (payable advance)

(b) Provide the employee with a statement indicating:

1 the amount of the advance;

2 that the advance will be recovered from the employee in installments through payroll deduction;

3 the date on which the advance must be repaid In full; and that the employee may repay the advance In full at any time before the final payroll deduction is due, by Increasing the amount of the deduction.

(c) Provide the employee with a separate statement of understanding that must be returned to the hiring office prior to payment, that contains:

1 the amount of the advance;

2 space for the employee to set up a payment schedule; i.e., periods over which the employee wishes to repay the advance, the biweekly deduction;

3 Information advising the employee that if he or she transfers or separates before the advance is repaid in full, the remainder of the advance will be collected through salary offset procedures; and

4 a space for the employee's signature and social security number.

(2) When the signed statement of understanding is received by the approving official, the following actions shall be taken:

(a) The approving official shall sign and date the statement of understanding in the space provided, and enter the DAFIS accounting classification code of the account from which the advance will be made.

(b) Forward the original statement to the operating personnel office for inclusion In the employee's Official Personnel Folder.

(c) Provide the appropriate accounting office, identified In paragraph 6 of this appendix, with a copy of the approved statement of understanding and a statement reflecting:

1 The date on which the employee is to report for duty; and

2 The four-line address of the office and the name of the individual responsible for forwarding the advance payment check to the employee:

line 1 -Name of payee

line 2 -C/o Name of individual responsible for holding check, mode abbreviation, and routing symbol (35 characters maximum)

line 3 -Organization street address

line 4 -City, state, and Zip code

(d) Provide the applicant with a copy of the approved statement of understanding.

6. **Appropriate Accounting Office.** The accounting offices responsible for processing advances of pay are:

a. Federal Aviation Administration

Accounting Division (ASO-26)

1777 Phoenix Parkway Building

College Park, Georgia 30349

Facsimile Machine Number: (404) 994-5455

This accounting office serves the:

Federal Aviation Administration:

Washington Headquarters

Southern and Southwest Regions

FAA Technical Center

Central Region

b. Federal Aviation Administration

Mike Monroney Aeronautical Center

General Accounting Division (AMZ-300)

P.O. Box 25082

Oklahoma City, Oklahoma 73125

Facsimile Machine Number: (405) 680-4335

This accounting office serves the:

Federal Aviation Administration:

--Alaskan and Great Lake Regions

Mike Monroney Aeronautical Center

Eastern and New England Regions

Northwest Mountain and Western-Pacific Regions

7. **Collection and Waiver of Advances in Pay.**

a. **Collection.**

(1) Unless repayment is waived in whole or in part under paragraph 7b of this appendix, the Department shall recover an advance In pay by Installments under established procedures for payroll deductions or by salary offset procedures. An employee may repay all or part of the remaining balance of an advance In pay at anytime before final payment is due, by increasing his or her payroll deduction.

(2) The Department shall establish a recovery period for each employee to repay an advance in pay, but may not establish a recovery period of longer than 13 pay periods from the date of the employee's appointment. If collection is made under the salary offset provisions of Part 550, Subpart K, Title 5, Code of Federal Regulations, a longer period is permissible If necessary to avoid exceeding the 15 percent deduction limitation.

(3) If an employee who received an advance In pay transfers out of the Department or is terminated for any reason, the remaining balance of the advance is due and must be paid unless repayment is waived in whole or in part under paragraph 7b of this appendix.

(4) Any remaining balance of an advance In pay that has not been waived under paragraph 7b of this appendix or repaid by an employee upon transfer or termination of employment must be recovered using the salary offset procedures of Subpart K, Part 550, Title 5, Code of Federal Regulations.

b. **Waiver**. Under established procedures, the Assistant Secretary for Administration, the bead of each operating administration, or an appropriate designee may waive In whole or in part the right of recovery of an advance payment if he or she determines chat recovery would be against equity and good conscience or against the public Interest.

From Document: Order 3550.15, Federal Employees Pay Comparability Act of 1990

The following additional documents should be referred to as guidance:

## Additional Documents

| Title | Number |
|---|---|
| Dual Compensation | PRIB 08 |
| Hard to Staff Facilities/Positions | PRIB 09 |

Federal Aviation Administration

This page can be viewed online at:
https://employees.faa.gov/org/staffoffices/ahr/policy_guidance/hr_policies/order/orders/355015/