IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK G. ABBEY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07-272C |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT

Gregory K. McGillivary
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, DC 20005
Phone: (202) 833-8855

Counsel of Record

Table of Contents

Table of Authorities .......... i

I. Defendant's Practice of Providing Straight Time Comp Time For Overtime Hours Violates Section 7 of the FLSA. .......... 1

A. OPM and the FAA Are Required to Follow the Plain Language of the FLSA and to Apply the Act in a Manner Consistent with the Department of Labor's Application. .......... 3

B. The Statutory Structure of the FLSA and Title 49 Reflect Congress' Intent that Plaintiffs Receive Section 7 Overtime .......... 7

C. Defendant's Attempt to Rely on OPM's Regulation Regarding Comp Time is Misplaced. .......... 10

D. Credit Hours Are Overtime Hours Under the FLSA .......... 13

II. Defendant Has Failed to Meet Its Burden With Respect to Plaintiffs' Count III Claim Concerning Pre-Shift and Post-Shift Work. .......... 13

A. FAA Policy Allows for Uncompensated Pre-Shift and Post-Shift Work. .......... 14

B. FAA Must Compensate Plaintiffs for Pre-Shift and Post-Shift Work. .......... 16

III. Defendant Has Failed to Meet Its Burden With Respect to Plaintiffs' Count IV Claim Concerning Bidding Time. .......... 17

IV. Conclusion .......... 19

# TABLE OF AUTHORITIES

## FEDERAL CASES


*AFGE v. Gates*, 486 F.3d 1316 (D.C. Cir. 2006)....................10

*Allen v. Board of Education for Bibb County*, 495 F.3d 1306 (11th Cir. 2007)................16

*Association of Civilian Technicians v. FLRA*, 200 F.3d 590 (9th Cir. 2000)......................3

*Astor v. U.S.*, 79 Fed. Cl. 303 (2007)....................5

*Berg v. Newman*, 982 F.2d 500 (Fed. Cir. 1992)....................6

*Billings v. U.S.*, 322 F.3d 1328 (Fed. Cir. 2003)....................4, 12

*Bobo v. U.S. (Bobo I)*, 37 Fed. Cl. 690 (1997)....................18

*Brodowy v. U.S.*, 482 F.3d 1379 (Fed. Cir. 2007)....................6, 7

*Brown v. Gardner*, 513 U.S. 115 (1994)....................10

*Bull v. U.S.*, 479 F.3d 1365 (Fed. Cir. 2007)....................4, 5

*Bull v. U.S.*, 68 Fed. Cl. 212 (Fed. Cir. 2007)....................18

*Carter v. City of Charleston*, 995 F. Supp. 622 (D.S.C. 1997)....................6

*Hill v. DOJ*, 1999 U.S. App. LEXIS 29822 (Fed. Cir. 1999)....................10

*Department of Transportation and Professional Airways Systems Specialists*, 61 F.L.R.A. 750 (2006)....................8

*Doe v. U.S.* 74 Fed. Cl. 592 (Fed. Cir. 2007)....................5, 6, 9

*Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508 (5th Cir. 1969)....................16

*Heder v. City of Two Rivers*, 299 F.3d 777 (7th Cir. 2002)....................6

*Johnson v. City of Columbia*, 949 F.2d 127 (4th Cir. 1991)....................6

*Jones v. City of Columbus*, 120 F.3d 249 (11th Cir. 1997)....................6

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004)....................4

*Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987)....................4

*Mt. Clemens Pottery*, 328 U.S. 680 (1946)....................18

*Nigg v. U.S.*, 501 F.3d 1071 (Fed. Cir. 2007)....................3, 5

*Pac. Merchant Shipping Associate v. Aubry*, 918 F.2d 1409 (9th Cir. 1990)....................6

*Reich v. Department of Conservation and National Resources*, 28 F.3d 1076 (11th Cir. 1994)....................16

*Treece v. City of Little Rock*, 923 F. Supp. 1122 (E.D. Ark. 1996)....................18

*Zumerling v. Devine*, 769 F.2d 745 (Fed. Cir. 1985)....................4

**FEDERAL STATUTES**

5 U.S.C. §§ 2101-6385....................10

5 U.S.C. §§ 5101-5115....................10

5 U.S.C. § 5543....................2, 6, 7, 8

5 U.S.C. §§ 6120-33....................6, 8

5 U.S.C. § 6122....................11

5 U.S.C. § 6123....................7, 13

5 U.S.C. § 6301 *et seq*....................10

29 U.S.C. § 203(g)....................2

29 U.S.C. § 204(f)....................3

29 U.S.C. § 207(e)....................1, 2, 8

29 U.S.C. § 213(a)(1)....................12

49 U.S.C. § 40122(g).................... passim

H.R. Rep. No. 95-913, at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811....................4

## FEDERAL REGULATIONS

5 C.F.R. § 551.531 ........................................................................................10, 11, 12

29 C.F.R. § 785.11 ......................................................................................................16

Plaintiffs respectfully submit this reply in support of their motion for summary judgment. For the reasons stated below, plaintiffs are entitled to summary judgment with respect to their claims that defendant has violated the Fair Labor Standards Act ("FLSA") by providing compensatory time ("comp time") or "credit hours" in lieu of cash and, in addition, by paying "straight time" comp time instead of overtime pay at one and one-half times the plaintiffs' regular rates of pay. As we have explained, issues of fact preclude summary judgment with respect to plaintiffs' claims regarding defendant's failure to compensate plaintiffs for time spent performing pre-shift and post-shift work, and for off-duty time spent bidding on work and vacation schedules.[1]

## I. DEFENDANT'S PRACTICE OF PROVIDING STRAIGHT TIME COMP TIME FOR OVERTIME HOURS VIOLATES SECTION 7 OF THE FLSA.

As we explained in our opening brief, section 7 of the FLSA mandates that employees be paid in <u>cash</u> at the rate of <u>one and one-half times</u> their regular rates of pay for each overtime hour worked (hereinafter "section 7 overtime"). 29 U.S.C. § 207. Defendant does not dispute that plaintiffs are covered by section 7 of the FLSA. Yet Defendant continues to argue that it is free to disregard the plain language of the FLSA and provide ***different*** and ***lesser*** benefits to Federal Aviation Administration ("FAA") employees than the FLSA requires.

Defendant's argument, in sum, is that it is somehow within the inherent authority of the FAA or, if not the FAA, the Office of Personnel Management (OPM), to disregard the plain language of the FLSA. Defendant argues that, in title 49, Congress encouraged

---

[1] Defendant has not moved to dismiss plaintiffs' claims set forth in Count I, which concern defendant's failure to include certain payments in its calculation of plaintiffs' regular rate of pay for purposes of calculating plaintiffs' FLSA pay entitlement.

flexibility within the FAA's pay system and this flexibility implicitly includes the right to avoid the overtime provisions of the FLSA. But the language and the statutory structure of the FLSA and of title 49 do not allow this. To be sure, by removing the FAA from the obligation to follow the statutory requirements of title 5, Congress provided the FAA with a great deal of pay "flexibility." At the same time, however, having removed the FAA from coverage under title 5, Congress eliminated any authority the FAA would have had under 5 U.S.C. § 5543 to provide straight time comp time instead of section 7 overtime. Defendant acknowledges that it is subject to the FLSA and cites nothing in the legislative history of title 49 evincing Congress' intent to permit the FAA to avoid the requirements of section 7 of the FLSA. Yet Defendant encourages the court to *infer* such Congressional intent from the mere fact that the FAA was granted "flexibility" in designing its pay policies.[2] In truth, in granting the FAA the flexibility to design a personnel management system untethered to the pay and benefits requirements of title 5, Congress intended to permit the FAA the freedoms of a private sector employer – but with those freedoms comes the obligation to follow the FLSA's basic overtime pay requirements, just as private sector employers must do.

---

[2] Taken to its logical end, defendant's argument would give the FAA and OPM *carte blanche* to disregard the plain requirements of the FLSA under the guise of "flexibility." For example, the FAA could disregard the "suffer or permit" requirement under section 203(g), 29 U.S.C. § 203(g), and contend that only overtime that is "officially ordered and approved" is compensable under the FLSA. The FAA could decide that employees will be paid for work hours at home at straight time rates rather than the time and one-half rate required under section 7 of the FLSA. The FAA could ignore the statutory exclusions from the regular rate of pay set forth under section 207(e), 29 U.S.C. § 207(e), and define the "regular rate" at which overtime is paid as excluding any payment beyond the employee's hourly rate of pay such as night shift pay or incentive controller pay. Plainly, the concept of "flexibility" cannot be stretched so far.

Consequently, plaintiffs are entitled to summary judgment with respect to their claims under section 7 of the FLSA.

**A. OPM and the FAA Are Required to Follow the Plain Language of the FLSA and to Apply the Act in a Manner Consistent with the Department of Labor's Application.**

There is nothing in the legislative history of title 49 or the FLSA to suggest that the FAA has any particular expertise in applying the FLSA – instead, it is authorized to design a personnel management system only for its own employees. Since administration of the FLSA is not the special province of the FAA, its interpretation of the FLSA is not entitled to any particular deference. *See Nigg v. U.S.*, 501 F.3d 1071, 1076 (Fed. Cir. 2007) (Postal service's interpretation of its own pay statute is afforded deference, but its administration of the FLSA is not because it is not the special province of the postal service); *Ass'n of Civilian Technicians v. FLRA*, 200 F.3d 590, 592 (9th Cir. 2000) ("Although courts owe *Chevron* deference to an agency's construction of a statute it is charged with administering, courts do not owe deference to an agency's interpretation of a statute it is not charged with administering or when an agency resolves a conflict between its statute and another statute.").

Section 204(f) of the FLSA, 29 U.S.C. § 204(f), provides that OPM is authorized to administer the FLSA in the federal sector. OPM, however, does not have unbridled authority to disregard the FLSA's plain language or to apply it in a manner inconsistent with the manner in which the Department of Labor ("DOL") applies the Act to private sector employers. As Congress has instructed, "[OPM] will administer the provisions of the [FLSA] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the

Secretary of Labor which are applicable in other sectors of the economy."[3] And as the Federal Circuit has explained, this means that, under the same facts, a federal employee should receive the same overtime compensation as a private sector employee. *Billings v. U.S.*, 322 F.3d 1328, 1334 (Fed. Cir. 2003) (upholding OPM interpretation of FLSA that differed from DOL interpretation only because affected federal employees – unlike private sector employees – are covered by title 5); *see also Lanehart v. Horner*, 818 F. 2d 1574, 1578 (Fed. Cir. 1987) (Congress instructed OPM to administer the FLSA in a manner consistent with the DOL's administration of the FLSA in the private sector); *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985) (OPM's regulations should harmonize with the FLSA's origin and purpose and the Secretary of Labor's regulations).

It is well established that "[t]he starting point for statutory interpretation is the language of the statute." *Bull v. U.S.*, 479 F.3d 1365, 1376 (Fed. Cir. 2007). And "where the statutory language provides a clear answer [to the question at issue], it ends there as well." *Id*. "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. U.S. Tr.,* 540 U.S. 526 (2004). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is law and must be given effect, and an agency's alternative interpretation of the statue is not entitled to deference." *Id. (quoting Chevron U.S.A.. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The Federal Circuit has emphasized, "[a]s a threshold matter, 'that there is a "strong presumption" that the plain

[3] FLSA amendments of 1974, H.R. Rep. No. 95-913, at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811.

language of a statute expresses congressional intent and this will be rebutted only in rare and exceptional circumstances.'" *Bull*, 479 F.3d at 1377.

The FLSA by its terms mandates payment of cash at one and one-half times an employee's regular rate of pay for each overtime hour worked. *See, e.g., Nigg*, 501 F.3d at 1074 ( "The FLSA requires most employers to pay 'overtime' compensation to employees working more than forty hours per week 'at a rate not less than one and one-half times the regular rate.'"); *Astor v. U.S.*, 79 Fed. Cl. 303, 307 (2007) ("The FLSA requires employers to compensate employees at a rate of at least one and one-half times the employee's regular rate of pay."). As the court explained in *Doe v. United States*, "[t]he FLSA provides that employees subject to its provisions are entitled to compensation at one and one-half times their regular rate of pay for all hours over forty worked in a week, but contains no provision allowing comp time in lieu of overtime compensation for federal employees. 29 U.S.C. § 207(a)." 74 Fed. Cl. 592, 597 (Fed. Cir. 2007), *aff'd*, 513 F.3d 1348 (Fed. Cir. 2008).

Moreover, as we explained in our opening brief, at pages 17-22, DOL has repeatedly emphasized that, absent an express statutory exception allowing comp time, employees must be paid cash for all hours worked, including non-overtime as well as overtime hours, in a workweek. The facts in this case illustrate the importance of the cash requirement. Defendant has permitted certain plaintiffs to amass hundreds of hours of comp time in the form of "credit hours." See ¶¶ 8 and 9 of Plaintiffs' Proposed Findings of Uncontroverted Facts in Support of Plaintiffs' Motion for Partial Summary Judgment. These credit hours have no "cash value" and are forfeited under certain

circumstances. *Id.* at ¶ 7. When credit hours are "forfeited," plaintiffs receive no compensation – even at straight time rates – for working FLSA overtime hours.

Simply put, the FLSA establishes a floor below which wage protections cannot drop unless the employer can establish that it is entitled to a statutory exception. *E.g., Heder v. City of Two Rivers*, 299 F.3d 777, 779 (7th Cir. 2002); *Pac. Merchant Shipping Assoc. v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990). Moreover, exceptions to the FLSA are narrowly construed and the employer carries the burden of proving that it fits within one of the exceptions. *See, e.g., Berg v. Newman*, 982 F.2d 500, 503 (Fed. Cir. 1992); *Jones v. City of Columbus*, 120 F.3d 249, 252 (11th Cir. 1997)(burden on employer to prove partial overtime under section 7(k) for fire fighters applies); *Johnson v. City of Columbia*, 949 F.2d 127, 129-30 (4th Cir. 1991) (en banc)(burden on employer to prove work time exception for sleep time applies); *Carter v. City of Charleston*, 995 F.Supp. 622, 624-25 (D.S.C. 1997)(same).

Here, defendant has failed to meet its burden of proving that it falls within an exception to the requirements of section 7. Defendant cites 5 U.S.C. § 5543 and the Flexible and Compressed Work Schedules Act ("CWSA"), 5 U.S.C. §§ 6120-33, as examples of statutes which permit comp time in the federal sector, but defendant admits that these provisions of title 5 do not apply to the FAA. Def. Op. at 4.[4] Defendant also cites *Brodowy v. U.S.*, 482 F.3d 1379 (Fed. Cir. 2007), for the proposition that FAA administrative orders have the force of law and that the FAA has the power to adopt provisions of title 5. Under *Brodowy*, defendant argues, the FAA has the power to adopt

[4] Defendant's Reply to Plaintiffs' Opposition to Defendant's Partial Motion to Dismiss and Partial Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment shall be cited as "Def. Op. at ___."

§ 5543 of title 5, which authorizes federal agencies to make comp time and flextime exceptions to the requirements of section 7 of the FLSA.

But *Brodowy* is plainly distinguishable. The Court there held that the FAA's temporary adoption of a General Schedule ("GS") pay system was permitted because it was not "in conflict with . . . any other law." *Id.* at 1375. In the court's view, the FAA was free to adopt the GS system, if it wished, because no law required it to implement some conflicting pay system. Here, in contrast, the FAA's attempt to adopt the comp time provisions of 5 U.S.C. § 5543 and the flextime provisions of 5 U.S.C. § 6123 directly conflict with the explicit requirements of section 7 of the FLSA. Where Congress has clearly provided in 49 U.S.C. § 41022(g)(2) that these portions of title 5 "shall not apply to the new [FAA] personnel management system," the FAA simply cannot borrow provisions from title 5 that conflict with the FLSA.

In short, neither OPM nor the FAA is free to ignore the plain language of the FLSA and 49 U.S.C. § 41022(g), nor the rulings, regulations and application of the FLSA by the DOL through regulation or otherwise. Therefore, FAA employees such as the plaintiffs are entitled to section 7 overtime.

**B. The Statutory Structure of the FLSA and Title 49 Reflect Congress' Intent that Plaintiffs Receive Section 7 Overtime.**

Defendant argues that, in "interpreting" the FLSA overtime requirements as not applying to FAA employees, the FAA (or OPM) is filling a "gap" or ambiguity in the statute. In fact, however, both the language and the statutory structure of the FLSA and title 49 demonstrate Congress' intent that comp time is simply not a permissible method of compensating plaintiffs for overtime.

There are three explicit statutory exceptions to the general rule that cash payments must be made for FLSA overtime. First, § 7(o) of the FLSA permits employees of state and local governments to be paid in comp time at the rate of one and one-half hours of comp time for each overtime hour worked, provided certain statutory requirements are met and only up to certain limits.[5] 29 U.S.C. § 207(o). Second, section 5543 of title 5 explicitly authorizes the payment of comp time at straight time rates, instead of section 7 overtime, for irregular or unscheduled overtime worked by certain "GS" federal employees. And, third, §§ 6120-33 of title 5 permit comp time to be paid in lieu of section 7 overtime for irregular hours (called "credit hours" under that statute) worked beyond the employees' flextime schedules, for employees whose flexible work schedules have been properly adopted in accordance with the flextime statute.

None of these exceptions applies to plaintiffs. FAA employees obviously are not "state and local government employees," so FLSA section 7(o) plainly does not apply to them. Similarly, Congress expressly states in title 49 that "[t]he provisions of title 5 ***shall not apply*** to [the FAA's] new personnel management system,"[6] which governs plaintiffs' pay and benefits. Thus, neither the statutory comp time exception from the FLSA under 5 U.S.C. § 5543 nor the flextime exception for credit hours at 5 U.S.C. §§ 6120-33 applies to plaintiffs.[7]

---

[5] Comp time can be accrued up to a maximum of 240 hours for most employees and up to 480 hours for public safety employees at which point cash must be paid for overtime work. 29 U.S.C. § 207(o)(3)(A).

[6] 49 U.S.C. § 40122(g)(2) (emphasis added).

[7] Indeed, the Federal Labor Relations Authority has rejected attempts by the FAA to use provisions of title 5 as a defense to the failure to pay overtime. See *Dept. of Transportation and Professional Airways Systems Specialists*, 61 FLRA 750 (2006)("As the premium pay standards of [5 U.S.C. § 5545) do not apply to the Agency, the regulations implementing that statute also do not apply to the Agency.")

As the court explained in *Doe v. U.S.*, under the principle of statutory interpretation *expressio unius est exclusio alterius*, where a statute expressly designates entities within its coverage, all omissions are understood as exclusions. 74 Fed. Cl. at 597. Here, FAA employees are not included among the employees to whom the three express exclusions to the cash payment requirement apply. The only reasonable statutory interpretation is that FAA employees who are covered by the FLSA, such as the plaintiffs, must be paid cash for overtime work pursuant to section 7 of the FLSA. Similarly, the two statutory exclusions applicable to title 5 federal employees that permit straight time comp time in lieu of section 7 overtime do not apply to FAA employees because both exclusions are contained in title 5.

Indeed, Congress' intent that these particular provisions of title 5 "shall not apply" to FAA employees is further bolstered by Congress' decision to enumerate a number of express exceptions to the general rule that title 5 does not apply to the FAA's personnel management system. In § 41022(g)(2), Congress not only mandated that title 5 shall not apply to FAA employees, it specifically enumerated those provisions of title 5 that shall apply. *Neither § 5343 nor the flextime provisions of §§ 6120-33 are included.* Thus, the FAA's decision to apply these provisions of title 5 to plaintiffs not only violates the FLSA, but it violates § 40122(g) of title 49.

Defendant argues that since other federal agencies are allowed the "flexibility" to provide straight time comp time in lieu of section 7 overtime, it should be permitted to do so as well. As shown above, Congress directed otherwise in 49 U.S.C. § 40122(g) and section 7 of the FLSA. It doubtless did so because other federal agencies – unlike the FAA – are required, by law, to follow all of the requirements regarding pay and benefits

set forth under title 5. By contrast, the FAA is free to provide and negotiate pay and benefits unrestricted by the provisions of title 5.[8] Rather than presume Congress must have intended that the FAA also have the freedom to deviate from the FLSA, the presumption should be that Congress intended the FAA to adhere to the floor-level FLSA overtime requirements applicable to other non-title 5 employers. Those requirements mandate that the FAA pay for overtime hours in compliance with section 7 of the FLSA.

### C. Defendant's Attempt to Rely on OPM's Regulation Regarding Comp Time is Misplaced.

Defendant also argues that, since OPM is authorized to administer the FLSA in the federal sector, and issued a regulation that permits comp time in lieu of overtime compensation under section 7 of the FLSA, the Court must defer to this regulation in determining FAA employees' entitlement to overtime pay. It is well established, however, that if, as here, the relevant statutory language is clear, regulations inconsistent with that language are invalid. *See, e.g., Brown v. Gardner*, 513 U.S. 115, 122 (1994) (striking down VA regulations inconsistent with the statute); *AFGE v. Gates*, 486 F.3d 1316, 1322 (D.C. Cir. 2006) (DOD regulations invalid as inconsistent with the statute). *Cf. Hill v. DOJ*, 1999 U.S. App. LEXIS 29822 (Fed. Cir. 1999) (statute defining law enforcement officers sufficiently clear that court need not look to regulations). As applied to FAA employees, OPM's comp time regulation at 5 C.F.R. § 551.531 conflicts

[8] For example, title 5 prescribes the amounts to be paid to employees and sets forth a classification system for doing so at 5 U.S.C. §§ 5101-5115. Title 5 also specifically prescribes rules regarding the accrual and use of paid leave at 5 U.S.C. § 6301 *et seq*. Unlike other federal agencies, the FAA is not bound by these statutory requirements nor any of the myriad other provisions of title 5 governing hiring, training, performance reviews, incentive awards, hours of work, travel rules and the like. *See, e.g.*, 5 U.S.C. §§ 2101-6385.

with the plain language of the FLSA. Thus, this regulation is invalid as applied to the plaintiffs.

With respect to "credit hours," it is clear on its face that OPM's regulation at 5 C.F.R. § 551.531(b) does not grant any authority to the FAA to provide comp time or credit hours in lieu of FLSA overtime pay. The regulation explicitly states that "the head of an agency may grant compensatory time off from an employee's basic work requirement under a flexible work schedule ***under 5 U.S.C. § 6122*** instead of payment [in cash]." Since plaintiffs are not covered by 5 U.S.C. § 6122, defendant's reliance on this regulation is obviously erroneous.

Thus, OPM's failure to expressly exclude FAA employees from coverage under 5 C.F.R. § 551.531(a) is inconsistent with the FLSA and legally invalid. This oversight is also easily explained. Title 5 applies to all federal employees other than FAA employees. Since 1974 when the FLSA first applied in the federal sector, OPM has consistently and exclusively relied upon title 5 as its sole source of authority to pay comp time to employees in lieu of section 7 overtime and to do so at straight time rates.[9] As early as June 12, 1975, the United States Civil Service Commission – the predecessor agency to OPM – issued a Federal Personnel Manual (FPM) Letter 551-6 in which it analyzed whether comp time would be appropriate for employees covered by the FLSA. OPM concluded at that time (before the amendment to § 5543 specifically allowing comp time in lieu of section 7 overtime for federal employees), that "there is no statutory provision

[9] Of course, as we explained in our earlier brief, OPM itself expressly stated in the comments preceding the promulgation of 5 C.F.R. § 551.531, the comp time regulation on which defendant attempts to rely, that its authority for allowing comp time instead of section 7 overtime pay was found in §§ 5543 and 6120-33 of title 5. Plaintiffs Opp. and Mot. for Partial Summary Judgment, pp. 28-29.

under the FLSA for granting compensatory time off in lieu of overtime pay." FPM Letter 551-6, attached hereto. The Civil Service Commission explained that, for certain employees to whom title 5 does not apply, such as Federal Wage System employees, comp time cannot be a substitute for section 7 overtime under any circumstances; these employees must be paid in cash. Further, the FPM letter explains that if a non-exempt employee earns overtime pay solely under the FLSA, "[the employee] must be paid for the overtime work. No compensatory time off is allowed."

Similarly misplaced is defendant's reliance on *Billings v. U.S.*, 322 F.3d 1328 (Fed. Cir. 2003), to argue that the court must defer to any interpretation of the FLSA by OPM. In *Billings*, the court determined that, in considering whether an agency's interpretation is appropriate, the initial question is whether a statute is silent or ambiguous with respect to the specific matter at issue. The *Billings* court examined a regulation that addressed the executive exemption to the FLSA under 29 U.S.C. § 213(a)(1). The term "executive" is not defined at all in the FLSA – instead, the statute delegates authority to administrative agencies to fill that gap. The court explained that a variance in *regulations* between OPM and the Department of Labor in interpreting the FLSA is allowed where (1) a gap exists in the FLSA requiring agency interpretation; and (2) OPM's interpretation differs from DOL's because the relevant federal employees are subject to relevant provisions of title 5 that do not apply in the private sector. In contrast to the situation in *Billings*, here, there is no gap to fill. As OPM itself recognized in FPM Letter 551-6 and in its comments preceding the promulgation of 5 C.F.R. § 551.531, the FLSA does not permit the payment of comp time to federal employees absent a statutory exception under title 5. Here, title 5 expressly does not apply to plaintiffs – and thus the

FLSA is clear that employees must be paid section 7 overtime. Accordingly, no deference should be afforded the FAA or OPM's interpretation of the FLSA allowing the FAA to pay straight time comp time in lieu of section 7 overtime.

### D. Credit Hours Are Overtime Hours Under the FLSA.

Credit hours are hours worked, with supervisory approval, outside of an employee's regular flexible work schedule – in other words, they are overtime hours. But the CWSA contains express provisions at 5 U.S.C. § 6123(a) and (b) that exempt employees from the overtime provisions of section 7 of the FLSA with respect to "credit hours." Relying upon the definition of "credit hours" contained in the CWSA, defendant argues that credit hours worked by FAA employees are not overtime hours. The obvious flaw in defendant's argument is that it is based on CWSA provisions that ***do not apply to FAA employees*** because they are found in title 5, and – as 49 U.S.C. § 41022(g) explicitly states – title 5 does not apply to the FAA. Thus, section 7 of the FLSA requires that FAA employees be paid, in cash, for each hour worked over 40 hours a week at the rate of one and one-half times their regular rates of pay.

## II. DEFENDANT HAS FAILED TO MEET ITS BURDEN WITH RESPECT TO PLAINTIFFS' COUNT III CLAIM CONCERNING PRE-SHIFT AND POST-SHIFT WORK.

Defendant initially argued that plaintiffs' claim for uncompensated pre-shift and post-shift work should be dismissed because the Cru-X/ART system is "designed to … prevent employees" from performing such work. Def. Op. 6-9. Plaintiffs, however, have demonstrated that they perform uncompensated pre- and post-shift work[10] either (1)

---

[10] This work includes replacing tapes, using the radar scope and reviewing the following: FAA mandatory review binders, briefing items, "Hot Boards," "Read and Initial" documents, current weather patterns, runway configurations and equipment condition/

before signing in to the Cru-X/ART system, (2) after physically signing in to the Cru-X/ART system before their scheduled shift start time and manually entering their scheduled shift start time, and/or (3) after signing off from the Cru-X/ART system. Plf. Br. 33-37; Plf. Fact ¶¶ 15-20.

Defendant now admits that "the system in and of itself does not preclude an employee from performing work." Masson Decl., ¶ 2 (Def. Supp. App. 3). But defendant now claims that performing pre- and post-shift work violates FAA policy and that defendant was unaware plaintiffs were performing such work. Def. Opp. 18-23. As shown below, the record is disputed whether defendant should reasonably have been aware that employees were performing pre-shift and post-shift work activities.[11]

### A. FAA Policy Allows for Uncompensated Pre-Shift and Post-Shift Work.

Defendant admits that Cru-X/ART in and of itself does not preclude an employee from performing pre- and post-shift work. Masson Decl., ¶ 2 (Def. Supp. App. 3). FAA employees are required to sign on to the Cru-X/ART system immediately upon arriving at the place where their work stations are located. Rooney Decl. ¶ 3 (Def. Supp. App. 14); Dunne Decl. ¶ 7 (Def. Supp. App. 19). FAA employees "can sign in to the Cru-

configuration and a substantial number of other activities. Plf. Br. 35-36; Plf. Fact ¶ 27; Santa Decl. ¶ 6 (Plf. App. 115); K. Peterson Decl ¶¶ 5-6 (Plf. App. 119).

[11] Defendant's motion must also necessarily fail as the Cru-X/ART system was not in existence during the entire recovery period. Defendant admits that the system was implemented in stages from May 2004 through August 2005. May 2004 through the present is only a portion of the recovery period. Def. Resp. to Plf. Fact ¶ 12, *see also* Prosperi Decl. ¶ 6 (Def. Supp. App. 29) ("operational … since April 2005"). Plaintiffs demonstrated that, prior to the implementation of the system, their hours were recorded manually and did not include work performed prior to or after their scheduled shifts, for which they were not compensated. Bukovskey Decl. ¶¶ 29-30 (Plf. App. 11); Savasta Decl. ¶¶ 17-18 (Plf. App. 32-33); Peterson Decl. ¶¶26-27 (Plf. App. 23); Santa Decl ¶¶10-11 (Plf. App. 116); Lumbard Decl. ¶ 5 (Plf. App. 122).

X/ART system up to fifteen minutes before the beginning of their scheduled shift time." Masson Decl. ¶ 6 (Def. Supp. App. 4); *see also* FAA Order JO7210.3V (Def. Supp. App. 8) ("Sign in, <u>using the assigned shift start time</u>, may occur up to 15 minutes before an employee's assigned shift) (emphasis added); *see also* Plf. Fact ¶¶ 22-24.

When employees sign in to Cru-X/ART, "[they] are supposed to sign on to the Cru-X/ART system for their scheduled shift time," not the actual time they sign on. Def. Response to Plf. Fact ¶ 17; *see also* Plf. App. 80. "The Cru-X/ART electronic logs shall be used to indicate responsibility at all operational positions." Masson Decl. ¶ 8 (Def. Supp. App. 5); *see also* FAA Order JO7210.3V (Def. Supp. App. 8). Prior to assuming an operational position, the employees "are required to engage in 'duty familiarization' functions, which include reviewing the mandatory review binder and other briefing items and exchanging air traffic control information. . . ." Dunne Decl. ¶ 8 (Def. Supp. App. 19-20); *see also* K. Peterson Decl. ¶¶ 5-6 and Att. A (Plf. App. 119-120).

Defendant wants this court to believe that if an employee signs in fifteen minutes prior to her shift time, "[t]he expectation is that the employee will enter her scheduled shift time and perform no work until then." Def. Response to Plf. Fact ¶ 17; Rooney Decl. ¶4 (Def. Supp. App. 15). This expectation is not supported by *defendant's facts*. If the employee is responsible for the operational positions once she has signed on to the Cru-X/ART system, she is required to begin performing both the duty familiarization tasks noted by defendant and other necessary pre-shift work prior to, or at least immediately after, they sign on to the Cru-X/ART system. Accordingly, if an employee signs on fifteen minutes prior to the scheduled shift start time, she must immediately begin performing the duty familiarization tasks.

### B. FAA Must Compensate Plaintiffs for Pre-Shift and Post-Shift Work.

"It is [also] not relevant that the employer did not ask the employee to do the work. … 'If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.'" *Allen v. Bd. of Educ. for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing *Reich v. Dep't of Conservation and Nat. Res*., 28 F.3d 1076, 1082 (11th Cir. 1994) (citing 29 C.F.R. § 785.11)). A claim for unpaid overtime compensation is viable if the employer has either actual *or constructive* knowledge of the work being performed without pay. *Allen*, 495 F.3d at 1318. An employer can be charged with constructive knowledge "if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence." *Id*. at 1321. An employer's constructive knowledge should be "measured in accordance with his 'duty…to inquire into the conditions prevailing in his business.'" *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 512 (5th Cir. 1969) (quoting *People ex rel. Price v. Sheffield Farms-Lawson-Decker Co*., 225 N.Y. 25 (N.Y. 1918)).

Defendant contends that pre- and post-shift work is "hidden" by plaintiffs. Def. Opp. 19. The record does not support this argument. Plaintiffs demonstrated that they sign on to the Cru-X/ART system at their work stations in the workplace. Robicheau Decl. ¶ 7 (Plf. App. 26); Santa Decl. ¶ 9 (Plf. App. 115-116). The system is located in close physical proximity to their supervisors. Santa Decl. ¶ 9(Plf. App. 115-116); K. Peterson Decl. ¶ 4 (Plf. App. 118). They then commence work in that same area where a supervisor could, and does, observe them at work. Bukovskey Decl. ¶ 22 (Plf. App. 9); Peterson Decl. ¶ 19 (Plf. App. 22); Santa Decl. ¶ 9 (Plf. App. 116). Defendant does not dispute that supervisors are in the same room as employees performing pre-shift and/or

post-shift work. Indeed, defendant acknowledges that "[a supervisor] may be present in a room[,]" but "without being aware of everything that is transpiring in that room." Def. Opp. 22-23. At a minimum, there is an issue of fact as to whether the supervisor, who is in the same room, is or should be aware of the plaintiffs' work performed at their work stations. Moreover, defendant can easily obtain data showing the exact time an employee signs on to the system. The "Cru-X/ART system maintains a time and date record of each Cru-X/ART entry made." Masson Decl. ¶ 7 (Def. Supp. App. 4). Supervisors and managers have access to that data and FAA has used it to support disciplinary charges. Robicheau Decl. ¶¶ 12, 17 (Plf. App. 28-28). Thus, defendant has a written record of plaintiffs' work time.

Because issues of material fact exist as to whether plaintiffs perform uncompensated pre-shift and post-shift work, summary judgment on this claim is precluded.

## III. DEFENDANT HAS FAILED TO MEET ITS BURDEN WITH RESPECT TO PLAINTIFFS' COUNT IV CLAIM CONCERNING BIDDING TIME.

Defendant first argued that plaintiffs are not entitled to compensation for off-duty time spent bidding because such time was *de minimis* and did not amount to more than five or ten minutes per year. Def. Op. 22. Defendant's own documents demonstrate that more than five to ten minutes is spent bidding on work and vacation schedules. In one instance, defendant admits that plaintiffs may "spend … one (1) hour per year bidding." Cassady Decl. ¶ 8 (Def. App. 10). In another instance, defendant admits that bidding takes fifteen to twenty minutes, depending on the type of leave being bid. Miller Decl. ¶ 6 (Def. Supp. App. 23); *see also* Def. Supp. App. 25, § 3. Because defendant's own

estimates of the amount of time spent bidding are inconsistent, they establish a dispute of fact such that a finding of summary judgment is not warranted.

Defendant also claims plaintiffs' time is *de minimis* because, spread out over 52 weeks in a year, it would only average one or two minutes per week. The proper test of the aggregate amount of time, however, takes into account "the amount of time per occurrence dedicated to the activity in question." *Bobo v. United States (Bobo I)*, 37 Fed. Cl. 690, 701 (1997) (emphasis added). The time spent bidding can take from fifteen to thirty minutes for regular days off and up to an hour for the first round of prime time (vacation) bidding. *See* Adcock Decl. ¶¶ 4-6 (Plf. App. 112-113); Santa Decl. ¶15-16 (Plf. App. 116-117).

Defendant sets forth a new argument contending that bidding time is not compensable because it allegedly does not benefit the FAA. But time controlled by the employer is presumed to benefit the employer. *Bull v. United States*, 68 Fed. Cl. 212, 224 (Fed. Cir. 2007) (citing *Mt. Clemens Pottery*, 328 U.S. 680, 693 (1946)). The work need not be productive work. *Id*. at 223 (citing *Tennessee Coal v. Muscoda*, 321 U.S. 590, 599 (1944)). Furthermore, the employer need not be the "sole beneficiary" of the time. *Treece v. City of Little Rock*, 923 F. Supp. 1122, 1127 (E.D. Ark. 1996).

The bidding benefits FAA management as it decreases the time and effort needed to unilaterally establish the schedules and respond to subsequent requests for non-vacation leave for all employees. It helps maintain a more productive and satisfied work force, which helps retain the workforce. Indeed, the process used to bid is the employer's choice, as it was unilaterally implemented by FAA in 2006. Krasner Decl. ¶ 13 (Plf. App. 16). The FAA also establishes the time windows during which employees may bid.

Miller Decl., ¶ 6 (Def. Supp. App. 23). This process is therefore for the benefit of and under the control of the FAA.

Morever, any question as to whether bidding time benefits the FAA is answered by the FAA's own actions. Prior to 2006, all bidding was performed during scheduled hours of work. Adcock Decl. ¶ 12 (Plf. App. 3). Employees were compensated for that time. Moreover, FAA currently considers bidding time to be "work" when the window of opportunity to do so occurs during an employee's shift. Prosperi Decl. ¶ 7 (Def. Supp. App. 29) ("All bidding by ATCSs is conducted on duty time"); Def. Opp. 24-25 ("[s]ometimes their given window of opportunity to bid occur[s] during their work shift."); Plf. App. 123 (Section 2.c) ("each employee shall have sixty (60) minutes with no other duties assigned to submit their bid. Bidding will only be required within an employee's assigned shift."). The plaintiffs assert, and the FAA likely would agree, that it does not pay its employees to perform tasks it does not view as benefiting the FAA and which it considers to be work.

Because issues of material fact exist as to whether bidding that occurs during off-duty hours is compensable work under the FLSA, summary judgment on this claim is precluded.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment should be granted and defendant's motion for summary judgment and motion to dismiss should be denied.

Respectfully submitted,

Dated: April 17, 2008

/s/ Gregory K. McGillivary
Gregory K. McGillivary
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Counsel of Record

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiffs' Reply in Support of their Motion for Partial Summary Judgment was electronically filed on this 17th day of April with the Clerk of the Court using the CM/ECF System which will send notification of such filing to defendant's attorney:

Hillary A. Stern
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
(202) 616-0177 (telephone)
(202) 305-7643 (facsimile)

/s/ Gregory K. McGillivary
Gregory K. McGillivary