# In the United States Court of Federal Claims

No. 07-272 C

(E-Filed:  July 2, 2009)

|  |  |  |
|---|---|---|
| MARK G. ABBEY, ET AL., | ) | Unauthorized Communications |
|  | ) | With Represented Persons About |
|  | ) | the Subject of Lawsuit Are Not |
| Plaintiff, | ) | in Compliance With ABA |
|  | ) | Model Rules of Professional |
| v. | ) | Conduct 4.2 and 8.4(a); |
|  | ) | Assuring Future Compliance |
| THE UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Gregory K. McGillivary, Washington, DC, for plaintiff.  Sara L. Faulman, Washington, DC, of counsel.

Hillary A. Stern, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## ORDER

HEWITT, Chief Judge

Before the court are Plaintiffs' Motion to Expedite the Briefing Schedule and Issue an Expedited Order on Plaintiffs' Motion for Relief to Remedy Defendant's Violation of ABA Model Rules 4.2 and 8.4(a) (plaintiffs' Motion or Pls.' Mot.), filed June 17, 2009, Plaintiffs' Brief in Support of Their Motion for Relief to Remedy Defendant's Direct Communication with Plaintiffs Regarding this Lawsuit in Violation of ABA Model Rules 4.2 and 8.4(a) (plaintiffs' Brief or Pls.' Br.), filed June 17, 2009, Defendant's Response to Plaintiffs' Motion for Relief to Remedy Defendant's Direct Communication with Plaintiffs Regarding This Lawsuit in Violation of ABA Model Rules 4.2 and 8.4([a]) (defendant's Response or Def.'s Resp.), filed June 24, 2009, and Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion to Issue an Expedited Order on Plaintiffs' Motion for Relief to Remedy Defendant's Violation of ABA Model Rules 4.2 and 8.4(a)

(plaintiffs' Reply or Pls.' Reply), filed June 26, 2009.  The court held a telephonic status conference with the parties (TSC) on Wednesday, July 1, 2009 at 10:00 a.m. Eastern Daylight Time (EDT) to discuss plaintiffs' Motion and the subsequent briefing.

Plaintiffs allege that "defendant has communicated or caused another to communicate directly with represented plaintiffs concerning a subject at issue in this litigation without permission from plaintiffs' counsel or this [c]ourt."  Pls.' Mot. 1.  Rule 4.2 of the Model Rules of Professional Conduct states, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  Model Rules of Prof'l Conduct R. 4.2.  Rule 8.4(a) of the Model Rules of Professional Conduct states, "It is professional misconduct for a lawyer to:  (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]"  Model Rules of Prof'l Conduct R. 8.4(a).  The Model Rules of Professional Conduct are applicable to the conduct of attorneys in proceedings in this court under Rule 83.2(b) of the Rules of the United States Court of Federal Claims (RCFC).  See RCFC 83.2(b).  According to plaintiffs, "On approximately May 29, 2009, without plaintiffs' counsel's consent, defendant mailed to plaintiffs a memorandum from an Executive Director of the Federal Aviation Administration (FAA) which discussed and directly addresses one of the subject matters at issue in this lawsuit."  Pls.' Br. 1.

The first page of the six-page memorandum to which plaintiffs refer contains the subject heading "Notice of Retroactive Payment for FLSA Overtime" and is dated May 1, 2009[1] (May 1, 2009 FAA Memo).  Pls.' Br. Exhibit (Ex.) A; Def.'s Resp. App'x 9-14 (May 1, 2009 FAA Memo.) 1.  The May 1, 2009 FAA Memo states:

> When preparing for conversion to our current payroll service provider, the Department of the Interior's National Business Center (NBC), issues arose regarding the way holiday pay and non-foreign area cost of living allowances (COLA) were treated when computing overtime rates under the Fair Labor Standards Act (FLSA).  The calculation of overtime pay under the FLSA can be fairly complex.  Enclosure 1 provides more details and relatively straightforward examples of the computations.  The examples show the required (new) method, which is contrasted with the previous (old) method.

---

[1] Although it was dated May 1, 2009, the May 1, 2009 FAA Memo was likely not sent to plaintiffs until the end of May.  Plaintiffs' Brief in Support of Their Motion for Relief to Remedy Defendant's Direct Communication with Plaintiffs Regarding this Lawsuit in Violation of ABA Model Rules 4.2 and 8.4(a) (plaintiffs' Brief or Pls.' Br.) 4 n.3.

   FAA has elected to offer retroactive pay to employees affected by
these issues for the periord April 4, 2004 through October 15, 2005.  You
have been identified as meeting the criteria prescribed for retroactive pay.

   The FAA has directed the NBC, our payroll service provider, to pay
you the difference between what you were paid and what you should have
been paid during this period.

   You do not need to take any action to receive the payment.  Any
payment due you will be paid in your regular paycheck within
approximately 3 or 4 pay periods.  You will receive the net amount, after
taxes and other appropriate deductions.  Your Leave and Earnings
Statement will reflect any summary payout in the adjustment column when
it is processed.

   Questions may be directed to the Payroll Liaison Services office for
your Region at the number shown in Attachment 2.

May 1, 2009 FAA Memo 1 (emphasis in original).  The May 1, 2009 FAA Memo
includes two attachments:  (1) one page titled "Payroll Liaison Services (PLS) Contact
Information," May 1, 2009 FAA Memo. 2, and (2) four pages titled "Questions and
Answers on Retroactive Overtime Payment Due to COLA and Holiday Pay Calculations,"
id. at 3-6.  The Question and Answer portion of the FAA memo states, "Former FAA
employees will only receive payment if they request payment by the date specified in the
letter which is approximately 60 days after the first attempt to notify you."  Id. at 4
(emphasis added).

   According to defendant, the May 1, 2009 FAA Memo "implements phase two of a
corrective measure explicitly contemplated by a July 2006 memorandum, issued to
employees by the FAA prior to this litigation."  Def.'s Resp. 1 (emphasis omitted).
Defendant states that the Office of Personnel Management (OPM) directed various
agencies, including the FAA, "to pay back pay plus interest relating to a regulatory
change implemented by OPM."  Id.  The FAA's Office of Human Resources (FAA HR)
notified FAA employees of the pending back pay issue in a memorandum dated July 27,
2006.  Id. at 4; see Def.'s Resp. App'x 3-5 (July 2006 FAA Memo).  The July 2006 FAA
Memo states:

   [NBC], our payroll service provider, recently notified the
Department of Transportation (DOT) of a pending back pay issue.  This
issue affects non-exempt employees who are covered by the [FLSA], work

3

overtime, and earn a non-foreign [COLA].  Although FAA is exempt from many parts of Title 5, we continue to follow OPM regulations for employees covered by FLSA.

In 2002, [OPM] changed the methodology for calculating overtime for these employees.  OPM directed federal agencies to pay back pay plus interest retroactive to two years from the date the issue was identified; back to April 4, 2004.  NBC is also required to re-compute rates for compensatory time so that potential pay outs at a future date are correct.

You have been identified as meeting the criteria for either back pay or a re-computation of the rate of compensatory time earned.

NBC has changed its system to correct the calculation prospectively.  The system changes occurred in the pay period endings [sic] July 8, 2006 and July 22, 2006.  In the following pay periods, NBC will generate an automated recalculation back to October 16, 2005, the effective date of FAA's migration to FPPS, to pay back pay for that timeframe.

In the second phase of the project, NBC will analyze DOT's historical records to identify employees meeting the criteria for back pay between April 4, 2004 and October 16, 2005.  NBC will then manually compute back pay for the affected employees for this period, as well as compute interest for both periods.  It is not known when this phase of the project will be complete, but NBC's goal is to complete the payout within six months.

The calculation of overtime pay under the FLSA can be fairly complex.  Attached is a relatively straightforward example provided by OPM.  The example shows the required (new) method, and is contrasted with the previous (old) method.

It is not possible to provide each employee with detailed results of the retroactive calculation.  We do not know which employees will receive back pay and which will simply get an update in their compensatory time record.  If you receive back pay, your Leave and Earnings Statement will reflect any summary payout in the adjustment column when it is processed.

Questions may be directed to the Payroll Information Line at [(xxx) xxx-xxxx or x-xxx-xxx-xxxx].

July 2006 FAA Memo.

Defendant argues that the corrections to overtime pay made pursuant to the May 1, 2009 FAA Memo are distinct from Count I of plaintiffs' Complaint.  Def.'s Resp. 10-12. Defendant also argues that because the May 1, 2009 FAA Memo would have been issued regardless of the existence of this litigation, it was issued in the ordinary course of business and somehow insulates defendant from the constraints put on communications as a result of the attorney-client relationship between some 7,000 current and former FAA employees who are plaintiffs in this case and their counsel.  Def.'s Resp. 9-10.  Defendant also appears to argue that, because the May 1, 2009 FAA Memo was issued by FAA HR at the direction of OPM, defendant's counsel did not violate the prohibitions contained in Rule 4.2 of the Model Rules of Professional Conduct.  See Def.'s Resp. 7-9.  The court does not find any of defendant's arguments persuasive.

The court will first address the issue of whether defendant's argument that the May 1, 2009 FAA Memo was issued by FAA HR at the direction of OPM shields defendant's counsel from Rule 4.2.   Plaintiffs argue that "[g]iven the subject matter of the memo and its author – a very high ranking official at the FAA – it is highly unlikely that this memo, which addresses a 'complex' legal issue, was issued by the FAA without first being reviewed or perhaps even written by the Agency's lawyers, if not lawyers for the [United States Department of Justice (DOJ)]."  Pls.' Br.  2 (footnote omitted).  Indeed, defendant states that, before issuing the May 1, 2009 FAA Memo, FAA HR "submitted a draft to agency counsel."  Def.'s Resp. 4 n.1.  It is not necessary to examine the relationship between DOJ attorneys and individual attorneys at the FAA.[2]  The court can reasonably

---

[2] Plaintiffs rely on Cobell v. Norton (Cobell), 212 F.R.D. 14, 16-19 (D.D.C. 2002) (finding that defendant's sending of "historical statements of account to nearly eight thousand individual Indian account holders, among which were class members in [the] litigation," was improper when the statements had "the effect of extinguishing the rights of those class members"), to support its allegations that defendant improperly communicated with plaintiffs in violation of ethics rules, see Pls.' Br. 9-10; Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion to Issue an Expedited Order on Plaintiffs' Motion for Relief to Remedy Defendant's Violation of ABA Model Rules 4.2 and 8.4(a) (plaintiffs' Reply or Pls.' Reply) 13. It is not necessary for the court to rely on Cobell; indeed it may be more appropriate to consider Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1197-98, 1208-09 (11th Cir. 1985) (finding that, when a bank contacted over 3,000 of its customers and urged them to opt out of litigation against the Bank, the Bank's attorney, "'[b]y actively assisting the Bank in preparing the information to be given to prospective class members, some of which was legal in nature, and organizing the contact system, . . . did effectively communicate with persons represented by counsel'" (citation omitted)).

assume that the FAA is acutely aware of the existence of this lawsuit and in regular communication with the DOJ.[3]

Defendant argues that the FAA's communications with plaintiffs do not concern matters that are the subject of this litigation. Def.'s Resp. 7-10 (citing Model Rules of Prof'l Conduct R.4.2 cmt. 4 (2002) ("This Rules does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation.")). Defendant argues that "plaintiffs['] primary allegation with respect to COLA is that the FAA did not compute the regular rate using the appropriate number of hours," and, in contrast, "the [July 2006 FAA Memo] and [the May 1, 2009 FAA Memo] address the inclusion of COLA in both the regular rate and straight time rate calculations." Def.'s Resp. 10 ("The memoranda provide that COLA be included in the dividend portion of the calculation of both rates – which is unrelated to plaintiffs' allegation regarding the appropriate number of hours to include as the divisor." (emphasis omitted)). Plaintiffs argue that the miscalculation of overtime rates addressed in the May 1, 2009 FAA Memo is "identical" to Count I of plaintiffs' Complaint.[4] Pls.' Br. 4-5, 13

---

[3] The court notes that a representative from the Federal Aviation Administration (FAA), Michael Doherty, was present at an oral argument in this case held at the United States Court of Federal Claims on July 29, 2008. See Transcript of July 29, 2008 Oral Argument (Tr.) 3:23-25. Eden Brown Gaines, Elizabeth Head, and Michael Doherty, all of the FAA, were listed as of counsel in the court's July 31, 2008 Opinion based on such counsel having been so listed on defendant's briefing on the parties' motions for summary judgment. See Abbey v. United States, 82 Fed. Cl. 722, 724 (2008).

[4] Count I of plaintiffs' Third Amended Complaint (plaintiff's Complaint or Compl.) states:

14.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that overtime shall be paid to employee for work hours in excess of forty (40) hours per week at the rate of one and one-half times an employee's "regular rate of pay." At all times material herein, during the work weeks in which plaintiffs have worked in excess of forty (40) hours per week, defendant United States has failed to properly calculate the "regular rate of pay" used to calculate FLSA overtime pay. Defendant has violated the FLSA by:

a. Failing to use the proper divisor for computing the regular rate for COLA by dividing COLA by all hours worked rather than by plaintiffs work hours used for plaintiffs' basic pay – i.e., 40 hours per week;

b. Failing to include lump sum OSI and SCI payments in the regular rate of pay at which FLSA overtime is paid;

(continued...)

6

("FAA's correct 'New Method' of calculating FLSA overtime results in the exact same

---

[4](...continued)
      c.  Miscalculating the regular rate of pay for those plaintiffs who receive CIP by dividing the CIP received by all hours worked rather than 40 hours; and
      d.  On those occasions in which compensatory time, including credit hours, is cashed out, failing to include all forms of renumeration received by an employee in the rate at which the compensatory time (and credit hours) is cashed out.

15.    By failing to properly calculate the regular rate of pay for plaintiffs and other employees similarly situated as required under law, the defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA.  As a consequence, at all times material herein, the plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

16.    As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined.  The employment and work records for the plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. §[]211 (c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

17.    Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the [d]efendant's failure to pay overtime compensation.

18.    Pursuant to the Back Pay Act, 5. U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them overtime compensation.

19.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596 as well as other applicable laws and regulations.

Compl. ¶ 14-19.

7

backpay payment as that which occurs under plaintiffs' theory of the case set forth in paragraph 14 of their Complaint with respect to COLA and the calculation of the regular rate of pay."); Pls.' Reply 3 ("They are simply different mathematical applications that reach the same result."). The court agrees with plaintiffs that "plaintiffs' claim and defendant's memo are simply different mathematical interpretations yielding the same result: proper calculation of the FLSA overtime rate with respect to COLA as alleged in paragraph 14 of plaintiffs' [C]omplaint." See Pls.' Reply 7. Based on the court's examination of the parties' calculations, the court agrees with plaintiffs' contention that "algebraically, the formulas yield the same result in all cases." See Pls.' Reply 7-8.

Defendant argues that the May 1, 2009 FAA Memo was issued in the ordinary course of business and was simply a corrective action. Def.'s Resp. 6-10. However, this lawsuit has put in issue the very matters over which corrective action was taken. Cases cited by defendant, see Def.'s Resp. 6, affording an agency discretion to take corrective action in negotiated procurements, have nothing to do with the facts and circumstances of this case. This lawsuit intervenes in an ongoing situation. The effort by the FAA to respond to OPM's guidance does not change the attorney-client relationship between plaintiffs and their counsel. The May 1, 2009 FAA Memo undermines the ability of plaintiffs' counsel to carry on the lawsuit. The FAA could have taken unfettered remedial action as to plaintiffs prior to the commencement of this litigation, but now the circumstances have changed. Plaintiffs are now represented and are entitled to seek all the relief to which they believe they are entitled. FAA's remedial actions do not trump the attorney-client relationship. By making payments directly to plaintiffs and not through plaintiffs' counsel, plaintiffs' counsel argues, FAA has caused plaintiffs' counsel to be "unable to fulfill their ethical duty to represent their client by ensuring that the defendant has properly calculated his or her damages." Pls.' Br. 17. Plaintiffs state that "plaintiffs' attorneys on behalf of their clients have an ethical obligation to ensure that the so-called 'corrective action' taken complies with the law." Pls.' Reply 11. The fact that OPM directed that agencies correct pay in a particular way does not resolve the disputed nature of the relationship between former and current employees of the FAA and the FAA. Plaintiffs contend in this lawsuit that they are entitled to liquidated damages and interest, as well as attorneys' fees and costs, for ensuring that payments are properly made. Pls.' Br. 5; Pls.' Reply 11.

Plaintiffs allege that the memorandum "has sowed confusion among the plaintiffs and interfered with the attorney-client relationship." Pls. Br. 2. Counsel for plaintiffs state that plaintiffs who have received the May 1, 2009 FAA Memo "have questioned why the FAA has initiated procedures to compensate employees for FLSA overtime that was unpaid for an issue that is part of the lawsuit as well as [with respect to former FAA employees] why the FAA is requesting that – after they have already signed up as a plaintiff and therefore requested this payment – FAA is now requesting that they file a

second claim in order to receive the payment." Pls.' Br. 16.  The court finds that opportunities for confusion should have been expected to arise based solely on the text of the May 1, 2009 FAA Memo.  See Pls.' Reply 11-12.  For example, former employees read on page one that they "do not need to take any action to receive the payment," May 1, 2009 FAA Memo 1, yet page four states that "[f]ormer FAA employees will only receive payment if they request payment by the date specified in the letter which is approximately 60 days after the first attempt to notify you," May 1, 2009 FAA Memo. 4; see Pls.' Reply 12.  Plaintiffs have also provided evidence by declaration documenting instances of confusion.  See Pls.' Br. Ex. B (Declaration of William Otto); Pls.' Br. Ex. C (Declaration of Rafael Cordova).

The court finds that defendant's actions are not in compliance with Rules 4.2 and 8.4(a) of the Model Rules of Professional Conduct.  Further to the TSC and the parties' briefing, plaintiffs' Motion is GRANTED.  The court orders the following:

1.    Defendant shall cease all communications with plaintiffs concerning the subjects of this lawsuit and shall send all future communications concerning the subjects of this lawsuit to plaintiffs through plaintiffs' counsel.  For example, any proposed mailings to plaintiffs concerning the subject of this lawsuit shall be provided to plaintiffs' counsel unsealed.  If there is a question regarding whether a communication is covered by this Order, counsel for the parties shall consult with one another to resolve the issue.  If counsel cannot resolve the matter, they shall bring the matter to the attention of the court by motion.

2.    With respect to FLSA back pay payments based upon the FAA's COLA miscalculation to be made by check, defendant shall make all such payments through plaintiffs' counsel, accompanied by a detailed calculation that documents the exact amount that is paid to each plaintiff and how that amount was calculated on a pay period by pay period basis.  The court does not wish to change the method of delivery of electronic payments.  If any payments will be made electronically, the court directs that, no later than simultaneously with the electronic payment, defendant shall provide plaintiffs' counsel with the amount and date of the payment, the name of the plaintiff to whom the payment is being made, and a detailed calculation that documents the exact amount that is paid to each plaintiff and how that amount was calculated on a pay period by pay period basis.  With respect to any payments made to plaintiffs prior to defendant's receipt of this order, defendant shall provide the following information to plaintiffs' counsel on or before Monday, July 6, 2009 at 5:00 p.m. EDT:  (1) the amount and date of each payment; (2) the name of the plaintiff to whom the payment is being

made; and (3) a detailed calculation that documents the exact amount that is paid to each plaintiff and how that amount was calculated on a pay period by pay period basis.

3.      Defendant shall ensure that former FAA employees who are plaintiffs in this lawsuit are considered by FAA to have requested payments described in the May 1, 2009 FAA Memo.  Defendant shall not require that such plaintiffs respond to the May 1, 2009 FAA Memo within 60 days or otherwise.

4.      The court authorizes plaintiffs' counsel to advise plaintiffs that the court has found that the May 1, 2009 FAA Memo should not have been issued to plaintiffs except though plaintiffs' counsel.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge