# In the United States Court of Federal Claims

No. 07-272C

(E-Filed:  December 1, 2015)

| | |
|---|---|
| MARK G. ABBEY, et al., ) | |
| ) | On Remand; Cross-Motions for |
| Plaintiff, ) | Summary Judgment; RCFC 56; |
| ) | FLSA; 29 U.S.C.  §§ 201-219; Federal |
| v.  ) | Employees Flexible & Compressed |
| ) | Work Schedules; 5 U.S.C. §§ 6120– |
| THE UNITED STATES, ) | 6133. |
| ) | |
| Defendant. ) | |
| ) | |

Gregory K. McGillivary, Washington, D.C., for plaintiffs.  Sara L. Faulman, Washington, D.C., of counsel.

Hillary A. Stern, Senior Trial Counsel, with whom where Joyce Branda, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  Brett Daee and Michael Doherty, Office of Chief Counsel, Federal Aviation Administration, Washington, D.C., of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

The court considers this case on remand.  Current and former air-traffic-control specialists or traffic-management coordinators (collectively, controllers), who are or were flexible work schedule (FWS) employees of the Federal Aviation Administration (FAA), seek overtime pay under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–219 (FLSA), for hours worked in excess of their basic work requirement from May 1, 2005 to present.  It is undisputed that the controllers performed this work with the FAA's knowledge and authorization.  Defendant, on behalf of the FAA, contends that the controllers received compensatory time or credit hours for this work and that no overtime pay is or was ever due.  The question now before the court is whether the FAA's compensatory time and credit hour programs were legally permissible either in whole or in part and if not, whether the FAA is liable for overtime for excess hours.

For the reasons set forth below, the court finds that the FAA's policies during the statutory period fell only partly within the authorizing provisions of Title 5, 5 U.S.C. §§ 5543, 6120–6133.  See Federal Employees Flexible and Compressed Work Schedules Act of 1982 (the Flexible Schedules Act), Pub. L. No. 97-221, 96 Stat. 227 (1982) (codified as amended at 5 U.S.C. §§ 6120–6133).  Thus, defendant's motion for summary judgment is **DENIED-IN-PART** with respect to the FAA's credit hour policy, and plaintiffs' motion for summary judgment is **GRANTED-IN-PART**. The court finds that the FAA is liable for overtime pay for the excess credit hours accrued by the controllers. Consistent with the court's earlier opinions, plaintiffs are entitled to back pay damages for a two-year statutory period plus liquidated damages and attorney's fees.

I.      Background

        In earlier issued opinions, the court held that the FAA had no authority to grant compensatory time and credit hours in exchange for the excess hours that its controllers worked, and thus the FAA was liable for FLSA overtime pay and liquidated damages. See Abbey v. United States (Abbey I), 82 Fed. Cl. 722 (2008) (finding liability on partial summary judgment); Abbey v. United States (Abbey II), 99 Fed. Cl. 430 (2011); Abbey v. United States (Abbey III), 106 Fed. Cl. 254 (2012) (finding that plaintiffs were entitled to liquidated damages and that an extension of the FLSA statute of limitations was not warranted); Abbey v. United States (Abbey IV), 106 Fed. Cl. 789 (2012) (awarding damages post-trial).[1]

        On appeal, the Federal Circuit rejected the premise that the FAA lacked authority to depart from the FLSA's overtime pay provision.  Abbey v. United States (Abbey V), 745 F.3d 1363 (Fed. Cir. 2014), reh'g en banc denied (Aug. 22, 2014).  The Federal Circuit held that particular provisions of the federal personnel laws, specifically, 5 U.S.C. §§ 5543 and 6120–6133, survived the 1996 Appropriations Act to provide continued authorization for the FAA to depart from the FLSA's overtime pay provision.  Id. at 1373 (vacating Abbey I and Abbey IV); Department of Transportation & Related Agencies Appropriation Act of 1996 (1996 Appropriations Act), Pub. L. No. 104-50, § 347, 109 Stat 436, 460 (1996) (later codified as amended at 49 U.S.C. § 40122(g)).  Accordingly, the issue left open on remand is "whether the challenged FAA['s] [compensatory time and credit hour] policies are fully, or only partly, within the authority of those Title 5 exemptions from the FLSA."  Id. at 1365.  As the Federal Circuit stated in AbbeyV, "unless 5 U.S.C. §§ 5543 and 6120–6133 continue to authorize a departure from the money-payment overtime command of the FLSA, the FAA cannot act contrary to that command."  Id. at 1372.  The Federal Circuit added that the "validity of the challenged FAA policies on compensatory time and credit hours in lieu of FLSA overtime pay turns

---

[1]     The sequential numbering of previous Abbey opinions is provided for ease of reference only.  This numbering does not include every opinion issued in this case.

on whether those policies are within the authorization of 5 U.S.C. §§ 5543 and 6120–6133." Id. at 1375.

On remand, the parties filed cross-motions for summary judgment. See Def.'s Mot. Summ. J. (Def.'s MSJ), Nov. 19, 2014, ECF No. 305; Pls.' Opp'n [] & Cross-Mot. Summ. J. (Pls.' MSJ), Dec. 16, 2014, ECF No. 306; Pls.' Stmt. Uncontroverted Facts (PSUF), Dec. 16, 2014, ECF No. 307; Def.'s Reply, Jan. 30, 2015, ECF No. 310; Pls.' Reply, Feb. 20, 2015, ECF No. 315.  Both parties filed an appendix with documents in support of their motions.  Pls.' App. (PA), ECF No. 307-1-2; Def.'s App. (DA), ECF No. 305.  Following the close of briefing, the Federal Circuit issued a decision clarifying the state of the law with respect to overtime by inducement under the Federal Employees Pay Act of 1945, 5 U.S.C. § 5542(a).  Mercier v. United States, 786 F.3d 971 (Fed. Cir. 2015).  In turn, the parties were ordered to submit briefs on what effect, if any, the Mercier holding has in this case.  Def.'s Suppl. Br., July 1, 2015, ECF No. 319; Pls.' Suppl. Br., July 1, 2015, ECF No. 320; Def.'s Suppl. Reply, Aug. 26, 2015, ECF No. 324; Pls.' Suppl. Reply, Aug. 26, 2015, ECF No. 325.

In their briefing, the controllers concede that the FAA's policies concerning compensatory time in lieu of overtime pay fit entirely within Title 5's compensatory time exemptions from the FLSA overtime pay requirement, see 5 U.S.C. §§ 5543, 6123(a)(1), 6121(6).  See Pls.' MSJ 1 n.1.  Thus, the only question remaining on remand is whether the FAA's credit hour policies are "fully or partly" authorized by 5 U.S.C. §§ 5543 and 6120–6133 and what, if any, ramifications there are for violations.  See Abbey V, 745 F.3d at 1365.  The matter is ripe for decision.

II.    Legal Standards

A.    Cross-Motions for Summary Judgment

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).[2]  A motion for summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  When considering cross-motions for

---

[2]    The Rules of the United States Court of Federal Claims generally mirror the Federal Rules of Civil Procedure (FRCP).  See RCFC 56 rules committee note (2008 amendment) ("The language of RCFC 56 has been amended to conform to the general restyling of the FRCP.");  C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1541 n.2 (Fed. Cir. 1993) ("The [RCFC] generally follow the [FRCP].  [RCFC] 56(c) is, in pertinent part, identical to [FRCP] 56(c).").  Accordingly, this court relies on cases interpreting FRCP 56 as well as those interpreting RCFC 56.

summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

In considering a motion for summary judgment, the court draws all inferences in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Mann v. United States, 334 F.3d 1048, 1050 (Fed. Cir. 2003). The moving party has the initial burden of establishing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361, 1366 (Fed. Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986)). This burden may be discharged by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." SRI Int'l v. Matsushita Electric Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson 477 U.S. 247–48 (emphasis omitted). A fact is material if it might affect the outcome of the suit, and a dispute over a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." Id. at 248. An issue is genuine if it might "reasonably be resolved in favor of either party." Id. at 250. "Denial of both motions is warranted if genuine disputes exist over material facts." Whalen v. United States, 93 Fed. Cl. 579, 587 (2010) (citing Mingus Constructors, Inc., 812 F.2d 1391).

To prevail on either motion for summary judgment here, the moving party must demonstrate that there is no "genuine issue of material fact," see Celotex, 477 U.S. at 322-24, as to: (1) what extent the FAA's credit hour policies comply with 5 U.S.C. §§ 5543 and 6120–6133; and (2) whether FLSA overtime-pay and liquidated damages are appropriate and if so, whether the statutory period should be extended. Because the factual record developed over the long pendency of this case is extensive and the outstanding issues are legal in nature, summary judgment is appropriate. To the extent that any factual disputes remain, see, e.g., Def.'s Reply 4 and 14, those disputes are not material.

## B.    Overtime Compensation Under the FLSA

The legal standard for obtaining overtime compensation under the FLSA has been addressed in detail in two earlier opinions in this case. See Abbey I, 82 Fed. Cl. at 727-28; Abbey II, 99 Fed. Cl. at 430. To prevail on a FLSA claim for an overtime activity suffered or permitted to be performed, plaintiffs must prove each of the following

elements of the claim.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946).  "First, plaintiffs must establish that each activity for which overtime compensation is sought constitutes 'work.'"  Bull v. United States (Bull I), 68 Fed. Cl. 212, 220 (2005), aff'd, 479 F.3d 1365 (Fed. Cir. 2007).  Second, plaintiffs must establish that the hours of work performed are not de minimis, id. (citing Anderson, 328 U.S. at 693; Bobo v. United States, 136 F.3d 1465, 1468 (Fed. Cir. 1998); Adams v. United States, 65 Fed. Cl. 217, 222 (2005)), and that the work performed is "reasonable in relation to the principal activity," id. at 220-21 (citing Anderson, 328 U.S. at 688; Amos v. United States, 13 Cl. Ct. 442, 449 (1987); see also Whalen v. United States, 93 Fed. Cl. 579, 599 (2010) ("An activity is indispensable to the primary goal of an employee's work if it is 'closely related to the [employee's] principal work activities.'") (quoting Bobo, 136 F.3d at 1468).

III.    The FLSA's Overtime Pay Requirement and the Title 5 Exemptions

Under the FLSA, when a nonexempt employee works more than forty hours per week, the employer must pay the employee for overtime hours at a rate of not less than one and one-half times the employee's regular rate of pay.[3]  29 U.S.C. § 207(a)(1); see also id. § 203(e)(2) (extending the FLSA to the federal sector).  Notwithstanding this FLSA overtime pay requirement, Title 5 of the United States Code creates two exemptions for nonexempt federal employees who work flexible schedules rather than traditional forty-hour workweeks.  See 5 U.S.C. §§ 5543, 6120–6133.  These flexible schedule employees may earn "compensatory time" or "credit hours" in lieu of overtime pay for hours worked in excess of eight hours in a day or forty hours in a week.  See 5 U.S.C. §§ 6122(a)(2) (credit hours), 6123(a)(1) (compensatory time).  However, these exemptions to the requirements of FLSA are to be narrowly construed.  Bull v. United States, 479 F.3d 1365, 1377 (Fed. Cir. 2007) (citing Doe v. United States, 372 F.3d 1347, 1360 (Fed. Cir. 2004); see also Citicorp Indus. Credit, Inc. v. Brock, 483 U.S. 27, 35 (1987).  To succeed when claiming an exemption to the FLSA overtime requirements, employers must "prove each specific element of the exemption" within the narrowly interpreted exemptions.  Grandits v. United States, 66 Fed. Cl. 519, 526 (2005).

"Credit hours" are "any hours, within a flexible schedule established under section 6122 of the title, which are in excess of an employee's basic work requirement and which the employee elects to work so as to vary the length of a workweek or [a] workday."  Id. § 6121(4).  For each credit hour worked, the employee receives one credit hour equal to one hour of paid leave for use on another day.  Abbey III, 106 Fed. Cl. 262; Doe v. United States, 513 F.3d 1348, 1358 (Fed. Cir. 2008) (rejecting federal employees'

---

[3]    The FLSA's requirements were extended to federal agencies in 1974 by the Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 6(a), 88 Stat. 55 (codified as amended at 29 U.S.C. § 203(e)).

argument that the FLSA requires an agency to provide one and one-half hours of leave for each credit hour worked).

Accrual and use of credit hours are voluntary on behalf of the employee, but an employer's advance permission is required both to accrue and use them.  The employer has the right to restrict such accrual and use to the extent such activity either: (1) interferes with an employee fulfilling "the duties and requirements of the employee's position," id. § 6122(a) (last sentence); (2) "substantially disrupts [an agency] in carrying out its functions; or (3) [causes an agency to] incur[] additional costs because of such participation," id. § 6122(b)(1)–(2).  Moreover, section 6123(b) limits the compensation permitted for credit hours worked either "to the extent authorized under section 6126 of [Title 5] or to the extent such employee is allowed to have such hours taken into account with respect the employee's basic work requirement."  In turn, section 6126 provides that a full-time flexible schedule employee may carryover up to twenty-four credit hours from one biweekly pay period to another, id. § 6126(a).  But, if the employee stops working a flexible schedule, the agency must pay for those carryover hours at the rate of basic pay at that time, id. § 6126(b).

"[C]redit hours, by statutory definition, are not overtime hours."  Doe v. United States, 513 F.3d 1348, 1358 (Fed. Cir. 2008) (citing 5 U.S.C. § 6121(6)).  Whereas "credit hours" are defined as hours "in excess of an employee's basic work requirement,[4] which the employee elects to work," id. § 6121(4), "overtime hours" in the context of a flexible schedule must be "officially ordered in advance, but do[] not include credit hours," id. § 6121(6).  Thus, credit hours are distinguished from overtime hours in that credit hours are not officially ordered in advance by management, but are voluntary on behalf of the employee.  See 5 U.S.C. § 6121–6126.  Furthermore, unlike overtime immediately payable at a one and one-half times the employee's regular rate, monetary compensation for credit hours is capped at twenty-four hours, is payable at the employee's regular rate of pay – not at time and one half – and is due only if and when an employee ends participation in a flexible work schedule program.  Id. § 6126(b).

IV.    During the Relevant Time Period, the FAA's Credit Hour Policies Were "Only Partly" Authorized by the Flexible Schedules Act, 5 U.S.C. §§ 6120–6133

Plaintiffs who worked credit hours between October 1, 2004[5] and September 30, 2009, claim that they should have been paid the FLSA overtime rate of "one and one-half

---

[4]    An employee's "basic work requirement" refers to "the number of hours, excluding overtime hours, which an employee is required to work or is required to account for by leave or otherwise."  5 U.S.C. § 6121(3).

[5]    Absent proof of the FAA's willfulness, the statute of limitations for violations of the FLSA is two years.  See infra section VI(C).

times" their regular rate, 29 U.S.C. § 207(a)(1), rather than receiving one credit hour for each hour worked.  Whether plaintiffs' claim succeeds in whole or in part depends on whether the FAA's credit-hour program during the relevant time period was "fully or partly" authorized by the Flexible Schedules Act, 5 U.S.C. §§ 6120–6133.  Abbey V, 745 F.3d at 1375.  In light of the well-established precedent for interpreting FLSA exemptions, the Federal Circuit's mandate is a limited one.  See Bull 479 F.3d at 1377 (citing Doe, 372 F.3d at 1360) (exemptions to the requirements of FLSA are to be narrowly construed).

As explained more fully below, although the FAA did have authorization to create a credit hour policy exempt from the FLSA's overtime pay provisions, in accordance with the Flexible Schedules Act, 5 U.S.C. § 6126,[6] the FAA's adopted policies – which allowed for unlimited credit hour accrual and for the forfeiture of unused excess hours – exceeded the prescribed authority under the Flexible Schedules Act and violated the FLSA.  See Def.'s MSJ 2 ("[T]he FAA's policies regarding credit hours are substantially the same as those contained in Title 5 U.S.C. §§ 6121 and 6126") (emphasis added); Bull, 479 F.3d at 1377 (exemptions from the FLSA are narrowly construed).

   A.  The FAA's Credit Hour Policy From April 1, 1996, until the July 8,

---

[6] 5 U.S.C.A. § 6126 is titled "Flexible schedules; credit hours; accumulation and compensation" and states:

> (a) Subject to any limitation prescribed by the Office of Personnel Management or the agency, a full-time employee on a flexible schedule can accumulate not more than 24 credit hours, and a part-time employee can accumulate not more than one-fourth of the hours in such employee's biweekly basic work requirement, for carryover from a biweekly pay period to a succeeding biweekly pay period for credit to the basic work requirement for such period.

> (b) Any employee who is on a flexible schedule program under section 6122 of this title and who is no longer subject to such a program shall be paid at such employee's then current rate of basic pay for --
> > (1) in the case of a full-time employee, not more than 24 credit hours accumulated by such employee, or
> > (2) in the case of a part-time employee, the number of credit hours (not in excess of one-fourth of the hours in such employee's biweekly basic work requirement) accumulated by such employee.

1998 Was "Fully" Authorized by The Flexible Schedules Act[7]

Prior to 1996, the personnel policies of the FAA were not unique in that they were governed by the same statutes – including the FLSA and Title 5 provisions – as were the majority of federal agencies.  Def.'s MSJ 3.  Then, on November 15, 1995, Congress vested the FAA with authority to develop and implement its own personnel management system.  See 1996 Appropriations Act, 49 U.S.C. § 40122(g); see also 49 U.S.C. § 106(*l*); Jt. Stip. Facts, ECF 207, ¶35.  Congress intended that the new system would "at a minimum, provide [the FAA with] greater flexibility in the hiring, training, compensation, and location of personnel."  49 U.S.C. § 40122(g)(1).  Accordingly, Congress specified that the vast majority of "Title 5 shall not apply to the [FAA's] new personnel management system."  Id. § 40122(g)(2).  Nevertheless, the FAA concluded that it had discretion to re-adopt or incorporate into its new system the substance of any portion of Title 5 as deemed appropriate.  Abbey V, 745 F.3d at 1367.

To that end, the FAA developed and implemented a new personnel management system that took effect on April 1, 1996, and that incorporated by reference the credit-hour system set forth in the Flexible Schedules Act, 5 U.S.C. §§ 6120–6133.  See Def.'s MSJ at 4 (citing DA 8, ¶36).  It is undisputed that the FAA was authorized to do so.  See Brodowy v. United States, 482 F.3d 1370, 1375 (Fed. Cir. 2007) (impliedly recognizing the FAA's authority and discretion to adopt and incorporate another portion of Title 5, the General Schedule compensation system, into the FAA's Personnel Management System), cert. denied, 552 U.S. 1097 (2008).  And, there is no genuine dispute that the FAA implemented as its credit-hour system one that identically tracked the language of the system set forth in the Flexible Schedules Act.  Abbey V, 745 F.3d at 1366-67; PSUF ¶12.  Thus, from 1996 to July 8, 1998, the FAA's credit-hour system "fully" comported with the Flexible Schedules Act exemptions to the FLSA overtime pay requirements.  Abbey V, 745 F.3d at 1372 (stating that the FAA cannot act contrary to the command of 5 U.S.C. §§ 6120–6133).

     B.  The FAA's Credit Hour Policy From the Implementation of the July 8, 1998 Collective Bargaining Agreement Until September 2, 2006 Was "Only Partly" Authorized by The Flexible Schedules Act

On July 8, 1998, the FAA entered into a collective bargaining agreement with the controllers' union, the National Air Traffic Controllers Association (NATCA), allowing "in exchange for removing the twenty-four hour limitation on the earning of credit hours,

---

[7]    Although outside of the scope of the statute of limitations (even with an extension of one year for willfulness), the FAA's early credit hour policy is described to provide context for the FAA's later policies which were "only partly" authorized by the Flexible Schedules Act.

[that] controllers [would] in no circumstances be able to convert unused credit hours into pay." PA 178, ECF No. 307-2. From the implementation of this agreement in 1998 until September 2, 2006, the controllers could accrue credit hours without limit. But they could not exchange the unused credit hours for cash at any point – not even at the end of their employment or upon conversion to a non-flexible schedule. Abbey III, 106 Fed. Cl. at 262. As a result, a large majority of controllers had accrued more than twenty-four hours of credit hours by mid-2005. Jt. Stip. Facts, ECF No. 207, ¶22.

During the pendency of this policy, controllers were required to "use or lose" any accumulated credit hours and to forfeit any accumulated hours at the end of their employment or conversion to a non-flexible schedule. By agreeing to allow controllers to accumulate unlimited credit hours, the FAA created a policy that was not authorized by 5 U.S.C. § 6126(a), which expressly states that "a full-time employee on a flexible schedule can accumulate not more than twenty-four credit hours." Abbey V, 745 F.3d at 1372. Moreover, by refusing to give any cash value to the controller's accumulated credit hours upon the employee's exit from a flexible work schedule, the FAA adopted a policy that was not authorized by 5 U.S.C. § 6126(b)(1), which states, in relevant part, that full time flexible schedule employees "who [are] no longer subject to such a program shall be paid at such employee's then current rate of basic pay for… not more than twenty-four credit hours accumulated by such employee."

Defendant has not identified any statutory authorization – other than the Flexible Scheduled Act – for its unlimited credit hour policy, and defendant has conceded that the controllers could not waive or otherwise bargain away their FLSA rights. Abbey I, 82 Fed. Cl. at 744 ("[W]e have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.") (quoting Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740-41 (1981)) (internal citation omitted); see also Tr., July 29, 2008, ECF No. 48, 15 (defendant acknowledging that it is "fairly well-established" that FLSA rights cannot be bargained away). Thus, by requiring its employees to forfeit their unused credit hours, the FAA effectively forced its employees to waive their rights under the FLSA. Id.

Only insofar as the FAA allowed flexible schedule controllers to accrue and use credit hours does the agency's policy meet the requirements of 5 U.S.C. § 6126. However, the other substantive elements of this exemption – specifically the restriction on the number of credit hours that an employee could accumulate and the payment upon an employee's exit from the flexible work schedule for credit hours accrued up to the twenty-four hour limit – were not met by the FAA's policy. Bull, 479 F.3d at 1377 (exemptions from the FLSA are narrowly construed); Grandits, 66 Fed. Cl. at 526 (requiring that employers "prove each specific element of the exemption" as narrowly interpreted). Thus, the FAA credit hour policy which was in place from the implementation of the July 8, 1998 collective bargaining agreement until September 2,

2006, was "only partly" authorized by the Flexible Schedules Act, 5 U.S.C. § 6126.

C. The FAA's Credit Hour Policy From September 3, 2006 to September 30, 2009 Was "Only Partly" Authorized by the Flexible Schedules Act

From September 3, 2006 to September 30, 2009, plaintiffs could carry over a balance of up to twenty-four credit hours each pay period.  Def.'s MSJ 11.  Any credit hours previously earned that exceeded the twenty-four hour maximum were retained by plaintiffs, but plaintiffs were prohibited from earning any additional credit hours until the hours accrued had been used to bring the balance below the twenty-four hour maximum.  During this period, plaintiffs also could receive payment for unused credit hours (up to a maximum of twenty-four hours) at their regular hourly rate upon separation or conversion to a non-flexible schedule.  Jt. Stip. Facts, ECF 207, ¶19; Def.'s MSJ 11.  But, any credit hours in excess of the twenty-four maximum that were banked prior to September 3, 2006, had no cash value and were forfeited if not used prior to departure.  Id.

This policy was only partly authorized by the Flexible Schedules Act exemption to FLSA overtime pay requirements, 5 U.S.C. § 6126.  Section 6126 expressly prohibits the accumulation of more than twenty-four credit hours; it also establishes that, upon exiting the flexible work schedule, the cash value of up to twenty-four accumulated credit hours is equal to the employee's standard rate of pay.  5 U.S.C. § 6126.  However, the FAA's policy of requiring that employees forfeit, without remuneration, any credit hours accumulated in excess of the twenty-four hour cap established by 5 U.S.C. § 6126 exceeded the Title 5 authorization.  See section IV(B) above (citing Abbey I, 82 Fed. Cl. at 744) (finding that controllers cannot waive their FLSA rights).  Because defendant inappropriately enlarged the scope of 5 U.S.C. § 6126, Bull, 479 F.3d at 1377; Citicorp Indus. Credit, Inc., 483 U.S. at 35, the court finds that the FAA credit hour policy that was in place from September 3, 2006 until September 30, 2009, was "only partly" authorized by the Flexible Schedules Act, 5 U.S.C. § 6126.

D. The FAA'a Credit Hour Policy From October 1, 2009 to Present Is "Only Partly" Authorized by the Flexible Schedules Act

Under the collective bargaining agreement into which the parties entered on October 1, 2009, controllers may no longer request and earn credit hours.  They may retain, however, any credit hours previously earned and they may receive payment for up to twenty-four unused credit hours at the regular hourly rate upon separation or conversion to a non-flexible schedule.  Def.'s MSJ 7.  But, in the event that a controller accrued more than twenty-four credit hours under previous FAA credit hour policies, the excess hours must be forfeited and have no cash value upon separation.

Here again, the FAA's policy fails to account for the balance of accumulated credit hours that exceed twenty-four hours.  For the reasons addressed in more detail in

Section IV(B) of this opinion, the FAA's current policy is only partly authorized by the Flexible Schedules Act. Although the FAA is authorized to restrict the use of credit hours under 5 U.S.C. 6122(b)(2), Title 5 does not authorize the FAA to enforce a policy under which employees must forfeit their unused credit hours upon exiting the flexible work schedule program. See section IV(B) above (citing Abbey I, 82 Fed. Cl. at 744) (controllers cannot waive their FLSA rights). Thus, the FAA's current credit hour policy, in effect since October 1, 2009 only partly satisfies the exemption to the FLSA overtime pay requirements set forth under the Flexible Schedules Act, 5 U.S.C. §§ 6120-6133.

V.     The Hours Accumulated Beyond Title 5 Authorization Are Overtime Hours Under FLSA, 29 U.S.C. § 207(a)(1)

Defendant argues that plaintiffs' request for overtime pay for the credit hours they have worked is not appropriate because overtime hours must be "officially ordered in advance" and credit hours are expressly excluded from the definition of overtime hours under the Flexible Schedules Act. Def.'s MSJ 8, 16 (citing Doe, 372 F.3d at 1347). Defendant asserts that Congress specifically intended to exclude credit hours from the FLSA mandatory overtime pay provisions when it enacted the Flexible Schedules Act. Id. at 9 (citations to legislative history omitted). Defendant reasons:

> The plain language of the statute and the legislative history make clear that the limitation on credit hour accrual contained in Title 5 is NOT a limitation upon the FLSA waiver set forth in the Flexible Schedules Act [as] codified in Title 5. Exceeding that limit, therefore, does not magically convert credit hours earned and granted in excess of 24 accrued credit hours into overtime hours.

Def.'s Reply 23-24 (emphasis in original).

Plaintiffs counter that the FAA's credit hour policies have gone beyond those FLSA exemptions that were "not meant to displace the FLSA, but rather to create only a 'limited relaxation of otherwise applicable overtime pay requirements.'" Pls.' MSJ 22 (quoting Senate Rep. No. 95-1143, at 9 (1978)). Plaintiffs also identify a notable flaw in the various iterations of the FAA's credit hour policy – that is, a lack of symmetry between the number of credit hours that can be accumulated or carried over and the amount of hours honored at cash value upon exiting the flexible schedule work program. Pls.' MSJ 24. This gap creates a circumstance in which controllers who have worked more than forty hours a week do not receive any payment whatsoever for those hours of work accumulated as credit hours in excess of the twenty-four hour maximum. Id.

The FAA is without authority to permit its employees to accumulate credit hours beyond the limit of the Flexible Schedules Act exemptions. Abbey V, 745 F.3d at 1372.

Neither can the FAA require that controllers waive or otherwise bargain away their FLSA rights by forfeiting hours without pay. See section IV(B) above (citing Abbey I, 82 Fed. Cl. at 744).

In an effort to defend the unauthorized aspects of the FAA's credit hour policies, defendant explains that the controllers are not precluded from continuing to use their banked credit hours. Def.'s MSJ 12. But defendant misses the mark because the practice it describes does not account for those controllers who no longer have a flexible work schedule or who have retired, and it leaves open the possibility that employees who have completed work in excess of forty hours per week are left uncompensated – an outcome that is at odds with the very purpose of the FLSA. 29 U.S.C. § 207(a)(1); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945) ("The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.").

Defendant seeks to benefit from a definition of overtime specific to the Flexible Schedules Act which expressly excludes credit hours, yet the FAA did not adhere to the Flexible Schedules Act's criteria when it instituted its credit hour policies. Def.'s MSJ 8; 5 U.S.C. §§ 6120–6133. It is the view of the court that the credit hours accumulated by the controllers in excess of the twenty-four hour cap for credit hours under the Flexible Schedules Act cannot continue to be characterized as credit hours when the FAA's treatment of such hours did not comport with the requirements of 5 U.S.C. § 6126. Abbey V, 745 F.3d at 1372 (FAA cannot act contrary to the command of 5 U.S.C. §§ 6120–6133). The Supreme Court has instructed that FLSA exemptions "are to be narrowly construed against the employers seeking to assert them and their application [is] limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). Additionally, the Supreme Court has instructed that "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196–197 (1974). Because the FAA permitted controllers to accrue credit hours beyond the scope of any authorized FLSA overtime exemption, the accrued credit hours must be treated as overtime hours as defined by the FLSA, 29 U.S.C. § 207(a)(1), which provides that when a nonexempt employee works more than forty hours per week, the employer must pay the employee for overtime hours at a rate of not less than one and one-half times the employee's regular rate of pay. This treatment of the accrued credit hours does seem to have been contemplated by the Federal Circuit in its mandate, which stated that "the validity of the challenged FAA policies on compensatory time and credit hours in lieu of FLSA overtime pay turns on whether those policies are within the authorization of 5 U.S.C. §§ 5543 and 6120–6133." Abbey V, 745 F.3d 1363 (emphasis added).

Plaintiffs' claim for credit hours meets the threshold standard for FLSA overtime

compensation set forth in <u>Bull I</u>.  <u>See</u> section II(B) supra; <u>Bull</u>, 68 Fed. Cl. at 220 (to succeed on a claim for FLSA overtime compensation, plaintiffs must establish; (1) that each activity for which overtime compensation is sought constitutes 'work', (2) that the hours of work performed are not de minimis, and (3) that the work performed is "reasonable in relation to the principal activity") <u>aff'd</u>, 479 F.3d 1365 (Fed. Cir. 2007). Here, there is no dispute that the work performed by the controllers as they accumulated credit hours was reasonable "work" in relation to the principal activity.  Pls.'s MSJ 6 (citing  PSUF ¶46 (citing PA 155) ("The controller who was working overtime and paid in credit hours was performing the same operational duties that would otherwise have been performed by an individual on his or her regular shift, or to an individual assigned to work overtime hours for cash.")).[8]

Moreover, the tasks at issue here were not de minumus.  "The factors that trial courts must examine when assessing whether the work underlying a compensation claim is de minimis" are: "'(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.'" <u>Bobo</u>, 136 F.3d at 1468 (quoting <u>Lindow v. United States</u>, 738 F.2d 1057, 1063 (9th Cir. 1984)).  These factors are clearly satisfied here as the FAA kept record of the credit hours regularly accrued by the controllers, and the aggregate amount of compensable time cannot be considered trivial given that a large majority of controllers had accrued more than twenty-four hours of credit hours by mid-2005.  Jt. Stip. Facts, ECF No. 207, ¶22.  Furthermore, "OPM limits the application of the de minimis doctrine to periods of 10 minutes or less per day." <u>Bull</u>, 68 Fed. Cl. at 226 (citing 5 C.F.R. § 551.412(a)(1)).

Thus, any credit hours accumulated beyond the twenty-four hour limitation authorized by 5 U.S.C. §§ 6120-6133 should be treated as overtime under the FLSA 29 U.S.C. § 207(a)(1).

VI.   Plaintiffs Are Entitled to Back Pay Damages in Accordance With the Calculations Previously Set Forth in <u>Abbey III</u>

Employers found in violation of the FLSA are liable for any unpaid overtime compensation as well as for liquidated damages of an equal amount.  <u>See</u> 29 U.S.C. § 216(b).  Plaintiffs who succeed on a FLSA compensation claim are presumptively entitled to liquidated damages unless the employer can show that it failed to comply with the FLSA in good faith and on reasonable grounds.  <u>Id</u>. § 260; <u>see</u> <u>Abbey III</u>, 106 Fed. Cl. at 264-65 (citing <u>Bull I</u>, 68 Fed. Cl. at 229 (quoting <u>Laffey v. Nw. Airlines, Inc</u>., 567 F.2d

---

[8]     Although defendant disputed several facts on which plaintiffs relied in their cross-motion for summary judgment, no objection was raised to this fact in defendant's responsive brief.  <u>See generally</u> Def.'s Reply at 4-12.

429, 464-65 (D.C. Cir. 1976) overruled in part on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134 (1988)); Adams v. United States, 350 F.3d 1216, 1226 (Fed. Cir. 2003)).

A. Abbey III and Law of the Case

The court previously issued an opinion in this case finding that plaintiffs were entitled to liquidated damages, Abbey III.  Although the Federal Circuit vacated Abbey I (granting partial-summary judgment for plaintiffs) and the accompanying damages award, Abbey III, it directed this court, on remand, to reevaluate the validity of the FAA's credit hour policies but it left open the matter of damages.  Abbey V, 745 F.3d at 1363 ("the validity of the challenged FAA policies on compensatory time and credit hours in lieu of FLSA overtime pay turns on whether those policies are within the authorization of 5 U.S.C. §§ 5543 and 6120–6133.").  The court considers whether the law of the case applies to the issue of damages.

"The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts."  Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995) (quotation omitted).  The doctrine is intended to promote efficiency by providing that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (citing Arizona v. California, 460 U.S. 605 (1983)).  The doctrine applies throughout a case whether the previous decisions are the court's own, or are issued from a coordinate court.  Id. (citations omitted).  Application of the law of the case doctrine is "a matter which rests on discretion" and "court[s] will not generally revisit an issue once decided in the litigation."  Mendenhall v. Barber–Greene Co., 26 F.3d 1573, 1582-83 (Fed. Cir. 1994).  On remand, it is within the court's discretion to follow the law of the case on those matters left open.  Laitram Corp. v. NEC Corp., 115 F.3d 947, 951 (Fed. Cir. 1997) (citing Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust, 824 F.2d 765, 767 (9th Cir.1987)).

Further to the Federal Circuit's ruling in Abbey V that the FAA was authorized to depart from the FLSA overtime pay requirement insofar as the FAA's policies fit within the Title 5 exemptions, plaintiffs have conceded on remand that the FAA's compensatory time policy was authorized by Title 5.  See Pls.' MSJ 1 n.1.  Therefore, the aspects of Abbey III pertaining to plaintiffs' claim for damages resulting from the FAA's compensatory time policy are no longer in dispute.  The FAA's credit hour policies, however, did violate the FLSA overtime pay requirement by exceeding the authority provided in the Title 5 exemptions.

In Abbey III, the court found that the FAA's credit hour policies violated the FLSA and that plaintiffs were entitled to overtime pay for those credit hours.  106 Fed.

Cl. 254.  The court awarded back pay damages and issued a detailed opinion discussing the parties' disputed calculations of back pay and addressing a number of other disputed issues including the appropriate rate of pay as well as offsets for credit hours that had been "earned and used."  Id. at 267-77.  The court found that plaintiffs were entitled to liquidated damages but not entitled to either an extension of the statute of limitations or equitable tolling.  Id. at 278-87.  The court may depart from this law of the case if one of the following three exceptional circumstances exist: (1) the evidence in a subsequent trial is substantially different; (2) "controlling authority has since made a contrary decision of the law applicable to the issues;" or (3) the earlier ruling was clearly erroneous and would work a manifest injustice.  Gould, 67 F.3d at 930 (citing Gindes v. United States, 740 F.2d 947, 950 (Fed. Cir. 1984), cert. denied, 469 U.S. 1074 (1984) (quoting White v. Murtha, 377 F.2d 428, 432 (5th Cir. 1967)).

On remand, neither party has argued that an exceptional circumstance warrants a departure from the law of the case with respect to damages.  Nor has substantially different evidence on the issue been submitted for consideration.  As to whether "controlling authority has since made a contrary decision of the law applicable to the issues," Gould, 67 F.3d at 930, the court observes that the Federal Circuit's opinion in Abbey V did not disturb either the court's finding as to the availability of back pay for excess accrued credit hours, or the court's award of reasonable attorney's fees pursuant to 29 U.S.C. § 216(b).  Abbey III, 106 Fed. Cl. 254; Abbey V, 745 F.3d 1363.  The Federal Circuit found only that the FAA had authority to act outside of the FLSA overtime pay provisions.  Abbey V, 745 F.3d 1363.

### B.  Defendant Still Fails to Show Good Faith and Reasonableness

While the court does not depart from its prior ruling regarding plaintiffs' entitlement to liquidated damages, the court does address, for the sake of completeness, the parties' arguments on remand concerning liquidated damages.

Defendant argues that by complying with the congressionally imposed requirement to negotiate with the controllers' union, NATCA, the FAA acted in good faith and with reasonable grounds for believing the negotiated agreement did not violate FLSA.  Def.'s MSJ 19-21.  This argument is not new.  Defendant addressed the negotiations between the FAA and the NATCA in its briefing and the court considered this same argument by defendant when the court assessed good faith and reasonableness in Abbey III.  See Def.'s Br., ECF No. 268, 27; Abbey III, 106 Fed. Cl. at 261-62; see also Abbey I, 82 Fed. Cl. at 744.   Although defendant continues to press this argument, it cannot stand in the face of well-established law that FLSA rights cannot be bargained away in negotiations.  Abbey I, 82 Fed. Cl. at 744 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quoting Barrentine, 450 U.S. at 740-41 (internal citation omitted); see also Tr., July 29, 2008, ECF No. 48, 15 (defendant acknowledging that it is "fairly well-established" that FLSA rights cannot be bargained away).

Plaintiffs contend that the FAA did not make a good faith effort to comply with the FLSA when it implemented its credit hour policies. Pls.' Reply 37-38. Defendant asserts that the standards for trying to comply with the FLSA do not apply here because the FAA's actions were not authorized by the FLSA, but rather by an exemption to the FLSA provided by Title 5. Def.'s Reply 36. Defendant, however, provides no authority for this assertion, which runs counter to the Federal Circuit's guidance that exemptions to the FLSA generally receive more critical scrutiny. Bull, 479 F.3d at 1377. Nevertheless, defendant maintains that the FAA acted reasonably and made a good faith effort to comply with the FLSA when it instituted its unlimited credit hour policy because "Mr. Whitlow, the individual tasked with acting as legal counsel for the effort to devise a new FAA [Personnel Management System], engaged in a serious, careful, and good faith effort to ascertain the FAA's authority pursuant to [the 1996 Appropriations Act]." Def.'s Reply 36 (citing DA 16-17 (Tr., Mar. 6, 2012, ECF No. 263, 438)). As the court found in Abbey III, defendant's assertions regarding Mr. Whitlow's testimony continue to fall short of meeting the FAA's "substantial burden" of proving that it made a good faith effort to comply with FLSA. 106 Fed. Cl. at 281; see also Bull I, 68 Fed. Cl. at 229.

Defendant further attempts to establish good faith and reasonableness by characterizing Mr. Whitlow's determination that "the FAA had authority to adopt any and all [T]itle 5 provisions and to continue any and all [T]itle 5 practices," as similar to the determination made by the Federal Circuit on appeal. Def. Reply 37. But, as plaintiffs point out, this representation by defendant is a mischaracterization. Pls.' Reply 26. The Federal Circuit found that the FAA's authority to depart from the FLSA found in the 1996 Appropriations Act was limited to the authorization contained in 5 U.S.C. §§ 5543 and 6120-6133; this finding is distinguishable from Mr. Whitlow's position that the 1996 Appropriations Act, on its own, authorized the FAA to "adopt any and all Title 5 provisions." Compare Abbey V, 745 F.3d at 1376, with Def. Reply 37.

### C.  Plaintiffs Have Not Provided Substantially New Evidence Of Willfulness

Plaintiffs urge the court to award back pay damages in accordance with Abbey III, Pls.' MSJ 29-44 passim, and to reverse its earlier finding of insufficient evidence of willfulness. Pls.' MSJ 44 (citing Abbey III, 106 Fed. Cl. at 284). Plaintiffs argue that "the question here is different and a reexamination of the facts demonstrates that the government did act willfully when it decided, without any analysis whatsoever, that it could go well beyond the Title 5 exceptions to the FLSA by writing and creating its own exception to the Fair Labor Standards Act." Id. at 45 (emphasis in original). Although plaintiffs press the court to consider evidence of actual knowledge of FLSA liability that was overlooked or disregarded by the court in Abbey III. Pls. MSJ at 47, plaintiffs concede that the court considered and addressed this evidence in its analysis of willfulness in Abbey III. Id. (citing Abbey III, 106 Fed. Cl. at 284).

Defendant did not address the issue of willfulness in any of its briefing. Notwithstanding defendant's silence, plaintiffs' evidence is not new and does not establish an exceptional circumstance for departing from the court's previous decisions on this issue.  Gould, 67 F.3d at 930.

Accordingly, the law of the case applies to allow an award of back pay to plaintiffs for their credit hours that would be otherwise forfeited, specifically to include those accumulated in excess of the twenty-four hour limit authorized by the Flexible Schedules Act over the two-year statutory period, along with liquidated damages and reasonable attorney's fees as set forth in Abbey III. 106 Fed. Cl. 254.

VII.   Conclusion

For the foregoing reasons, defendant's motion for summary judgment is **DENIED-IN-PART** with respect to the FAA's credit hour policy, and plaintiffs' motion for summary judgment is **GRANTED-IN-PART**.  As a matter of law, plaintiffs are entitled to FLSA overtime pay for any credit hours accumulated beyond the twenty-four hour limitation authorized by 5 U.S.C. §§ 6120-6133.

Consistent with the court's previous holding in Abbey III, plaintiffs are entitled to statutory liquidated damages under the FLSA in an amount equal to their unpaid overtime compensation.  See 29 U.S.C. § 216(b).  However, because plaintiffs have not shown that defendant acted willfully within the meaning of the FLSA, they are entitled to two, not three, years of back pay.  See 29 U.S.C. § 255(a).

On or before **Tuesday, January 19, 2016**, the parties shall jointly calculate and file a stipulation with the court for the amount of compensation to which each representative plaintiff is entitled in accordance with the calculations adopted by this court in Abbey III and adjusted as may be appropriate to account for this opinion.  If the parties do not agree on any part of such calculations, the parties shall present to the court, on or before **Monday, January 4, 2016**, those calculations on which they do not agree – accompanied by specific and complete statements explaining their respective positions and the bases for the particular points of disagreement.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge

17